

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SPN:RCH/HDM/CRH
F. #2018R01309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 28, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Rashid Sultan Rashid Al Malik Alshahhi, et al.
               Criminal Docket No. 21-371 (BMC)

Dear Judge Cogan:

        The government respectfully writes in opposition to the motion of defendant Matthew Grimes for grand jury records.[1] Specifically, the defendants request (i) the prosecution's legal instructions to the grand jury; (ii) access to detailed empanelment records; and (iii) the voir dire questions presented to potential grand jurors (the "Grand Jury Materials"). See Dkt. No. 70 (the "GJ Motion" or "GJ Mot.") at 1. There is no legal or factual basis for the defendants' request. The Grand Jury Materials are not discoverable pursuant to the Federal Rules of Criminal Procedure, the Jencks Act, nor any constitutional discovery obligation. The defendants have alleged no misconduct in the grand jury, nor identified any other particularized need for the Grand Jury Materials. And they have not identified any "fair cross section" claim under the Jury Selection and Service Act, 28 U.S.C. §§ 1861, et seq. (the "JSSA"), that would permit access to additional empanelment material beyond that which is permitted in all cases.

        To the contrary, the defendants' only basis for these requests are that indictments charging violations of 18 U.S.C. § 951 ("Section 951") are "rare," and that the case is "politically charged." See GJ Mot. at 7, 10. But there have been numerous Section 951 indictments, and grand juries regularly confront cases that involve sensitive, well-publicized or "politically charged" conduct. In any event, neither claim is a valid legal basis to obtain discovery of the Grand Jury Materials, and the rest of the defendants' motion is rank speculation about what may or may not have occurred in the grand jury. Accordingly, the Court should deny the defendants' motion.

---

[1] By letter dated February 8, 2022, defendant Thomas Joseph Barrack advised the Court that he joins in this motion. See Dkt. No. 77.

I.   Background

On November 8, 2021, and November 22, 2021, Grimes requested several categories of material related to grand jury proceedings via letter. The government responded to these requests, advising Grimes that the requested materials were outside the scope of discovery, and that he failed to identify any other legal basis warranting disclosure of these records. With respect to Grimes' request for grand jury empanelment records, the government consented to the submission of a proposed order that would permit Grimes to obtain certain information contained in the Master Jury Wheel. On January 26, 2022, Grimes submitted a request to the Court for those materials, which the Court granted on February 1, 2022. See Dkt. No. 65. On January 31, 2022, Grimes filed the GJ Motion. See Dkt. No. 70. The GJ Motion requests that the Court order discovery of the Grand Jury Materials, specifically identified as "(i) the prosecution's legal instructions to the grand jury; (ii) access to certain empanelment records; and (iii) the voir dire questions presented to potential grand jurors." Id. at 1.

With regard to grand jury selection, the Jury Selection Plan of the United States District Court for the Eastern District of New York, which was last amended on October 30, 2006 (the "Jury Plan"), sets forth the procedures for selecting juries sitting in the Brooklyn and Central Islip Courthouses. See https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf. The Jury Plan provides, among other procedures, that the names of jurors "shall be selected at random from the voter registration lists of all the counties within the Eastern District of New York supplemented by lists for these counties from the New York State Department of Motor Vehicles." Id. § 4. The Jury Plan also sets forth the procedures for selecting individuals from this initial list to be included in the master jury wheels, qualified jury wheels, jury panels and ultimately in the grand and petit juries. In general, the selection process involves: (1) creating the "Master Wheel" from a random set of names from the two lists described above; (2) creating a "Qualified Wheel" by mailing out qualification forms to a random selection of individuals from the Master Wheel and determining qualification; (3) randomly selecting a number of individuals to appear via jury summons; (4) creating a venire from those who appear in court and are available; and (5) selecting from the venire jurors for service on grand juries and petit juries. Id. §§ 5-14.

