UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 1:21-cr-00371-BMC-TAM |
| AL MALIK ALSHAHHI, et al. | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF THOMAS J. BARRACK, JR.'S MOTION TO COMPEL DISCOVERY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND CHARGES ..................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.  *BRADY* AND RULE 16 REQUIRE DISCLOSURE OF ALL
    INFORMATION THAT IS EXCULPATORY AND MATERIAL TO
    THE DEFENSE IN THE PROSECUTION TEAM'S POSSESSION. ................ 5

II. THE GOVERNMENT MUST PRODUCE ALL EVIDENCE
    EXCULPATORY AND MATERIAL TO THE DEFENSE OF THE
    SECTION 951 CHARGES. ............................................................................... 7

    A.  The Section 951 Charges Require that the Government Prove that
        Mr. Barrack Agreed To Act Subject to the Direction And Control
        of the UAE. ........................................................................................... 7

    B.  *Brady* and Rule 16 Require that the Government Locate and
        Produce All Materials that Are Inconsistent with Mr. Barrack
        Acting as an Agent of the UAE. ........................................................... 8

    C.  The Government's Insistence that It Is Not Aware of Any *Brady*
        Materials Raises the Concern that the Government Does Not
        Understand Potential Defenses in this Case or Is Taking an Unduly
        Restrictive View of its Discovery Obligations. ................................... 11

III. THE GOVERNMENT MUST PRODUCE ALL EVIDENCE
     EXCULPATORY AND MATERIAL TO THE DEFENSE OF THE
     FALSE STATEMENT CHARGES. .................................................................. 16

IV. THE GOVERNMENT SHOULD PROVIDE A DATE BY WHICH ITS
    PRODUCTION OF RULE 16 MATERIAL AND REVIEW OF
    MATERIALS FROM FEDERAL EXECUTIVE AGENCIES WILL BE
    COMPLETE. ...................................................................................................... 21

RELIEF REQUESTED ......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albright v. Oliver,*
510 U.S. 266 (1994)...........................................................................................6

*Brady v. Maryland,*
373 U.S. 83 (1963)................................................................................5, 18, 19

*DiSimone v. Phillips,*
461 F.3d 181 (2d Cir. 2006) ...........................................................................6

*Harvey v. Horan,*
285 F.3d 298 (4th Cir. 2002)...........................................................................6

*Kyles v. Whitley,*
514 U.S. 419 (1995)...........................................................................................6

*United States v. Abdelaziz,*
Case No. 1:19-cr-10080, Dkts. 899, 906 (D. Mass, Feb. 28, 2020) ...................15, 20

*United States v. Brown,*
2011 WL 3678682 (W.D. Pa. Aug. 19, 2011) .............................................20

*United States v. Certified Envtl. Servs. Inc.,*
753 F.3d 72 (2d Cir. 2014) ............................................................................18

*United States v. Clifford,*
426 F. Supp. 696 (E.D.N.Y. 1976) ...............................................................17

*United States v. Coppa,*
267 F.3d 132 (2d Cir. 2001) ..........................................................................19

*United States v. Ehrlichman,*
379 F. Supp. 291 (D.D.C. 1974)....................................................................17

*United States v. Flynn,*
411 F. Supp. 3d 15 (D.D.C. 2019)..................................................................20

*United States v. Hernandez-Meza,*
720 F.3d 760 (9th Cir. 2013) ...........................................................................5

*United States v. Mahaffy,*
693 F.3d 113 (2d Cir. 2012) .............................................................................6

*United States v. Maniktala,*
934 F.2d 25 (2d Cir. 1991) ..........................................................................5, 8

*United States v. Marshall,*
132 F.3d 63 (D.C. Cir. 1998), *as amended* (Mar. 6, 1998).............................5

*United States v. Poutre,*
646 F.2d 685 (1st Cir. 1980)..........................................................................17

*United States v. Rafiekian,*
991 F.3d 529 (4th Cir. 2001) ...........................................................................7

i

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Rittweger,*
   524 F.3d 171 (2d Cir. 2008) ................................................................... 6, 10

*United States v. Rivas,*
   377 F.3d 195 (2d Cir. 2004) ....................................................................... 6

*United States v. Stein,*
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ................................................... 5, 10

*United States v. Stever,*
   603 F.3d 747 (9th Cir. 2010) ..................................................................... 5

*United States v. Weaver,*
   992 F. Supp. 2d 152 (E.D.N.Y. 2014) ..................................................... 19

*United States v. Zelaya-Romero,*
   2018 U.S. Dist. LEXIS 28266 (S.D.N.Y. February 21, 2018) ..................... 5

**Statutes**

18 U.S.C. § 951(a) ....................................................................................... 4, 7

18 U.S.C. § 951(d) ........................................................................................... 8

**Other Authorities**

*Audit of the National Security Division's Enforcement and Administration of the Foreign
   Registration Act*, U.S. Dep't of Just., Office of the Inspector General (2016) ........................... 8

Gary G. Grindler, *Policy and Procedures Regarding Discoverable Information in the Possession
   of the Intelligence Community or Military in Criminal Investigations*, U.S. Dep't of Just.,
   Office of the Inspector General (Sept 29, 2010) ....................................... 22

Justice Manual § 9.5002 ............................................................................. 5, 6

Katelyn Polantz, *List of who Mueller investigators interviewed released to CNN*, CNN (Jan. 3,
   2020), https://www.cnn.com/2020/01/03/politics/mueller-investigation-witnesses-interviewed-
   list/index.html ......................................................................................... 11

*The Scope of Agency Under FARA*, U.S. Dep't of Just. (May 2020) ............................. 7

**Rules**

Fed. R. Crim. P. 16(a)(1)(B) ...................................................................... 18

Fed. R. Crim. P. 16(a)(1)(E) ........................................................................ 5

## INTRODUCTION

Since he was indicted seven months ago, defendant Thomas J. Barrack, Jr. has been seeking discovery from the government that is essential to defending the unfounded charges against him. Having reached an impasse with the government on discovery issues critical to his defense, Mr. Barrack seeks relief from the Court.

