## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
|---|---|
| **Category 1**<br><br>Materials showing that Mr. Barrack disclosed his contacts with the UAE to U.S. government officials, which show that he was not acting as a UAE agent or trying to conceal his contacts with UAE officials. | ███████████████████████ |
| **Category 2**<br><br>Materials showing that Mr. Barrack acted with the encouragement and approval from the Trump Campaign or U.S. government, rather than in response to directions from UAE officials, which show he was not acting as a UAE agent. | ███████████████████████ |
| **Category 3**<br><br>Materials showing that Mr. Barrack voluntarily disclosed his contacts with the UAE to federal investigators and the State Department, which show that he was not acting as a UAE agent. | In early 2017 (at the time he was allegedly acting as an undisclosed foreign agent), Mr. Barrack voluntarily subjected himself to an intense national security investigation in connection with several different potential diplomatic appointments, which included hours of FBI interviews and a detailed written SF-86 submission identifying his foreign contacts (including contacts with the UAE described in the Indictment). The fact that Mr. Barrack elected to undergo a national |

---

[1] ███████████████████████

[2] ███████████████████████

1

## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
|---|---|
| | security investigation into his background at a time when he was allegedly acting as a foreign agent, as well as disclosures that he made regarding his contacts with the UAE to government investigators, is highly exculpatory. |
| **Category 4**<br><br>Materials showing that Mr. Barrack acted contrary to the UAE's interests, such as in supporting Qatar during its conflict with the UAE, which show that he was not acting as a UAE agent. | During the time period relevant to the Indictment, the UAE and Qatar were bitter rivals and, as of June 2017, were engaged in an international conflict. Far from helping the UAE, as the Indictment alleges, Mr. Barrack supported the Qatari position and advocated that U.S. government officials not support the Qatari blockade, spearheaded by the UAE and Saudi Arabia.[3] Efforts to directly oppose the UAE's key foreign policy goal during this time period stand in contrast to the actions of known UAE agents, such as Mr. Nader, and refute the allegation that Mr. Barrack was acting as the UAE's agent. |
| **Category 5**<br><br>Materials showing that Mr. Barrack did not take any steps to advance the UAE's primary foreign policy goals, unlike the UAE's actual agents, which show that he was not acting as a UAE agent. | The UAE's primary foreign policy goal during the time period in the Indictment was to isolate Qatar and reduce its influence in the United States. While the UAE paid other agents, including Mr. Nader, millions of dollars to lobby U.S. officials against Qatar, there is no allegation that Mr. Barrack took steps to advance any foreign policy goal of the UAE.[4] Evidence of the actions taken by UAE agents |

---

[3] [REDACTED]; see also Michael Kranish, *"He's Better Than This," Says Thomas Barrack, Trump's Loyal Whisperer*, THE WASH. POST (Oct. 11, 2017), https://www.washingtonpost.com/politics/hes-better-than-this-says-thomas-barrack-trumps-loyal-whisperer/2017/10/10/067fc776-a215-11e7-8cfe-d5b912fabc99_story.html (describing how Mr. Barrack intervened to tell President Trump that he was "wrong" in "attacking Qatar" during the 2017 blockade and Mr. Barrack's advice that the President meet with the Emir of Qatar to mediate the conflict).

[4] *See* David Kirkpatrick & Mark Mazzetti, *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. TIMES (March 21, 2018), https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html (noting that Mr. Nader "tempted [Mr. Broidy] with the prospect of more than $1 billion in contracts for his private security company … and he helped deliver deals worth more than $200 million with the United Arab Emirates" and disclosing that Mr. Nader paid Mr. Broidy $2.7 million for conferences that heavily criticized the UAE's rival, Qatar); Boswell, Josh, *Former Trump Donor Was Paid $100M by the UAE to Lobby U.S. Officials to Take Anti-Qatari Positions and Run Smear Campaign with George Nader Portraying Country as an 'Unsafe' Terrorist Hub, Lawsuit Claims*, THE DAILY MAIL (August 27, 2021), https://www.dailymail.co.uk/news/article-9932983/Trump-donor-Elliott-Broidy-accused-running-smear-campaign-against-Qatar-new-lawsuit.html.

## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
|---|---|
|  | during this time period, which stand in contrast with Mr. Barrack's actions, is exculpatory and material to the defense. |
| **Category 6**<br><br>Materials showing that Mr. Barrack was not included in, and was not aware of, high level contacts and secret meetings between the UAE and the U.S. government (including information regarding the Seychelles or Trump Tower meetings), which show that he was not acting as a UAE agent. | It has been publicly reported that UAE officials held undisclosed meetings with high-level U.S. officials (including Mr. Kushner) and UAE agents (such as Mr. Nader) to address key foreign policy goals and interests. Despite his status as a senior advisor to the President and the influence he held with the Administration, Mr. Barrack was not included in these meetings and was unaware of them.[5] Evidence regarding these meetings demonstrates that Mr. Barrack was not an agent by the UAE. |
| **Category 7**<br><br>Materials showing that Mr. Barrack had limited contacts with UAE leaders during the relevant time period, which show that he was not acting as a UAE agent. |  |

---

[5] [redacted]

[6] [redacted]

## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
|---|---|
| **Category 8**<br><br>Materials showing that the UAE official alleged in the Indictment to have had the majority of the contacts with Mr. Barrack (Emirati Official 4) was a low level government ▮▮▮ employee ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮, which show that Mr. Barrack was not acting as a UAE agent. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **Category 9**<br><br>Materials showing that Mr. Barrack received no compensation or other consideration from the UAE during or after the relevant time period, which show that he was not acting as a UAE agent. | Unlike Mr. Nader, who received millions of dollars from the UAE,[8] Mr. Barrack did not receive any compensation or other consideration from the UAE. |
| **Category 10**<br><br>Materials showing that Mr. Barrack was interested in and was recruited for foreign policy positions in the U.S. government entirely unrelated to the Middle East, such as positions in Latin America, which show that he was not acting as a UAE agent. | In late Spring and Summer of 2017, a period when he is accused of acting as a UAE agent, Mr. Barrack stopped consideration of a diplomatic appointment in the Middle East and instead considered a diplomatic appointment in Latin America—the opposite of what he would do if he were an agent of the UAE, obligated to follow its directions. Evidence regarding these efforts is exculpatory. |

---

[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[8] *See* Kirkpatrick & Mazetti, *supra* note 4.

## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
| --- | --- |
| **Category 11**<br><br>Materials showing that Mr. Barrack had long advanced the views on the Middle East and the UAE consistent with those described in the media appearances and op-ed pieces described in the Indictment, which show that he was not acting as a UAE agent. | While the Indictment alleges that Mr. Barrack praised the UAE in op-ed pieces, interviews, and public appearances, those statements included favorable comments regarding other countries in the region, including Qatar (the UAE's rival) and Saudi Arabia, and were consistent with Mr. Barrack's public statements regarding the region for over a decade before the alleged events in the Indictment. Evidence of such statements and views before the agency relationship was allegedly established in 2016 is exculpatory. |
| **Category 12**<br><br>Materials showing that the requests Mr. Barrack allegedly received from the UAE, such as comments on the incoming U.S. national security team or support for a candidate for ambassador, are common requests and were made to other members of the transition or administration from individuals with no connection to the UAE, as well as evidence or information reflecting that Mr. Barrack did not follow up on such requests from the UAE, which show that he was not acting as a UAE agent. | The Indictment alleges, among other things, that the UAE asked Mr. Barrack to support a preferred ambassadorial candidate in 2017. Indictment ¶ 72. But in his role as Chair of the Inaugural Committee and a key member of the transition team, Mr. Barrack received dozens of similar requests during this time period and he in fact took no action in response to this request. Evidence of similar requests to Mr. Barrack and others in the administration during this time period, as well as evidence that Mr. Barrack did not follow up on this request, is exculpatory. |
| **Category 13**<br><br>Materials showing that the steps Mr. Barrack is alleged to have taken related to the UAE were trivial or unremarkable in comparison to actions taken by others involved in the administration, show that he was not acting as a UAE agent. | The Indictment alleges that, among other things, Mr. Barrack "facilitated communications" between the President-elect and the UAE by, among other things, "providing contact information for MBZ and Sheikh Tahnoun to the President-elect's assistant." Indictment ¶ 105. This unremarkable courtesy is likely no different from steps that people involved with the administration routinely take, and evidence that others in the administration not alleged to be foreign spies provided similar information for other individuals (including foreign officials) is exculpatory. |
| **Category 14**<br><br>Materials showing that federal intelligence agencies were aware of Mr. Barrack's contacts with the UAE and, unlike the prosecutors on this case, did not conclude | During the time period that Mr. Barrack allegedly was acting as an undisclosed foreign agent, he served as an unofficial senior advisor to the President, was involved in the transition, ran the Inauguration, was offered senior positions in the Administration, and traveled overseas |

5

## SECTION 951(a) DISCOVERY REQUESTS

| CATEGORIES | REASONS |
|---|---|
| that Mr. Barrack was a national security threat or foreign agent, which show that he was not acting as a UAE agent. | without any issue dozens of times. Given his role and access, federal intelligence agencies either were not aware of the information that was known to the prosecutors, which is implausible, or else did not reach the same conclusion that prosecutors did. If the agencies tasked with identifying foreign threats and protecting U.S. national security interests were aware of the information in the Indictment, but reached a different conclusion, Mr. Barrack is entitled to receive information in those agencies' possession that led them to reach a different conclusion than the government lawyers prosecuting this case. |