

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

March 28, 2022

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

The Honorable Brian M. Cogan
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Al Malik Alshahhi et al., No. 1:21-cr-00371-BMC-TAM*

Dear Judge Cogan:

The defendant Thomas J. Barrack, Jr., respectfully submits this notice of supplemental authority to inform the Court of the new decision by the District Court for the Eastern District of Virginia in *United States v. Rafiekian*, No. 1:18-cr-00457 (Mar. 25, 2022), attached here as Exhibit 1.  The prior decisions in *Rafiekian* were central to the parties' motion-to-dismiss briefing, and the latest decision confirms the analysis in Mr. Barrack's briefing and supports the conclusion that the Section 951 charges against Mr. Barrack should be dismissed.

In *Rafiekian*, the government charged the defendant—an executive at the consulting firm the Flynn Intel Group ("FIG")—with substantive and conspiracy violations of 18 U.S.C. § 951.  These charges were premised on FIG's retention by Inovo BV—a company run by the Turkish businessman Ekim Alptekin—to research and produce a video about a Turkish individual living in Pennsylvania.  *See United States v. Rafiekian*, 991 F.3d 529, 533-35 (4th Cir. 2021).  According to the government, the business arrangement between FIG and Inovo was a "fig leaf" to allow Rafiekian to operate as an unregistered agent of the Turkish government.  Ex. 1, at 21.

After a jury convicted Rafiekian on both the substantive and conspiracy Section 951 charges, the district court granted Rafiekian's motion for acquittal and conditionally granted a new trial in the event the acquittal was overturned.  *Rafiekian*, 991 F.3d at 537.  On appeal, the government sought to redeem the jury's convictions by expansively defining the sort of agency relationship that gives rise to Section 951 liability.  But the Fourth Circuit rejected that view of the law, holding that an individual operates as an agent within the meaning of Section 951 only if the alleged agent and the foreign principal mutually agree that the agent will operate subject to the principal's direction or control.  *See id.* at 539-40 (citing Restatement (Second) of Agency §§ 1, 14 cmt. a (Am. L. Inst. 1958)).  It is not enough for the alleged agent to be "willing to do something the foreign principal requests."  *Id.*  Rather, as the Restatement principles cited in *Rafiekian* make clear, the alleged agent must have "a duty not to act contrary to the principal's directions," and the principal must have the "power to give lawful directions which the agent is under a duty to obey."  Ex. 1, at 7 (quoting Restatement (Second) of Agency § 14 cmt. a, b).  Applying this definition of "agent," the Fourth Circuit concluded that the government had presented sufficient evidence to convict Rafiekian under Section 951.  It accordingly vacated the judgment of acquittal.  *Rafiekian*, 991 F.3d at 552.  It also vacated the conditional grant of a new trial, ruling that the district court's analysis was conclusory.  *Id.* at 549.



On remand, the district court elaborated on its reasoning and again granted Rafiekian a new trial. As it explained, the "arms-length, short-term research" and "limited lobbying" arrangement between Inovo and FIG did not suggest an agency relationship of the sort that Section 951 prohibits. Ex. 1, at 23. Mr. Barrack highlights four aspects of the district court's new ruling that confirm that the Section 951 charges here should be dismissed:

*First*, as the district court noted, evidence that a defendant ignored his alleged principal's requests shows "[t]he lack of any agreement to operate subject to [the principal's] direction or control." *Id.* at 28. Rafiekian rebuffed numerous requests from his purported principal and made "at least one recommendation" that was "fundamentally at odds with Turkey's stated position." *Id.* at 28-29 (internal citations omitted). The same is true of Mr. Barrack: He not only ignored requests from the United Arab Emirates ("UAE"), his purported principal, but also acted directly contrary to its interests. *See* Barrack Mot. to Dismiss 16-19 (Dkt. 67-1).

*Second*, publicly expressing views that align with those of a foreign government does not establish an agency relationship within the meaning of Section 951. As the *Rafiekian* court explained: "Rafiekian expressed sentiments," including in an op-ed, that were "clearly sympathetic and aligned with the well-known publicly stated views, goals, and objectives of the Turkish government as well as admiration for the Turkish President and was no doubt motivated by those sentiments." Ex. 1, at 33, 41. Yet that was not enough to show that he was a Turkish agent. The same is alleged here: Mr. Barrack publicly voiced views—including in an op-ed— that aligned with his purported foreign principal's views; he also shared a draft of the op-ed with his purported foreign principal (in addition to many others) before publication and requested feedback. *Id.* at 33-34; *see* Barrack Mot. to Dismiss 19. But such actions do not show that the author was operating subject to a foreign principal's direction or control: "a person must do more than act in parallel with a foreign government's interest, pursue a mutual goal, or privately pledge personal alliance[.]" Ex. 1, at 41. And any inference of such duty is especially unwarranted where—as in Mr. Barrack's case—"no compensation was received" for the op-ed, and "it was one in a long string of public statements and positions by" the purported agent. *Id.*

*Third*, simply meeting with foreign officials does not show an agreement to operate subject to their direction or control. *See id.* at 29. Although Rafiekian met with Turkish officials to discuss FIG's work, that "meeting turned out to be little more than the Foreign Minister's narrative concerning Turkey's perspective on" a foreign-policy matter, and "[t]hat narrative simply reflected Turkey's already well known publicly stated views." *Id.* at 30-31. Even if FIG "took notice of" these comments and "'act[ed] in parallel with a foreign government's interests or pursue[d] a mutual goal,'" such actions could not show that "Rafiekian knowingly acted as a Turkish agent subject to its direction or control." *Id.* at 32 (alterations in original). So too here: Mr. Barrack's communications and meetings with foreign officials do not show that he and they "mutual[ly] assent[ed]" to an agency relationship, as is necessary to plead a Section 951 offense. *See Rafiekian*, 991 F.3d at 540.

*Fourth*, stray, favorable comments about a defendant's purported foreign principal do not show an agency relationship. During one meeting with Rafiekian, Alpetkin said "what do I tell Ankara" after FIG's presentation of certain deliverables. *See* Ex. 1, at 28 n.29. Although the government argued that this showed that Rafiekian understood he was operating subject to the directions of Ankara (the capital of Turkey), the district court rebuffed that argument, explaining that such stray comments could not outweigh proof that Rafiekian often acted contrary to or at



least declined to comply with requests from his purported principal.  *See id.*  For the same reason, the indictment's reliance on Mr. Barrack's alleged stray comment about the "home team," *see* Indictment ¶ 24(d), cannot evidence an agency relationship where the indictment itself pleads that Mr. Barrack sometimes ignored or countermanded the UAE's requests, *see supra* p. 2.[1]

                                         Respectfully submitted,

                                         */s/ Daniel M. Petrocelli*
                                         Daniel M. Petrocelli
                                         of O'Melveny & Myers LLP

Cc (via ECF):  Hiral D. Mehta
                Nathan Daniel Reilly
                Ryan C. Harris
                Samuel P. Nitze
                Craig R. Heeren
                Matthew John McKenzie
                Abbe David Lowell
                Matthew L. Schwartz
                Andrew Tauber
                Christopher D. Man
                Johanna Rae Hudgens
                Sofia Roa Arguello

---

[1] The conspiracy charges against Rafiekian failed for much the same reasons that the substantive Section 951 charges against him failed.  *See* Ex. 1, at 37-49.  The same is true here.  *See* Barrack Reply ISO Mot. to Dismiss 25 (Dkt. 83).