UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

AL MALIK ALSHAHHI, et al.

Defendants.

Case No.: 1:21-cr-00371-BMC-TAM

---

**REPLY MEMORANDUM IN SUPPORT OF THOMAS J. BARRACK, JR.'S
MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.    THE GOVERNMENT MUST PRODUCE ALL *BRADY* AND RULE 16 MATERIAL IN ITS POSSESSION RELATED TO THE SECTION 951 CHARGES. ............................................................................................................ 1

        A.    The Evidence at Issue is Plainly Exculpatory. ........................................... 2

                1.    The Government Misunderstands Section 951's Requirements and Scope. ...................................................... 3

                2.    Because the Government Misunderstands Section 951, It Is Not Able to Identify What Information Is Exculpatory Under *Brady* or Material To The Defense Under Rule 16(a)(1)(E). ................................................................................. 4

        B.    The Government Has Been Ordered to Promptly Produce *Brady* Material. .................................................................................................. 8

        C.    The Government's Representation That It "Knows Its Obligations and Will Comply With Them" Does Not Insulate It From Judicial Oversight Of Its Production Of Exculpatory Evidence. ......................... 10

        D.    The Motion to Compel Is Not Mooted By the Government's Prior Production of Materials or Representation That It Will Continue to Produce the Requested Documents. ...................................................... 11

II.    THE GOVERNMENT'S OPPOSITION RAISES CONCERNS REGARDING ITS HANDLING OF MATERIALS RELATING TO MR. BARRACK'S INTERVIEW AND THE FALSE STATEMENT CHARGES. .................................................................................................... 13

III.    THE GOVERNMENT SHOULD BE ORDERED TO PRODUCE *BRADY* AND RULE 16 MATERIALS IN ADVANCE OF THE MAY 19, 2022 CIPA HEARING ................................................................................................ 17

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Copeland v. Vance,*
   893 F.3d 101 (2d Cir. 2018) ............................................................................ 4

*United States v. Aparo,*
   221 F. Supp. 2d 359 (E.D.N.Y. 2002) ............................................................ 9

*United States v. Jain,*
   2020 U.S. Dist. LEXIS 189203 (S.D.N.Y. Oct. 13, 2020) ........................... 11

*United States v. Mohamed,*
   148 F. Supp. 3d 232 (E.D.N.Y. 2015) ............................................................ 9

*United States v. Morgan,*
   493 F. Supp. 3d 171 (W.D.N.Y. 2020) .......................................................... 11

*United States v. Nachamie,*
   91 F. Supp. 2d 565 (S.D.N.Y. 2000) ............................................................. 14

*United States v. Nejad,*
   487 F. Supp. 3d 206 (S.D.N.Y. 2020) ........................................................... 10

*United States v. Poutre,*
   646 F.2d 685 (1st Cir. 1980) .......................................................................... 14

*United States v. Rafiekian,*
   991 F.3d 529 (4th Cir. 2021) ............................................................................ 3

**Statutes**

18 U.S.C. § 951 ..................................................................................................... 3

**Rules**

Model Rules of Professional Conduct Rule 3.7(a) .............................................. 16

## INTRODUCTION

The government's opposition only serves to confirm that Mr. Barrack's motion to compel should be granted. The government concedes it did not disclose information helpful to the defense. Although it tries to defend that failure by arguing that the information was not exculpatory within the meaning of *Brady*, that argument rests on the government's fundamental misunderstanding of the requirements and scope of 18 U.S.C. § 951.

At its core, the opposition reduces to the proposition that the Court should trust the government to comply with its discovery obligations. While such trust is warranted in many cases, the government's failure to produce exculpatory information in its possession, as well as its continued insistence that such information is not in fact exculpatory, shows it is no longer appropriate. Indeed, on the same day that it filed its opposition, the government made yet another disclosure "out of an abundance of caution" of plainly exculpatory evidence that has been in its possession since *September 2018*. Trial is less than five months away, and Mr. Barrack cannot tolerate the government's tactical parsing of exculpatory evidence in its possession to which he is constitutionally and statutorily entitled in order to defend himself. This Court should accordingly compel the government to disclose to the defense by no later than May 1, 2022 all material to which he is entitled pursuant to Rule 16 and *Brady*.

