

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

SPN:HDM/RCH/CRH
F. #2018R001309

*271 Cadman Plaza East
Brooklyn, New York 11201*

May 13, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Thomas Barrack
               Criminal Docket No. 21-371 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter to notify the Court of two additional potential conflicts involving counsel for the defendant Thomas Barrack, and to request that the Court schedule a hearing so that it may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). Specifically, the government understands that (1) Company A, which is the defendant's prior employer, is advancing legal fees to pay for the defendant's counsel in this matter; and (2) O'Melveny & Myers LLP ("OMM"), counsel for the defendant, had hired and retained a potential fact witness in the case (the "Witness") as a litigation consultant.[1]

I.    Potential Conflicts

    A.    Company A's Advancement of Legal Fees for the Defendant

      On April 29, 2022, OMM, by letter, informed the government that Company A is "advancing Mr. Barrack's defense costs in this case." Company A, through counsel, has confirmed that it is advancing legal fees pursuant to an October 25, 2021, agreement between Company A and the defendant (the "Advanced Fees Agreement"), which, in turn, references a number of prior agreements involving indemnification, employment and separation. Given that the government intends to call Company A witnesses at trial, who will be subject to cross-examination by defense counsel who are being paid by Company A, the government wants to ensure that the defendant

---

[1] On April 29, 2022, OMM, by letter, informed the government that OMM has "discontinued [the Witness's] role on the defense team."

understands this potential conflict and waives it on the record.[2] "By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107); see also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). The government respectfully submits that an inquiry like the one previously conducted by the Court related to the potential conflict arising out of the third-party fee arrangement for Grimes will be sufficient to ensure that Barrack is aware of the risks and knowingly waives conflict-free counsel on this issue.

        B.        <u>OMM's Retention of the Witness as a Litigation Consultant</u>

The Witness was an employee of the defendant's prior employer, Company A, and worked directly for and closely with Barrack during the charged indictment period. Specifically, the Witness worked as an executive assistant to Barrack during the time period of the offense conduct. The Witness also worked with the defendant Matthew Grimes, knew co-defendant and current fugitive Rashid Sultan Rashid Al-Malik Alshahhi, and was involved in several events that are at issue in this case. For example, the Witness played a role with Barrack in the planning and execution of the Presidential Inauguration of President Trump, including an event (the Chairman's Global Dinner) that is specifically mentioned in the Indictment. The Witness also assisted Barrack in the preparation of materials submitted as part of his background investigation when Barrack was being considered for a potential appointment in the Trump Administration during the relevant time period. The government anticipates that these events and materials will be presented to the jury at trial.

Prior to the unsealing of the Indictment in this case, an attorney at Paul Hastings LLP (and one of Barrack's attorneys at that time) (the "Paul Hastings Attorney"), advised the government that he also represented the Witness, and requested the opportunity to voluntarily provide certain requested materials to the government. On or about May 2, 2019, the Paul Hastings Attorney produced records to the government, and in a letter indicated that the Witness was his "client," though in the same letter, he also indicated that he was "Counsel to Thomas J. Barrack, Jr." It is the government's understanding that the Paul Hastings Attorney's representation of the Witness was paid for by Barrack.

On or about July 16, 2021, the Indictment in this matter was unsealed and Barrack was arrested. Several weeks later, in early August 2021, Barrack's then-counsel, Paul Hastings LLP (who, as noted above, also represented the Witness in this investigation), hired the Witness as a litigation consultant.[3] Paul Hastings hired the Witness as a litigation consultant notwithstanding that the Witness has no legal education, is not a lawyer, and has never previously worked as a litigation consultant. When OMM became the defendant's counsel, OMM also hired

---

[2] A potential conflict already compounded by the fact that Company A is a current client of OMM.

[3] The Witness was no longer working with Barrack or at his company by this time, and instead was working at an unrelated business venture.

2

the Witness as a litigation consultant. It is the government's understanding that the Witness was paid approximately $15,000 a month for the Witness' services and that the only matter the Witness was working on for OMM is the instant case. OMM has included the payments for the Witness in invoices submitted to Company A as legal costs. Company A raised concerns to OMM about whether the Witness' costs were reasonable and appropriate under the terms of the Advanced Fees Agreement but ultimately, after speaking with OMM, agreed to pay the Witness' costs. OMM first advised the government that it had retained the Witness as a litigation consultant on or about March 31, 2022, a few days prior to a scheduled interview of the Witness by the government.

There are two potential areas of concern that the government respectfully submits require consideration by the Court and, potentially, a waiver by Barrack. First, should the government call the Witness to testify about his/her firsthand knowledge of relevant events, individuals and communications, the nature of the Witness' relationship with Barrack is likely to be a relevant topic of examination. The Witness's post-indictment employment by Paul Hastings LLP and OMM—and the timing and nature of that employment—goes directly to the Witness's potential bias. An examination that explores this relationship could potentially involve a discussion of OMM's decision to hire the Witness as a litigation consultant given the Witness's involvement as a fact witness in the case. Indeed, New York Rule of Professional Conduct 1.7(a) prohibits representation if "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." Note 10 to the Rule explains, "[f]or example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." See United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993) (explaining that a "presumption of prejudice" to the client arises in "situations where the personal interests of the attorney and the interests of the client are in actual conflict.") Thus, the Court should inform Barrack of this potential conflict and secure his waiver if he wishes to proceed with OMM as his counsel.

Second, it is the government's understanding that the "litigation consultant" contract between OMM and the Witness was executed, on OMM's behalf, by Daniel Petrocelli, one of Barrack's current attorneys in this matter. And it is the government's understanding that Mr. Petrocelli was involved in hiring the Witness, which could, depending on how the trial progresses, make Mr. Petrocelli an unsworn witness. See United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998) (reversing conviction for failure to hold Curcio hearing to determine if defendant consented to limiting cross-examination). Thus, the defendant should be warned that it is possible that Mr. Petrocelli may be limited or precluded in any cross-examination of the Witness or ability to comment on the Witness' credibility during the trial.[4]

---

[4] In addition, there is an issue of a potential waiver of the attorney-client privilege if defense counsel elicits any information from the Witness that is derived from her employment as a litigation consultant. This is not a Curcio issue, but the government raises it with the Court as it may be implicated if the government calls the Witness to testify at trial.

3

Accordingly, the government requests that the Court appoint <u>Curcio</u> counsel[5] and hold a <u>Curcio</u> hearing on these potential conflicts.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/ Hiral D. Mehta
     Ryan C. Harris
     Samuel P. Nitze
     Hiral D. Mehta
     Craig R. Heeren
     Assistant U.S. Attorneys
     (718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:  /s/ Matthew J. McKenzie
     Matthew J. McKenzie
     Trial Attorney

---

[5] At the prior <u>Curcio</u> proceeding involving OMM, Barrack indicated that he was advised by attorney Kirk Pasich about the potential conflict related to OMM's client relationships. It is the government's understanding that Mr. Pasich was responsible for negotiating the Advanced Fees Agreement on Barrack's behalf against Company A. As reflected above, the Advanced Fees Agreement is relevant to both conflict issues here, both because it is being paid by Company A (OMM's client) and because the Witness is being paid through this arrangement. The government notes this as potentially relevant to who the Court appoints as <u>Curcio</u> counsel. See <u>United States v. Iorizzo</u>, 786 F.2d 52, 58-59 (2d Cir. 1986) (summarizing <u>Curcio</u> procedures, which includes "giv[ing] the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.").