

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

May 17, 2022

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

**VIA ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   **United States v. Thomas J. Barrack, Jr.**
      **Criminal Docket No. 1:21-CR-371-2 (BMC)**

Dear Judge Cogan:

The government's latest *Curcio* notice raises two separate issues, neither of which presents a potential conflict of interest or requires a *Curcio* hearing.

The first issue is the advancement of Mr. Barrack's legal defense costs by his former employer, Company A. That company is advancing such costs, which are subject to potential recapture in specified circumstances, pursuant to its contractual arrangements with Mr. Barrack that pre-existed the indictment in this case. Payment of a defendant's legal fees by a former employer is not unusual and occurs often in criminal cases, without the need for a *Curcio* hearing (even where other employees or former employees of the company may testify at trial). While the Court held a *Curcio* hearing to address Mr. Barrack's advancement of defense costs for Mr. Grimes, that was premised on the fact that Mr. Barrack was a co-defendant in this case. *See* Dkt. 60, at 4-5. Company A is not a party here and a *Curcio* hearing is not required based on its advancement of defense costs to Mr. Barrack.

The government also seeks a *Curcio* hearing based on defense counsel's consulting agreement with an individual the government recently claimed to be a fact witness in this case. Although the government does not come out and say it, any insinuation that counsel knowingly put a witness on the payroll to influence her testimony is, of course, completely false. The "witness" in question is Mr. Barrack's longtime executive assistant and project manager who worked with him at Company A until she left the company in 2019, and then continued to work for Mr. Barrack personally—all long before the government's indictment in this case.

As we explained to the government when it first raised this matter two months ago, defense counsel had no reason to believe she would be a witness at trial, much less a witness for the government. She was retained by Mr. Barrack's prior counsel to assist in the litigation because of her long history and experience from a decade of working with Mr. Barrack on administrative matters and managing large-scale projects. O'Melveny continued that arrangement when it replaced prior counsel. There was no indication from the government or otherwise that she would be a witness; indeed, in our investigation and preparation for trial, O'Melveny has never



interviewed her about the facts of this case.  Nevertheless, when we learned that the government sought to interview her, we proactively disclosed the consulting arrangement to the government and, despite our disagreement with the government, thereafter discontinued the consulting engagement.

No *Curcio* hearing is needed because these circumstances present no potential or actual conflict of interest.  Defense counsel acted appropriately in retaining this individual and ended the retention once the government objected and asserted she could be a trial witness.  Moreover, it remains uncertain she will be a witness; while repeatedly referring to her as a witness, the government's filing never asserts she will be called to testify at trial.

If the Court nonetheless decides to hold a *Curcio* hearing, the Court should swiftly resolve both issues by placing Mr. Barrack's waiver on the record.

I.     **Company A's Advancement of Defense Costs to Mr. Barrack Does Not Require a *Curcio* Hearing or Waiver.**

The government asserts that there is a potential conflict based on Company A's advancement of Mr. Barrack's defense costs based on several prior agreements involving indemnification, employment, and separation.  Mot. 1.

The government asserts that a *Curcio* hearing is required because the Court previously held such a hearing based on Mr. Barrack's advancement of fees for Mr. Grimes' defense costs.  *Id.* at 2.  But unlike the advancement agreement between Mr. Barrack and Mr. Grimes, the agreement between Mr. Barrack and Company A does not involve third-party advances from a co-defendant.  That agreement is instead based on a non-party's pre-existing employment obligations to Mr. Barrack, which long preceded the charges in this case.  *Contra Moreno-Godoy v. United States*, 2014 U.S. Dist. LEXIS 37576, at *7-10 (S.D.N.Y. Mar. 20, 2014) (finding defendant had knowingly and intelligently waived conflicts where co-defendant was advancing legal fees); *see also United States v. Stein*, 435 F. Supp. 2d 330, 354-55 (S.D.N.Y. 2006) ("[A]ll states have statutes addressing the indemnification of corporate directors, officers, employees, and other agents" including indemnification "for the cost of defending employment-related criminal charges").  A detailed, public inquiry into the terms and conditions of Mr. Barrack's advancement agreement with Company A serves no legitimate interest and is not necessary to ensure that Mr. Barrack receives conflict-free representation at trial.  Instead, while styled as a measure needed to *protect* Mr. Barrack, the government's repeated *Curcio* filings appear to have the *opposite* purpose, namely, seeking to interfere with and impede the counsel he has chosen to represent him in this case.  *See Wheat v. United States*, 486 U.S. 153, 164 (1988); *Stein*, 435 F. Supp. 2d at 357, n. 126 (The "rule against government interference with the defense is based on a presumption that the criminal defendant, 'after being fully informed, knows his own best interests and does not need them dictated by the State.'")

Mr. Barrack knows that Company A is advancing his defense costs and that current and/or former Company A employees may be called as witnesses at trial.  His advancement agreement with Company A, however, provides the company with no right to control the defense or direct the actions of counsel.  Mr. Barrack has been advised by independent counsel



about this arrangement and any potential implications for his defense at trial.  Nothing more is needed.[1]

### II.     The Litigation Consultant Engagement Implicates No Conflict of Interest and Therefore Requires No Waiver.

The government also asserts that defense counsel's retention of Mr. Barrack's longtime executive assistant and project manager as a litigation consultant creates a potential conflict under New York Rule of Professional Conduct 1.7.  Mot. 3.  But that rule applies only where counsel's obligations to one client conflict with its ethical obligations to another current client.  That is not the case here; the individual in question is not and has never been a client of O'Melveny.  And the fact that she once worked as an executive assistant and project manager several years ago at Company A, and later worked directly for Mr. Barrack, does not bring the government's argument within the scope of Rule 1.7.  *See, e.g., BML Group v. U.S. Pizza*, 1992 U.S. Dist. LEXIS 6855, *4-5 (E.D. Pa. May 18, 1992) (finding that even a "trusted and valued" assistant with the power to sign checks on behalf of her executive-level employer and who provided deposition testimony in the proceeding did not make the employee a "client" for the purposes of Rule 1.7(a)).

