UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 1:21-cr-00371-BMC-TAM |
| v. | **NOTICE OF DEFENDANTS THOMAS J. BARRACK JR.'S AND MATTHEW GRIMES' JOINT MOTION *IN LIMINE* TO EXCLUDE GOVERNMENT EXHIBIT 509** |
| AL MALIK ALSHAHHI, et al. | |
| Defendants. | |

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, dated August 17, 2022, and all exhibits attached thereto, Defendants Thomas J. Barrack Jr. and Matthew Grimes, by their attorneys, move before the Honorable Brian M. Cogan of the United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York, for an Order granting their Joint Motion *in Limine* to Exclude Government Exhibit 509. Defendants will file both a public and an under seal version of this Motion and its exhibits pursuant to Paragraph 7 of the Protective Order, which requires that "absent prior agreement of the government or permission of the Court, Confidential Discovery Materials shall not be included in any public filing with the Court and instead shall be submitted under seal." Dkt. 27, Stipulation & Protective Order.

Dated: August 17, 2022
          New York, New York

WILLKIE FARR & GALLAGHER LLP

/S/ Michael Steven Schachter
Michael Steven Schachter
Randall Wade Jackson
Casey E. Donnelly
Steven J. Ballew
787 Seventh Avenue
New York, NY 10019-6099

O'MELVENY & MYERS LLP

Daniel M. Petrocelli (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
dpetrocelli@omm.com
(310) 553-6700 (ph)
(310) 246-6779 (fax)

mschachter@willkie.com
(212) 728-8000 (ph)
(212) 728-8111 (fax)

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
jbowman@omm.com
(213) 430-6000 (ph)
(213) 430-6407 (fax)

*Counsel for Thomas J. Barrack, Jr.*

WINSTON & STRAWN LLP

/S/ Abbe David Lowell_____
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Matthew Grimes*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 1:21-cr-00371-BMC-TAM |
| AL MALIK ALSHAHHI, et al. | |
| Defendants. | |

**DEFENDANTS THOMAS J. BARRACK'S AND MATTHEW GRIMES'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO
<u>EXCLUDE GOVERNMENT EXHIBIT 509</u>**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

ARGUMENT ...........................................................................................................6

I.     THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
INTRODUCING THE NOTES ON MR. AL MALIK'S CELL PHONE..............6

     A.     The Government Cannot Demonstrate The Existence Of A Conspiracy To
Influence U.S. Foreign Policy On Behalf Of The UAE During The Qatar
Blockade ........................................................................................................6

     B.     The Government Cannot Demonstrate That The "Statements" Found In
The "Notes" Application Of Mr. Al Malik's Cell Phone—That Were
Never Communicated To Anyone—Were "Statements" or "In
Furtherance" Of The Alleged Conspiracy ...................................................9

CONCLUSION.......................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Church of Scientology v. Comm'r,*
    83 T.C. 381 (T.C. 1984)...........................................................................9

*United States v. Adelekan,*
    567 F. Supp. 3d 459 (S.D.N.Y. 2021).................................................10

*United States v. Beech–Nut Nutrition Corp.,*
    871 F.2d 1181 (2d Cir.1989).................................................................10

*United States v. Birnbaum,*
    337 F.2d 490 (2d Cir. 1964)............................................................10, 11

*United States v. Gigante,*
    166 F.3d 75 (2d Cir. 1999).....................................................................8

*United States v. Lieberman,*
    637 F.2d 95 (2d Cir. 1980)............................................................10, 11

*United States v. Maldonado-Rivera,*
    922 F.2d 934 (2d Cir. 1990).................................................................10

*United States v. Mitchell,*
    31 F.3d 628 (8th Cir. 1994) .................................................................10

*United States v. Perez,*
    989 F.2d 1574 (10th Cir. 1993) ...........................................................10

*United States v. Rivera,*
    22 F.3d 430 (2d Cir. 1994)...................................................................12

*United States v. Russo,*
    302 F.3d 37 (2d Cir. 2002)...................................................................11

*United States v. Saneaux,*
    365 F. Supp. 2d 493 (S.D.N.Y. 2005)................................................10

*United States v. SKW Metals & Alloys, Inc.,*
    195 F.3d 83 (2d Cir. 1999)............................................................10, 12

*United States v. Tracy,*
    12 F.3d 1186 (2d Cir. 1993).............................................................7, 9

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*
    505 F. Supp. 1190 (E.D. Pa. 1990) .......................................................9

**Statutes**

18 U.S.C. § 951(d) ...................................................................................................6

**Other Authorities**

Fed. R. Evid. 801(a) ................................................................................................9

30B Wright & Miller Fed. Prac. & Proc. Evid. § 6780 (2022 ed.) ...............................10

5 Weinstein's Federal Evidence § 801.34 (2021) ........................................................11

Defendants Thomas J. Barrack and Matthew Grimes respectfully submit this memorandum of law in support of their motion *in limine* to exclude Government Exhibit ("GX") 509, which contains certain notes Mr. Al Malik, who will not be testifying, made to himself in the "Notes" application of his cell phone.

