**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MATTHEW GRIMES AND THOMAS J. BARRACK, JR.'S JOINT MOTION *IN LIMINE* TO PRECLUDE EXPERT TESTIMONY FROM MICHAEL HIGGINS, CHRISTOPHER DAVIDSON, AND ELIOT KALTER**

WILLKIE FARR & GALLAGHER LLP

Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Steven J. Ballew
787 Seventh Avenue
New York, NY 10019-6099
mschachter@willkie.com
(212) 728-8000 (ph)
(212) 728-8111 (fax)

O'MELVENY & MYERS LLP

Daniel M. Petrocelli (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
dpetrocelli@omm.com
(310) 553-6700 (ph)
(310) 246-6779 (fax)

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
jbowman@omm.com
(213) 430-6000 (ph)
(213) 430-6407 (fax)

*Counsel for Thomas J. Barrack, Jr.*

WINSTON & STRAWN LLP

Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Matthew Grimes*

**<u>TABLE OF CONTENTS</u>**

**Page(s)**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.      THE RULES PROSCRIBE SPECIFIC REQUIREMENTS BEFORE AN EXPERT
        CAN TESTIFY ............................................................................................................ 2

II.     HIGGINS' TESTIMONY IS OFFERED FOR AN IMPROPER PURPOSE, IS
        IRRELEVANT AND HIGHLY PREJUDICIAL, AND SHOULD BE EXCLUDED....... 5

          A.      Higgins' testimony should be excluded as improper propensity or profiling
                evidence ....................................................................................................... 5

          B.      Even if offered for a proper purpose, Higgins' testimony should be
                excluded as irrelevant and prejudicial................................................... 9

III.    DAVIDSON'S TESTIMONY CONCERNING ALLEGED BAD ACTS OF THE
        UAE AND THE KSA IS IRRELEVANT AND UNDULY PREJUDICIAL AND
        SHOULD BE EXCLUDED.......................................................................................... 12

IV.    KALTER'S TESTIMONY ABOUT THE SOCIETAL HARMS POSED BY
        SOVEREIGN WEALTH FUNDS SHOULD BE EXCLUDED AS IRRELEVANT
        AND PREJUDICIAL.................................................................................................. 17

CONCLUSION...................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Hanson*,
566 F. Supp. 3d 162 (N.D.N.Y. 2021) ...............................................................4, 6, 8

*Bryant v. Milhorat*,
2013 WL 12368616 (E.D.N.Y. Sept. 30, 2013) .......................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................................................3

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) ......................................................................................2

*Kalyna v. City of N.Y.*,
2018 WL 11361019 (E.D.N.Y. Sept. 11, 2018) .......................................................3

*United States v. Aboumoussallem*,
726 F.2d 906 (2d Cir. 1984) ....................................................................................3

*United States v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008) ..................................................................................15

*United States v. Angelilli*,
660 F.2d 23 (2d Cir. 1981) ......................................................................................8

*United States v. Armstrong*,
436 F. App'x 501 (6th Cir. 2011) ...........................................................................7

*United States v. Castillo*,
924 F.2d 1227 (2d Cir. 1991) ................................................................................16

*United States v. Ekiyor*,
89 F. Supp. 3d 928 (E.D. Mich. 2015) .................................................................3, 7

*United States v. El-Mezain*,
664 F.3d 467 (5th Cir. 2011) .................................................................................15

*United States v. Elfgeeh*,
515 F.3d 100 (2d Cir. 2008) ..................................................................................15

*United States v. Gallo*,
668 F. Supp. 736 (E.D.N.Y. 1987) ........................................................................16

*United States v. Lachman*,
   48 F.3d 586 (1st Cir. 1995)................................................................11

*United States v. Mallory*,
   17-CR-154 (E.D. Va. 2018).................................................................8

*United States v. McCallum*,
   584 F.3d 471 (2d Cir. 2009)................................................................4

*United States v. Mills*,
   895 F.2d 897 (2d Cir. 1990)................................................................6

*United States v. Pitts*,
   2018 WL 1169139 (E.D.N.Y. Mar. 2, 2018)........................................2

