# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

August 26, 2022

***VIA ECF***

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     **United States v. Thomas Barrack, et al., 1:2l-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

We respectfully submit this letter on behalf of Mr. Barrack in brief response to the Government's letter sent earlier this evening regarding the empanelment of jurors. At least two misstatements in the Government's letter require a response.

First, the Government claims that "neither defendant identified the former President or any former member of the Trump Administration as a potential witness." (Gov. Let. at 4). The Government is wrong. This is also an inexplicable representation to the Court, given that the government itself has disclosed two former members of the Trump administration as witnesses and the defendants have provided written notice twice to the Government that all of the witnesses on the Government's list are individuals that the Government should be on notice that we intend to potentially call. As the Government is well aware, the defense has no burden and cannot make any final determination on the scope of the defense case before the Government rests and the Court determines if the Government has even introduced sufficient proof to move forward. Thus, putting aside which party noticed these witnesses, it is disingenuous for the Government to suggest that it is "skeptical of the defendant's claim" that key figures in the Trump Administration, or even former President Trump himself, are potential witnesses in this case. The reckless notion that the Government suggests to the Court comes down to this: the Government of the United States believes that jurors should be empaneled who have made clear that former President Trump is the *single person in the entire world* they least admire, in a trial that is almost entirely about the defendants' close contacts with the Trump Administration. For example:

- Juror 15 indicated that Trump was their "least admired" person because he is "self-centered and hatred filled and childish leadership."
- Juror 77 indicated that Trump was their "least admired" person because he is an "absolute degenerate." Juror 77 also indicated that they that have a "strong negative opinion of Saudi Arabia" because they "funded the circumstance that led to 9/11" on question 94.
- Juror 114 indicated that Trump was their "least admired" person because "no explanation needed."

- Juror 116 indicated that Trump was their "least admired" person "for using slogans and anger to change the course of history. Disregard of facts & analysis."
- Juror 119 indicated that Trump was their "least admired" person "for embarrassing our country & trying to steal an election."
- Juror 149 indicated that Trump was their "least admired" person because he is a "self serving, dangerous, entitled enabler of hatred and division."
- Juror 186 indicated that Trump was their least admired person because "he steals from the state by not filing traditional tax returns."
- Juror 213 indicated that Trump was their least admired person because he "refused to admit defeat in election, further polarization of politics since presidency."
- Juror 282 indicated that Trump was their least admired person because he is "divisive, ignorant, racist, misogynistic, and dislikable in every way."
- Juror 290 indicated that Trump was their least admired person for "stroking division and conflict, targeting marginalized groups."
- Juror 299 indicated that Trump was their least admired person because he "damaged our govt institutions." Juror 299 also indicated a "strong negative opinion" of Saudi Arabia because "the Crown Prince killed a journalist" on question 94.
- Juror 347 indicated that Trump was their least admired person because "he's a crook."
- Juror 406 indicated that Trump was their least admired person because "lack of personal integrity and disregard for democracy."

Several other jurors, including jurors 126, 263, 278, 329, and 364, explicitly indicated that they could <u>not</u> be fair and impartial in any trial concerning President Trump and/or individuals associated with him in response to question 76 of the juror questionnaire, which asked:

> This criminal trial may involve individuals and events associated with the 2016 U.S. Presidential Campaign of Donald J. Trump and the Trump Administration. Do you have any strong feelings about the 2016 U.S. Presidential Campaign of Donald J. Trump or the Trump Administration that would prevent you from being fair and impartial in a case involving individuals associated with those groups?

Some, like juror 278, answered "yes" in explicit terms, writing: "I do feel strongly that there is an ongoing effort demonstrated by [] Jan 6 to undermine democracy in the admin or associated with the campaign."

It is unclear why the government refuses to strike such clearly biased individuals from the jury in this case for cause. The government concedes that "some of these jurors may ultimately be struck for cause after additional questioning" but nevertheless insists that the Court waste time and resources to bring in jurors whose questionnaire plainly make clear that their presence on the jury would deprive Mr. Barrack of his constitutional right to a fair trial.

