UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>AL MALIK ALSHAHHI, et al.,<br><br>       Defendants. | Case No.: 1:21-cr-00371-BMC-TAM |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS THOMAS J. BARRACK AND MATTHEW GRIMES IN FURTHER SUPPORT OF THEIR MOTIONS *IN LIMINE* FILED AT ECF 157-160**

# TABLE OF CONTENTS

Page

ARGUMENT ...........................................................................................................................1

    I.       The Government's Concession That It Will Not Offer Evidence Of Rashid Al Malik's Flight Should Not Preclude Defendants From Offering Evidence Of Their Lack Of Knowledge And Intent .................................................1

    II.      The Government Failed To Prove A Conspiracy Existed As A Predicate For The Co-Conspirator Statements Exception. ........................................................3

           A.      The Government Concedes That the Statements Are Testimonial and Outside the Co-Conspirator Exception to the Rule Against Hearsay ...........................................................................................................6

           B.      Limiting Instructions Are Inadequate ..........................................................7

CONCLUSION ........................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Hemphill v. New York,*
   142 S. Ct. 681 (2022)..............................................................................................7

*Jackson v. Denno,*
   378 U.S. 368 (1963)................................................................................................9

*Kirby v. United States,*
   174 U.S. 47 (1899)..................................................................................................8

*Krulewitch v. United States,*
   336 U.S. 440 (1949)................................................................................................9

*Melendez-Diaz v. Massachusetts,*
   557 U.S. 305 (2009)............................................................................................7, 8

United States v. Becker,
   502 F.3d 122 (2d Cir. 2007)...................................................................................8

United States v. Biaggi,
   909 F.2d 662 (2d Cir. 1990)...................................................................................2

United States v. Certified Envt's Servs., Inc.,
   753 F.3d 72 (2d Cir. 2014)..................................................................................1, 2

United States v. Colombo,
   909 F.2d 711 (2d Cir. 1990)...................................................................................9

United States v. Khalupsky,
   5 F.4th 279 (2d Cir. 2021) .....................................................................................4

United States v. Lipscomb,
   702 F.2d 1049 (D.C. Cir. 1983).............................................................................8

United States v. Pickney,
   85 F.3d 4 (2d Cir. 1996).........................................................................................5

United States v. Riggi,
   541 F.3d 94 (2d Cir. 2008).....................................................................................9

**Statutes**

18 U.S.C. 951(a) .........................................................................................................4

# TABLE OF AUTHORITIES

**Other Authorities**

Fed. R. Evid. 104 ............................................................................................................. 3

Defendants Thomas J. Barrack and Matthew Grimes respectfully submit this memorandum of law in further support of their motions *in limine*. (ECFs 157-160.)[1]

**ARGUMENT**

I. **The Government's Concession That It Will Not Offer Evidence Of Rashid Al Malik's Flight Should Not Preclude Defendants From Offering Evidence Of Their Lack Of Knowledge And Intent**

The Government represents that it does not intend to argue at trial that Rashid Al Malik is a fugitive, that he fled to avoid prosecution, or that his flight is evidence of Mr. Barrack's and Mr. Grimes's guilt. (ECF 176 at 1-2.) Based on this this representation, the Court should grant as unopposed Defendants' motion *in limine* on this issue. (ECF 157-158 (the "Flight Motion").)

The Government, however, points to the cases cited in Defendant's Flight Motion involving instances of a *defendant* attempting to introduce evidence of their co-defendant's flight, and "requests that the Court likewise exclude any evidence or argument by either defendant *comparing* Al Malik's flight to their own actions after the conspiracy, such as arguments that their appearance at trial, at law enforcement interviews or at grand jury proceedings is probative of lack of criminal intent." (ECF 176 at 3 (emphasis added).)[2] The Government failed to cite a single case or Rule of Evidence in support of this sweeping "request." Nor could it. It is axiomatic that a criminal defendant is entitled to present evidence of his good faith or lack of the requisite criminal intent. *See, e.g.*, *United States v. Certified Envt's Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014)

---

[1] To avoid burdening the Court with unnecessary duplication, Defendants will address the Government's arguments concerning the admissibility of GX 509 and notes on Al Malik's phone in its forthcoming opposition to the Government's motions *in limine* (ECF 168, 169) instead of a reply in support of their motion *in limine* to exclude them (162, 163).

[2] The Government intends to offer into evidence Al Malik's travel records in and out of the United States during the time period alleged in the Superseding Indictment to establish that he acted "in the United States" during that time period. Defendants are willing to stipulate as to the dates that Al Malik was present in the United States to make the trial more efficient.

("*CES*") (reversing convictions where district court improperly excluded evidence of various statements and acts of defendants that went to their good faith and lack of criminal intent). In *CES*, the Second Circuit observed: "While evidentiary rulings are reviewed for abuse of discretion, the question of the defendants' intent and good faith was a contested issue in this case, and the definition of relevance under Fed. R. Evid. 401 is very broad." *Id.* at 90. Here, the Government failed to identify any relevant precedent supporting the preclusion of *any* arguments regarding the Defendants' participation in interviews and grand jury proceedings. The Government's position is illogical, as a jury can find Defendants' cooperative participation in interviews and proceedings probative of innocence.

Indeed, the Second Circuit has held that it is error to preclude a defendant from offering "evidence of an innocent state of mind," such as "rejection of an opportunity to preclude all exposure to a conviction and its consequences." *United States v. Biaggi*, 909 F.2d 662, 691 (2d Cir. 1990) (finding error in precluding defendant from offering evidence that he rejected an offer of immunity). Here, Defendants voluntarily subjected themselves to law enforcement interviews, and, in the case of Mr. Grimes, a grand jury proceeding—without requesting immunity—when they were under no obligation to speak.[3] They cooperated with law enforcement for years before becoming aware that they were targets of a criminal prosecution. And, by doing so, they knowingly and voluntarily exposed themselves to perjury and false statements charges if they lied. The defense is entitled to argue what inferences should be drawn from these actions, and it is

---

[3] The Government even designated portions of Mr. Grimes grand jury appearances for admission at the trial (*see* ECF 168, 169), in which it intends to inform the jury that Mr. Grimes was subpoenaed without explaining he never sought any immunity or that he also voluntarily agreed to a multi-hour interview and a second grand jury appearance. The jury should know the context in which Mr. Grimes appeared before the grand jury.

relevant regardless of Al Malik's status as a purported fugitive.[4]

##    II. The Government Failed To Prove A Conspiracy Existed As A Predicate For The Co-Conspirator Statements Exception.

The Government confuses the pleading standard to withstand a motion to dismiss with its burden of proving by a preponderance of the evidence that a conspiracy actually existed for purposes of invoking the co-conspirator hearsay exception. The Government is mistaken in claiming that Defendants seek to relitigate this Court's decision that the Government met its pleading standard. Rather, Defendants argue that the Government must do more than plead a conspiracy, it must prove a conspiracy to invoke the co-conspirator hearsay exception. (ECF 176 at 6; *see* FRE 104.) As the Government itself recognizes, to admit statements under Rule 801(d)(2)(E), a court must find by a preponderance of the evidence that (i) "there was a conspiracy;" (ii) "its members included the declarant and the party against whom the statement is offered;" and (iii) "the statement was made during the course of and in furtherance of the conspiracy." (ECF 176 at 4) (quoting *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014)). The Government, however, cannot show a Section 951 conspiracy by a preponderance of the evidence because it cannot demonstrate that any alleged co-conspirator declarant knew of any other co-conspirator's obligation and then failure to notify the Attorney General of their status as an agent. As this Court already found, demonstrating such knowledge is required to prove the existence of the co-conspirator declarant's willful participation in a Section 951 conspiracy. (ECF 160 at 14.) To prove a conspiracy, the Government must "show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United*

---

[4] Importantly, Defendants sought to exclude evidence of Al Malik's alleged flight from trial in the first place. So, while the Government has yet to present its case, it is counterintuitive that Defendants would seek to "compare" their actions to Al Malik's alleged flight, and Defendants do not currently anticipate doing so.

*States v. Khalupsky*, 5 F.4th 279, 288 (2d Cir. 2021) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)).  The "common goal," or object of the conspiracy, in this case, would be violation of Section 951.  A person violates Section 951 when he "acts in the United States as an agent of a foreign government without prior notification to the Attorney General."  18 U.S.C. 951(a).  Thus, to participate in a conspiracy to violate Section 951, the conspirators must have knowingly and intentionally agreed to participate in a scheme, the object of which was to act in the United States as an agent of a foreign government *without prior notification to the Attorney General*.  Knowledge of the failure to notify the Attorney General is a core component of the conspiracy's object.

The Government is incorrect when it argues that defendants are trying to "import FARA's requirement that a defendant know about the existence of the 'registration requirement' into Section 951, which does not require such knowledge."  While this Court has found that a substantive violation of Section 951 does not require a defendant to know of the duty to give notice to the Attorney General, this Court also stated that the Government has a higher burden with respect to its aiding and abetting and conspiracy counts.  To aid and abet someone in committing a crime, or conspiring to do so, this Court already has found that such a defendant act with specific intent, knowing of the underlying crime they are alleged to help commit.  (ECF 160 at 14.)

Even under its more cramped view of intent, the Government acknowledges that knowledge of the failure to notify the Attorney General is necessary to support a substantive Section 951 conviction, so it also would be necessary to prove a Section 951 conspiracy (or aiding and abetting).  To the extent that the Government argues that the statements of an alleged co-conspirator, like ▮▮▮▮▮▮▮▮▮▮ (a supposed UAE official referenced in the Superseding Indictment) were made in furtherance of the charged conspiracy, the Government must show that

▓▓▓ knowingly and intentionally conspired to violate Section 951, which means that ▓ ▓▓▓ must have known that he or one of his co-conspirators intended to act as a foreign agent in the United States without providing notice to the Attorney General. Without proving that ▓▓▓ knew that none of his co-conspirators intended to notify the Attorney General, the Government would fail to prove that ▓▓▓ agreed to violate Section 951.

The Government's argument that "even if *no* member of the conspiracy . . . .*ever* acted in the United States as a foreign agent without notifying the Attorney General, a jury could nonetheless convict the Defendants . . . if they agreed to commit the substantive offense" misses the point. (ECF 176 at 9.) "Although the government need not prove commission of the substantive offense or even that the conspirators knew all the details of the conspiracy it must prove that the intended future conduct they . . . agreed upon include[s] all the elements of the substantive crime." *United States v. Pickney*, 85 F.3d 4, 8 (2d Cir. 1996). As described above, the Court has already ruled that the *mens rea* element of Section 951 requires a defendant to know that he did not provide notice to the Attorney General. (ECF 166 at 5.) For someone to join the alleged conspiracy, that person would need to know that at least one of his alleged co-conspirators intended to act as an agent of a foreign government while in the United States without providing prior notice to the Attorney General.

The Government does not contend that it has any evidence that the co-conspirators whose statements it intends to offer as evidence under Rule 801(d)(2)(E) had any knowledge of the defendants'—or anyone else's—failure to provide notice to the Attorney General or their intent to do so. Instead, the Government argues that "Defendants themselves knew they had not provided any prior notification to the Attorney General" and that, "[e]ven if the Defendants knew that no other members of the conspiracy intended to act in the United States as agents of the UAE without

notifying the Attorney General, they could still be convicted of the conspiracy charged in Count Two." (ECF 176 at 10.) But the defendants are not arguing that the Court should preclude the use of *their own* statements at trial. Defendants are arguing that the Government should be precluded from offering the hearsay statements of supposed co-conspirators it cannot prove had any knowledge of defendants' alleged failure to provide notice to the Attorney General.

### III. The Court Should Preclude The Use Of Mr. Barrack's Statements To Law Enforcement Against Mr. Grimes.

#### A. The Government Concedes That the Statements Are Testimonial and Outside the Co-Conspirator Exception to the Rule Against Hearsay.

The Government's response to Mr. Grimes' Confrontation Clause challenge to the admission of Mr. Barrack's statements to law enforcement is deeply misguided. The Confrontation Clause applies only to statements that are testimonial, and the Government does not deny the obvious point that Mr. Barrack's statements to law enforcement are plainly testimonial. (ECF 160 at 3.) The Government is correct that Mr. Barrack's own statements are admissible against *Mr. Barrack* because they are an opposing party's statement. (ECF 177 at 21 (citing FRE 801(d)(2)(A).) But the Government does not offer any theory for why Mr. Barrack's testimonial statements could overcome the Confrontation Clause bar to be admissible against *Mr. Grimes*.

The Government muses over whether such statements could be admissible under the co-conspirator hearsay exception, but then the Government abandons any such claim explaining: "Grimes's argument also assumes erroneously that the Government is admitting the June 2019 Statements based on the hearsay exception for co-conspirator statements. That is incorrect. The Government will admit the June 2019 Statements as non-hearsay statements of a party opponent." (*Id.*). Under this theory, the statements could only be used against Mr. Barrack.

### B. Limiting Instructions Are Inadequate

The Government suggests that it can introduce Mr. Barrack's statements to law enforcement because it is not seeking to admit any of his statements "that reference Grimes," it will seek a limiting instruction for this evidence to be considered only against Mr. Barrack, and redactions can be made where necessary. (ECF 177 at 21–22.) While Mr. Grimes appreciates the Government's proposed efforts to mitigate the harm to him, plainly the path that would best avoid any prejudice to him would be to exclude Mr. Barrack's statements altogether. The Government can introduce Mr. Barrack's statements against him *and* preserve Mr. Grimes' Confrontation Clause rights by simply severing the trials.

Despite the Government's repeated protest that a joint trial is more efficient and best serves its interests, the Supreme Court recently reminded us that it "has not allowed such considerations to override the rights the Constitution confers upon criminal defendants." *Hemphill v. New York*, 142 S. Ct. 681, 693 (2022). The Government's proposed solution here is imperfect. As the Supreme Court explained, the Sixth "Amendment contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former; the defendant *may* call the latter. Contrary to [the Government's] assertion, there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313–14 (2009).

Although Mr. Barrack's testimonial statements at issue do not appear to involve a *Bruton* situation, where one defendant's confession directly implicates another defendant in a "we did it together" sort of way, that is not the only sort of Confrontation Clause violation. In *Melendez-Diaz*, the Supreme Court explained that "[i]t is often, indeed perhaps usually, the case that an adverse witness's testimony, taken alone, will not suffice to convict. Yet [the Government] fails to cite a single case in which such testimony was admitted absent a defendant's opportunity to

cross-examine." *Id.* at 314. The Court added that "such a holding would be contrary to longstanding case law." *Id.* (citing *Kirby v. United States*, 174 U.S. 47, 53–55 (1899)). The Court noted that it overturned the conviction for receiving stolen property in *Kirby* because the Government introduced "the records of conviction of three individuals who were found guilty of stealing the relevant property. Though this evidence proved only that the property was stolen, and not that Kirby received it, the Court nevertheless ruled that admission of the records violated Kirby's rights under the Confrontation Clause." *Id.* It does not matter here, any more than it did in *Kirby*, that the admitted statements do not implicate the defendant (here Mr. Grimes) by name.

In previous filings, Mr. Grimes has pointed out the Government's tactic of lumping Mr. Barrack, Mr. Grimes, and Mr. Al-Malik together by alleging that "the Defendants" did something or the other. Because of that, "it would be 'quixotic' to expect jurors to follow" limiting instructions that seek to decouple them for purposes of this particular evidence. *United States v. Becker*, 502 F.3d 122, 133 (2d Cir. 2007). The Government maintains that Mr. Barrack lied repeatedly to the Government, which it claims is proof that Mr. Barrack was conscious of wrongdoing with respect to the charged Section 951 offense—the very same offense that the Government alleges that Mr. Grimes aided and abetted Mr. Barrack in committing (as well as conspiring to commit and committing in his own right). But this evidence will be used against Mr. Grimes, too.

"[L]imiting instructions of this type require the jury to perform 'a mental gymnastic which is beyond, not only their powers, but anybody's else.'" *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc) (quoting *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (L. Hand, J.)). The Second Circuit explains: "While we ordinarily 'presume that juries follow limiting instructions,' it is inappropriate to do so 'where the prejudicial spillover was so

overwhelming, they cannot be presumed to be effective.'" *United States v. Riggi*, 541 F.3d 94, 104 (2d Cir. 2008) (quoting *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001)); *see United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (explaining that background facts can be difficult for a jury to ignore and holding the court's limiting instructions insufficient). That is certainly the case here and it illustrates Justice Jackson's point: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, [] all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 443 (1949) (Jackson, J., concurring); *see also Jackson v. Denno*, 378 U.S. 368, 388 n.15 (1963).

The Government does not suffer under this naive assumption—it knows all too well that this spillover prejudice is a consequence of a joint trial—but this is a foreseeable problem and one that can be addressed now. The Government must take the bitter with the sweet. If the Government wants the efficiency of a joint trial, it needs to accept that it cannot offer evidence at trial that offends Mr. Grimes' Confrontation Clause rights. Conversely, it can server the trials and offer whatever evidence it can fairly introduce against either Defendant in their own separate trials. Mr. Grimes should not pay the price for the government's strategic decision.[5]

## **CONCLUSION**

The Court should grant Mr. Barrack's and Mr. Grimes' pending motions *in limine*.

---

[5] The Government's intended use of Mr. Grimes's grand jury testimony in a joint trial with Mr. Barrack will be addressed in the Defendants' forthcoming opposition of the Government's motions *in* limine. If the Court does not grant the pending motion to sever the two defendants in this case and intends to allow the introduction of testimonial statements of one defendant as admissions to that defendant, Mr. Barrack and Mr. Grimes reserve the right to then address if any limiting instruction or redaction and substitution are adequate.

Dated: New York, New York
September 2, 2022

**WILLKIE FARR & GALLAGHER LLP**
By: /s/ Michael S. Schachter
Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Steven J. Ballew
Jordan D. Reisch
787 Seventh Avenue
New York, New York 10019
Phone: (212) 728-8000
Email: mschachter@willkie.com

*Attorneys for Defendant Thomas J. Barrack, Jr.*

**O'MELVENY & MYERS LLP**
/s/ James A. Bowman
James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
E-mail: jbowman@omm.com

WINSTON & STRAWN LLP

By: /s/ Abbe Davis Lowell
Abbe David Lowell, Bar No. 358651DC
Christopher D. Man, Bar No. 453553DC
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Attorneys for Defendant Matthew Grimes*