UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        PLAINTIFF,

V.

AL MALIK ALSHAHHI, ET AL.,

        DEFENDANTS.

CASE NO.: 1:21-CR-00371-BMC-TAM

**REPLY IN SUPPORT OF NON-PARTY ALISON MARCKSTADT'S
MOTION TO QUASH RULE 17(C) SUBPOENA**

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | The Government Improperly Seeks Privileged Documents | 2 |
| II. | The Government Cannot Subpoena Ms. Marckstadt To Correct Deficiencies In Its Investigation | 5 |
| III. | The Government Cannot Use Its Subpoena To Obtain Impeachment Material | 7 |
| IV. | The Government Fails To Meet Its Burden Under *Nixon* | 8 |
| V. | At Minimum, The Government's Requests Should Be Time-Limited | 13 |

The government does not dispute the essential facts that render its subpoena of Alison Marckstadt improper: less than three weeks before trial, it served her with a subpoena seeking twelve broad categories of documents from a six-year period—even though she is an individual non-party who has served as a consultant to the defense team. As explained in detail in the Motion, these twelve requests each fail to meet *Nixon*'s exacting relevancy, specificity, and admissibility requirements. The Court should grant the motion to quash on this basis alone. In addition, there are specific reasons why the government's trial subpoena is flawed and the Court's intervention is needed.

First, the government is improperly targeting numerous privileged documents and communications from the time period when Ms. Marckstadt worked as a consultant for Mr. Barrack's criminal defense counsel in this case. The government offers no support for its attempt to obtain the communications of the defense camp. Moreover, its suggestion that Ms. Marckstadt—an individual, non-party—log potentially hundreds or even thousands of communications for review by the parties and the Court for privilege is unduly burdensome and impractical on the eve of trial.

Second, during its pre-indictment investigation, the government issued a subpoena to Ms. Marckstadt that it adjourned and then later agreed to dramatically narrow as part of her voluntary production of documents. Now, the government seeks a do-over of its investigation by improperly attempting to revive, years later, the full scope of its long-expired grand jury subpoena. This is at odds with the limited scope of Rule 17(c) and *Nixon* and should be rejected.

Third, the government admits that its requests seek material to impeach Ms. Marckstadt, who the government has listed as its own witness for this trial, even though a Rule 17 subpoena cannot be used to obtain impeachment material.

1

Fourth, although the government concedes that it bears the burden as the proponent of the subpoena, each of its subpoena requests fail to meet the *Nixon* standard.

Finally, if the subpoena is not quashed altogether, the government's requests should at a minimum be time-limited to 2016 to 2018, the period at issue in the superseding indictment, consistent with the Court's ruling on other Rule 17 subpoenas in this case.

### I. The Government Improperly Seeks Privileged Documents

The government does not dispute that communications it seeks will include privileged communications or attorney work product. (*See* ECF No. 200 at 18.) Nor could it: it seeks documents through the present—i.e., including the time period after Mr. Barrack was charged—from an individual who it knows the defense retained as a privileged consultant, *long before* the government ever raised the possibility of calling her as a witness.

The government tries to justify this intrusion into the defense team by claiming that the decision to retain Ms. Marckstadt was somehow improper, and thus any claim of privilege cannot be used to defeat the subpoena. (*See id.*)

The government's accusation is false. Ms. Marckstadt was retained in August 2021—many months before the government sought to interview her in early 2022. And there is no basis to suggest that she was retained by two separate law firms to influence her testimony, as the government recklessly suggests, rather than to benefit from her skills and experience. As she told the government in her April 2022 interview, Ms. Marckstadt's work with the defense team included research, strategy, and media engagement—all standard tasks for a litigation consultant. For this work, she was paid in a manner consistent with her monthly salary at the time she left Colony in 2019 and what she received from Mr. Barrack for other ongoing consulting projects; it is also in line with the compensation she receives from her other clients. This is not the first time

the government has sought to raise doubts about this arrangement; when the government suggested (through a *Curcio* filing) that it could impeach Ms. Marckstadt if she were called as a witness in light of her arrangement with the defense, the Court noted that this potential conflict was "pretty esoteric" and "a far unlikely conflict." (ECF No. 186-8 [Mot. Ex. F] at 4.)

The government is wrong when it claims that the defense kept Ms. Marckstadt's role a "secret." (*See* ECF No. 200 at 8.) Defense counsel does not typically disclose to the government the consultants it retains to assist with the defense of the case (nor does the government for that matter). Regardless, Mr. Barrack's counsel disclosed her role months before trial, and the government discussed that role at length during her April 7, 2022 interview. (*See* ECF No. 186-1 at 4.)

The government also overstates Ms. Marckstadt's prior work for Colony and Mr. Barrack. As she explained in her April 2022 interview, she was never "Chief of Staff" to Mr. Barrack or at Colony (*see* ECF No. 200 at 3); she was an executive assistant and project manager. And she was never involved in any Colony deals, never traveled to the Middle East, and never participated in any meetings with UAE officials.

The government's authority does not salvage its arguments. (*See* ECF No. 200 at 18-19.) *New York v. Solvent Chemical Co.*, 166 F.R.D. 284 (W.D.N.Y. 1996), is factually and legally distinguishable: as to the facts, the cooperation of someone "likely to be a hostile witness" was "secured by means of financial inducements or the equivalent," including settling a lawsuit against the consultant and agreeing to indemnify him in future litigation. *Id.* at 290. And the witness was retained as a consultant only "*after* the service of a deposition subpoena by other interested parties." *Id.* at 291 (emphasis added). None of the facts suggesting impropriety in that case exist here where Ms. Marckstadt has a long history of serving as a project manager and consultant to

Mr. Barrack, and where she was retained before the government ever expressed an interest in interviewing her. As to the law, the limited holding in that case related to whether the individual's consulting agreement and materials related to the retention were covered by work-product privilege. *Id.* at 289. It does not support the government's sweeping suggestion here that there could be no attorney-client privilege or work product protection over the substantive work and attorney communications that Ms. Marckstadt was involved with through her work as a consultant. The case also speaks ***approvingly*** of compensation, finding "nothing improper in the reimbursement of expenses incurred by [the witness] in travelling to New York to provide [a party] with factual information, or in the payment of a reasonable hourly fee for [his] time." *Id.* at 289.

Finally, *in camera* review is not a viable way to deal with the government's request for privileged documents. Ms. Marckstadt has access to and was copied on numerous documents and emails with counsel. As part of the defense team, she was included on or received nearly all strategy emails between counsel and Mr. Barrack. Simply logging these communications and providing them for *in camera* review by the Court will be extremely time-consuming—and will have to occur in the middle of trial.

The government's other authority (*see* ECF No. 200 at 19-20), is not to the contrary. As to *United States v. Yudong Zhu*, 2014 WL 5366107 (S.D.N.Y. Oct. 14, 2014), the proponent of the subpoena there identified specific documents—notes and memoranda—related to one interview of the defendant, which was a manageable set of documents to be reviewed *in camera*. *Id.* at *3. Similarly, in *United States v. Carollo*, 2012 WL 1195194 (S.D.N.Y. Apr. 9, 2012), the court had already determined that requests were for a discrete number of documents. *Id.* at *2-3. Here, the government is requesting hundreds or even thousands of documents that it knows are privileged and demanding that Ms. Marckstadt log them or else burden the Court with an in camera review

4

of each of them. Doing so would risk postponing the trial, as such an effort will require many hours of time from the parties, the Court, and Ms. Marckstadt.

## II. The Government Cannot Subpoena Ms. Marckstadt To Correct Deficiencies In Its Investigation

The August 2022 trial subpoena demands the production of documents responsive to a grand jury subpoena issued years before the indictments in this case. (*See* ECF No. 186-3 [Mot. Ex. A] at Request 1.) The government flippantly suggests that this is an easy task (*see* ECF No. 200 at 15-16), but it ignores both the breadth of the prior subpoena and its voluntary decision to narrow the scope of its earlier document requests. In reversing course, the government would have Ms. Marckstadt start searching her records from scratch—including the imaging of devices—to re-do a request the government abandoned years earlier, only now with mere days to go before trial.

This approach is improper, especially given that the government has had three prior bites at this apple and refused to take them.

First, after the government subpoenaed Ms. Marckstadt in 2019, it agreed not to enforce the subpoena, and then agreed that she would voluntarily produce materials in response to significantly narrowed search terms. (Ex. J.) The government's opposition entirely ignores the fact that it voluntarily agreed to significantly narrow the scope of its original requests in the 2019 subpoena. Among other things, the government agreed to limit the production from Ms. Marckstadt to (1) specific, agreed-upon terms, and (2) emails related to specific agreed-upon topics. (*Id.*) Because the government agreed to dramatically narrow the scope of the original subpoena requests, Ms. Marckstadt cannot, as the government asserts in opposition, simply state that she has no additional documents to produce. (ECF 200 at 16.) Rather, by attempting to now

5

revive the broad subpoena it had voluntarily abandoned, the government is imposing an unreasonable burden on her to search for additional records with only days to go before trial.

Second, in February 2022, the government issued a grand jury subpoena to Ms. Marckstadt ***with no document requests***. (*See* Ex. K.)

Third, in June 2022, the government issued a trial subpoena ***with no document requests.*** **(**Ex. L.**)** In other words, the government had an opportunity to make document requests to her repeatedly, and as recently as three months ago, it declined to do so. Its decision to issue such broad requests ***now***, on the eve of trial, shows that the main purpose of the latest Rule 17 subpoena was not to seek specific admissible evidence, but rather to coerce Ms. Marckstadt to agree to another interview with the government. And the government is laser-focused on Ms. Marckstadt for a reason: because she has been on the defense's privileged communications, she holds the keys to the defense strategy. Seeking to twist her arm into disclosing that strategy in a government interview is entirely inappropriate.[1]

Even setting aside the coercive nature of the government's approach, the government cites no case or other authority showing that it should be allowed to resurrect an expired grand jury subpoena, yet its current subpoena improperly seeks to do exactly that. In fact, Request 1 expressly asks for all documents responsive to the 2019 grand jury subpoena, and Request 3 contains similar language. (*See* ECF No. 186-3 [Mot. Ex. A] at Requests 1, 3.) These requests were extremely broad and sought, among other things "all documents" related to the 2016 Presidential campaign,

---

[1] The government's characterization of its communications with counsel about securing purportedly "voluntary" interviews from witnesses is flat wrong. (*See* ECF No. 200 at 21-24.) These emails speak for themselves, and they need not be repeated here. (*See* ECF No. 186-1 at 5-6, ECF No. 186-10.) In short, these communications demonstrate that while the specific adverse consequences threatened by the government may have shifted over time, the fact that Ms. Marckstadt and other witnesses would be penalized in some fashion for not agreeing to meet with the government was consistent.

the inauguration, and communications with any U.S. agency or official. (*Id.*) But the government no longer has a grand jury, and previously agreed not to enforce the earlier subpoena. (*See* ECF No. 200 at 5.) To allow the government to use a Rule 17(c) trial subpoena to revive an expired grand jury subpoena ***that it agreed to not enforce*** turns the limited scope of Rule 17(c) on its head. The government made a choice to limit the documents sought in 2019 and it cannot now use a trial subpoena to take back its earlier action.

### III. The Government Cannot Use Its Subpoena To Obtain Impeachment Material

The government acknowledges that the only purpose for documents requested by Requests 9-12 is impeachment. As explained in the Motion, that is not a proper purpose for Rule 17(c) subpoenas. (*See* ECF No. 186-1 at 14-15.) The government tries to distinguish that authority on the theory that its subpoena seeks materials related to "bias" rather than "impeachment." But that is mincing words; bias *is* a form of impeachment, and the government fails to explain how any of the purportedly impeaching materials would be admissible at trial. None of the cases cited by the government, (*see* ECF No. 200 at n.8), relate to Rule 17(c) subpoenas. In fact, one of the cases cited by the government elsewhere in the opposition, *United States v. Skelos*, 2018 WL 2254538 (S.D.N.Y. May 17, 2018), specifically states:

> Evidence showing a witness's motive to cooperate, showing bias, or containing prior inconsistent statements, however, does not become relevant until the witness testifies. For this reason, many courts have held that production of impeaching evidence pursuant to Rule 17(c) is not required until after the witness testifies.

*Id.* at *2. Nor does it make sense that the government would seek impeachment material for someone ***who it has identified*** as its own witness. Where the government cannot even confirm whether it will call Ms. Marckstadt as a witnes*s* (after three years of investigation, a voluntary document production, one year after indictment, following a four-hour interview, and a week

7

before trial), and where a Rule 17(c) subpoena cannot be used to gather impeachment material, the burden on Ms. Marckstadt and the intrusion into the defense is not warranted.

## IV. The Government Fails To Meet Its Burden Under *Nixon*

While propounding twelve separate requests, the government has only purported to defend a subset of these requests (Requests 1-8) under the *Nixon* standard. (*See* ECF No. 200 at 10-20.) Even setting aside all the problems with the government's subpoena discussed above, the Court should grant the motion to quash because the government fails to meet its burden of demonstrating that these requests seek specific, relevant, and admissible materials, as required by *Nixon*. (*See* ECF No. 186-1 at 8-10 (outlining standard).)

The government relies on two main assertions in its effort to satisfy the *Nixon* standard: (1) Ms. Marckstadt was "personally involved in the events and conduct at issue," (not so, as discussed above), and (2) she previously "produced records responsive to these requests on a voluntary basis" from her personal email account. (ECF No. 200 at 10; *see id.* at 15 (adding the claim that Ms. Marckstadt "continued to discuss the criminal case with Barrack").) These assertions are incorrect and, as explained below, are insufficient to meet the government's burden.

First, the government provides no support for the proposition that, simply because Ms. Marckstadt has produced documents in the past, its new requests are excused from *Nixon*'s exacting specificity requirements. Indeed, the rule is to the contrary. *See United States v. Bergstein*, 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017) ("[T]he proponent of a Rule 17(c) subpoena may have reason to believe certain materials exist, but the proponent must still specifically identify the materials [the proponent] is seeking to bear out his [or her] suspicions under Rule 17(c).") (internal quotation marks omitted).

8

Second, despite the government's apparent focus on Ms. Marckstadt's personal email account, the trial subpoena's demands are not limited to that account. With the exception of Request 6, the trial subpoena seeks all "documents," without limitation as to the source.

Third, the pre-marked trial exhibits submitted by the government only serve to underscore Ms. Marckstadt's limited role and do not support the government's relevance arguments. (*See* ECF No. 200 at 6 (citing Exs. 5, 6).) Exhibit 5 includes three emails in which Ms. Marckstadt forwarded prior communications without comment (GXs 27, 96, 97), and a fourth in which she passively received an email, also without comment (GX 61). Exhibit 6 is limited to emails from Ms. Marckstadt's accounts at Colony—all without a single remark from Ms. Marckstadt. Nearly all of the other parties to the emails used either web-based accounts that the government could have searched pursuant to Rule 41, or accounts associated with Colony which produced numerous documents in this case. More importantly, none of these emails is, as the government claims, "[n]otabl[e]" with respect to Ms. Marckstadt. (ECF No. 200 at 6.) "Examples of some specific materials the Subpoenas seek does not make the Subpoenas themselves sufficiently specific." *Bergstein*, 2017 WL 6887596, at *5 n.2. And they do not justify the wide-ranging searches the government has demanded in the August 2022 trial subpoena.

Fourth, the government's claim that the trial subpoena's requests are tethered to "conduct by Barrack related to the UAE and KSA governments," (ECF No. 200 at 13), is both insufficient as a matter of law under Rule 17 and it is factually inaccurate. *See United States v. Bergstein*, 2018 WL 9539856, at *1 (S.D.N.Y. Jan. 22, 2018) (concluding that trial subpoena seeking "all communications relating in any way to most of the indictment is not sufficiently narrowly focused on a group of materials likely to contain helpful communications"); *see also United States v. Donziger*, 2021 WL 1865376, at *7 (S.D.N.Y. May 10, 2021) (quashing trial subpoena request

where party who issued the subpoena "has made no showing that the documents or communications he seeks even exist, let alone explained what they might reasonably be expected to contain" and "identification of a few individuals or entities in which he has a particular interest does not change the calculus").

Contrary to the government's characterization, the requests broadly cover—among other things—"communications with any United States federal agency or federal official" and "communications about the use of encrypted communication systems." (ECF No. 186-3 at Requests 7, 8.) The government, apparently feeling "puzzl[ed]," condescendingly explains why it is focused on Qatar in the trial subpoena. (*See* ECF No. 200 at 11.) But the government's citations to potential Qatar-related issues in the case only serve to highlight the defective scope of broad requests in the trial subpoena for "any communications" relating to "the State of Qatar" and "businesses, sovereign wealth funds and individuals associated with . . . the State of Qatar." (ECF No. 186-3 [Mot. Ex. A] at Request 7); *see Bergstein*, 2017 WL 6887596, at *5 n.2.

Similar scope-related deficiencies pervade the August 2022 Subpoena, (*see* ECF No. 186-3 [Mot. Ex. A]):

- Request 1: This demand, as noted above, is facially defective because it seeks to incorporate by reference an expired grand jury subpoena, which contained requests for documents that the government impliedly acknowledged were unduly burdensome and irrelevant because it narrowed them, and which fall far short of the *Nixon* specificity and admissibility requirements.

- Request 2: This demand is not, as the government claims, limited to materials relating to a particular Form SF-86. (*See* ECF No. 200 at 11.) Rather, it also seeks materials relating to any "background check" concerning Mr. Barrack's "appointment as a United States Special Envoy or United States Ambassador."

- Request 3: This demand essentially tracks the scope of the grand jury subpoena, to which *Nixon* did not apply, and is therefore facially overbroad. By way of example, this Request purports to call for any communications between Ms. Marckstadt and her family regarding the inauguration, which are irrelevant and inadmissible.

- Request 4: This demand is also much broader than the government suggests because of the demand for materials relating to work by Ms. Marckstadt "relating in any way to the . . . United States government."

- Request 5: This demand seeks materials relating to unspecified media appearances that related "in any way" to three governments, including the entire "United States government." If the government is focused on particular appearances by Mr. Barrack, it should be required to specify them, explain why it believes Ms. Marckstadt possesses materials relating to those appearances, and state why such materials are relevant and admissible.

- Request 6: This request is even broader than Request 5 in that it is addressed to Mr. Barrack's "relationship" with three governments.

- Request 7: These requests are similar to the defendants' Request 9 to DigitalBridge, which sought communications from numerous people relating to Mr. Barrack's interactions with a variety of UAE parties, such as President Mohammed Bin Zayed Al Nahyan. This Court quashed that request to DigitalBridge as "way overbroad," (*see* ECF No. 200, Ex. 9 at 13), and it should do the same for the requests to Ms. Marckstadt. *See United States v. Pena*, 2016 WL 8735699, at *3 (S.D.N.Y. Feb. 12, 2016) ("That Pena has some reason to believe that the cooperating witnesses in this case had an opportunity to communicate does not excuse him from *Nixon*'s requirement that he must specifically identify the materials he is seeking to bear out his suspicions under Rule 17(c)."); *see also United States v. Avenatti*, 2020 WL 86768, at *6 (S.D.N.Y. Jan. 6, 2020) ("The request for '[a]ll audio recordings (and transcripts thereof)' (1) involving Franklin, Auerbach and six others; (2) that contain a discussion of corruption in amateur basketball; and (3) that took place within a thirty-nine month period, reads like a request under the Federal Rules of Civil Procedure. But this is not a civil case, and the rules of civil discovery do not apply. Blanket requests of this sort violate the specificity requirement set forth in *Nixon* . . . .").

- Request 8: This demand seeks materials relating to "the use of encrypted communication systems," a phrase the government has now clarified refers to "WhatsApp and Signal." (*See* ECF No. 200 at 6, 16, 17.) The government offers no reason to believe that there is any probative value to decisions by Ms. Marckstadt or any party to rely on the now-standard security and privacy features of these apps for legitimate purposes—along with the vast majority of WhatsApp's over approximately two billion users, and Signal's tens of millions of users—to mitigate the risk that their conversations and personal information could be improperly monitored or stolen.

Courts have repeatedly quashed such overbroad requests for documents and communications in similar cases. *See, e.g.*, *Bergstein*, 2018 WL 9539856, at *1 ("[C]ourts in this

11

Circuit applying *Nixon*'s specificity requirement routinely distinguish permissible defined requests for definite groups of materials from impermissible blanket requests for unspecified material."); *United States v. Weigand*, 520 F. Supp. 3d 609, 615 (S.D.N.Y. 2021) (granting motion to quash subpoena that "is insufficiently specific because it seeks broad categories of documents across a six-year period" and where "certain categories of documents are overly broad, seeking all communications between [a third party] and certain entities"); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (quashing many of defendant's requests as insufficiently specific, including requests for "[a]ll documents relating to [defendant's] customers, including but not limited to, pay history statements," "[a]ll documents relating or referring to [defendant's] reserve accounts," and "[a]ll documents relating or referring to conversations with [defendant's] customers, including, but not limited to, message logs, message histories, memos, correspondence, e-mails, and notes of meetings").

The government emphasizes that in *Skelos*, the court declined to quash a request that sought "communications with a particular person on a particular subject matter." 2018 WL 2254538, at *7. There are twelve Requests in the August 2022 trial subpoena, all of which are far broader than the request at issue in *Skelos*. Moreover, the *Skelos* court quashed a trial subpoena request that failed—like the August 2022 trial subpoena—to seek "documents of 'a specific type'" and instead demanded "any and all documents produced . . . , regardless of subject matter and regardless of whether they are financial records, phone records, invoices, insurance policies, emails, text messages, letters, or otherwise." *Id.* at *4.

Finally, *United States v. Weisberg*, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011), is no help to the government either. The *Weisberg* court quashed the portion of the trial subpoena that sought "[a]ll documents" relating to an escrow account that was central to the case and is therefore

12

consistent with Ms. Marckstadt's position that the general relevance of certain topics does not empower the government to direct a Rule 17(c) subpoena to a third party seeking all materials in her possession relating to those topics. *Id* at *6. The portion of the trial subpoena that the *Weisberg* court permitted was, unlike the August 2022 trial subpoena, directed at specific types of documents: "billing records, time entries, and invoices." *Id.* at *10. Accordingly, *Skelos* and *Weisberg* do not support the government's position.

V. **At Minimum, The Government's Requests Should Be Time-Limited**

This Court previously held that "to the extent any of the requests in . . . [the] subpoena pertained to a time period after the [time] period alleged in the indictment that is not allowed. The [time] period is reduced to just the period in the indictment." (ECF No. 200, Ex. 9 at 10-11.) The Court then limited a request that asked for DigitalBridge documents from December 2016 through January 2021 to the December 2016 to January 2018 period. (*See id.* at 11-12.) At a minimum, the Court should do the same by refining the time period for requests to Ms. Marckstadt to safeguard materials from her work for the defense team. Requests 1-3 and 6-12 all seek documents outside the 2016 to 2018 time period, and all of them should be limited to the 2016-to-2018 period previously laid out by the Court. *See, e.g.*, *United States v. Dupree*, 2011 WL 2006295, at *5 (E.D.N.Y. May 23, 2011) (quashing subpoena seeking documents from after the period of alleged offenses). Although the government protests that this Court did not hold that documents from after 2018 should not be produced, but only that documents pertaining to that time period should be produced, that interpretation makes no logical sense. If the Court's ruling were interpreted as the government proposes, then the Court's prior ruling would be a mere subject-matter limitation, not a time-period limitation. But that is clearly not what the Court said. (*See* ECF No. 200, Ex. 9 at 10-11.)

At the very least, the Court should order no production of materials from after the indictment. There is no reason to believe that there are documents from after the indictment (three years after the conspiracy allegedly ended and four years after the last alleged overt act) that are admissible, relevant, and not privileged. Again, because it is the government's burden under *Nixon* to show that its requests seek admissible documents, (*see* ECF No. 186-1 at 8), and because any documents from Ms. Marckstadt after the date of the indictment are likely to be irrelevant **and** privileged, this Court should quash any requests seeking materials after the date of the indictment.

Dated: September 12, 2022

Respectfully submitted,

CHIESA SHAHINIAN & GIANTOMASI

   /s/ Emil Bove
Emil Bove
CHIESA SHAHINIAN & GIANTOMASI
11 Times Square
New York, New York 10036
Telephone: (212) 973-0572
Email: ebove@csglaw.com

HALPERN MAY YBARRA GELBERG LLP

   /s/ Grant B. Gelberg
Grant B. Gelberg (CA State Bar No. 229454)
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071
Telephone: (213) 402-1900
Facsimile: (213) 402-1901
Email: grant.gelberg@halpernmay.com

*Attorneys for Non-Party Alison Marckstadt*