

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH  *271 Cadman Plaza East*
F. #2018R01309   *Brooklyn, New York 11201*

September 13, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Thomas Joseph Barrack, et al.
               Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

      The government respectfully moves in limine to admit at trial certain statements made to federal law enforcement by fugitive co-defendant Rashid Sultan Rashid Al Malik Al Shahhi ("Al Malik"). The Court should admit these statements because they constitute acts in furtherance of the charged conspiracy to act as illegal agents of the United Arab Emirates ("UAE") and thus are admissible against co-conspirators and co-defendants Thomas Barrack and Matthew Grimes (the "Defendants"). Specifically, the statements constitute acts intended to conceal the conspiracy from law enforcement and to further the conspirators' ability to continue to act in the United States as illegal agents of the UAE. Al Malik's efforts to conceal the conspiracy, undertaken in part after a series of phone calls during which it appears he consulted with Barrack through intermediaries, are plainly relevant, do not implicate the bar on hearsay or the Defendants' Sixth Amendment confrontation rights, and present no risk of unfair prejudice. The statements also are relevant to proving Al Malik's guilt of the charged substantive offense under 18 U.S.C. § 951, a necessary predicate to establishing the Defendants' liability under the charged theory that they aided and abetted Al Malik's criminal conduct. Accordingly, the statements referenced herein should be admitted at trial.[1]

---

[1] The Defendants have indicated that they oppose the introduction of Al Malik's statements and have asked the government for a proffer of relevance and admissibility. The government informed the Defendants that it anticipated filing this motion, which serves to provide the requested information.

I.  Background

   A. Al Malik's Engagement with the Trump Campaign

   The evidence at trial will establish that, as alleged in the Superseding Indictment (the "Indictment"), the Defendants and others, including Al Malik, engaged in a conspiracy from in or about April 2016 through and including April 2018 to act in the United States as agents of the UAE without prior notification to the Attorney General.  The evidence also will establish, among other things, the following additional facts relevant to the Court's determination of this motion.

   As part of the charged conspiracy, Al Malik, the Defendants, and their handlers in the UAE, including UAE national security officials, took numerous steps to engage with, and influence the conduct of, the presidential campaign of Donald J. Trump (the "Trump Campaign"). For example, on May 9, 2016, days after Barrack returned to the United States following an in-person meeting with                                    , Al Malik informed Barrack that he had confirmed with               , a member of the UAE Supreme Council for National Security and Al Malik's primary handler in the UAE, that Barrack was to be "the only channel to the Candidate" on behalf of UAE leadership.  On May 12 and 13, 2016, Barrack sent Al Malik several iterations of a speech Barrack had drafted with the help of Grimes and others for Trump to deliver on energy policy.  Barrack stated in connection with the first version of the document, "It is my own first draft," and sought comments from UAE officials.  Al Malik forwarded the speech on to          and later responded to Barrack with proposed language for the speech that praised                                                                                                            .  Barrack subsequently sent revised drafts of the speech that included specific references to        .  Al Malik responded to one such draft, "They loved it so much!  This is great!"  On May 17, 2016, Al Malik sent a message to Grimes stating, "The speech will make us heroes."  On May 26, 2016, after Trump delivered a modified version of the speech,          emailed Barrack directly, stating, "Great Job!!"

   On June 25, 2016, Barrack emailed Al Malik a press release from the Trump Campaign that clarified Trump's proposed policy of banning Muslim immigrants and refugees, stating that the policy would instead suspend immigration and refugee admissions from regions of the world with a proven history of terrorism.  Barrack told Al Malik that "[w]e got religion out of the issue," referring to the policy no longer targeting Muslims.  Al Malik forwarded the email to            .  Two days later, Al Malik said to Grimes, "[W]e have to help Trump on the Muslims issues I have an idea." Al Malik sent Grimes talking points on the contributions of the UAE and the Kingdom of Saudi Arabia to anti-terrorism strategy in the Middle East, which concluded that the United States "should partner with trusted allies in Saudi and UAE."

   Al Malik and his UAE handlers continued to take a keen interest in the presidential campaign.  For example, on October 27, 2016, less than two weeks before the election held on November 8, 2016,           sent a message to Al Malik, asking "How is the campaign," to which Al Malik responded, "Doing much better."

   After Trump was elected, Al Malik was invited to attend inaugural events, including the inauguration itself.  Al Malik referred to himself in communications with a third--party as a "Senior Advisor to the [Middle East]" in connection with the incoming Trump

Administration. On January 17, 2017, Al Malik posted a photograph of himself with President-Elect Trump on Instagram.

### B. Al Malik's Statements to Federal Law Enforcement

#### 1. The March 2018 Phone Call with the FBI

On or about March 5, 2018, the Special Counsel's Office contacted Grimes's attorney to alert him that the Office intended to serve him with a grand jury subpoena. Later that day, Grimes sent a message to Al Malik, stating,

On March 23, 2018, an FBI special agent contacted Al Malik by phone and told Al Malik that he wanted to speak with Al Malik about his associations with the Trump Campaign. Al Malik responded, and agreed to be interviewed at a restaurant at 9 a.m. the following morning. Minutes later, Al Malik made multiple attempts to reach a close associate of Barrack's (the "Associate") by phone. He eventually reached the Associate and spoke to him for approximately two minutes. After that call, the Associate had multiple phone calls with Barrack and, separately but in close succession, with Al Malik. Following those calls, Al Malik called the FBI special agent back – approximately an hour after the initial call from the agent – and changed his position, stating that he would not agree to an interview, that he was seeking counsel, and that he had [2]

#### 2. The April 5, 2018 Meeting with the FBI

After declining to meet with FBI special agents, Al Malik was served with a grand jury subpoena. Thereafter, on April 5, 2018, he appeared with counsel for a voluntary interview with the FBI. During that interview, Al Malik stated, among other things, that:

- Al Malik could not describe any career role for                 except that he worked for the UAE's Presidential Protocol Office, and        did not provide Al Malik with details about his work.

- In May 2016, the UAE did not have any interest in meeting with Candidate Trump.

- Among the reasons Barrack sent Al Malik a copy of a May 2016 campaign speech on energy was to ensure that the pronunciation of the names of the Middle Eastern leaders

---

[2] Evidence of these phone calls is contained in a document marked Government Exhibit 706, which was the subject of the Defendants' motion to compel the government to identify which portions of the exhibit it intends to introduce at trial. See ECF No. 185. The government indicated in its response in opposition to that motion that it intends to introduce the entirety of the exhibit into evidence at trial, ECF No. 189, but is open to limiting the pages introduced into evidence to those that (1) identify the Associate as the custodian of the account, and (2) contain the toll records documenting the calls referenced herein. The government understands that the Defendants oppose the introduction of any part of these records.

was correct and that their titles were correctly identified. Al Malik shared the speech with          but did not know whether          shared it with anyone else.

- Al Malik did not receive any messages from either          or the                     to provide to Barrack.

Three days after his interview with the Special Counsel's Office, Al Malik left the United States. He has not returned.

II. Legal Framework

A. Relevant Evidence Generally is Admissible

"As a general matter, all relevant evidence is admissible . . . unless specifically excluded." United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). "Evidence is relevant 'it has any tendency to make a fact more or less probable than it would be without the evidence' and if 'the fact is of consequence in determining the action.'" United States v. Monsalvatge, 850 F.3d 483, 494 (2d. Cir. 2017) (quoting Fed. R. Evid. 401).

B. Acts of Concealment in Furtherance of a Charged Conspiracy

Acts taken to conceal an ongoing conspiracy are acts in furtherance of that conspiracy and, therefore, are relevant and admissible at trial. See United States v. Eisen, 974 F.2d 246, 269 (2d Cir. 1992) ("[C]learly, acts or statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy."); United States v. Kahale, 789 F. Supp. 2d 359, 384 (E.D.N.Y. 2009) (holding that "an act taken to conceal an ongoing illegal agreement . . . constitutes an act in furtherance of the charged conspiracy, and is admissible"); United States v. Mermelstein, 487 F.Supp.2d 242, 261 (E.D.N.Y.2007) ("Efforts to conceal an ongoing conspiracy may properly be charged as overt acts in furtherance of it." (citing United States v. Milstein, 401 F.3d 53, 72 (2d Cir. 2005)); see also Grunewald v. United States, 353 U.S. 391, 405–06 (1957) (distinguishing "between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime" (emphasis added)); United States v. Jergensen, 797 F. App'x 4, 6 (2d Cir. 2019) (affirming instruction to jury that "acts of concealment done in furtherance of the main criminal objectives of the conspiracy are said to continue a conspiracy," in contrast to acts "done after central objectives of the conspiracy have been attained, for the sole purpose of covering up after a crime" (internal quotation marks and alterations omitted) (emphasis added)); Cf. United States v. Beech–Nut Nutrition Corp., 871 F.2d 1181, 1198–99 (2d Cir. 1989) (statements to listener admissible because they were designed to "cover up" conspiracy and encourage listener not to reveal damaging information).

III. Argument

Al Malik's repeated lies to federal law enforcement, starting in March 2018 when he told an FBI agent that he had                                             and continuing through his various misrepresentations to law enforcement during his April 2018 interview, are admissible at trial as steps taken in furtherance of the charged conspiracy, which continued at least until Al

4

Malik's flight from the country on April 8, 2018, three days after his Special Counsel interview. The statements also constitute evidence of Al Malik's guilt of the charged substantive Section 951 offense, proof of which is necessary to establishing the Defendants' guilt of aiding and abetting Al Malik's violation.

### A. Al Malik's Lies Furthered the Charged Conspiracy Through Concealment

The statements at issue fit into a broader pattern of conduct through which the Defendants and Al Malik sought to conceal the true nature and scope of their relationship with the UAE, including that they were acting at the direction of the UAE government.[3] These efforts were essential to the success of the conspiracy because the UAE's ability to gather sensitive information from the Trump Campaign and Administration, and to exert influence over U.S. policy and public discourse depended, in part, on the U.S. government, U.S. media, and U.S. public being unaware of Al Malik and the Defendants' true roles as UAE agents. When the FBI contacted Al Malik by phone on March 23, 2018, he initially agreed to a voluntary interview the following morning. Approximately an hour later, after a series of calls with the Associate, who, in turn, engaged in a series of calls with Barrack and another close associate of Barrack, Al Malik spoke with the FBI again and lied that he had                                                                       [4] In fact, Al Malik had taken various steps to influence the Trump Campaign, including by contributing to the drafting of a speech on energy policy to be delivered by then-Candidate Trump and, later, seeking to provide input to the Trump Campaign regarding its announcement of what became known as the "Muslim Ban." The government intends to urge the fair and obvious inference that Al Malik's lie to the FBI constituted an effort to conceal the nature of his work on behalf of the UAE during the Trump Campaign and thereby preserve the continuity of his operation on U.S. soil.

Al Malik's lies during his interview with the FBI similarly evince an effort to obscure, and thereby extend, his and the Defendants' ongoing work in the United States and,

---

[3] These efforts included the Defendants' failure to notify the Attorney General of their conduct, their failure to register under the Foreign Agent Registration Act, and Barrack's failure to disclose the true scope of his relationship with Al Malik and other UAE officials in his SF-86.

[4]              The government does not intend to argue that Al Malik's statement about seeking counsel is relevant or indicative of illegal conduct, only that his additional, separate statement – that he had "nothing to do with the Trump Campaign" – was false and intended to conceal his illegal conduct with the Defendants. That Al Malik immediately called the Associate after learning that the FBI wanted to discuss Al Malik's connection to the 2016 Trump Campaign, and that the Associate communicated with Barrack before speaking again with Al Malik, strongly underscores that Al Malik was aware of and remembered, even in the moment, his ties to the Campaign through Barrack, and that his subsequent statement to the FBI special agent was a knowing lie. The call records thus provide relevant context probative of Al Malik's intent to mislead the FBI for the purposes discussed herein.

5

relatedly, UAE officials' involvement in the conspiracy. Al Malik suggested that he knew nothing about          work beyond his purported position in the Presidential Protocol Office and stated that          did not provide him with details about his work. In fact, and as Al Malik well knew, Al Malik in some respects was          work – that is,          was responsible for directing Al Malik's actions in the United States and for relaying information between Al Malik and senior national security officials in the UAE, as amply demonstrated by the voluminous communications between Al Malik and          . In the interview, Al Malik again sought to downplay his connection to the Trump Campaign, falsely suggesting that Barrack sent the draft energy speech to him for the purpose of checking pronunciations and spellings and stating that he did not know whether          forwarded the speech to others. Al Malik's statements that, in May 2016, the UAE did not have any interest in meeting with Candidate Trump, and that Al Malik had not received any messages from either          or          to provide to Barrack, were all false, and all clearly designed to obscure the nature of his ongoing conduct on behalf of the UAE and the role of his handlers in the UAE.

Jurors are entitled to infer that actions that permit co-conspirators to "to reap—and keep—economic gains from their conspiracy" are "more than mere acts of concealment of the crime." Milstein, 401 F.3d at 72. So, too, they may infer that Al Malik's actions were designed to protect his and his UAE handlers' ability to continue to "reap—and keep"—the gains from their and the Defendants' work as agents of the UAE, namely their access, through Barrack, to the highest levels of the Administration and to leading media platforms with international reach. That Al Malik remained in the United States and, ultimately, agreed to a voluntary interview with the FBI further supports the inference that Al Malik understood the conspiracy to be ongoing and believed it might survive a brush with law enforcement scrutiny. In February 2018, just weeks before Al Malik was contacted by the FBI, Barrack met with a senior UAE official. Following that meeting, Barrack sent messages to Al Malik stating,          
          Malik responded:
          Taken in the context of repeated communications over the course of two years regarding long-term plans to work together – including agreement among the Defendants and Al Malik to create a plan covering the four years of the Trump Administration – the implication of continued conduct is clear. See Smith v. United States, 568 U.S. 106, 111 (2013) ("Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of the conspiracy's existence, and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot." (cleaned up)); United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002) (holding that membership in a conspiracy "is presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw"). Indeed, Al Malik's continued presence in the United States on its own evidences the co-conspirators' desire to continue their work, as Al Malik's primary purpose in the United States during the relevant timeframe appears to have been solely to operate on behalf of the UAE. Cf., United States v. Latchin, 554 F.3d 709, 715 (7th Cir. 2009) (affirming conviction of participant in "sleeper agent" program for Iraqi Intelligence Service based on circumstantial evidence, including payments and telephone calls, that showed he had resided and remained in United States to act on behalf of Iraqi government).

In light of the foregoing, Al Malik's lies and omissions to the FBI are admissible against Barrack and Grimes because, as co-conspirators, "[e]ach is deemed to have authorized the

acts and declarations of the other undertaken to carry out their joint objective." United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002); see also Anderson v. United States, 417 U.S. 211, 218 n. 6 (1974) ("The rationale for both the hearsay-conspiracy exception and its limitations is the notion that conspirators are partners in crime. As such, the law deems them agents of one another."); Milstein, 401 F.3d at 72 ("Foreseeable acts of one co-conspirator in furtherance of the conspiracy are attributable to all co-conspirators.").[5]

      B. Aiding and Abetting Liability

Al Malik's statements are also admissible as evidence that he committed a substantive violation of Section 951, a necessary predicate to establishing that the Defendants aided and abetted Al Malik in that violation. See, e.g., United States v. Best, 219 F.3d 192, 199 (2d Cir. 2000) (observing that to convict a defendant on an aiding and abetting theory, the government must prove, among other things, "that the underlying crime was committed by a person other than the defendant"). The statements' relevance to Al Malik's guilt of the substantive offense is that, among other things, they constitute acts in the United States on behalf of the UAE in that they were designed to preserve his ability to continue his work on the UAE's information gathering and influence campaign. See Latchin, 554 F.3d at 715. The communications between Al Malik and his handlers make clear that his core purpose during the relevant time period was to gather information, develop his ties to Barrack and Grimes, and seek to exert UAE influence through them. Accordingly, the statements referenced herein are relevant and admissible to establish Al Malik's guilt of the Section 951 violation as part of the government's proof that the Defendants are guilty of aiding and abetting Al Malik.

IV.    Conclusion

For the foregoing reasons, false statements of the Defendants' co-conspirator Al Malik made to conceal, and thereby further, the charged conspiracy should be admitted into evidence at trial as acts in furtherance of the charged conspiracy. They also should be admitted on

---

[5] Because Al Malik's lies to law enforcement are not being offered for their truth, they do not implicate the Defendants' confrontation rights under the Sixth Amendment. See, e.g., Crawford v. Washington, 541 U.S. at 59 n. 9 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); United States v. Stewart, 433 F.3d 273, 291 (2d Cir. 2006) ("Crawford expressly confirmed that the categorical exclusion of out-of-court statements that were not subject to contemporaneous cross-examination does not extend to evidence offered for purposes other than to establish the truth of the matter asserted."). Nor is there any risk of unfair prejudice, as the statements, although false, contain no particularly inflammatory language or content. Cf. United States v. Price, 204 F. App'x 993, 995 (2d Cir. 2006) (affirming admission of conversation reflecting "contemptuous attitude toward law enforcement officers" where "conversation had some prejudicial effect, [but] this effect did not outweigh, much less 'substantially' outweigh" their relevance).

the independent basis that they are probative of Al Malik's guilt of the substantive Section 951 charge and, therefore, of the Defendants' aiding and abetting liability.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:    /s/
Matthew J. McKenzie
Trial Attorney

cc:    Counsel for Thomas Joseph Barrack (by ECF)
        Counsel for Matthew Grimes (by ECF)
        Clerk of the Court (BMC) (by ECF)