II.   Applicable Law

A.   The Government's Discovery Obligations

Rule 16 of the Federal Rules of Criminal Procedure sets forth the government's principal discovery obligations. See United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013) ("Here, as in all federal criminal cases, it is Rule 16 that principally governs pre-trial discovery."). Rule 16 requires disclosure of: certain oral, written and recorded statements by the defendant (Rule 16(a)(1)(A) & (B)); the defendant's prior criminal record (Rule 16(a)(1)(D)); certain documents and objects that are material to preparing the defense, that the government intends to use in its case-in-chief at trial, or that were obtained from or belong to the defendant (Rule 16(a)(1)(E)); certain reports of examinations or tests (Rule 16(a)(1)(F)); and a written summary of the government's anticipated expert witness testimony (Rule 16(a)(1)(G)). The government is also obligated to disclose materials pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, as well as materials

pursuant to the Jencks Act, 18 U.S.C. § 3500.  There is otherwise "no general constitutional right to discovery in a criminal case."  Weatherford v. Bursey, 429 U.S. 545, 559 (1977).

Rule 16 sets a limit on the categories of discovery in a federal criminal case and does not provide a license for a searching review of everything the government might know or have in its possession.  See, e.g., United States v. Agurs, 427 U.S. 97, 106 (1976) (the government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").  Discovery in this context is substantially different than the civil discovery process: "federal criminal discovery is far more limited than federal civil discovery. . . . [U]nlike their civil counterparts, criminal proceedings have no extensive discovery . . . procedures requiring both sides to lay their evidentiary cards on the table before trial."  United States v. Sampson, 898 F.3d 270, 280 (2d Cir. 2018).  Grand jury materials are generally outside the scope of the discovery process.  See United States v. Loera, No. 09-CR-466 (BMC), 2017 WL 2821546, at *8 (explaining that "grand jury material" and other requested items "are already not discoverable by virtue of Rule 16" and further protected from disclosure by Rule 6 and the Jencks Act).

B.     Grand Jury Materials

"It is a tradition of our law that proceedings before a grand jury shall generally remain secret."  In re Biaggi, 478 F.2d 489, 491 (2d Cir. 1973) (noting that "the Supreme Court has referred to this as a long established policy 'older than our Nation itself'").  Grand jury secrecy protects several important interests, including the privacy and protection of grand jurors themselves.  See id. at 491-92; see also United States v. Ulbricht, 858 F.3d 71, 106 (2d Cir. 2017) ("The proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.") (brackets and citation omitted).[2]  The grand jury process is governed and protected by Rule 6 of the Federal Rules of Criminal Procedure.  Where a defendant requests information related to a "grand-jury matter," a court may disclose the information only when the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  See Fed. R. Crim. P. 6(e)(3)(E)(ii).  The Rule protects both evidence that was presented to a grand jury as well as materials that may reveal what occurred before the grand jury.  See United States v. Eastern Air Lines, Inc., 923 F.2d 241, 244 (2d Cir. 1991).

The standard to meet this obligation and gain access to grand jury materials is high. "Review of grand jury proceedings is very limited" because the grand jury process is afforded a "presumption of regularity."  United States v. Davis, No. 06-CR-911 (LBS), 2009 WL 637164, at *15 (S.D.N.Y. Mar. 11, 2009) (internal quotation marks omitted).  As a result, a defendant must demonstrate a "particularized need" for the sought-after materials that outweighs the ongoing interests in secrecy and presumption of regularity.  Id. (quoting United States v. Sells Eng'g, 463 U.S. 418, 443 (1983)); see also Ulbricht, 858 F.3d at 106.  A "particularized need" can only be demonstrated through "specific factual allegations of Government misconduct."  Davis, 2009 WL 637164, at *15; see also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct.").  Speculation and conclusory assertions about what may have occurred in a grand

---

[2]     Abrogated on other grounds by Carpenter v. United States, 138 S. Ct. 2206 (2018).

3

jury are insufficient, and routinely denied by courts in this circuit.  See, e.g., United States v. Donovan, No. 20-CR-374 (PKC), 2021 WL 5819915, at *5 (E.D.N.Y. Dec. 6, 2021) (holding that request to "see if some type of impropriety or illegality occurred during the grand jury proceedings" was "a speculative purpose plainly [that] is insufficient to justify the inspection of grand jury minutes"); United States v. Woodberry, No. 20-CR-31 (DLI), 2021 WL 2716508, at *8 (E.D.N.Y. July 1, 2021) (holding that "[d]efendant's general assertions, made without any legal or factual support, are mere 'speculation and surmise,' and do not warrant disclosure of the grand jury proceedings").

Even where this substantial burden is met, disclosure may still be denied if it would prejudice an ongoing grand jury investigation.  See In re Grand Jury Subpoena, 103 F.3d 234, 240 (2d Cir. 1996); United States v. Bruno, 159 F.Supp.3d 311, 322-23 (E.D.N.Y. 2016) (declining to conduct in camera review where defendant relied on speculation and did not show particularized need).

### C. The Jury Selection and Service Act

The JSSA provides in relevant part that a defendant "may move to dismiss the indictment . . . against him on the ground of substantial failure to comply with the provisions" of the statute in selecting the grand jury.[3]  28 U.S.C. § 1867(a).  Further, the JSSA states in relevant part that "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation" of such a motion.  28 U.S.C. § 1867(f).  "The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion."  Id.

As the Supreme Court has held, Section 1867(f) "makes clear that a litigant has essentially an unqualified right to inspect jury lists.  It grants access to aid parties in the 'preparation' of motions challenging jury-selection procedures."  Test v. United States, 420 U.S. 28, 30 (1975) (emphasis added).  Moreover, "[b]ecause the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions."  United States v. Royal, 100 F.3d 1019, 1025 (1st Cir. 1996).

Nonetheless, defendants "do not have an absolute right of access to all materials relating to the grand jury selection."  United States v. Gotti, No. (S4) 02-CR-743, 2004 WL 32858, at *11 (S.D.N.Y. Jan. 6, 2004) (granting defendants access to the master jury list but denying access to the names and addresses of individuals on the master jury list and those who served on

---

[3] The Fifth and Sixth Amendments guarantee a criminal defendant a jury selected from a fair cross section of the community.  Taylor v. Louisiana, 419 U.S. 522, 530 (1975); United States v. LaChance, 788 F.2d 856 (2d Cir. 1986).  The JSSA extends this requirement to federal grand juries.  28 U.S.C. § 1861 ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.").

4

the grand jury itself); Davis, 2009 WL 637164, at *15-16 (observing that "there is no absolute right of access to all materials relating to grand jury selection" and disclosing only "the District's Master Plan for jury selection"). Accordingly, numerous courts have held that only the master jury list from which the grand jury was selected need be disclosed for a defendant to assess whether to challenge the grand jury selection process. See Gotti, 2004 WL 32858, at *11 (citing United States v. Davenport, 824 F.2d 1511, 1515 (7th Cir. 1987) (holding that the defendant had "not demonstrated why other records besides those available jury lists might be required" to establish "an alleged deficiency" in the jury selection process)); United States v. Harvey, 756 F.2d 636, 642-43 (8th Cir. 1985) (master grand jury list with names and addresses redacted provided the defendant with "the ability to determine whether the master grand jury list represented a racial and economic cross-section of the community"); United States v. McLernon, 746 F.2d 1098, 1123 (6th Cir. 1984) (holding that the defendants' "unqualified right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected" and that "refusing to provide [defendants] with the names, addresses, and demographics of the specific grand jurors who returned indictment against them" was not error).

The master jury list is "sufficient to comply with" the Supreme Court's decision in Test because "[i]t is not the actual selection of the grand jury which would constitute the violation but whether the jury was selected 'at random from a fair cross section of the community.'" Gotti, 2004 WL 32858, at *11; see also United States v. Brown, No. 96-1361, 116 F.3d 466, 466 (2d Cir. 1997) (noting defendant's "right to obtain relevant grand jury lists containing information regarding the ethnicity of the members of his grand jury pool") (unpublished disposition).

III. Argument

  A. The Defendants Are Not Entitled to the Grand Jury Materials Under the Rules of Criminal Discovery

The defendants' motion does not identify any basis under the rules of discovery to demand access to the Grand Jury Materials.[4] They do not claim that the Grand Jury Materials constitute Rule 16 discovery; indeed, they do not even mention this central criminal discovery rule anywhere in their motion. Any such discussion would have compelled them to note that "the discovery or inspection of a grand jury's recorded proceedings" is expressly excluded from discovery. See Fed. R. Crim. P. 16(a)(3). The only exception is for "the defendant's recorded testimony before a grand jury relating to the charged offense," id. at (a)(1)(B)(iii), which is not at issue here.

Nor does Grimes claim any basis to believe the Grand Jury Materials will contain exculpatory evidence under Brady. Again, he could not do so, since jury instructions, empanelment data and voir dire records are not evidence that would be admissible at trial, nor are they materials that might lead to admissible evidence. See United States v. Merced, No. 19 CR

---

[4] The defendants attempt to elide this fact, by arguing that "nothing prevents disclosure" of the Grand Jury Materials, rather than admit that nothing entitles them to disclosure of the Grand Jury Materials. GJ Mot. at 5.

5

832, 2021 WL 5826286, at *3 (S.D.N.Y. Dec. 8, 2021) (noting that "government's obligations under Brady encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence favorable to the defense"). And the defendant also does not claim the Grand Jury Materials would contain testimony that may need to be turned over pursuant to 18 U.S.C. § 3500, nor could they as jury instructions, empanelment data and voir dire records are not statements or reports of government witnesses.

Grimes seeks to avoid the stringent "particularized need" standard for disclosure of grand jury records—because he cannot meet that standard—by arguing that the Grand Jury Materials are outside the scope of Rule 6(e). See GJ Mot. at 5-6. This is incorrect under clear Second Circuit law. "A 'defendant is not routinely entitled to grand jury . . . instructions in order to engage in a fishing expedition in hopes of uncovering an impropriety or defect in the proceeding where he has no basis to conclude that an impropriety or defect exists.'" United States v. Faltine, No. 13-CR-315 (KAM), 2014 WL 4370811, at *5 (E.D.N.Y. Sept. 2, 2014) (ellipses in original) (quoting United States v. Abounnajah, No. 91-CR-00146 (CBA), 1991 WL 42895 (E.D.N.Y. 1991)); see also United States v. Hunt, 534 F. Supp. 233, 258-59 (E.D.N.Y. 2021) (denying request to inspect grand jury minutes based on claim that language in complaint suggested that prosecutors mis-instructed the jury, because this amounted to "mere speculation that the Government 'potentially' gave a misleading instruction"). The defendant identifies one district court case from the Ninth Circuit where the court, as a matter of discretion, granted access to jury instructions without a showing of particularized need. See GJ Mot. at 7 (citing United States v. Belton, No. 14-CR-30 (JST), 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015)). But, as reflected in Faltine and elsewhere, this out-of-circuit holding is contrary to Second Circuit precedent: "courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need." United States v. Chambers, No. 18-CR-79 (KAD), 2019 WL 1014850, at *2 (D. Conn. Mar. 4, 2019) (collecting cases, and critiquing the "relaxed approach" of Belton as inadequate to "protect[] the long-recognized goals of grand jury secrecy"); see also Smith, 105 F. Supp. 3d at 260 ("The particularized need standard applies to both substantive matters before the grand jury and more ministerial functions, such as grand jury instructions.").[5]

Even if it were true that some portions of the Grand Jury Materials were not covered by Rule 6(e), that fact alone would not entitle the defendants to the records they request. As discussed, the defendants identify no other statute, regulation or rule by which such materials must be turned over to a defendant. Because there is no legal requirement to turn over these materials

---

[5] Notably, the Ninth Circuit decision that Belton rests upon, United States v. Alter, 482 F.2d 1016 (9th Cir. 1973), does not stand for the proposition that a defendant is entitled to the prosecutor's legal instructions to the grand jury. Alter only noted that a defendant was entitled to know "the content of the court's charges to the grand jury," i.e. the general instructions given to grand jurors at the time of empanelment, not the case-specific instructions given to the grand jury that voted on the indictment. 482 F.2d at 1029 n.21. Similar to Belton, even this far more limited request has been rejected as improper in the Second Circuit, absent a showing of particularized need. See Faltine, 2014 WL 4370811, at *7 (explicitly distinguishing Alter as contrary to Second Circuit precedent and denying request for empanelment instructions for failure to show particularized need).

under the ordinary rules of criminal discovery, the defendants' motion must be dismissed unless they can meet the specific showings required under Rule 6 of the Federal Rules of Criminal Procedure or pursuant to the JSSA. As discussed below, they cannot meet either standard.

> B. The Defendants Have Not Shown a Particularized Need to Pierce Grand Jury Secrecy

The defendants argue that, in the alternative, they have met the particularized need standard. But they do not identify any case-specific facts that meet that standard. They do not make any claim, let alone identify any evidence, to even suggest misconduct or other impropriety in grand jury proceedings. See Leung, 40 F.3d at 582 ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct."). Instead, they request grand jury information because "it is important to understand what steps were taken to screen for biased grand jurors" and "to ensure that an unbiased and properly charged grand jury was empaneled." GJ Mot. at 1. While it is of course true that the grand jury should be unbiased, a lack of bias is presumed absent evidence to the contrary. That is what is meant by a "presumption of regularity." See Davis, 2009 WL 637164, at *15. There is no legal basis to permit the defendant to obtain these materials simply because he wants to "understand" the grand jury process or operate as a supervisory figure to "ensure" such fair proceedings. This is not the ordinary role of the district court, let alone a defendant. See Faltine, 2014 WL 4370811, at *5 ("'[A]bsent any indication of government impropriety that would defeat that presumption [of regularity], [the] court has no roving commission to inspect grand jury minutes, and will not fashion one.'") (quoting United States v. Stern, No. 03-CR-81, 2003 WL 22743897, at *3 (S.D.N.Y. Nov. 30, 2003)).

The law is clear that the defendant must have a particularized need for the information he requests based on facts that provide actual evidence of some defect or misconduct. The defendant's assertion that the jury <u>might</u> be biased or <u>might</u> have been improperly instructed are precisely the sort of speculative, generalized and conclusory allegations that courts in this circuit find insufficient to permit access to grand jury materials. See, e.g., United States v. Sugar, 606 F. Supp. 1134, 1146 (S.D.N.Y. 1985) (denying motion to review grand jury minutes "to ensure" no prosecutorial misconduct occurred because "defendants allege no basis for their rank speculation that the grand jury proceedings may have been tainted"); Donovan, 2021 WL 5819915, at *3 (denying motion based on speculative assertion of "want[ing] to see if some type of impropriety or illegality occurred"); Loera, 2017 WL 2821546, at *8 (denying motion where "[d]efendant has not come close to making a particularized showing that his need outweighs the need for secrecy"); Bruno, 159 F.Supp.3d at 322-23 ("Defendant has not presented any concrete allegations of prosecutorial misconduct; rather, his allegations are speculative and are comprised of unsubstantiated 'ifs,' 'unlesses,' and 'mights' that that do not rise to the level of warranting disclosure.").

In an apparent attempt to demonstrate a particularized need, the defendants raise arguments about the type of offense and nature of the case. Their claims that the rarity of Section 951 charges and the "politically charged" atmosphere makes this case different is factually incorrect and legally insufficient. First, the government is unaware of any legal authority for the claim that the frequency with which a particular criminal statute is charged can constitute a "particularized need" for grand jury records, and the defendant has cited no such authority. Second, the idea that Section 951 indictments are "rare and extreme" is simply untrue. In the

7

Eastern and Southern Districts of New York alone, in addition to this case, grand juries have returned a significant number of indictments that charged a Section 951 offense or conspiracy to commit that offense. See, e.g., United States v. Hu Ji, et al., No. 21-CR-265 (S-1) (E.D.N.Y.) (PKC); United States v. Angwang, No. 20-CR-442 (E.D.N.Y.) (EK); United States v. Ying Lin, No. 15-CR-601 (S-2) (E.D.N.Y.) (DLI); United States v. Fishenko, No. 12-CR-626 (S-1) (E.D.N.Y.) (SJ); United States v. Buryakov, No. 15-CR-73 (S-1) (S.D.N.Y.) (RMB); United States v. Defendant #1, et al, No. 10-CR-598 (S.D.N.Y.) (KMW); United States v. Lindauer, No. 03 CR 807 (MBM) (S.D.N.Y.). And, as described more fully in the government's opposition to the defendants' motions to dismiss, Section 951 prosecutions have occurred across the country, with many proceeding to trial, conviction and affirmation on appeal. See, e.g., United Staates v. Abouammo, et al., No. 19-CR-621 (EMC) (N.D. Cal.); United States v. Ji Chaoqun, No. 18 CR 611 (N.D. Ill.); United States v. Rafiekian, No. 18-CR-457 (E.D. Va.); United States v. Amirnazmi, No. 08-CR-0429-01 (E.D. Pa.); United States v. Latchin, No. 04 CR 661 (N.D. Ill.); United States v. Dumeisi, No. 03 CR 664-1 (N.D. Ill.); United States v. Szuhsiung Ho, No. 3:16-CR-46 (D. Tenn.). The claim that Section 951 is so "rare and extreme" that a grand jury cannot be trusted to listen to the facts, apply the law and vote out an indictment as it does in every other federal grand jury investigation is entirely unsupported.

The claim that this case is so "politically charged" that the defendants uniquely requires access to the Grand Jury Materials to check for bias is similarly without merit or any legal support. As this Court is well aware, federal grand juries frequently hear evidence in investigations, and return indictments, involving matters that are sensitive, related to grave national security interests, touch upon political or controversial figures or involve such figures as subjects or targets, or involve substantial media coverage. Grand juries in the Eastern District of New York have been responsible for the investigation and subsequent indictments of multiple local, state and federal politicians, senior officials of the world soccer governing body, one of the largest technology companies in the world and that company's Chief Financial Officer, terrorists who attempted to bomb the New York City subway, a high-profile cult leader and his celebrity adherents, a world-famous musician, and the world's most notorious drug trafficker. The defendants present no facts that indicate the grand jury responsible for this indictment treated their case any differently than the numerous other very serious investigations that have been properly investigated and indicted over the years. In any event, a person's status as a politically powerful figure, or association with such figures, does not constitute a basis for disclosure of grand jury materials. See United States. v. Williams, 644 F.2d 950, 952 (2d Cir. 1981) (holding that appellant's status as a U.S. Senator "did not, of itself, mandate disclosure" of grand jury minutes); United States v. Ruiz, 894 F.2d 501, 504-05 (2d Cir. 1990) (denying claims of abuse of grand jury process based on allegations that government was biased against defendant, a state senator, because he was a "Hispanic legislator who has taken many unpopular positions").

The cases the defendants cite stand in sharp contrast to their own claims, and only underscore why they have failed to meet the particularized need standard. In those cases cited by the defendants where grand jury materials were disclosed, the defendant presented specific facts to indicate some potentially serious defect in the grand jury process. See, e.g., United States v. Abounnajah, No. 91-CR-00146 (CBA), 1991 WL 42895 (E.D.N.Y. 1991) (permitting inspection of instructions for second grand jury where first grand jury returned "no true bill" against defendant for same charges); United States v. Hoey, No. 11-CR-337 (PKC), 2014 WL 2998523 (S.D.N.Y. 2014) (identifying change in law caused by Supreme Court decision, after indictment was returned,

which indicated that instruction was likely incorrect); United State v. Vetere, 663 F. Supp. 381 (S.D.N.Y. 1987) (testimony from grand jury turned over for trial witness revealed specific defects in AUSA's colloquy). No such legal or factual issue has been identified or alleged in this case.

At bottom, the defendants are arguing that, given the high-profile nature of the case and the type of offense, we must presume that the grand jurors or the government committed some sort of error in the investigation and return of a true bill. This speculation turns the grand jury's "presumption of regularity" on its head and is contrary to well-established law. The defendant's generalized and conclusory allegations should be rejected as insufficient to meet the requirements of Rule 6.

### C. The Defendants Have Not Identified a Basis to Request Additional Data Under the Jury Selection and Service Act

Lastly, the defendants rely upon the JSSA to request "(i) access to the grand jury list for the grand jury that returned the indictment, including attendance record and reasons for absence of each grand juror from any sitting of the grand jury during which evidence regarding this case was presented; and (ii) the record of any grand juror who was summoned but excused from serving on the grand jury that returned the indictment."[6] GJ Mot. at 9. Grimes has already received all of the records he is entitled to under the JSSA and presents no additional evidence or allegations to support a "fair cross section" claim that might warrant disclosure of additional jury selection records.

The defendants argue that additional data is needed "to assess whether the grand jury that returned the indictment against [them] was selected, and treated, in accordance with the provisions of the JSSA." GJ Mot. at 9 (citing Test). As explained above, courts have concluded that disclosure of data from the Master Jury Wheel— the county of residence, zip code, race and age of the individuals listed in the relevant Master Jury Wheel—meets the standard under Test, and is sufficient for a defendant to determine whether he should move to dismiss the indictment on that basis. See, e.g., Gotti, 2004 WL 32858, at *11; Brown, 116 F.3d at 466; Nichols, 248 F. Supp. 2d at 1034-35; McLernon, 746 F.2d at 1123; Davenport, 824 F.2d at 1515; Harvey, 756 F.2d at 642-43. Indeed, during the recent COVID-19 pandemic, which gave rise to a number of JSSA-related demands, courts in at least 24 cases in this district ordered disclosure of only this type of data.[7]

---

[6] The JSSA does not provide a basis for disclosure of the other Grand Jury Materials: the jury instructions or the grand jury voir dire. As explained above, because the defendants have no legal right to those records under the rules of discovery, and have failed to meet the particularized need standard under Rule 6, the Court should deny their request for these materials even if the Court concludes the defendants are entitled to some additional jury selection materials under the JSSA.

[7] See United States v. Cruz, 20-CR-206 (WFK), ECF Order, dated July 1, 2020 (demographic and residence data from Master Jury Wheel); United States v. Mattis, et al., 20-CR-203 (BMC), ECF Order, dated July 15, 2020 (same); United States v. Fludd, 20-CR-204 (MKB), ECF Order, dated July 16, 2020 (same); United States v. Shader, No. 20-CR-202, 2020

9

The government has consented to an order permitting Grimes to access this data and has no objection to Barrack accessing this data as well. Once the defendants obtain and review this data, they may consider whether they have a basis to make a JSSA "fair cross section" claim.

The two cases cited by the defendants are not to the contrary. The defendants cite McLernon, which notes in dicta that the court could "envision a situation" in which a defendant was entitled to more data, but that court still held that the disclosure of the "Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected" satisfied Test and the Congressional intent behind the JSSA. See 746 F.2d at 1123. And the Northern District of California decision cited by the defendants involved specific allegations that COVID-19 created a "fair cross section" issue that could only be observed in data at the "qualification and excuse stage of jury selection." United States v. Holmes, No. 18-CR-258, 2020 WL 5408163, at *5 (N.D. Cal. Sept. 9, 2020). No similarly specific claim of need for greater data has been made here, and so the Master List remains the appropriate data pool. Likewise, although three cases in this district have permitted inspection of more data than the Master List data ordinarily found to be sufficient, all three involved claims that conducting grand juries in Central Islip (instead of Brooklyn) during the COVID-19 pandemic caused an issue with the defendants' right to a fair cross section of the community, and that a statistical analysis needed to prove such a claim required this additional data. See Def.'s Mot., United States v. Corbett, No. 20-CR-213 (KAM) (Dkt No. 10) (including declaration of statistician that identifies categories of data as necessary to "complete the review"); Def.'s Mot., United States v. Todd, 20-CR-256 (KAM) (Dkt.

---

WL 4158059 (DLI) (E.D.N.Y. July 17, 2020) (demographic and residence data from Master Jury Wheel and source lists); United States v. Helena, et al., 20- CR-215 (DLI), Memorandum and Order, dated July 20, 2020, Dkt No. 15 (same); United States v. Washington, 20-CR-236 (WFK), ECF Order, dated July 22, 2020 (demographic and residence data from Master Jury Wheel); United States v. Ayers, et al., 20- CR-239 (BMC), Minute Entry, dated July 22, 2020 (same); United States v. Morrison, et al., 20-CR-216 (AMD), ECF Order, dated July 24, 2020 (same); United States v. Torres, 20-CR- 225 (ARR), ECF Order, dated July 27, 2020 (same); United States v. Harrell, et al., 20-CR-240 (CBA), ECF Order, dated July 27, 2020 (same); United States v. Plasencia, 20-CR-200 (RRM), Order, dated August 4, 2020, Dkt. No. 26 (same); United States v. O'Sullivan, et al., 20-CR-272 (PKC), ECF Order, dated August 7, 2020 (same); United States v. Crawford, 20-CR-224 (PKC), Order, dated August 7, 2020 (same); United States v. Weir, 20-CR-258 (RRM), Minute Entry, dated August 18, 2020 (same); United States v. Adjei, 20- CR-291 (ARR), Order, dated August 19, 2020 (same); United States v. Williams, 20-CR-273 (NGG), Order, dated August 21, 2020 (same); United States v. Glean, 20-CR-247 (NGG), ECF Order, dated August 21, 2020 (same); United States v. Ebanks, 20-CR-254 (NGG), ECF Order, dated August 21, 2020 (same); United States v. Newton, 20-CR-307 (PKC), ECF Order, dated August 24, 2020 (same); United States v. Arthur, 20-CR-205 (FB), Memorandum and Order, dated August 28, 2020, Dkt. No. 16 (same); United States v. Gunter, 20-CR-265 (FB), Memorandum and Order, dated August 28, 2020, Dkt. No. 14 (same); United States v. McIlwain, 20-CR-227 (FB), Memorandum and Order, dated August 28, 2020, Dkt. No. 15 (same); United States v. Winters, 20-CR-017 (FB), Memorandum and Order, dated August 28, 2020, Dkt. No. 13 (same); and United States v. Alford, et al., 20-CR-238 (FB), Memorandum and Order, dated August 28, 2020, Dkt. No. 44 (same).

No. 9) (same); Def.'s Mot., United States v. Celestine, 20-CR-286 (ARR) (Dkt. No. 14) (same).[8] The defendants make no similar claim of need here, nor provides any similar declaration.

Most importantly, the defendants' request appears largely unrelated to an appropriate challenge under the JSSA. The defendants seek "attendance records and reasons for absence of each grand juror from any sitting of the grand jury during which evidence regarding this case was presented." See GJ Mot. at 9. The JSSA only permits a motion to dismiss based on "substantial failure to comply with [the JSSA] in selecting the grand or petit jury." Thus, grand juror attendance records are wholly irrelevant to such a claim for the obvious reason that they have already been selected as grand jurors; which already-selected jurors did or did not attend certain dates cannot form the basis of a proper JSSA motion to dismiss. See Taylor v. Louisiana, 419 U.S. 522, 538 (1975) ("Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."). Nor is information about "who was summoned but excused from serving on the grand jury that returned the indictment" an appropriate data set for evaluating a JSSA motion. The JSSA does not protect against the happenstance of a randomly selected venire or grand jury having more or less representation from a particular protected group, which may happen from time to time. See id.; see also Gotti, 2004 WL 32858, at *11 (the master jury list is "sufficient to comply with" the Supreme Court's decision in Test because "[i]t is not the actual selection of the grand jury which would constitute the violation but whether the jury was selected 'at random from a fair cross section of the community.'"). In other words, the fair-cross section requirement is a requirement relating to the source from which the jury is drawn, and not the particularities of the body that results. See Duren v. Missouri, 439 U.S. 357, 364 n. 20 (1979) (fair cross-section requirement "does not mean that petit juries actually chosen must mirror the community") (internal quotation marks omitted).

Grimes has already been given access to grand jury data that, under Test, is sufficient to permit him to prepare any future motion to dismiss based on the JSSA. The defendants have provided no legitimate explanation for why they need more than is ordinarily granted and, indeed, the data they request appears wholly unrelated to jury selection. The JSSA-related portion of their motion should therefore be denied.

---

[8] The government respectfully submits that the Corbett, Todd and Celestine were wrongly decided, and that the vast majority of decisions in this district and elsewhere limiting disclosure to the Master Jury Wheel data are correct. See Note 7, supra. In any event, these decisions are distinguishable from Grimes' claim for the reasons described above.

11

IV. Conclusion

For the foregoing reasons, the government respectfully submits that the Court deny the defendants' motion for discovery of certain grand jury materials.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/Craig R. Heeren
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/ Matthew J. McKenzie
Matthew J. McKenzie
Trial Attorney

cc: Counsel for Thomas Joseph Barrack (by ECF)
    Counsel for Matthew Grimes (by ECF)
    Clerk of the Court (BMC) (by ECF)