*Brady and Rule 16 Materials Regarding Section 951 Charges*. At the outset of this case, the Court ordered the government to "promptly" disclose information under *Brady v. Maryland* once its existence becomes known to the government. *See* July 26, 2021 Order, Dkt. 17 at 1 (the "*Brady* Order"). Throughout the case, however, the government has consistently represented to the Court and defense counsel that it is not aware of any *Brady* material. Understandably skeptical and concerned about this assertion, Mr. Barrack's counsel met with the government in December, identified categories of evidence material and exculpatory to Mr. Barrack's defense, and requested that all such evidence be searched and disclosed. Counsel gave further details to the government regarding these categories in writing and in later meet and confer discussions. In response, the government continued to insist that there was no *Brady* material, but has made several partial disclosures of exculpatory information "out of an abundance of caution." These disclosures, which directly undermine allegations central to the Indictment, underscored the concern that the government is taking an inappropriately restrictive view of the scope and application of *Brady*, creating the risk that exculpatory evidence may not be disclosed at all.

For example, although this evidence was in the government's files long before the Indictment was filed, *only after* defense counsel advocated their positions and requests did the government disclose that:

- ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████████████████



This exculpatory evidence squarely contradicts the government's claim that Mr. Barrack acted as an agent of the UAE and concealed his activities from U.S. officials, and it should have been disclosed long ago.  Moreover, rather than disclose the actual sources of this evidence such as the complete 302 memoranda, the government provided only its own excerpted summaries of portions of the evidence.

The government has thus pursued a pattern of denying the existence of *Brady* material and then selectively disclosing certain information only after Mr. Barrack has advanced specific defense positions and made requests of information that likely, if not definitely, exists in the government's files.  But the government's *Brady* obligations are not akin to a game of "Go Fish"—the burden rests with the government, not the defense, to affirmatively identify and produce exculpatory materials in the prosecution team's possession.  With the trial only months away, the government's approach to *Brady* is unworkable and fails to ensure that all exculpatory evidence will be disclosed.

*Brady and Rule 16 Materials Regarding False Statement Charges*.  The government filed five felony charges against Mr. Barrack based on a handful of statements he allegedly made during a five-hour interview in 2019.  The record of this interview is incomplete; it was not recorded or transcribed; only one of the six government participants took notes; and the

interview memorandum was finalized more than four weeks after it took place.  All of these facts combined have materially prejudiced Mr. Barrack's defense; that prejudice should not be further compounded by the government's refusal to provide essential information regarding Mr. Barrack's interview, including who took notes, what revisions were made to the memorandum of the interview and who made them, who reviewed and commented on the contents of the memorandum, and any communications reflecting the substance of Mr. Barrack's statements during the interview.  This evidence goes directly to the accuracy and credibility of the record and the agent's recollection of the alleged false statements and should not be withheld.  And its disclosure is especially warranted in view of the government's argument opposing Mr. Barrack's dismissal motion that these charges should not be dismissed because Mr. Barrack has "every opportunity" to defend himself at trial by challenging the agent and the notes of the interview.  Govt. Consolidated Opp. to Mot. to Dismiss, Dkt. No. 80 at 45.

*Completion of Production from Prosecution Team and Federal Executive Agencies.*  Given the nature of the charges in this national security case accusing Mr. Barrack of acting as a foreign agent and deceiving White House officials, it goes without saying that some of the most critical evidence will be located in various federal executive agencies, including the White House, State Department, Commerce Department, and U.S. intelligence agencies.  The government initially took the position it had no obligation to look for materials from these agencies.  After meet-and-confer discussions with Mr. Barrack's counsel, the government represented it would search for discoverable materials from several of those agencies.  To date, it has not disclosed the status of that review or provided a date certain by which it would be completed.

Indeed, the date by which the government will complete its production has been a moving target. Where the government largely completed its investigation in 2018 and 2019, the bulk of its discovery should have been ready to produce at the outset of the case in July 2021. At the January 5, 2022 status conference, the government represented that its production was "substantially complete." Since that status conference, however, the government has produced more than 11,000 electronic files, including some materials it received as far back as 2018. The government has not explained why it continues to produce documents that have been in its possession for years, nor has it identified a date by which it will finally complete its production.

*       *       *

Jury selection begins less than five months from the hearing date on this motion. Mr. Barrack stands falsely accused of betraying his country and acting as a foreign agent. These false charges have had a devastating impact on Mr. Barrack, his family, and his business, and he deserves a full and fair opportunity to clear his name as soon as possible. In doing so, he should not have to choose between having complete discovery or an expeditious trial.

Mr. Barrack therefore respectfully requests that the Court order the government to produce all Federal Rule of Criminal Procedure 16 and *Brady* material in its possession no later than May 1, 2022. The government should also confirm by that date that it has searched and disclosed Rule 16 and *Brady* materials from federal executive agencies, including intelligence agencies. This deadline is essential to ensuring that Mr. Barrack has these materials in time to prepare for trial or otherwise determine if additional relief is required from the Court.

## BACKGROUND AND CHARGES

On July 16, 2021, the government filed an indictment charging Mr. Barrack with one count of acting as an unregistered agent of the UAE in violation of 18 U.S.C. § 951(a); one count of conspiracy to act as an unregistered agent of the United Arab Emirates in violation of 18

4

U.S.C. § 371; one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2); and four counts of making false statements in violation of 18 U.S.C. § 1001(a)(2).

**ARGUMENT**

**I.     *BRADY* AND RULE 16 REQUIRE DISCLOSURE OF ALL INFORMATION THAT IS EXCULPATORY AND MATERIAL TO THE DEFENSE IN THE PROSECUTION TEAM'S POSSESSION.**

Under Rule 16 (a)(1)(E), the government must produce materials in its possession, custody, or control that are "material to the preparation of [the] defense," *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991), and it must do so promptly. *See* Justice Manual § 9.5002. Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (rejecting district court holding that defendant was not entitled to law enforcement reports, officer training materials, and other materials related to drug trafficking operations as "illogical"). Materiality is a low bar; evidence is material if it simply "could be used to counter the government's case or bolster a defense." *United States v. Zelaya-Romero*, 2018 U.S. Dist. LEXIS 28266, *4 (S.D.N.Y. February 21, 2018); *see also United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (materiality standard is "not a heavy burden" and evidence is material if it will play an important role in uncovering admissible evidence, aid in witness preparation, corroborate testimony, or assist in impeaching government witnesses). The defense is entitled to information even if it undermines its case, as such evidence may affect the presentation of the defense at trial. *See United States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998), *as amended* (Mar. 6, 1998); *see also United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013).

Due process also requires the government to produce any materials that tend to exculpate Mr. Barrack. The government's "chief business" in a criminal prosecution "is not to achieve victory but to establish justice." *Brady v. Maryland*, 373 U.S. 83, 87 at n. 2 (1963). The

5

prosecution's "affirmative duty to disclose evidence favorable to a defendant" is a pillar of our criminal justice system. *Kyles v. Whitley,* 514 U.S. 419, 432 (1995). Due process thus requires that prosecutors produce all potentially exculpatory evidence—even in the absence of a specific request. *Harvey v. Horan*, 285 F.3d 298, 316 (4th Cir. 2002) (Luttig, J., concurring in denial of rehearing *en banc*) (citing *Albright v. Oliver*, 510 U.S. 266, 273 & n. 6 (1994)). Under *Brady*, that includes all material evidence favorable to a criminal defendant. *See United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012). "Evidence is favorable if it is either exculpatory or impeaching." *Id.* at 130. The fact that evidence may have incriminatory as well as exculpatory aspects does not preclude its treatment as *Brady* material. *See id.*; *see also United States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004); *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006). Nor is the exculpatory value of information negated by the fact that the government has other evidence that contradicts the exculpatory information. *See United States v. Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008).

In addition to the above requirements, the Court in this case ordered the government to "disclose to the defense all information 'favorable to an accused' that is 'material either to guilt or to punishment' and that is known to the Government." *Brady* Order at 1. The Court also ordered the government to disclose *Brady* material "to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case." *Id.* Echoing this order, the Department of Justice also instructs prosecutors to "provide broad and early discovery consistent with any countervailing considerations" and to provide exculpatory information "reasonably promptly after discovery." Justice Manual § 9.5002.

II.    **THE GOVERNMENT MUST PRODUCE ALL EVIDENCE EXCULPATORY AND MATERIAL TO THE DEFENSE OF THE SECTION 951 CHARGES.**

A.    **The Section 951 Charges Require that the Government Prove that Mr. Barrack Agreed To Act Subject to the Direction And Control of the UAE.**

Section 951(a) makes it a crime to "agree[] to operate within the United States subject to the direction or control of a foreign government official" "without prior notification to the Attorney General." 18 U.S.C. §§ 951(a), (d). It is not enough to violate 951 that a person merely "act in parallel with a foreign government's interests," nor is a mere "willing[ness] to do something the foreign principal requests." *See United States v. Rafiekian*, 991 F.3d 529, 538-39 (4th Cir. 2021); *see also The Scope of Agency Under FARA*, U.S. Dep't of Just. (May 2020) ("DOJ Guidance") at 3 (instructing in the analogous context of FARA that a request from foreign government, without more, is insufficient to create an agency relationship). Instead, the government must prove that the defendant was acting under a *duty* to the foreign government, such that he was *required* to follow its directions and orders, and that the foreign government in turn had the *power to direct* his actions. *See id.* at 539; *see also* DOJ Guidance at 3 (an agency relationship exists where the evidence proves "some level of power by the principal over the agent or some sense of obligation on the part of the agent to achieve the principal's request"). Given this requirement, the DOJ has advised in the FARA context that an agency relationship is less likely to exist where, among other things, (a) the foreign government gives only general encouragement or requests, rather than specific instructions; (b) the alleged agent was not compensated or coerced; and (c) the political activities or positions advocated by the alleged agent align with their own interests or previously-expressed views. *See* DOJ Guidance at 3-4. That advice is equally applicable to Section 951.

Additionally, Section 951 is targeted only at punishing undisclosed or secret attempts to aid a foreign government; the statute seeks to ensure that foreign agents operate transparently

7

within the United States by only condemning individuals who fail to notify the Attorney General

of their agreement. *See* 18 U.S.C. § 951(a). DOJ's National Security Division has thus noted

that Section 951 cases typically involve "espionage-like or clandestine behavior" where the

defendant acted on behalf of a foreign government and concealed those actions from the United

States. *See Audit of the National Security Division's Enforcement and Administration of the

Foreign Registration Act*, U.S. Dep't of Just., Office of the Inspector General (2016).

> **B.** ***Brady* and Rule 16 Require that the Government Locate and Produce All
> Materials that Are Inconsistent with Mr. Barrack Acting as an Agent of the
> UAE.**

Unlike a host of prior Section 951 prosecutions, the Indictment against Mr. Barrack

makes no allegation that he had a written or verbal agreement with the UAE, nor is there any

allegation that he received compensation or any financial benefit for allegedly acting as a foreign

agent. Instead, the government theorizes that it is enough to prove a Section 951 offense merely

through actions consistent with someone who has agreed to act subject to the direction and

control of that foreign government. *See* Govt. Opp. to Mot. to Dismiss, Dkt. No. 80 at 24, 26.

Even accepting the government's erroneous view of Section 951, under Rule 16 and

*Brady*, the government has an obligation to search for and produce evidence showing that the

opposite is true, *i.e.*, that Mr. Barrack's actions were *inconsistent* with someone who had agreed

to act under the UAE's direction and control. Mr. Barrack has already identified numerous

specific examples to government counsel of such materials, as well as materials that are likely to

exist in the files of the prosecution team, including a list of relevant individuals who should be

included in the government's searches for such materials. The government has an obligation

under *Brady* and Rule 16 to produce *all* such materials in its possession, custody, or control that

are "material to the preparation of [Mr. Barrack's] defense" of the Section 951 charges against

him. *Maniktala*, 934 F.2d at 28. Thus, at a minimum, the government must search for and

produce the following:

1. All materials showing that Mr. Barrack disclosed his contacts with the UAE to U.S. government officials;

2. All materials showing that Mr. Barrack acted with the encouragement and approval from the Trump Campaign or U.S. government, rather than in response to directions from UAE officials;

3. All materials showing that Mr. Barrack disclosed his contacts with the UAE to federal investigators and State Department;

4. All materials showing that Mr. Barrack acted contrary to the UAE's interests, such as in supporting Qatar during its conflict with the UAE;

5. All materials showing that Mr. Barrack did not take any steps to advance the UAE's primary foreign policy goals, unlike the UAE's actual agents;

6. All materials showing that Mr. Barrack was not included in, and was not aware of, high level contacts and secret meetings between the UAE and the U.S. government (including information regarding the Seychelles or Trump Tower meetings);

7. All materials reflecting that Mr. Barrack had limited contacts with UAE leaders during the relevant time period;

8. All materials showing that the UAE official alleged in the Indictment to have had the majority of the contacts with Mr. Barrack (Emirati Official 4) was a low-level government ███████ employee ████████████████████████████ ████████████████████████████████████

9. All materials showing that Mr. Barrack received no compensation or other consideration from the UAE during or after the relevant time period;

10. All materials showing that in 2017 Mr. Barrack was interested in and was recruited for foreign policy positions in the U.S. government entirely unrelated to the Middle East, such as positions in Latin America;

11. All materials showing that Mr. Barrack had long advanced the views on the Middle East and the UAE consistent with those described in the media appearances and op-ed pieces described in the Indictment, well before he was allegedly a foreign agent;

12. All materials showing that the requests Mr. Barrack allegedly received from the UAE, such as comments on the incoming U.S. national security team or support for a candidate for ambassador, are common requests and were made to other members of the transition

or administration from individuals with no connection to the UAE, as well as evidence or information reflecting that Mr. Barrack did not follow up on such requests from the UAE;

13. All materials showing that the steps Mr. Barrack is alleged to have taken related to the UAE were trivial or unremarkable in comparison to actions taken by others involved in the administration, showing that he was not acting as a UAE agent; and

14. All materials showing that federal intelligence agencies were aware of Mr. Barrack's contacts with the UAE and, unlike the prosecutors on this case, did not conclude that Mr. Barrack was a national security threat or foreign agent.

This is not a wish list. As set forth in Exhibit A, Mr. Barrack has ample reason to believe that the government has substantial additional evidence regarding each of the above categories in its possession. *See* Exhibit A (Section 951 Discovery Requests). While the government may believe that it can rebut such evidence, or that such evidence may not be dispositive, that provides no basis to withhold evidence Mr. Barrack could use to defend against these charges. *See Stein*, 488 F. Supp. 2d at 356-57; *see also Rittweger*, 524 F.3d at 181.

Mr. Barrack does not have access to the government's files and instead must rely on the government to obtain materials needed for his defense. And where the case involves allegations regarding national security, as well as alleged influence and deception of White House officials, the government cannot limit its collection of evidence to a narrow group of prosecutors and agents in EDNY or the files of the DOJ trial attorney from the National Security Division. Instead, the government must provide a fair picture of what actually happened, which must include records from the agencies that Mr. Barrack interacted with during the time period alleged in the Indictment.

In particular, the government has represented that it has in its possession all of the information from the Special Counsel's Office ("SCO") file relevant to Mr. Barrack.[1]

---

[1] *See* Exhibit 1 (August 17, 2021 Ltr. from EDNY to counsel for Mr. Barrack) at 2 (confirming that the government was in custody of the SCO materials relevant to its investigation of Mr. Barrack and

 These materials must be reviewed
and all evidence exculpatory and material to the defense must be produced.

### C. The Government's Insistence that It Is Not Aware of Any *Brady* Materials Raises the Concern that the Government Does Not Understand Potential Defenses in this Case or Is Taking an Unduly Restrictive View of its Discovery Obligations.

As addressed above, there are numerous types of evidence that contradict the allegation that Mr. Barrack agreed to act as an agent for the UAE. Nevertheless, despite having access to all materials relevant to Mr. Barrack from the SCO file, as well as having investigated these allegations for four years (including numerous witness interviews and obtaining hundreds of thousands of documents), the government apparently concluded that there was not a *single piece of evidence* among these materials that contradicted its theory that Mr. Barrack was an agent of the UAE. Not only is this implausible on its face, it is impossible in light of evidence that the government later produced and other materials that Mr. Barrack knows to exist. This raises the concern that the government is taking too narrow a view of what constitutes exculpatory or material evidence and its corresponding discovery obligations.

Specifically, in connection with the initial status conference in this case, the government asserted that it was "not aware of any exculpatory material regarding the defendant."[3] The

---

representing that prosecutors had reviewed those materials, and would continue to review those materials, to ensure it met its disclosure obligations under Rule 16, *Brady*, and *Giglio*, and section 3500.

[2] Katelyn Polantz, *List of who Mueller investigators interviewed released to CNN*, CNN (Jan. 3, 2020), https://www.cnn.com/2020/01/03/politics/mueller-investigation-witnesses-interviewed-list/index.html.

[3] Exhibit 2 (July 27, 2021 Ltr. from EDNY to counsel for Mr. Barrack) at 2; *see also* September 1, 2021 Proposed Joint Agenda, Dkt. 38 at 2 (noting that the government had advised the defense that it had not identified any *Brady* materials to date).

government has continued to take this position, insisting that it is not aware of any information that contradicts or undercuts its theory of the case.

This position was soon refuted by the government's selective disclosure of exculpatory information in response to Mr. Barrack's persistent and detailed requests for discovery. These disclosures, which have largely consisted of summaries of small portions of prior witness interviews (without producing the actual statements or interview memoranda themselves), have nevertheless confirmed that the government has significant exculpatory material in its possession.

For example, a key issue at trial will be that Mr. Barrack previously told senior officials of the Trump Campaign and Administration about his interactions with the UAE and that those officials were aware of and encouraged those contacts. Also critical is the fact that Mr. Barrack supported *Qatar*, rather than the UAE, during blockade of Qatar by the UAE and Saudi Arabia in 2017.



███████████████████████████████████████████████████
████████████████████

Inexplicably, the government would not characterize these disclosures as exculpatory, saying

instead that they were provided only "out of an abundance of caution."  The government has

never explained *what* is the caution it is talking about.

     Following these disclosures, the defense told the government that Mr. Barrack had also

been open with Mr. Kushner about his contacts with the UAE and that he had used those contacts

to help Mr. Kushner develop critical relationships in the Middle East. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

     ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

---

[5] █
[6] ██████████████████████████████████████████
[7] ██



All of the above information is highly exculpatory and has been known to the government for years. Yet the government only disclosed this information after prompting by the defense and, even then, disclosed only summaries of isolated portions of the evidence. This approach raises at least two significant concerns.

---

8 ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
9 ████████████████████
10 ████████████████████████████

First, because of the government's *Brady* disclaimers, Mr. Barrack is understandably concerned that exculpatory evidence will not be disclosed. This concern is buttressed by the fact that exculpatory materials in the government's possession for years were not disclosed until the government was pressed by the defense, apparently because the government incorrectly concluded they were not exculpatory or material to the defense.

Second, the government's insistence on summarizing isolated portions of prior witness statements, rather than providing the memoranda of the interviews themselves (even in redacted form), deprives Mr. Barrack of all context from the interviews and limits his ability to assess and test the value of the statements. ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

The government should provide the complete memoranda of these interviews (including any relevant exhibits or attachments), rather than summaries of isolated portions, so that he can assess how they are helpful to the defense and how best to use them.[12] *See United States v. Abdelaziz*, Case No. 1:19-cr-10080, Dkt. 899 (Minute Entry) (D. Mass, Feb. 28, 2020) ("Court discusses its view of government's *Brady* obligations, including that the 'sum and substance' letters are insufficient to notify defendants of discovery, and that the information throughout the 302 interview reports that the government has provided the court with *ex parte* is exculpatory and should be produced to defendants"); *id.* at Dkt. 906 (Feb. 28, 2020 Hrg. Tr. at 13:16-21) ("THE COURT: [] I don't think the sum and substance summaries are sufficient. And one of the reasons it's taken me so long to work through these motions is I've been looking through the *ex*

---

[11] ███████████████████████████████████████████
███████████████

[12] Any such materials would, of course, be subject to the Protective Order in this case.

*parte* materials I have to try to pinpoint precisely where the sum and substance comments are coming from.").

## III.     THE GOVERNMENT MUST PRODUCE ALL EVIDENCE EXCULPATORY AND MATERIAL TO THE DEFENSE OF THE FALSE STATEMENT CHARGES.

The government recently argued to this Court that it should deny Mr. Barrack's motion to dismiss the false statement and obstruction of justice charges, which are based on statements made during his voluntary June 20, 2019 interview, because he will have "every opportunity" to contest the record regarding those statements and the agent's credibility at trial.  Gov't Opp. to Mot. to Dismiss, Dkt. 80 at 45.  Just three days later, however, the government squarely rejected Mr. Barrack's request for discovery regarding the accuracy of the record reflecting the alleged false statements and the credibility of the agent who took notes of the interview.[13]

The requested materials are in the government's possession and would take little or no effort to produce, such as prior drafts of the government's memorandum of the interview, as well as revisions, comments, or changes to it, and the identity of the agent who took the notes of the interview.[14]  To have the "opportunity" that the government advocated he should have, if the false statement and obstruction charges are allowed to go to a jury, the Court should order the government to provide these materials to Mr. Barrack.

Mr. Barrack's interview took place almost three years ago when, despite knowing he was a target and having every incentive to create a meaningful record, the government chose not to memorialize or transcribe the actual questions or answers that make up any of the statements that it now alleges were false.  The government then waited a month to finalize the memorandum of the interview and then another two years (without any indication to Mr. Barrack that his

---

[13]  *See* Exhibit 9 (March 1, 2022 Ltr. from EDNY to counsel for Mr. Barrack).
[14]  *See* Exhibit 10 (February 22, 2022 Ltr. from counsel for Mr. Barrack to EDNY).

statements raised any issues) before it arrested him in July 2021.  Having charged Mr. Barrack with multiple crimes based on specific statements he made during a five-hour interview several years earlier, with no record of what he was asked or the specific statements he made, the government should not now be permitted to withhold discovery regarding what little record it possesses of the alleged false statements and the credibility of the record created by the agent of the interview.

If the government can continue to block such discovery, Mr. Barrack will be left in an "untenable" position of defending himself against felony charges with little more than incomplete handwritten notes and an after-the-fact memorandum that was not completed until well after the interview.  *See United States v. Clifford,* 426 F. Supp. 696, 702 (E.D.N.Y. 1976); *see also United States v. Ehrlichman*, 379 F. Supp. 291, 292 (D.D.C. 1974) (finding that Section 1001 was improperly charged where the government agent's "sketchy notes [did] not purport to be a verbatim record of either the questions or the answers at issue").  That is not sufficient, particularly in a false-statements case where "what is actually said by a defendant becomes a critically important part of any prosecution under § 1001," *United States v. Poutre*, 646 F.2d 685, 688 (1st Cir. 1980) (en banc).

Here, the notes are insufficient because the (as yet unidentified) agent who wrote them failed to document the government's questions or Mr. Barrack's answers for any of the alleged false statements.[15]  Instead, the agent's notes subjectively combine the questions and answers, devoid of any nuance, context, or the words actually spoken.[16]  Like the notes, the interview

---

[15]  Barrack Mot. to Dismiss, Dkt. 67 at 27.
[16]  Exhibit 11.

17

memorandum similarly does not reflect the questions or answers.[17] Nor has the government responded to Mr. Barrack's requests that it identify who authored, revised, and approved it.[18]

While the government cannot now recreate the key details of the interview, it should at least produce documents to provide the best possible record of the statements made at the interview and the accuracy of the agent's account. This includes (1) drafts of the interview memorandum, (2) the agents or prosecutors who revised or influenced the content of the memorandum, (3) identification of any additional prosecutor or agent who took notes or otherwise summarized Mr. Barrack's statements at the interview, (4) data reflecting changes made to the interview memorandum and when those changes were made, and (5) whether any notes or prior drafts of the interview memorandum were made, but not preserved, by the government. The government has all of this information in its possession and could easily provide it.

The government has an obligation to produce this discovery under Rule 16, *Brady*, and Due Process principles of fundamental fairness. Rule 16(a)(1)(B) provides that, "[u]pon a defendant's request, the government must disclose to the defendant . . . (ii) the portion of *any written record* containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. 16(a)(1)(B) (emphasis added). "By its plain terms, this rule encompasses both typewritten summaries and contemporaneous handwritten notes." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 93 (2d Cir. 2014) (finding that federal prosecutors violated their Rule 16 obligations by failing to produce copies of handwritten notes of government interview).

---

[17] Exhibit 12.
[18] *See* Exhibit 7 (March 9, 2022 Ltr. from EDNY to counsel for Mr. Barrack).

*Brady* likewise requires disclosure of the requested discovery.  Under *Brady*, "the government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *Id.* at 91 (quoting *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)).  "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."  *Id.*  Here, where the government chose not to create a record of the questions or answers underlying the alleged false statements, the credibility of the agent and any materials that bear on the credibility of the agent's recollection or record of the interview are central to the defense of these charges.

The government cannot reasonably dispute that these materials are material to the defense of these charges, or contend that they have no bearing on the credibility of the key government witness.  Nor can the government deny the existence of discrepancies between the memorandum and the agent's contemporaneous notes, which do not reflect information that appears for the first time in the memorandum that was prepared over four weeks later and which warrant discovery on these grounds alone.  *See United States v. Weaver*, 992 F. Supp. 2d 152, 158-59 (E.D.N.Y. 2014) (requiring the government to produce notes, even if not required under Rule 16, where the notes reflect discrepancies with the interview memorandum).

For example, Count 5 alleges that Mr. Barrack falsely told the government that he was "never asked to download any messaging application by anyone associated with the Middle East[.]"  Indictment ¶ 103.  ███████████████████

████████████████████████████████████████████████████████████

██████████  Prior drafts of the interview memorandum would likely reveal how statements

---

[19] ████████████████

that are not reflected in the agent's notes somehow made it into the final memorandum of the interview, and if so, when and why that information was added.

The government has thus far refused to give this information. Instead, it insists that the memorandum of the interview is unimpeachable because the agent abided by FBI policy by starting to draft the memorandum within five days of Mr. Barrack's interview. Gov't Opp. to Mot. to Dismiss, Dkt. 80 at 43, n. 14. At the same time, the government refuses to produce any discovery that would enable Mr. Barrack to ascertain whether the document that was drafted within five days of the interview was limited to only a fragment of the interview itself or instead included the full 23 pages of Mr. Barrack's statements that were ultimately finalized one month later. That information—coupled with the identities of who drafted or revised the memorandum, when such drafts or revisions were made, and what those drafts or revisions included—is material to Mr. Barrack's defense, both to test the reliability of the memorandum and determine whether the government complied with its own policies for ensuring an accurate record of the interview. *See United States v. Brown,* 2011 WL 3678682, *9 (W.D. Pa. Aug. 19, 2011) ("Under [FBI] policy, a special agent is expected to memorialize interviews of witnesses on an FD-302 form within five days of the interview.").

That is precisely how courts in this circuit and elsewhere have handled discovery disputes involving questionable government records of witness interviews. *See, e.g., United v. Abdelaziz,* Case No. 1:19-cr-10080, Dkt. 906 (Feb. 28, 2020 Hrg. Tr.) at 15:6-22 (finding that the government's vague notations in the FD-302 about the time frame of key events, and its failure pin down the witness about that timing during the interview, was both relevant and exculpatory and entitled the defense to discovery regarding the interview). This is not an unreasonable or unprecedented request—the government has voluntarily provided such materials, including prior

drafts of the interview memoranda in contested false statement cases. *See, e.g., United States v. Flynn*, 411 F. Supp. 3d 15, 34-35 (D.D.C. 2019) (noting that the government *had already provided defendant with* "the interview report, *all drafts of the interview report*, [] the handwritten notes of the interviewing agents and the reports of interviews with the second interviewing agent, who attest[ed] to the accuracy of the final [] interview report.") (emphasis added).

## IV.    THE GOVERNMENT SHOULD PROVIDE A DATE BY WHICH ITS PRODUCTION OF RULE 16 MATERIAL AND REVIEW OF MATERIALS FROM FEDERAL EXECUTIVE AGENCIES WILL BE COMPLETE.

Finally, the Court should order the government to provide a status update regarding its review of Rule 16 and *Brady* material from federal agencies, including but not limited to, the agencies or offices being searched, the scope of those searches, and impose a date certain by which the government must complete productions from those searches or provide confirmation that no discoverable materials exist.

The government initially took the position that it had no obligation to search for discoverable materials from federal agencies. But that position is untenable given that this is a national security case where Mr. Barrack was an informal advisor to the President of the United States, served as Chairman of the President's Inaugural Committee, was under consideration for cabinet-level positions with responsibility for U.S. policy in multiple countries, and underwent an extensive background check in connection with those positions. Far from a secret, Mr. Barrack's connections overseas were well known to members of the Executive Branch, who sought Mr. Barrack's assistance because of those contacts (including with the UAE).

Additionally, during the time period that government lawyers concluded that Mr. Barrack was acting as a foreign agent, he gave the keynote speech at the Republican National Convention, was a senior advisor to the Campaign and later to the President, was central to the

transition and was the Chair of the Presidential Inaugural Committee, had access to the Oval Office, was offered senior positions in the U.S. government, and traveled overseas without issue dozens of times.  Given his role and access, federal intelligence agencies tasked with identifying foreign threats and protecting U.S. national security were either not aware of the information that was known to the prosecutors, which is implausible, or else had additional information that led them to reach a different conclusion from the prosecutors on this case.

It is therefore inconceivable that the government could charge someone in Mr. Barrack's position with being a foreign agent who sought to influence U.S. foreign policy, while simultaneously refusing to search for exculpatory materials from the White House, the State Department, the Treasury Department, and federal intelligence agencies.  DOJ itself has acknowledged that "case law indicates that the government has a duty to search when the prosecution knows or has specific reason to know of discoverable information in the possession of the [intelligence community]."  Grindler, Gary G., *Policy and Procedures Regarding Discoverable Information in the Possession of the Intelligence Community or Military in Criminal Investigations*, U.S. Dep't of Just., Office of the Inspector General (September 29, 2010).  If exculpatory materials exist in these federal executive agencies (and Mr. Barrack has made a compelling showing that they do), any conviction secured by depriving him of such information would be a grave injustice.

In January 2022, following extensive meet-and-confer discussions, government counsel represented that it had initiated searches for discoverable material from certain federal agencies (although it would not disclose whether this review included information from federal

intelligence agencies).[20]  Since then, however, the government has not disclosed the status of that review or provided a deadline by which it that review would be complete.  With trial scheduled to begin less than five months from the hearing date on this motion, Mr. Barrack seeks an order to ensure that the government is conducting an appropriately broad review, as well as a deadline by which that review and production will be complete.

## RELIEF REQUESTED

For the reasons above, this Court should compel the government to disclose to the defense by no later than May 1, 2022, all material to which he is entitled pursuant to Rule 16 and *Brady* in the government's possession, custody, or control, including but not limited to materials in the SCO file and federal executive agencies (including but not limited the White House, State Department, Commerce Department, and federal intelligence agencies):

- All communications between Mr. Barrack and the Trump Campaign and Administration regarding the Middle East;

- All interview memoranda, related notes, and grand jury transcripts in the possession, custody, or control of the government, including, but not limited to, the SCO file and EDNY's file, as well as any and all interviews and testimony from George Nader, Walid Phares, Elliott Broidy, Erik Prince, and Rick Gerson in which Mr. Barrack was discussed;

- The categories of exculpatory material described above in section II(B) *supra*, including but not limited to:

  - All materials showing that Mr. Barrack disclosed his contacts with the UAE to U.S. government officials;

  - All materials showing that Mr. Barrack acted with the encouragement and approval from the Trump Campaign or U.S. government, rather than in response to directions from UAE officials;

---

[20] Exhibit 9 (March 1, 2022 Ltr. from EDNY to counsel for Mr. Barrack) at 3 ("As noted previously, to the extent we receive discoverable materials from executive branch agencies, we will produce them to you.").

o  All materials showing that Mr. Barrack disclosed his contacts with the UAE to federal investigators and State Department;

o  All materials showing that Mr. Barrack acted contrary to the UAE's interests, such as in supporting Qatar during its conflict with the UAE;

o  All materials showing that Mr. Barrack did not take any steps to advance the UAE's primary foreign policy goals, unlike the UAE's actual agents;

o  All materials showing that Mr. Barrack was not included in, and was not aware of, high level contacts and secret meetings between the UAE and the U.S. government (including information regarding the Seychelles or Trump Tower meetings);

o  All materials reflecting that Mr. Barrack had limited contacts with UAE leaders during the relevant time period;

o  All materials showing that the UAE official alleged in the Indictment to have had the majority of the contacts with Mr. Barrack (Emirati Official 4) was a low-level government ███████ employee ████████████████████████████████████████████████████████████;

o  All materials showing that Mr. Barrack received no compensation or other consideration from the UAE during or after the relevant time period;

o  All materials showing that in 2017 Mr. Barrack was interested in and was recruited for foreign policy positions in the U.S. government entirely unrelated to the Middle East, such as positions in Latin America;

o  All materials showing that Mr. Barrack had long advanced the views on the Middle East and the UAE consistent with those described in the media appearances and op-ed pieces described in the Indictment, well before he was allegedly a foreign agent;

o  All materials showing that the requests Mr. Barrack allegedly received from the UAE, such as comments on the incoming U.S. national security team or support for a candidate for ambassador, are common requests and were made to other members of the transition or administration from individuals with no connection to the UAE, as well as evidence or information reflecting that Mr. Barrack did not follow up on such requests from the UAE;

o  All materials showing that the steps Mr. Barrack is alleged to have taken related to the UAE were trivial or unremarkable in comparison to actions taken by others

involved in the administration, showing that he was not acting as a UAE agent; and

- o All materials showing that federal intelligence agencies were aware of Mr. Barrack's contacts with the UAE and, unlike the prosecutors on this case, did not conclude that Mr. Barrack was a national security threat or foreign agent.

- Information and documents exculpatory and material to the defense against the false statement charges, including but not limited to:

  - o All drafts of the government memorandum of Mr. Barrack's June 2019 interview;

  - o The identity of the agent or agents who took contemporaneous notes of the interview and who drafted the interview memorandum;

  - o The identity of any agent, prosecutor, or other individual who commented on, revised, or otherwise edited the interview memorandum;

  - o The identity of the individual who approved the final version of the memorandum;

  - o Notes taken by other government attendees at the interview, including the prosecutors;

  - o Information or metadata reflecting when the interview memorandum began to be drafted, each time it was edited, when those revisions were made, and the identity of any person who made those edits;

  - o Whether any notes or drafts of the memorandum of the interview that previously were created have not been preserved or are no longer available, and if so, why those materials are no longer available; and

  - o All communications about the decision or directive not to record the interview.

Mr. Barrack also respectfully requests that the government provide a status report confirming that it has searched records from federal executive agencies, including (1) the agency that was searched, (2) the status of review and collection of documents from each agency, and (3) if no exculpatory or documents material to the defense were located, a written representation that there were no documents in that agency's files subject to Rule 16 or *Brady*.

25

Dated: New York, NY
      March 21, 2022

Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Daniel M. Petrocelli*
Daniel M. Petrocelli (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
E-mail: dpetrocelli@omm.com

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
New York, New York 10036
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: jbowman@omm.com

Nicole M. Argentieri
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: nargentieri@omm.com

*Attorneys for Thomas J. Barrack, Jr.*