## ARGUMENT

### I.      THE GOVERNMENT MUST PRODUCE ALL *BRADY* AND RULE 16 MATERIAL IN ITS POSSESSION RELATED TO THE SECTION 951 CHARGES.

The government was ordered at the outset of this case to produce all *Brady* information in its possession "promptly" after its existence becomes known to the government. *See* July 26, 2021 Order, Dkt. No. 17 (the "*Brady* Order"). While the government then told the Court it was not aware of any *Brady* information, that assertion was demonstrably wrong. Mr. Barrack's

motion clearly established that the government has been well aware of highly exculpatory evidence and information in its possession, which it has withheld since the inception of this case and for months after Mr. Barrack specifically asked for the information.

Unable to dispute that this information has been in the possession of the prosecution team for several years, *see* Opp. 3-5, 18, the government argues instead that (1) the information related to the Section 951 charges is not exculpatory, but is merely "somewhat helpful to the defense," (2) it need only produce *Brady* material at some point in advance of trial, apparently without regard to the *Brady* Order issued in this case, (3) the Court can deny this motion based solely on the government's representation that it is aware of its discovery obligations and has complied with them, and (4) Mr. Barrack's motion is moot because the government has produced a large volume of materials and will continue to search for and produce materials even if it does not believe they are exculpatory. *See id.* at 17-20, 26.

These arguments continue to reflect the government's misguided view of its discovery obligations, particularly regarding what information is exculpatory and material to the defense. They provide no justification for denying Mr. Barrack's motion.

A.    **The Evidence at Issue is Plainly Exculpatory.**

While accusing Mr. Barrack of arguing over "semantics," the government at the same time insists that the information demanded by Mr. Barrack is not "exculpatory" but instead merely "somewhat helpful to the defense." *Id.* at 17. That the government does not view as "exculpatory" evidence that undermines the core allegations is hardly semantics; rather, it reflects a fundamental misunderstanding of the scope and application of Section 951. And it

raises serious concerns about whether the government can or will identify and disclose all discoverable information to which Mr. Barrack is entitled.

1. <u>The Government Misunderstands Section 951's Requirements and Scope.</u>

Asserting that Mr. Barrack has a "flawed understanding of the elements of a Section 951 offense," *id.* at 21, the government regurgitates its own expansive, and plainly incorrect, interpretation of Section 951's requirements: "*[A]ny act* undertaken by mutual agreement at the direction or control of a foreign government, without proper notice, falls within the reach of the statute, even if the agent declines to act at the principal's direction on some other occasion." *Id.* (emphasis added). Thus, according to the government, an individual can violate Section 951 by merely accepting an invitation to meet a foreign leader (who is also one of the most significant business leaders in the world). *See* Govt. Opp. to Mot. to Dismiss, Dkt. No. 80 at 58-59.

This broad view is untethered to the text and purpose of Section 951, which imposes criminal liability on someone only if he "agrees to operate within the United States subject to the direction or control of a foreign government," 18 U.S.C. § 951—*i.e.*, he has a duty to follow his foreign principal's directions. *See* Barrack Reply ISO Mot. to Dismiss, Dkt. No. 83 at 5-8. This requirement is what distinguishes actions taken by someone who has entered into a mutually-agreed agency relationship with a foreign principal from someone who merely agrees to follow a request or suggestion from a foreign government or official. The *Rafiekian* court made exactly this point in rejecting the interpretation of Section 951 that the government seeks to resuscitate in this case: "One thing is clear right off the bat: To fall within § 951's ambit, a person must do more than act in parallel with a foreign government's interests or pursue a mutual goal. An 'agent' further 'agrees to operate ... *subject to the direction or control*' of that government." *United States v. Rafiekian*, 991 F.3d 529, 538 (4th Cir. 2021) (emphasis added).

Based on its erroneous interpretation of Section 951, the government proceeds to disclaim the exculpatory nature of, and its duty to disclose, substantial evidence material to Mr. Barrack's defense. For example, it contends Mr. Barrack's opposition to the UAE's blockade of Qatar is not exculpatory because a Section 951 agent is free at times to act contrary to his foreign principal's interests. Opp. 21. This is fundamentally wrong and squarely at odds with Section 951: by definition, a person who is not obligated to act under the foreign government's direction or control is *not* a Section 951 agent.[1] But by clinging to its faulty view of Section 951, the government has impermissibly defined away its obligation to disclose material evidence.

      2.   <u>Because the Government Misunderstands Section 951, It Is Not Able to Identify What Information Is Exculpatory Under *Brady* or Material To The Defense Under Rule 16(a)(1)(E).</u>

Information that the government has insisted is not exculpatory, or even relevant to the charges, includes (but is not limited to):



---

[1] Indeed, if the government's proposed interpretation of Section 951 was correct, it would merely confirm that the statute is unconstitutionally vague as applied to Mr. Barrack. If Section 951 prohibits *any* act undertaken by mutual assent at the direction or control of a foreign government, it criminalizes a wide swath of conduct that is never prosecuted. *See* Dkt. No. 67 at 7-26. As a result, the application of the statute to the alleged conduct in this case "turns on the law enforcement officer's unguided and subjective judgment," and the statute is unconstitutionally vague as applied. *Copeland v. Vance*, 893 F.3d 101, 120 (2d Cir. 2018).

- ███████████████████████████████████████████████████
  ████████████████████████████████████████████████
  █████████████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████████
  █████████████████████████████████████████████████

As these disclosures show, Mr. Barrack ████████████████████████████

████████████████████████████████ They also demonstrate that ████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████

Incredibly, the same day that the government filed its opposition to the motion to compel defending the diligence of its discovery efforts, it separately produced new information to Mr. Barrack that strongly refutes the government's Section 951 charges. Specifically, the government disclosed that █████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████ *See* Bowman Decl. ISO Reply Mot. to Compel, Ex. 1 (April 5, 2022 letter from EDNY to counsel for Mr. Barrack). ██████████████████████

██████████████████████████████████████████████████

█████████████████████████████, yet it is now clear that ████████████████████████████ The government's late disclosure of this information is even more troubling in light of the fact that ████████████████████████████████████████

█████████████████████████████████████████████████████████████

[REDACTED] but apparently failed to consider the above information as exculpatory at that time.

[REDACTED]

[REDACTED] evidence that [REDACTED]

[REDACTED] is critical information that was not disclosed until nine months after the indictment in this case. This delay is even more egregious in light of the fact that [REDACTED]

[REDACTED]

[REDACTED]

Despite the obvious importance of this evidence to the defense, the government once again takes the untenable position that [REDACTED]

[REDACTED] are "not materially relevant to the elements of a Section 951 offense" because the statute "requires notice to the Attorney General." Opp. 22. The government fails to recognize, however, that [REDACTED]

[REDACTED] is important not just to the *notice* element of Section 951, but is powerful evidence that *no agency relationship existed* and that Mr. Barrack *did not believe that he was an agent of the UAE.*

As explained in the motion to compel, Mr. Barrack had no written or verbal agreement with the UAE, and the government's apparent theory is that his agreement to act subject to the UAE's direction and control can somehow be inferred solely from his actions. Mot. 7-16. Under that theory, however, actions that contradict the existence of such an agreement, such as [REDACTED], are highly exculpatory and must be produced.

The government's position is particularly astonishing in light of its public claim at the time of Mr. Barrack's arrest that he had *deceived* Mr. Trump and the administration. Specifically, the then-Acting Assistant Attorney General for the National Security Division announced that the "conduct alleged in the indictment is *nothing short of a betrayal of those officials in the United States, including the former President*," and that this indictment was needed to deter such "*undisclosed* foreign influence." *See* Bowman Decl. ISO Reply to Mot. to Compel, Ex. 2 (July 20, 2021 DOJ Press Release) (last accessed Apr. 10, 2022) (emphasis added). In that same press release, the Assistant Director in Charge of the FBI NY Field Office asserted that the indictment was about "*secret* attempts to influence our highest officials." *Id*. When Mr. Barrack raised concerns with the government about these false statements in the press release, the government responded that these statements were a fair representation of the conduct alleged in the indictment. *See* Bowman Decl. ISO Reply Mot. to Compel, Ex. 3 at 2 (August 26, 2021 letter from EDNY to counsel for Mr. Barrack). Thus, in one breath the government claims that Mr. Barrack deceived Mr. Trump and the administration and that such evidence is part of its case, but in the next breath contends that contrary evidence is neither relevant nor exculpatory and apparently withheld such discovery on that basis.

The government similarly argues that evidence that Mr. Barrack took actions against the UAE's interests, or that he did not follow directions from the UAE, is not exculpatory. Opp. 21. Specifically, the government argues that refusing to follow certain requests, or acting against the UAE's interests in some situations, has no relevance to whether Mr. Barrack separately agreed to follow other purported directions from the UAE. *Id*. But the government's argument again rests on its mistaken belief that any mutually agreed-upon action violates Section 951, rather than actions taken in furtherance of an agency relationship where the defendant is subject

to the direction or control of the principal. Evidence that Mr. Barrack acted directly contrary to the UAE's interests regarding its most important foreign policy objective (the isolation of Qatar during the 2017 blockade) is dispositive evidence that Mr. Barrack never agreed to act as an agent of the UAE and did not believe that he was in any way bound to follow its directions. Indeed, that evidence proves Mr. Barrack rightly believed he was free to do what he wanted, without following orders and directions from anyone, a fact that disposes of the government's Section 951 charge.

The government similarly dismisses as "absurd" the exculpatory nature of Mr. Barrack's pursuit of a diplomatic position in Latin America in mid-2017 at a time when he was alleged to be a UAE agent. Opp. 21, n. 8. But the fact that, during the time period that he was alleged to be a UAE agent subject to its directions and control, Mr. Barrack also enthusiastically sought diplomatic positions with no connection whatsoever to the Middle East is strong evidence that Mr. Barrack was not under the UAE's control. Instead, it is the government's premise that is absurd—it makes no sense that an agent of the UAE, who had direct access to the President and the ability to influence United States policy, would voluntarily abandon any role related to the Middle East to pursue positions in the administration that had no conceivable benefit to the foreign principal. It is alarming that the government does not recognize the exculpatory nature of such evidence.

### B. The Government Has Been Ordered to Promptly Produce *Brady* Material.

The government argues that it has no obligation to promptly produce exculpatory information so long as it produces *Brady* material immediately before or during trial. Opp. 19. The government believes that Mr. Barrack "cannot be heard to complain about the timing" of its ongoing disclosures of *Brady* material, *id.* at 18, even though trial in this case is only five

months away and the government continues to produce exculpatory information that has been in its possession for years.

Relying on cases finding that there was no violation of a defendant's Due Process rights when *Brady* materials were produced in advance of or even during trial, *see id.* at 18-19, the government nonetheless provides no authority or explanation for why such delayed disclosure is an appropriate or recommended approach. Nor does the government even address the *Brady* Order issued in this case, which clearly prohibits strategic delay in producing *Brady* material and requires that all such information must be produced "promptly" after "its existence becomes known to the Government." Dkt. No. 17 at 1.

Further, it is appropriate for courts to order immediate production of *Brady* and *Giglio* information where there is "reason for suspecting the government will not comply" with its discovery obligations. *Cf. United States v. Mohamed*, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) (courts typically do not compel immediate disclosure of *Brady* and *Giglio* where the defense has not provided "any reason for suspecting the Government will not comply"). Such an order is especially warranted in a complex, multi-defendant case so that the defense has sufficient time to investigate and make effective use of the disclosure at trial. *See United States v. Aparo*, 221 F. Supp. 2d 359, 366-67 (E.D.N.Y. 2002) (ordering early disclosure of *Giglio* materials in multi-defendant conspiracy and racketeering case because of complexity of case).

Such circumstances exist here, where there is a clear record that (1) the existence of particular exculpatory evidence has been known to the government for years, including witness statements that refute the government's agency theory, (2) the government only produced selective information months after the indictment and after specific demands from Mr. Barrack, and (3) the government continues to insist that such information is not exculpatory or even

relevant to the charges. Additionally, the complexity of this multi-defendant case and the sheer volume of discovery warrant prompt disclosure. Indeed, the Court has issued such an order in this case; the government has just not followed it.

**C.** **The Government's Representation That It "Knows Its Obligations and Will Comply With Them" Does Not Insulate It From Judicial Oversight Of Its Production Of Exculpatory Evidence.**

The government suggests that it deserves significant deference and that the motion should be denied solely based on the government's representation (made in its prior discovery letters and in its opposition) that it "understands its obligations" and "will continue to comply" with them. *See, e.g.,* Opp. 1, 14, 26.

But the mere recitation of this boilerplate language does not justify foregoing judicial oversight of the government's obligations in this case. It is hard to imagine a case where the government would represent that it did *not* understand its discovery obligations, or where it would admit that it understood but *would not* comply with them.

If the government's mere incantation of this language were sufficient to bar any motion to compel, judicial enforcement of the government's discovery obligations in criminal prosecutions would be a nullity. While the government relies on two district court cases from 2015 and 2016, much has changed since those orders were issued. Since that time, several district courts in the Second Circuit have been forced to sanction the government in the face of repeated, belated disclosures of exculpatory evidence, including cases where the government did not give appropriate weight to the exculpatory nature of information acquired during prior witness interviews. *See United States v. Nejad*, 487 F. Supp. 3d 206, 207, 212-13 (S.D.N.Y. 2020) (concluding, among other things, that prosecutors' failure to consider whether certain government interviews were required to be produced under *Brady* was "shocking," that even if they did not rise to the level of *Brady* material they nevertheless should have been disclosed in

10

advance of trial, and identifying systemic problems that resulted in discovery violations); *United States v. Morgan*, 493 F. Supp. 3d 171 (W.D.N.Y. 2020) (dismissing indictment based on government mishandling of and failure to timely disclose discovery); *United States v. Jain*, 2020 U.S. Dist. LEXIS 189203, *2-3 (S.D.N.Y. Oct. 13, 2020) (ordering remedial action by the United States Attorney's Office and the New York FBI Field Office based on "inexcusable failures [that] bespeak of negligence" to produce timely discovery).

While the posture of those cases is different from the situation here, the discovery violations in those matters demonstrate that there can be substantial risks to allowing the government to police its own discovery efforts, and that judicial oversight of the identification and production of exculpatory evidence is essential. That is particularly true where, as here, the government continues to incorrectly insist that witness statements undermining the existence of an agency relationship are not exculpatory, much less relevant to defending the charges in the case.

### D. The Motion to Compel Is Not Mooted By the Government's Prior Production of Materials or Representation That It Will Continue to Produce the Requested Documents.

The government's opposition repeatedly highlights the volume of documents it has produced to date, noting that it has produced information obtained from a large number of search warrants and subpoenas, including production of more than 600,000 files in the first five months of the case. Opp. 6. But the relevant measure of the government's compliance with its discovery obligations is not how much it has produced to date, but instead what it has not yet produced and the adequacy of its efforts to locate and produce as-yet-undisclosed information to the defense. And while the government touts its production efforts, it nevertheless continues (nine months after the indictment) to produce documents that have been in its possession since 2018 and 2019. *See, e.g.,* Bowman Decl. ISO Reply Mot. to Compel, Ex. 1 (April 5, 2022 letter from EDNY to

counsel for Mr. Barrack) (producing records obtained from ███████, which were produced to the government in March 2018); Bowman Decl. ISO Reply Mot. to Compel, Ex. 4 (January 27, 2022 letter from EDNY to counsel for Mr. Barrack) (producing search warrants issued by EDNY and related records from April 2019).

Throughout its opposition, the government highlights the fact that Mr. Barrack is using information produced by the government to support a motion raising concerns about the government's discovery efforts. Opp. 1, 18-19, 23 n.9. Had the government promptly produced these materials of its own accord, which it was obligated to do, this would be a valid point. Instead, the government produced these materials years after their existence was known, several months after the indictment, and only in response to repeated, detailed demands from the defense. Thus, Mr. Barrack's concern is not over the materials that have finally been produced, but instead (in light of the government's approach and misunderstanding of what is exculpatory) about what material the government has not yet provided. Indeed, that the government produced highly exculpatory information on the same day that it filed its opposition (from a 2018 interview that the government had previously reviewed in October 2021 for exculpatory information) raises concerns over the government's efforts rather than dispels them. It also demonstrates why it is necessary for the government to produce the complete documents (such as the full interview memoranda) that include these statements and why the government's "one- to two-sentence summaries of [the] information," Opp. 20, are not sufficient.

Lastly, the government asserts that the motion should be denied because, even though it disagrees that the requested information is discoverable, it nevertheless intends to voluntarily produce that information to the defense. *See, e.g.,* Opp. 1, 21, 23-24, 27. But the government's general representation that it will produce materials demanded by Mr. Barrack, while objecting

that such information is not discoverable, is no substitute for a Court order that it must do so. The relief sought by Mr. Barrack is necessary to ensure that the government applies a broad view of what information is exculpatory and material to the preparation of the defense under Rule 16(a)(1)(E), expeditiously and diligently investigates and produces all such information, and completes the production of this discovery in advance of the CIPA proceedings and the trial.

## II. THE GOVERNMENT'S OPPOSITION RAISES CONCERNS REGARDING ITS HANDLING OF MATERIALS RELATING TO MR. BARRACK'S INTERVIEW AND THE FALSE STATEMENT CHARGES.

Five of the seven felony charges in this case are based on statements Mr. Barrack allegedly made during an interview in June 2019. A complete and accurate record of this interview would demonstrate that Mr. Barrack is innocent of these charges. But the government did not create or preserve such a record—only one of the six government participants at the interview apparently took a single note. Mr. Barrack's motion seeks whatever additional information the government has regarding the statements made during the interview and the record the government has of his statements, including information about what it did not retain and why.

This basic information—such as prior drafts of the FD-302 memorandum, the identity of anyone who revised that memorandum, and whether prior drafts or notes previously existed but were not preserved—is in the government's possession, is not sensitive or confidential, and could easily be provided. This discovery is essential to Mr. Barrack's defense, not only to assess the accuracy and reliability of the FD-302 memorandum and the notes (including the agent's credibility) and the government's approach to making a record of the alleged false statements, but also to determine whether two members of the prosecution team who attended the interview have a potential conflict under the advocate-witness rule.

While the government claims that it has taken a "broad" and "conservative" approach to discovery in this case, it confirms it will not produce the requested information—not in the interests of justice, safety, or confidentiality, but instead because it believes it is simply "not required" to do so. Opp. 25. While the government has an obligation to produce this discovery under Rule 16, *Brady*, and principles of fundamental fairness, particularly in a false-statements case where "what is actually said by a defendant becomes a critically important part of any prosecution under § 1001," *United States v. Poutre*, 646 F.2d 685, 688 (1st Cir. 1980) (*en banc*), it is clear that the government here intends to produce as little information as possible and does not want to provide documents reflecting Mr. Barrack's statements (or otherwise account for why it has not preserved such materials).

As just one example of the government's approach, it continues to refuse to identify the FBI agent who took handwritten notes during Mr. Barrack's interview or the agent who drafted the FD-302 memorandum. Where Mr. Barrack is already aware of the identities of the agents who were present at the interview (indeed, he met with them), there is no privacy or security concern implicated by disclosing which of these participants was the author of the notes as well as the identity of the agent who drafted the interview memorandum. But the government continues to refuse to provide this basic information. Opp. 25-26. Moreover, where Mr. Barrack has already made a specific showing of inconsistencies between the agent's notes and the FD-302 memorandum, Mot. 19-20, inconsistencies that the government does not dispute, Opp. 25, prompt disclosure is required. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 579 (S.D.N.Y. 2000) (mandating early disclosure of government witness identities where defendant made showing that "disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case") (alteration in original).

Regarding Mr. Barrack's request for prior drafts of the FD-302 memorandum, the government agrees (for the first time in its opposition) that it will disclose prior drafts to the defense to the extent it locates such materials, but claims that it is "unaware of any additional drafts of the FD-302 report." Opp. 24. That representation is contradicted, however, by the fact that the (unidentified) agent began drafting the memorandum on June 24, 2019, and that the memorandum was not finalized and entered into the system until several weeks later, on July 19, 2019. *See* Bowman Decl. ISO Mot. to Compel, Ex. 12 (FD-302 Memorandum of Mr. Barrack's June 2019 Interview); *see also* Gov't Opp. to Mot. to Dismiss, Dkt. No. 80, at 43, n. 14. If the dates reflected on the memorandum are accurate, then *at a minimum* at least two drafts (one prepared on June 24, 2019 and the other on July 19, 2019) should exist. And given the long time period before the memorandum was finalized, it is implausible that additional drafts of the memorandum were not prepared during the several weeks before the memorandum was completed, or that those drafts were not shared with other members of the prosecution team.

If the government's representation in its opposition is true, then either the 23-page FD-302 memorandum was completed in a single session (but not entered into the FBI system or finalized for several more weeks), or else the government did not preserve prior drafts of the memorandum, including versions reflecting comments or input from other FBI agents or the prosecutors on the case. The government has asserted that Mr. Barrack should have "every opportunity" to contest the record, or lack of it, regarding the alleged false statements and the agent's credibility at trial. Mot. 16 (quoting Gov't Opp. to Mot. to Dismiss, Dkt. No. 80 at 45). To have that opportunity, Mr. Barrack is entitled to know what happened between June and July 2019, including why prior drafts of the memorandum were not retained, what communications or other documents exist reflecting input from the case agents or federal prosecutors, and whether

other members of the prosecution team have documents or communications that reflect the questions or the answers from the interview. To the extent prior drafts or other notes were not retained, the government has an obligation to disclose that fact to the defense so that Mr. Barrack can consider appropriate steps and potential remedies for failing to preserve evidence relating to these charges.

This discovery is equally necessary to determine whether government counsel's involvement in Mr. Barrack's interview poses a conflict at trial under the advocate-witness rule. *See* Model Rules of Professional Conduct Rule 3.7(a). The government has represented that it is obligated to raise all potential conflicts with the Court and recently argued that ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

Gov't Curcio Mot., Dkt. No. 86 at 8. While those arguments were frivolous in that context, here the fact that two members of the prosecution team (AUSA Ryan Harris and DOJ Trial Attorney Matthew McKenzie) participated in Mr. Barrack's interview and are first-hand witnesses to five of the seven charges in this case may pose a significant advocate-witness conflict.

Under these circumstances, Mr. Barrack is entitled to the discovery demanded in his motion in order to determine whether two of the government's attorneys at trial can ethically represent the government before the jury without imparting their "first-hand knowledge of the events" or whether either prosecutor's knowledge of the alleged statements or actions following the interview make them appropriate witnesses in this case. *Id.* The government should therefore be ordered to disclose whether any government counsel took notes of the interview, preserved any such notes (or failed to preserve them), revised the FD-302 memorandum or

provided input on its contents before it was finalized, or otherwise have documents or communications reflecting Mr. Barrack's statements.

## III. THE GOVERNMENT SHOULD BE ORDERED TO PRODUCE *BRADY* AND RULE 16 MATERIALS IN ADVANCE OF THE MAY 19, 2022 CIPA HEARING

The government suggests that the parties continue to meet-and-confer as the case moves closer to trial. Opp. 1, 6-7. But continuing to meet-and-confer and hoping that the government produces all *Brady* and Rule 16 material before trial is no longer a workable approach for discovery in this case. This is particularly true in light of the government's vastly different view of Section 951 and its corresponding discovery obligations. Further, with trial only five months away, and with significant hearings only a month away (such as the defense's *in camera* CIPA hearing with the Court on May 19, 2022), Mr. Barrack should not be forced to prod the government for exculpatory material in its possession that it has an independent obligation to locate and produce.

Mr. Barrack is entitled to certainty on the record for trial and the case he will be defending. Without a deadline for production of all exculpatory and material information to the defense, the government's delays and piecemeal productions significantly impair Mr. Barrack's ability to prepare for trial, including identifying potentially relevant testimony from witnesses in the United States and overseas, preparing for the CIPA proceedings, and serving subpoenas for witnesses and documents. Mr. Barrack should not have to choose between sacrificing his Speedy Trial rights or receiving the discovery to which he is entitled simply because the government is unprepared or unable to make firm commitments about its disclosure obligations.

## CONCLUSION

For the reasons provided in Mr. Barrack's opening motion and above, this Court should compel the government to disclose to the defense by no later than May 1, 2022, all material to

which he is entitled pursuant to Rule 16 and *Brady* in the government's possession, custody, or control, including the specific categories of materials identified in the "Relief Requested" section of the motion to compel, as well as provide a status report regarding the collection and production of materials from federal executive agencies.

Dated: April 12, 2022
    New York, NY

Respectfully submitted,

O'MELVENY & MYERS LLP

/s/ *Daniel M. Petrocelli*
Daniel M. Petrocelli (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779
E-mail: dpetrocelli@omm.com

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: jbowman@omm.com

Nicole M. Argentieri
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
E-mail: nargentieri@omm.com

*Attorneys for Thomas J. Barrack, Jr.*