The government suggests that this individual was not an appropriate consultant because she "has no legal education, is not a lawyer, and has never previously worked as a litigation consultant."  Mot. 2.  But there is no requirement that a litigation consultant have legal training or a law degree.  *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial").  Indeed, the government routinely includes non-lawyers as part of its own litigation teams, even individuals certain to be trial witnesses (such as the case agents).

Prior legal counsel retained this individual as a consultant because she is an experienced project manager who has handled significant matters for many years with Mr. Barrack and Company A, including coordinating matters with legal counsel.  O'Melveny continued that engagement when it came into the case.  The consultant's fees have thus far been advanced by Company A as part of its advancement of Mr. Barrack's defense costs.  Contrary to the government's assertion, the company did not object to the reasonableness of these fees.  Mot. 3.  Instead, it asked for information regarding her role on the case, which was provided.  With that information, Company A agreed to pay her fees as part of Mr. Barrack's defense costs.

Finally, the government contends that the individual should not have been retained as a consultant because she is a witness in this case.  The government does not say that it actually

---

[1] If a hearing is held on this issue, there is no reason why Mr. Barrack's counsel, Kirk Pasich, who advised him regarding the advancement agreement, cannot act as *Curcio* counsel.  The government suggests that Mr. Pasich should not serve this role because he negotiated the advancement agreement, which is "relevant to both conflict issues here" (Mot. 4, n. 5) but it does not explain *why* that fact disqualifies Mr. Pasich from acting as *Curcio* counsel.  To the extent that Mr. Barrack need be advised regarding the potential impact of Company A's advancement of legal fees and costs on the performance of defense counsel at trial, Mr. Barrack believes that Mr. Pasich is well suited to provide that advice, being familiar with Mr. Barrack's views of the case as well as the specific terms of the advancement arrangement.



intends to call her as a witness at trial, nor had it previously identified her as a witness to the defense.

Instead, the government apparently contends it was obvious that she would be a witness, based on its assertion that she has worked with Mr. Barrack and Matthew Grimes, has met Rashid al Malik, and (along with many others) she assisted in coordinating logistics for events at the 2017 Presidential Inauguration and assembling information for Mr. Barrack's SF-86 application.  Mot. 2.[2]

To the contrary, defense counsel affirmatively did *not* believe she would be a witness at trial in this case:

- This individual was not substantively involved in the events at issue in this case, including the events identified in the government's *Curcio* filing.  As an executive assistant at Company A during this time period, she scheduled meetings and performed other tasks related to organizing events during the Presidential Inauguration week.  She did not, for example, have substantive discussions with the defendants or key witnesses about the facts alleged in the indictment.  Although the government has already interviewed her, even now its filing only asserts that she "played a role" in events such as the Inauguration—it has not identified anything significant about that involvement or anything that she knew about those events that would have made it apparent she would be a witness.

- In early 2019, the government served subpoenas on nearly a dozen support staff members who worked with Mr. Barrack at Company A, including this individual.  But after she and the other individuals produced documents, the government never sought testimony or an interview from her before it unsealed the indictment in July 2021.  Furthermore, the detailed July 2021 speaking indictment (and this week's superseding indictment) gave no reason to believe that the individual was a likely witness.  While the exhaustive, 109-paragraph indictment describes dozens of documents and communications, it does not directly or indirectly mention this individual or cite communications where she participated.

More than six months *after* the indictment, and with trial preparation well under way, the government for the first time sought an interview with this individual.  While defense counsel did not know why the government wanted to interview her, we nevertheless contacted the government more than a week before her interview and explained that she was a consultant for the defense.  We made clear, however, that we did not expect that her role on the defense team would interfere in any way with questions the government may have about the events alleged in the indictment.  After the government objected to the arrangement, O'Melveny discontinued the consulting relationship with her.  As before, she remains employed by Mr. Barrack.

---

[2] This falls well short of the government's own definition of "witness," which requires that the person "saw or heard the crime take place" or "have important information about the crime or the defendant."  Justice 101 Legal Terms Glossary, U.S. Dep't of Just. (May 16, 2022), https://www.justice.gov/usao/justice-101/discovery.



Where the government has refused to identify any of its witnesses, it can hardly object to defense counsel's decision to work with a consultant who was not identified as a potential witness in the case, particularly one whom defense counsel believed in good faith would not be called as a witness.  If there are individuals who the government knows will be called in its case-in-chief, it should disclose them to the defense so that any concern over contacts with these individuals is clear and can be addressed at the outset.

*          *          *

For the reasons stated above, the Court should deny the government's motion in its entirety.  In the alternative, if the Court decides to conduct another *Curcio* hearing, the Court should resolve the government's claims by placing Mr. Barrack's knowing and intelligent waiver on the record.

Respectfully submitted,


*/s/ Daniel M. Petrocelli*


Partner
of O'MELVENY & MYERS LLP