## INTRODUCTION

Counts 1 and 2 of the Superseding Indictment allege that Mr. Barrack and Mr. Grimes acted, and conspired to act, as an agent of the United Arab Emirates ("UAE"), by among other things, taking "steps to advance the United Arab Emirates' foreign policy interests by attempting to influence United States foreign policy . . . with respect to the state of Qatar" from approximately June 2017 through October 2017. (S.I. ¶ 84). A defendant's statement is admissible as evidence against a co-defendant under Federal Rule of Evidence 801(d)(2)(E) only in the limited circumstance where the defendants were "co-conspirators" and the statement in question was "in furtherance" of that conspiracy. This is an exacting standard. Despite this, the Government intends to introduce a number of out-of-court "statements" made by Mr. Barrack and Mr. Grimes's alleged co-conspirator, Mr. Al Malik, pursuant to the co-conspirator exception to the hearsay rule. In particular, the defense anticipates that the Government will seek to introduce certain notes Mr. Al Malik wrote to himself, which the Government found in the "Notes" application of his cell phone. (Ex. 1, GX 509). The Government contends, with no supporting evidence other than the *ipse dixit* of the prosecutors, that these notes "contain[] draft message[s] for United Arab Emirates Officials." (S.I. ¶ 92). There is no evidence that the sentiments Mr. Al Malik expresses in his "notes" *were ever transmitted or otherwise communicated to anyone*.

The Court should not permit the Government to introduce these hearsay statements under the co-conspirator exception for two reasons. First, the Government cannot demonstrate Mr. Barrack or Mr. Grimes engaged in a conspiracy with Mr. Al Malik to act as a foreign agent of the

UAE by attempting to "influence" U.S. foreign policy with respect to the state of Qatar during the blockade of Qatar.  Second, the Government cannot demonstrate that notes Mr. Al Malik drafted on his own phone—that were never communicated to anyone—were made "in furtherance" of the alleged conspiracy.

## **FACTUAL BACKGROUND**

Mr. Barrack is a third-generation U.S. citizen whose grandparents immigrated from the Middle East to the United States.  Mr. Barrack was the founder and CEO of a private equity and later public company with billions of dollars of assets under management all over the world, including sovereign wealth funds from across the Middle East, most notably Qatar, a nation in direct conflict with the UAE.  In that capacity, Mr. Barrack served as a fiduciary to hundreds of investors from all over the world, and as a director of various public companies, and principal of financial institutions and other highly regulated businesses.  Throughout his career, Mr. Barrack has established countless relationships with government and business leaders from around the globe.

Mr. Barrack's connections include government leaders and businessmen in the Middle East.  In fact, Mr. Barrack has done significant business with the governments and leaders of Saudi Arabia, the UAE, and Qatar.  (*See*, Ex. 2 at 8, GX 610 (Oct. 11, 2017 Washington Post Article)).  Mr. Barrack has been able to maintain connections with leaders in all three of those countries despite the fact that they are longtime enemies of one another.

Over a period of many years, the UAE accused Qatar of financing terrorism.  Qatar has denied the UAE's accusations.  This dispute continued when Donald Trump became President.  In May 2017, President Trump went to Riyadh, Saudi Arabia and met with a number of government leaders in the Middle East.  During one of these meetings, UAE leaders once again made accusations that Qatar was funding terrorists.

In June 2017, the UAE escalated tensions with Qatar when it cut off diplomatic relations and imposed a blockade. (S.I. ¶ 85). On September 20, 2017, Mr. Barrack and Mr. Al Malik (without Mr. Grimes) allegedly met in New York City. During the meeting, Mr. Barrack allegedly told Mr. Al Malik that the U.S. government was considering convening a summit at Camp David with senior government officials from the UAE, Qatar and other Middle Eastern governments to address the ongoing dispute. (S.I. ¶ 88). The Superseding Indictment alleges that Mr. Al Malik "relayed" this information to UAE officials and "indicated that he [Al Malik] did not believe a such a meeting was in the interests of the United Arab Emirates." (*Id.*).

But *no* evidence demonstrates that Mr. Al Malik, in fact, "relayed" such information to UAE officials or anything to anyone. Instead, it appears that Mr. Al Malik created a draft "note" on his cell phone, addressed to ██████ on September 22, 2017, which stated as follows:



(S.I. ¶ 89; Ex. 1 at 2 (the "September 22, 2017 Note")).

On October 11, 2017, Mr. Al Malik allegedly created another note on his cell phone that stated:



(Ex. 1 at 2 (the "October 11, 2017 Note")).

On October 13, 2017, Mr. Al Malik allegedly created a note on his cell phone that stated:



(S.I. ¶ 92; Ex. 1 at 1 (the "October 13, 2017 Note")).

On December 3, 2017, Mr. Al Malik allegedly created a note entitled ▮▮▮▮▮

which contains the following cryptic list:



(Ex. 1 at 4 (the "December 3, 2017 Note")).

On December 11, 2017, Mr. Al Malik allegedly created a note entitled ▮▮▮▮▮ which

reads:





(Ex. 1 at 4 (the "December 11, 2017 Note")).

## ARGUMENT

**I.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING THE NOTES ON MR. AL MALIK'S CELL PHONE.**

### A.   The Government Cannot Demonstrate The Existence Of A Conspiracy To Influence U.S. Foreign Policy On Behalf Of The UAE During The Qatar Blockade

Counts 1 and 2 of the Superseding Indictment allege that Mr. Barrack and Mr. Grimes acted, and conspired to act, as an agent of the United Arab Emirates ("UAE") without notifying the U.S. Attorney General in violation of 18 U.S.C. § 951. An individual is an "agent of a foreign government" within the meaning of Section 951 only if he "agrees to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d). In order to prove that Mr. Barrack and Mr. Grimes engaged in a conspiracy to act as an agent of a foreign government, the Government must prove that there existed a conspiracy whose objective was to engage in conduct subject to the direction or control of a foreign government or official.

One of the ways that Mr. Barrack and Mr. Grimes are alleged to have acted as a foreign agent is by taking "steps to advance the United Arab Emirates' foreign policy interests by attempting to influence United States foreign policy . . . with respect to the state of Qatar" from approximately June 2017 through October 2017 during the blockade of Qatar. (S.I. ¶ 84).

It appears that the Government will seek to admit the out-of-court statements in the notes from Mr. Al Malik's phone as nonhearsay under Rule 801(d)(2)(E). To admit an alleged co-conspirator's statement under that Rule, the Court must, by the preponderance of the evidence, "find (1) that there was a conspiracy, (2) that its members included the declarant and the party

against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

But the co-conspirator exception does not apply to these unsigned, unsent notes, for two reasons: (1) there is no evidence Mr. Barrack, Mr. Grimes, and Mr. Al Malik were ever engaged in a conspiracy to influence U.S. foreign policy regarding Qatar; and (2) these notes are not statements "in furtherance of" any such conspiracy. They are hearsay not subject to any exception, and the Court should exclude them from trial.

First, with respect to the September 22, 2017 Note, the October 11, 2017 Note, and the October 13, 2017 Note, there is **no evidence** that Mr. Barrack and Mr. Grimes engaged in such a conspiracy regarding Qatar or that they and Mr. Al Malik were ever in any common venture concerning Qatar. While the Superseding Indictment alleges communications between Mr. Barrack, Mr. Grimes, and Mr. Al Malik during the time period of the blockade (*see generally* S.I. ¶¶ 84-92), it does not allege any facts demonstrating that Mr. Barrack or Mr. Grimes: (i) ever followed instructions from UAE officials concerning the Qatar blockade; (ii) ever advocated to U.S. policymakers that they take any steps meant to be detrimental to Qatar regarding the blockade; or (iii) ever took **any specific action whatsoever** to intervene on behalf of the UAE during the blockade of Qatar.

That is because Mr. Barrack and Mr. Grimes never did any of those things. And the evidence cited by the Superseding Indictment itself shows it. As the article referred to in Paragraph 84 of the Superseding Indictment makes clear, Mr. Barrack had advised President Trump that he should **not** support the UAE in the dispute and should **not** get involved:

> Barrack was taken aback that the president was intervening in a regional dispute. So he did what few others in Trump's orbit have done. He told the president, in

effect, that he was wrong.  'You don't need to get involved [in the Gulf dispute],' Barrack said he told Trump.

(Ex. 2 at 1 (GX 610)).



In the criminal context, to show a conspiracy for purposes of Rule 801(d)(2)(E), "it must be a conspiracy with some specific criminal goal . . . . It is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E) in the first place." *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999) (finding clear error for trial court to admit statements under Rule 801(d)(2)(E) based only on "general conspiracy" among members of Mafia).  Here, the Government must demonstrate that Mr. Barrack, Mr. Grimes, and Mr. Al Malik had a "unity of interests stemming from a specific shared criminal task" with regards to Qatar or UAE's blockade.  But the evidence found in the Superseding Indictment itself, as well as the evidence produced from Government-led witness interviews, points instead in the other direction; that Mr.

Barrack and Mr. Al Malik were at cross-purposes in regards to the Qatar blockade, with Mr. Barrack opposed to the blockade and Mr. Al Malik opposed to any brokered resolution.  (S.I. ¶ 88).  There is no evidence of a "conspiracy" related to the Qatar blockade for the purpose of Rule 801(d)(2)(E), and the September 22, 2017 Note and the October 13, 2017 Note concerning the Qatar blockade therefore do not fall under the Rule's exceptions to the hearsay rule.

> **B.**     **The Government Cannot Demonstrate That The "Statements" From The "Notes" Application Of Mr. Al Malik's Cell Phone—That Were Never Communicated To Anyone—Were "Statements" or "In Furtherance" Of The Alleged Conspiracy**

Even where a conspiracy exists, to admit an alleged co-conspirator's out-of-court statement pursuant to Rule 801(d)(2)(E), the Court must find that the statement is a "statement" for purposes of Rule 801(a) and was made "in furtherance" of the conspiracy.  Fed. R. Ev. 801(a); *Tracy*, 12 F.3d at 1196.  The Government cannot satisfy this standard with respect to any of the notes on Mr. Al Malik's phone.  In the first place, a "statement" requires that there be an "assertion" and no assertions are made in Mr. Al Malik's notes.  The notes themselves are cryptic, and unclear as to whether Mr. Al Malik is documenting his own thoughts or assertions made from others.  That alone is disqualifying.  *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1274 (E.D. Pa. 1990) (Becker, J.) (finding that diary entries did not satisfy Rule 801(d) where it was not clear "whether [the author] was making an assertion or relating the assertion of someone else, or relating what he thought someone else said or what he thought someone else thought or what someone told him someone else said or thought").  Moreover, these personal notes were "written purely for the diarist. They were not intended for an audience." *Church of Scientology v. Comm'r*, 83 T.C. 381, 515 (T.C. 1984).   There is no evidence that Mr. Al Malik was communicating an assertion to anyone.

Additionally, courts construe the in furtherance requirement "strictly." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (collecting cases); *see also* 30B Wright & Miller Fed. Prac. & Proc. Evid. § 6780 (2022 ed.) ("Courts . . . often interpret the rule's requirements, and particularly the 'in furtherance' requirement, 'strictly.'"). A statement is not "in furtherance" of the conspiracy if it is a "mere[] narrative" of the acts of another co-conspirator. *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999); *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir.1989); *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980). Nor do "statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose" meet the "in furtherance of" standard. *Perez¸* 989 F.2d at 1578. Similarly, "statements to non-conspirators informing them of the conspiracy will generally not qualify for admission because such statements are rarely in furtherance of the conspiracy." 30B Wright & Miller Fed. Prac. & Proc. Evid. § 6780; *United States v. Mitchell*, 31 F.3d 628, 632 (8th Cir. 1994) ("A statement that simply informs a listener of the declarant's criminal activities is not made in furtherance of the conspiracy.").

"Rather, the statements must be such as to prompt the listener—who need not be a coconspirator—to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990) (citation omitted). Put differently, "[t]he touchstone of the 'in furtherance' requirement is that the statement be designed to promote the accomplishment of the conspiracy's goals. *United States v. Saneaux*, 365 F. Supp. 2d 493, 500 (S.D.N.Y. 2005); *United States v. Adelekan*, 567 F. Supp. 3d 459, 466 (S.D.N.Y. 2021) (same); *United States v. Birnbaum*, 337 F.2d 490, 495-96 (2d Cir. 1964) ("The fact that one conspirator tells another something relevant to the conspiracy does not alone make

the declaration competent; the declaration must itself be an act in furtherance of the common object; mere conversation between conspirators is not that.").

As the Second Circuit reaffirmed in *Lieberman*, "[t]he requirement that the statements have been in furtherance of the conspiracy is designed both to assure their reliability and to be consistent with the presumption that the coconspirator would have authorized them."  637 F.2d at 103 (emphasis added); *see also Birnbaum*, 337 F.2d at 495-96; 5 Weinstein's Federal Evidence § 801.34 (2021).  This exception "has its roots in the law of agency," founded on the premise that "[w]hen two persons engage jointly in a partnership for some criminal objective, the law deems them agents for one another" such that "[e]ach is deemed to have authorized the acts and declarations of the other undertaken to carry out their joint objective." *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002).

The Government cannot meet that standard for the notes on Mr. Al Malik's phone.  They are not "in furtherance of" any conspiracy for two separate reasons.

**First**, with respect to the September 22, 2017 Note, the October 11, 2017 Note, and the October 13, 2017 Note, as already detailed, Mr. Barrack, Mr. Grimes, and Mr. Al Malik were never aligned on any common approach related to the Qatar blockade. So, even if the Government could allege a conspiracy among the three, these notes—discussing the blockade—do nothing to further any purported conspiracy.  The evidence is clear:  Mr. Barrack was staunchly opposed to the Qatar blockade, a fact shown even by the evidence in the Government's Superseding Indictment and in its produced interview notes.

**Second**, with respect to all the notes on Mr. Al Malik's phone, there is no evidence these draft notes were ever (a) seen by another person other than the drafter or (b) intended to be final versions of any communication.  It is difficult to imagine how one could consider the "statements"

found in the "Notes" application of Mr. Al Malik's cell phone to have been made "in furtherance" of the alleged conspiracy.  How would "statements" that **no one but Mr. Al Malik had ever seen or heard before** "be designed to promote the accomplishment of the conspiracy's goals" or "prompt **the listener** . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity"?  "To be 'in furtherance' of a conspiracy, the statements must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy, as by, for example, providing information or reassurance to a coconspirator, seeking assistance from a coconspirator, or by communicating with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the conspiracy's goals."  *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994).  A draft note an individual makes, without forwarding to anyone, achieves none of these goals.

Even if the Government could somehow demonstrate that the statements found in the "Notes" application of Mr. Al Malik's cell phone were "relayed" to UAE government officials (which they cannot), the statements are "mere[] narrative" of acts that have already taken place. *SKW Metals & Alloys*, 195 F.3d at 88.  The statements in no way furthered any purported effort by Mr. Barrack or Mr. Grimes to advance the UAE's foreign policy interests, nor do they further any purported effort by them to influence U.S. foreign policy on the UAE's behalf.  And, any testimony concerning the statements found in the "Notes" application of Mr. Al Malik's cell phone, which would presumably be offered by the Government through an FBI agent since Mr. Al Malik is not testifying, would be highly prejudicial to Mr. Barrack and Mr. Grimes in the context of this case, because these statements would not be subject to cross-examination.

## **CONCLUSION**

The Court should grant Mr. Barrack's and Mr. Grimes' motion to exclude GX 509.

Dated: August 17, 2022
      New York, New York

WILLKIE FARR & GALLAGHER LLP      O'MELVENY & MYERS LLP

/s/ Michael Steven Schachter
Michael Steven Schachter                  Daniel M. Petrocelli (admitted *pro hac vice*)
Randall Wade Jackson                    1999 Avenue of the Stars, 8th Floor
Casey E. Donnelly                       Los Angeles, CA 90067
Steven J. Ballew                        dpetrocelli@omm.com
787 Seventh Avenue                   (310) 553-6700 (ph)
New York, NY 10019-6099           (310) 246-6779 (fax)
mschachter@willkie.com
(212) 728-8000 (ph)                   James A. Bowman (admitted *pro hac vice*)
(212) 728-8111 (fax)                  400 South Hope Street, 18th Floor
                                      Los Angeles, CA 90071
                                      jbowman@omm.com
                                      (213) 430-6000 (ph)
                                      (213) 430-6407 (fax)

*Counsel for Thomas J. Barrack, Jr.*


WINSTON & STRAWN LLP

/s/ Abbe David Lowell
Abbe David Lowell, Bar No. 358651DC      Sofia Arguello
Christopher D. Man, Bar No. 453553DC      200 Park Avenue
1901 L Street, NW                      New York, NY 10166
Washington, DC 20036              SArguello@winston.com
ADLowell@winston.com             212-294-6700 (ph)
202-282-5000 (ph)                    212-294-4700 (fax)
202-282-5100 (fax)


*Counsel for Matthew Grimes*