*Wynne v. Renico*,
   606 F.3d 867 (6th Cir. 2010) .............................................................3

**Statutes**

18 U.S.C. § 3500 (Jencks Act)..............................................................8, 14

**Rules**

Fed. R. Evid. 401 .................................................................................2

Fed. R. Evid. 403 ...........................................................................3, 4, 9

Fed. R. Evid. 404 ....................................................................3, 4, 6, 7, 9

Fed. R. Evid. 406 ..............................................................................7, 8

Fed. R. Evid. 702 .................................................................................2

Fed. R. Evid. 704 .................................................................................8

**Other Authorities**

Office of the Director of National Intelligence, Assessing the Saudi Government's
   Role in the Killing of Jamal Khashoggi (Feb. 11, 2021) .....................14

Defendants Matthew Grimes and Thomas J. Barrack, Jr. move to preclude the expert testimony proposed by the government for Michael Higgins, and portions of the expert testimony proposed by the government for Christopher Davidson and Eliot Kalter.

## INTRODUCTION

At this stage of the proceedings, after reviewing discovery provided by the government and its witness list, it is clear that the prosecution does not have direct evidence of any agreement by either Mr. Barrack or Mr. Grimes to work as agents of the United Arab Emirates (UAE), nor any direct evidence that the UAE had any specific interest in recruiting Mr. Barrack or Mr. Grimes to act as Emirati "agents." There is no UAE witness listed, no apparent cooperating witness, no overheard or recorded conversations, nor any contracts with or payments to Mr. Barrack and Mr. Grimes for such services.

Instead, it appears that the government plans to fill this evidentiary chasm by trying to prove the charges in the foreign agent counts—Counts 1 and 2—through circumstantial evidence of innocent acts, which will then be deemed, by the government's paid-for, private experts, to be characteristic of unrelated actions taken by "foreign intelligence" when seeking covert United States "sources" to serve as informants to such "foreign intelligence." To buttress these improper inferences, the government plans to offer irrelevant testimony about governments and sovereign wealth funds in countries *other than* the UAE and highly inflammatory, and therefore, prejudicial testimony (*e.g.*, the killing of Jamal Khashoggi) about events that occurred well outside the relevant period of the indictment that have nothing to do with any facts at issue in this case.

Specifically, the government's notice advises that it intends to call Higgins as an expert to broadly opine on national security issues unspecific to the UAE, Davidson on the history and future of the Kingdom of Saudi Arabia (KSA) and the UAE, and Kalter on the role of sovereign wealth funds in international markets including as a means for some countries to promote their foreign

policy.  (*See* Ex. A (6/3/22 DOJ Expert Notice Ltr.), Ex. B (7/19/22 DOJ Expert Notice Ltr.), Ex. C (8/5/22 DOJ Expert Notice Ltr.).)  The government hopes that this Court will allow its experts to take the place of actual witnesses, and thereby insulate any actual witness from being confronted by the defense and subject to cross-examination.  But given the charges actually at issue in this trial and the improper scope and subject matter of the proposed testimony, the Court should exclude the testimony of Higgins in its entirety and exclude significant portions of the proposed testimony for Davidson and Kalter.

## ARGUMENT

## I.    THE RULES PROSCRIBE SPECIFIC REQUIREMENTS BEFORE AN EXPERT CAN TESTIFY

"The district court's gatekeeping function in evaluating expert testimony requires that it look to Federal Rule of Evidence 401 to determine whether the testimony is relevant." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 60 (2d Cir. 2002) (internal quotations omitted).  Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Courts must also ensure that expert testimony satisfies the requirements of Federal Rule of Evidence 702(a), which include that the testimony 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Bryant v. Milhorat*, 2013 WL 12368616, at *6 (E.D.N.Y. Sept. 30, 2013) (quoting FRE 702(a)).

These are "threshold requirement[s]." *United States v. Pitts*, 2018 WL 1169139, at *1 (E.D.N.Y. Mar. 2, 2018) (quoting Rule 702(a)).  "The Supreme Court has explained that this 'condition goes primarily to relevance' and has been described as 'fit.'" *Bryant*, 2013 WL 12368616, at *6 (citations omitted).  The question is "whether the expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual

dispute." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). In addition to determining whether there is an adequate "fit" between the expert testimony and its aid to the jury in resolving a factual dispute, "[t]he Court must also assess whether the probative value of the expert evidence is 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'" and the District Court "'[e]xercises more control over experts than over lay witnesses.'" *Kalyna v. City of N.Y.*, 2018 WL 11361019, at *5 (E.D.N.Y. Sept. 11, 2018) (quoting *Daubert*, 509 U.S. at 591); Fed. R. Evid. 403.

Separately, FRE 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Second Circuit has long recognized that this excludes evidence of prior acts by the defendant as well as non-parties. *United States v. Aboumoussallem*, 726 F.2d 906, 911–12 (2d Cir. 1984); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) ("Federal Rule 404(b) applies to all propensity evidence, whether used to show that the defendant or another individual acted in conformity with their prior misconduct.").

The primary purpose of Rule 404(b)'s prohibition is to avoid prejudice to a defendant when the prosecution seeks to use prior acts by the defendant *or others* to "persuad[e] the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial." *Aboumoussallem*, 726 F.2d at 911. Thus, evidence is not admissible whenever the prosecution seeks to introduce evidence of prior acts to support an inference that the defendant or others acted in accordance with those prior acts. *Id.*; *see also United States v. Ekiyor*, 89 F. Supp. 3d 928, 933–34 (E.D. Mich. 2015) ("404(b) evidence of other acts by a third party is inadmissible if it is offered only to support a propensity inference—that is, to suggest that it is

more likely that the third party conducted himself on another occasion in accordance with the character evidenced by the other act.").

While Rule 404(b) bars *all* propensity evidence, the Rule does permit evidence of prior acts introduced for a non-propensity purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" *as to the defendant*. Fed. R. Evid. 404(b)(2). The Second Circuit has cautioned, however, that even when used for a permitted purpose, such evidence presents a special danger of prejudice to the defense. Thus, in the Second Circuit, "[t]o determine whether to admit Rule 404(b) evidence, the court should consider whether: '(1) the prior [act] evidence [is being] 'offered for a proper purpose'; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the evidence [is] substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) [there is] an appropriate limiting instruction." *Alexander v. Hanson*, 566 F. Supp. 3d 162, 167 (N.D.N.Y. 2021) (citing *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009)). Moreover, "evidence of third-party's bad act 'is *only admissible*' against the defendant 'upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants.'" *Hanson*, 566 F. Supp. 3d at 167 (emphasis added).

As discussed further below, Higgins' proposed testimony constitutes improper propensity evidence and is also irrelevant and unfairly prejudicial. As such, it should be excluded in its entirety. Substantial portions of Davidson's and Kalter's expected testimony, such as Davidson's proposed testimony about alleged bad acts of the UAE and the KSA, and Kalter's proposed testimony about the societal harms of sovereign wealth funds, should likewise be excluded as irrelevant and prejudicial.

## II. HIGGINS' TESTIMONY IS OFFERED FOR AN IMPROPER PURPOSE, IS IRRELEVANT AND HIGHLY PREJUDICIAL, AND SHOULD BE EXCLUDED

### A. Higgins' testimony should be excluded as improper propensity or profiling evidence

The government disclosed that it intends to call Higgins to testify, among other things, about how and why unspecified, unnamed, foreign individuals from unidentified countries recruit "assets" in the United States; the type of individuals sought out as assets; and the reasons and motives for unnamed individuals to act as sources and sub-sources for foreign intelligence services. Among the opinions Higgins is prepared to give are:



- 2-3.

- "5.

- "6.

- "7.

- "8.

- "9.

- "10. ███████████████████████████████████
███████████████████████████████████

- "11. ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

(Ex. C, at 6–7 (describing Higgins' expected testimony).)

The proposed evidence is not being offered for any proper purpose. The government wants to introduce evidence of what unspecified, unnamed, foreign individuals from unidentified countries have done in the past to show how "foreign governments" generally behave when they are looking to recruit "assets" in the United States. To start with, the focus of that testimony is on non-parties. With respect to a defendant, while "Rule 404(b) permits evidence of similar acts to prove a 'signature crime,' *i.e.*, a *modus operandi*," the prior acts must be "'so nearly identical in method as to ear-mark them as the handiwork of the accused.'" *Hanson*, 566 F. Supp. 3d at 168, n.3 (citing *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990)). In contrast, this proffered expert testimony falls squarely into the category of "some people do things this way and so the people here did the same." This is classic, prohibited propensity evidence of a non-party, as well as a twist on guilt by association. Fed. R. Evid. 404. And, of course, none of this testimony about the historical intentions of foreign governments is even slightly probative of the *actual* question that the jury must decide, which involves the actions and intent of Mr. Barrack and Mr. Grimes and whether *they* agreed to act as agents of the UAE, without notice to the Attorney General.

Even if Higgins were to testify exclusively as to how UAE officials have behaved historically, that would *still* be improper propensity evidence. Its only purpose is to persuade the jury that because *other* UAE officials have interacted in certain ways with *other* persons to recruit

those *other* unrelated persons in the past, the specific UAE officials named in this indictment likewise must have been seeking to recruit Mr. Barrack and Mr. Grimes when they are alleged to have interacted with either of them. But of course, Higgins has *no idea* what the actual UAE officials named in the indictment actually thought and the actions that are described in the indictment—*e.g.*, a short business and social meeting with Mr. Barrack, who is a well-known businessman and long-time investor in the Middle East—are so innocuous and routine that no "expert" could ever credibly claim that they serve as compelling evidence into the mindset of the UAE officials at issue. *See United States v. Armstrong*, 436 F. App'x 501, 504 (6th Cir. 2011) ("[T]he prior acts he seeks to introduce are too generic. . . [D]ropping contraband, like fleeing the police, is typical of nearly every criminal (who has something to hide) and is not sufficiently 'unusual or distinctive' to constitute a signature.").

As one court explained in a case where a defendant sought to defensively introduce 404(b) evidence of what other parties did in the past:

> The Court fails to see how the information sought by Defendant could have any probative value at his trial apart from its use to support an impermissible propensity inference—namely, to suggest that because baggage handlers in other cases were accused or convicted of drug trafficking activities, it is more likely that a baggage handler is responsible in this case for the drug smuggling activity that the Government seeks to attribute to Defendant. Indeed, such a propensity inference would be particularly attenuated and inappropriate in this case because absent evidence that the *same* baggage handler charged in another case also might have been in a position to plant drugs in Defendant's luggage without his knowledge, the materials sought by Defendant from other cases would tend to show only the propensity of an entire *class* of employees in the travel industry (baggage handlers) to engage in drug trafficking activities.

*Ekiyor*, 89 F. Supp. 3d at 934. Here too, the testimony of Higgins serves as improper propensity evidence barred by Rule 404(b). Even if this evidence were probative of the UAE's intent generally, prior acts by different actors cannot be used to prove that the UAE officials at issue here committed a crime or sought to or did convince Mr. Barrack or Mr. Grimes to commit a crime.

*See Hanson*, 566 F. Supp. 3d at 168–69 ("'Rule 406 is not intended to prove guilt by association' and evidence of the 'practices of an organization is not admissible to prove the conduct of specific members of the organization.'") (citing 2 Weinstein's Fed. Evid. § 406.03[3] (2021)); *see also United States v. Angelilli*, 660 F.2d 23, 41 (2d Cir. 1981) (district court erred in admitting evidence of a custom and practice among city marshals to demand a bribe when engaging in property executions under Rule 406 against the individual defendants because "it would defy the principle of the individuality of guilt to hold that a defendant's mere membership in an organization practicing a particular type of crime could be used to show that the defendant himself committed such a crime").

It also is not clear whether the government will seek to establish guilt through some other improper theory, including by attempting to show that Mr. Barrack and Mr. Grimes must be guilty because they fit whatever profile Higgins may suggest as to recruited assets. The government provided Jencks Act material for Higgins comprising of testimony he provided in another case, *United States v. Mallory*, 17-CR-154 (E.D. Va. 2018) (*see* Ex. D (*Mallory*, Dkt. 221)), which is instructive on this point. There, Higgins provided testimony about the characteristics and motivations of a recruited spy in order to show that the defendant fit that profile and, therefore, was a recruited spy himself. (*See* Ex. D, at 911–12.) As Judge Ellis noted in striking that testimony, such profile evidence is impermissible. (*Id*. at 911–12 ("the law is clear that the use of the -- of a profile or a group of characteristics, from an expert, to draw the conclusion that the expert or that the defendant was – fits that profile and therefore the defendant is a recruited spy or source is impermissible")); *see also* Fed. R. Evid. 704 ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition

that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."). Such profiling evidence should likewise be excluded here.

### B. Even if offered for a proper purpose, Higgins' testimony should be excluded as irrelevant and prejudicial

Even if the government's proposed expert Rule 404 evidence was offered for a proper purpose, it fails the additional two requirements that (i) it be relevant and (ii) its probative value substantially outweigh its potential for unfair prejudice. *See* Fed. R. Evid. 403.

In addition to the testimony outlined above regarding foreign countries using intelligence services to " █████████████████████," the government has disclosed that it intends to call Higgins to show:

- "1. ████████████████████████████████████
  ████████████████████████

- "4. ████████████████████████████████████
  ███████████████████████████

- "7. ████████████████████████████████████
  ███████████

(Ex. C, at 6.) The government has not identified how this testimony from Higgins would be relevant, or how it would help the jury decide any factual issue before it. When coupled with the inherent possibility of juror confusion as to the actual issues in the case and the risk of prejudice that inures from testimony suggesting Mr. Barrack and Mr. Grimes are national security threats, who must have acted as agents of the UAE because of the non-contested fact that, throughout modern history, foreign governments have (like the United States), on occasion, sought covert sources in other nations, it becomes even more clear that there is no basis for allowing this testimony.

To the extent that any of these intended opinions are relevant, they are statements a jury would understand without an expert (*e.g.*, foreign countries have intelligence services or that foreign countries want to influence U.S. public opinion). Whether a foreign government is friendly or hostile, or the agent's actions are helpful or harmful to the United States, is entirely irrelevant to this case, as the government has argued that "Section 951 does not, and has never been intended, to 'require that the charged conduct involve 'espionage or traditional notions of spying and subversive activity,'" but instead "would cover *all conduct* taken on behalf of a foreign government." (Dkt. 80 at 14–15 (citations omitted; emphasis by the government).) Thus, absent an exception, the obligation to provide notice under Section 951 applies to all agents of a foreign government.

Higgins' testimony is also unfairly prejudicial because it suggests that Mr. Grimes and Mr. Barrack somehow worked with a foreign government to undermine this country's national security. Worse yet, Higgins' testimony would be presented as some sort of conspiracy theory that Mr. Barrack and Mr. Grimes cannot adequately test without being able to confront the actual foreign officials at issue. Higgins claims that (unspecified) foreign officials seek to ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Ex. C, at 6.) In other words, these unnamed foreign officials will seek out everyone and anyone for anything. (*Id.*) And, according to Higgins, ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.*) The government

mistakes this trial by a court of law for a McCarthy-like hearing. None of this is admissible; all of it is prejudicial.

The First Circuit's decision in *United States v. Lachman*, 48 F.3d 586 (1st Cir. 1995) is instructive. *Lachman* alleged a violation of an export control provision without a license. As with Section 951, there was no requirement for the government to prove that violating the export control provision posed any danger. Nevertheless, the government sought to introduce evidence to demonstrate that the unlawful export in question *could be* used by a foreign government to develop missile technology capable of delivering a nuclear weapon. The First Circuit found an "ample basis" for the exclusion of such prejudicial evidence. *Id.* at 594. As the First Circuit explained: "A jury, conscious of the risks of nuclear proliferation and of U.S. government efforts to halt it, could easily regard the defendants' alleged conduct as highly unattractive even if it turned out to be technically legal." *Id.* at 592. In addition, the Court noted the significant "potential for confusing and misleading the jury" because, "quite apart from prejudice," there was also a "risk that an undue emphasis on the end use of the exported commodities could divert the jury's attention from whether the commodity is listed and known to be so"—which were the actual issues in the case—to the question of "whether the commodity is to be used for military purposes." *Id.* at 592.

Those same concerns exist here. Higgins' testimony regarding foreign intelligence agencies who wish to harm the United States poses the same risk of prejudice that the First Circuit cautioned against in *Lachman* and could easily lead to jury confusion that results in a conviction for Mr. Barrack and Mr. Grimes simply because the jury is persuaded that all interactions between UAE officials and United States persons are somehow suspect, and harmful to America, even if technically legal.

# III. DAVIDSON'S TESTIMONY CONCERNING ALLEGED BAD ACTS OF THE UAE AND THE KSA IS IRRELEVANT AND UNDULY PREJUDICIAL AND SHOULD BE EXCLUDED

Substantial portions of Davidson's proffered testimony are irrelevant for the same reasons: they have nothing to do with whether Mr. Barrack and Mr. Grimes were agents of the UAE, but carry substantial risk of unfair prejudice, misleading the jury, and confusing the issues. Section 951 liability does not depend on whether a foreign government is an ally or a nation hostile to the United States. Yet the government intends to call Davidson (a longtime vocal critical of the UAE government) to offer negative opinions about the UAE and the KSA, and backhandedly invite the jury to conflate the two separate sovereign nations as one.

In the government's expert notice, the following were among the opinions it expected to elicit from Davidson:[1]



- "1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- "8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮
- "10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮
- "11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- 15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- "16. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Mr. Barrack and Mr. Grimes do not object to Davidson's proposed testimony as described in opinions 2 through 7, 9, 12 through 14 and 17 of the government's August 5, 2022 supplemental disclosures as to Davidson. (Ex. C, at 2–3.)

- "18. ████████████████████████████████████
  ████████████████████

  - ████████████████████████████████████
    ███████████████████████████

  - ████████████████████████████████████
    ████████████████████████████████████
    ████████████; and

  - ████████████████████████████████████
    ███████████

- "19. ████████████████████████████████████
  █████████████████████████

  - ████████████████████████████

  - ████████████████████████████████████
    ████and

  - ████████████████████████████████████
    ████████████████████████████████████

(Ex. C, at 2–3.)

Davidson's first and eighth opinions, that ████████████████████████████
████████████████████████████████████████████████████████, are both

irrelevant and unduly prejudicial. (Ex. C, at 2.) They are plainly irrelevant because Section 951 applies to agents of *any* foreign government, democratic or authoritarian, good or bad, and it is plainly prejudicial to tell the jury that Mr. Barrack and Mr. Grimes were alleged agents of a country that supposedly does not share our democratic values.

It is also entirely unclear what relevance Davidson's opinions regarding the KSA (opinion nos. 10, 11, 15, 16, and portions of 18 and 19) have in this trial. Mr. Barrack and Mr. Grimes are charged with acting as unregistered agents *of the UAE* from 2016 through 2017, not the KSA. The

government has offered no explanation for why any of this detailed testimony about the history and future *of Saudi Arabia* from 2002 through 2030 is admissible.

It is clear that the reason why the government seeks to have Davidson offer testimony about a country other than the one which the Defendants are charged with acting as an agent of is to put completely irrelevant, but highly inflammatory, testimony before the jury about Saudi Arabia, including testimony about "bad acts," such as the murder of journalist Jamal Khashoggi, which occurred more than a year after the conspiracy alleged in the indictment concluded and which has absolutely nothing to do with the charges in this case.[2] The government's attempt to seek negative expert testimony regarding Saudi Arabia opens the door for it to parade a host of alleged bad actions by KSA, which carries the risk of unfair prejudice, misleading the jury, and confusing the issues.

Indeed, the government's recent 3500 disclosures for Davidson confirm the unbounded and prejudicial scope of his intended testimony, including testimony about the



(Ex. E, at 1; Ex. F, at 1, 3.) Not only do many of these politically sensitive events post-date the relevant

---

[2] On October 2, 2018, Washington Post journalist Jamal Khashoggi was murdered in the Saudi Arabian consulate in Turkey, and U.S. intelligence subsequently concluded that KSA Crown Prince Mohammed bin Salman ordered the assassination. *See* Office of the Director of National Intelligence, Assessing the Saudi Government's Role in the Killing of Jamal Khashoggi (Feb. 11, 2021), available at https://tinyurl.com/y7dhndxr. While Khashoggi's murder has been rightly condemned by the international community, testimony about his October 2018 murder and the surrounding circumstances is not probative of any issue in a trial about whether Mr. Barrack and Mr. Grimes acted as foreign agents *of the UAE* in 2016 and 2017. The Court should therefore preclude any such testimony on this topic, whether offered by Davidson or any other witness testifying in this case.

period of the indictment, but they also all have nothing to do with whether Mr. Barrack and Mr. Grimes acted as agents of the UAE. And as for the espionage references, the government does not allege that this case has anything to do with espionage or traditional notions of spying.

Even more shocking is Davidson's eighteenth opinion, that ██████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████ (Ex. C, at 3.) The government thus seeks to tell the jury that Mr. Barrack was seeking investments from, and was allegedly an agent of, a country that assisted the horrific terrorist attacks on 9/11, which is completely false. Without a doubt, that is deeply prejudicial and again utterly irrelevant to the charges here. Mr. Barrack and Mr. Grimes have never committed, nor are they charged with, any terrorist activity. Sup. Ind. ¶¶ 113–133. As the Second Circuit has repeatedly held, "evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice." *United States v. Elfgeeh*, 515 F.3d 100, 127 (2d Cir. 2008); *United States v. Al-Moayad*, 545 F.3d 139, 165–66 (2d Cir. 2008) (same).

The Fifth Circuit, in *United States v. El-Mezain*, found error when similar testimony was admitted in a criminal trial. *See* 664 F.3d 467 (5th Cir. 2011). In *El-Mezain*, the defendants were charged with providing material support to Hamas, a designated foreign terrorist organization. The government called a former member of the National Security Council, who testified that Hamas engaged in violence that undermined United States interests in the Middle East. The Fifth Circuit held that it was error to admit this testimony:

> The Government was required to prove that the defendants provided material support to Hamas, and it therefore had to show a connection between Hamas and the defendants. The reason why the American Government wants peace in the

15

Middle East, and whether terrorist violence disrupts the peace process, does little
to establish that connection.

*Id.* at 516.

At bottom, Davidson's opinions are not aimed at educating the jury about a part of the
world that may be unfamiliar to them, but instead will be used to try to convince the jury that the
UAE and the KSA are "bad" countries, run by "bad" people, who do "bad" things, thus unfairly
prejudicing Mr. Barrack and Mr. Grimes for allegedly trying to help these "bad countries."  Mr.
Barrack and Mr. Grimes are not on trial for every wrongful action ever taken by the UAE or the
KSA and are entitled to be tried based on the government's ability to prove the allegations *against*
*them* beyond a reasonable doubt, not based on guilt by association with other governments or
individuals.  *United States v. Gallo*, 668 F. Supp. 736, 750 (E.D.N.Y. 1987) ("courts must be
scrupulous to avoid the spectre of guilt by association—or, more likely, guilt by confusion");
*United States v. Castillo*, 924 F.2d 1227, 1234 (2d Cir. 1991) (reversing conviction based on
improper guilt by association argument).  If permitted, such testimony from Davidson would not
help the jury in understanding the evidence or deciding any facts at issue, but would merely allow
the government to exploit prejudice and fears regarding countries in the Middle East, and make
Mr. Barrack's international business efforts appear to be part of shadowy foreign efforts to harm
the United States.[3]  There is no reason for a mini-trial on whether the KSA or UAE are "good"
countries or "bad" countries, as that is utterly irrelevant to any question for the jury to decide.
Moreover, the government risks reversible error for injecting this sort of prejudicial evidence into
the trial.

---

[3] This testimony is also prejudicial because Mr. Barrack is of Middle Eastern descent and Mr.
Grimes spent significant time in the Middle East with Mr. Barrack.

Accordingly, the Court should preclude Davidson from offering irrelevant and prejudicial testimony regarding the UAE and the KSA (opinion nos. 1, 8, 10, 15, 16, and the portions of 11, 18 and 19 that relate to KSA), as well as any other testimony Davidson may offer about the KSA, alleged "bad acts" by the KSA or UAE governments, or any characterizations of either country as an "authoritarian," "autocratic," or repressive regime.

## IV. KALTER'S TESTIMONY ABOUT THE SOCIETAL HARMS POSED BY SOVEREIGN WEALTH FUNDS SHOULD BE EXCLUDED AS IRRELEVANT AND PREJUDICIAL

Portions of Kalter's anticipated testimony regarding (i) the societal benefits of sovereign wealth funds, and (ii) the downsides and societal harms from such funds, should also be excluded.

The government disclosed that it intends to call Kalter to testify about, among other things, how sovereign wealth funds can be good for a society, and conversely how they can be harmful:[4]



- "4.

and

- "5.

(Ex. C, at 4–5.)  While the jury will hear some evidence about UAE sovereign wealth funds and an investment by one such fund with Colony Capital, whether such funds are positive for societies or harmful for societies is entirely irrelevant to whether Mr. Barrack or Mr. Grimes agreed to act

---

[4] Mr. Barrack and Mr. Grimes do not object to Kalter's proposed testimony as described in opinions 1 through 3 and 6 through 8 of the government's August 5, 2022 supplemental disclosures as to Kalter.  (Ex. C, at 4–5.)

as unregistered agents of the UAE.  The jury quite clearly does not need to become an expert on the history and evolution of sovereign wealth funds in the UAE and the KSA, or the related questions about whether the use of sovereign wealth funds by the UAE and the KSA is net-positive or net-negative for the societies of the United States, the UAE, or the KSA.  The jury will readily understand that foreign governments make investments through these funds; that they partner with companies, including Colony, to help them invest wisely; and that they hope to profit from those investments.

While a jury would undoubtedly learn more about sovereign wealth funds from Kalter than it already knows, it is not information that would help resolve Mr. Barrack or Mr. Grimes' guilt or innocence on these charges.  Every day, our courts hear cases involving two cars colliding, but no one offers expert testimony on the history of the automobile, the evolution of the automobile engine, and the positives and negatives that the invention of the automobile have on society.  That sort of testimony may provide the jury with a more complete understanding of a routine automobile accident, and even be fascinating, but it is not relevant in any legal sense of the term.  Moreover, such evidence reinforces the prejudice that undeniably already exists against wealthy individuals such as Mr. Barrack and a young businessman like Mr. Grimes who chose to work for Mr. Barrack.  Such testimony has nothing to do with whether Mr. Barrack or Mr. Grimes agreed to become agents of the UAE without notifying the Attorney General and should be excluded from this trial.

## CONCLUSION

For the reasons provided above, the Court should exclude the testimony of Higgins altogether and exclude irrelevant and unduly prejudicial testimony proffered by the government for Davidson and Kalter.

Dated: August 17, 2022                    Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Steven J. Ballew
787 Seventh Avenue
New York, NY 10019-6099
mschachter@willkie.com
(212) 728-8000 (ph)
(212) 728-8111 (fax)

O'MELVENY & MYERS LLP

/s/ *Daniel M. Petrocelli*
Daniel M. Petrocelli (admitted *pro hac vice*)
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
dpetrocelli@omm.com
(310) 553-6700 (ph)
(310) 246-6779 (fax)


James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
jbowman@omm.com
(213) 430-6000 (ph)
(213) 430-6407 (fax)


*Counsel for Thomas J. Barrack, Jr.*

WINSTON & STRAWN LLP

/s/ *Abbe David Lowell*
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)


*Counsel for Matthew Grimes*

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/s/ *Abbe David Lowell*
Abbe David Lowell