Second, the Government has attempted to lead the Court into error with regard to the Second Circuit's decision in *United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007). The

Government, for example, cites *Quinones*, without quotation, for the concept that "[v]oir dire ordinarily contemplates some in-person proceeding where the Court and parties can see the jurors and hear them speak." (Gov. Let. at 2, citing *Quinones*). But the Government here literally cut the Second Circuit's sentence in half, leaving off the second critical portion of the sentence and the following sentence that puts the meaning of this statement in context:

> Although *voir dire* ordinarily contemplates seeing the jurors and hearing them speak, *see generally Cardinal v. Gorczyk*, 81 F.3d 18, 20 (2d Cir. 1996) (referencing a defendant's right to "see and hear" prospective jurors during *voir dire*), **any court-supervised examination of prospective jurors is reasonably understood to be part of *voir dire*.** District courts routinely employ questionnaires to facilitate *voir dire* in a number of circumstances, *e.g.*, where a large number of prospective jurors must be screened [collecting cases].

*Quinones*, 511 F.3d at 299 (emphasis added). The Government's letter misleadingly suggests that *Quinones* indicates that use of a questionnaire to strike jurors who have indicated a clear basis is improper. The Second Circuit was getting at just the opposite. The court stated: "Defendants submit that a district court nevertheless abuses its discretion when it relies only on questionnaire responses in removing a prospective juror for cause, particularly in a capital case. We are not convinced." *Id.* at 300. The court further held that "we identify no *general* Sixth Amendment proscription on the removal of jurors for cause based on questionnaire responses." *Id.* (emphasis in original). The Court reviewed numerous situations in which Courts had appropriately used questionnaires exclusively to narrow a large jury pool. *Id.* at 299-300.

Most egregiously, the Government, in citing *Quinones*, mentions only in a footnote that *Quinones* was a death penalty case, and neglects to explain that the Court limited its suggestion that some oral voir dire be conducted to capital case. *Id.* at 301 ("Thus, simply to maximize their claim on our deference, district courts are well advised to employ some oral *voir dire* in making *Witt-Witherspoon* decisions."). Nevertheless, the Second Circuit found that *even in a capital case* there was no requirement that the court conduct oral voir dire before excusing a juror. *Id.* ("However strongly we recommend some oral *voir dire* in capital cases, we do not conclude that the procedure is constitutionally mandated."). The court observed that all that was necessary was that, even in a death penalty case, there be sufficient information in the questionnaire "to permit a trial judge to form 'a definite impression that a prospective juror would be unable to faithfully and impartially apply the law.'" *Id.* Notably, Judge Raggi's opinion for the Second Circuit instructed that a district court, in excluding jurors on the basis of questionnaire answers, need not limit itself to "express proof, such as a juror's admission to a state of mind prejudicial to a party's interest," but could also appropriately exclude a juror whose questionnaire demonstrates "implied bias," which the court defined as "bias conclusively presumed as a matter of law from circumstances **in which an average person in the position of the prospective juror would be prejudiced**." *Id.* (internal quotation marks omitted, emphasis added).

It is difficult to imagine a situation that more clearly demonstrates both express and relevant implied bias than jurors who express that President Trump is their least favorite person in the entire world. In no normal case would a juror be kept on who expressed that a key figure in the

case was their least favorite person in the world. An "average person in the position" of a juror dealing with associates of their least favorite person in the world, and facts involving such person, would be prejudiced. This is exactly the type of juror that the Second Circuit instructed could be removed even in a capital case.

That the Government wishes to actually bring in such jurors for lengthy individual questioning to try to get to the root of the psychology behind their hatred of the Trump Administration displays a focus on winning disconnected from the pursuit of justice. It is moreover reckless, as while the Court is individually questioning dozens of jurors for these reasons, they will be lingering in the jury pool and potentially tainting other jurors with opinions and information that could compromise those jurors' ability to serve. It is an unnecessary waste of time that defeats the entire purpose of the questionnaire and has no basis in law. It is particularly unnecessary because even the Government concedes there will be over 100 jurors remaining even after removing the jurors who offered disqualifying answers on the questionnaire. That is substantially more jurors than are called in for many cases, and we will have already largely addressed the most significant cause and hardship issues.

We are available at any time if the Court has additional questions.

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

/s/ Randall W. Jackson
Michael S. Schachter
Randall W. Jackson
Steven J. Ballew

O'MELVENY & MYERS LLP

Daniel M. Petrocelli
James A. Bowman

*Counsel for Defendant*
*Thomas J. Barrack, Jr.*

Cc (via ECF): Hiral D. Mehta
Nathan Daniel Reilly
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie