U.S. Department of Justice

United States Attorney
Eastern District of New York

RCH/SPN/HDM/CRH
F. #2018R01309

271 Cadman Plaza East
Brooklyn, New York 11201

September 13, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Thomas J. Barrack and Matthew Grimes
             Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

      The government writes in opposition to defendant Thomas J. Barrack and Matthew Grimes's (the "Defendants") joint motion in limine to preclude argument and evidence at trial regarding a $300 million investment from the ▬▬▬ in the ▬▬▬ fund between ▬▬▬ and ▬▬▬ (collectively, the ▬▬▬. Specifically, the Defendants move to preclude the government from (1) arguing that Barrack, ▬▬▬ at the time, was involved in efforts to secure the ▬▬▬ because the government knows that this is false,[1] and (2) introducing evidence of ▬▬▬, which tracks investments in ▬▬▬ by institutional investors, and includes a column entitled ▬▬▬ which is marked ▬▬▬ with respect to the ▬▬▬ because no witness at trial will testify as to what ▬▬▬ means. The Defendants are wrong and the Court should deny the motion in its entirety.

    I.   The Government Intends to Present Evidence of Barrack's Involvement in Securing the ▬▬▬

      The government intends to present substantial evidence at trial, in the form of testimony, communications, including emails and text messages, overseas trips, and meetings, establishing Barrack's involvement and interest in securing investments from UAE sovereign wealth funds, including the ▬▬▬ The evidence is entirely consistent with the government's theory of the case, and not meaningfully inconsistent with the ▬▬▬ ▬▬▬ employees and cherrypicked by the Defendants in support

---

[1] The government rejects the Defendants' baseless, sharp suggestion that the government would knowingly present false allegations or evidence to the Court or jury.

of their motion. The evidence will show that Barrack was involved in high-level meetings and outreach to senior UAE officials, who controlled sovereign wealth funds, including ▇ in the UAE, while ▇ and ▇ employees took meetings with investment professionals, at more ▇ level meetings. Indeed, the government anticipates that the evidence will show that this dual-track approach was by design: numerous communications introduced at trial will establish that ▇ employees understood and intended that Barrack would pitch these investments with the senior leaders of the UAE government in a ▇ approach, while other members of ▇ and ▇ who could not secure meetings with these senior UAE officials would make more granular investment presentations to the investment professionals. For example, the evidence will show that Barrack cultivated a relationship with ▇ ▇ and his brother ▇ through in-person meetings, phone calls, and communications, directly and through fugitive co-defendant Rashid Al Malik. In addition, the evidence at trial will include numerous communications between and among Barrack, Grimes, and Al Malik showing their interest in securing investments from UAE sovereign wealth funds, including ▇, for ▇ while the Defendants acted at the direction of the UAE government.

The government intends to introduce evidence at trial of communications between ▇ employees and with co-defendant Grimes discussing Barrack's particular involvement in securing the ▇. For example, numerous email communications will show that ▇ employees understood that Barrack was meeting with ▇ through Rashid Al Malik regarding the ▇. The evidence will show that, as late as October 2017, ▇ view of Barrack's utility in connection with the ▇ deal was, ▇ The evidence will show that ▇ understood that Barrack was ▇ regarding the ▇ to ▇ and that a ▇ of ▇ was ▇ Informed of this plan, ▇ wrote to a ▇ employee discussing this strategy, ▇ As these and other documents and testimony will show, Grimes, other ▇ employees, and members of ▇ understood that Barrack was involved in securing investments from sovereign wealth funds, including ▇ with senior UAE officials, while ▇ and ▇ employees interacted with the deal team at ▇. Indeed, a ▇ employee told Barrack to cancel his planned participation in a meeting with the ▇ deal team and ▇ (which Barrack and Grimes were going to attend) because Barrack needed to ▇ and ▇ In addition to all these communications and anticipated trial testimony regarding Barrack's role, Barrack was ▇ ▇, and, as discussed further below, the entry in the ▇ for the ▇

The government does not here preview the entirety of its evidence on this point, but given the number of communications referencing a shared understanding that Barrack was engaging with top UAE officials in support of the ▇ separate and apart from the more junior pitches to investment professionals, the Defendants' claim that the government knows that Barrack was not involved in the ▇ and is trying to present false evidence to the Court and the jury is flat wrong, and obviously so. The Defendants' accompanying citations to rules of professional conduct are absurd. Based on the evidence, the jury should be permitted

to draw the entirely reasonable inference that Barrack was involved in securing the ▇▇▇▇ by leveraging his relationships with senior UAE officials. If the Defendants wish to present evidence or make arguments to the jury about what Barrack's role was in the ▇▇▇ ▇▇▇ they are free to do so, but, ultimately, it is for the jury to decide what inferences to draw from the evidence, not the Defendants. See, e.g., Musacchio v. United States, 577 U.S. 237, 243 (2016) ("[It is] the jury's role to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (internal quotation marks omitted)).

II. The Court Should Admit the ▇▇▇▇▇▇▇▇▇▇▇▇▇ at Trial

To the litany of relevant, probative, highly inculpatory evidence the Defendants have asked the Court to keep from the jurors who will be charged with deciding this case, the Defendants have now added the ▇▇▇▇▇▇▇▇▇. The government intends to present two versions of the ▇▇▇▇▇▇▇▇▇ to the jury to establish, among other things, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The government intends to elicit testimony from one or more witnesses about the ▇▇▇▇▇▇▇ and the meaning of the term ▇▇▇▇▇▇, but such testimony is hardly necessary. The Defendants argue that introduction of the ▇▇▇▇ reference would constitute knowing presentation of "ambiguous evidence to the jury in a misleading manner." Mot. at 6. But set in the context of (1) a man who has longstanding ties to the Middle East, including personal connections to the political leadership of the UAE and the KSA, and (2) evidence showing that various senior employees of ▇▇▇▇▇▇▇ understood that Barrack's engagement with senior UAE and fund officials – his doing ▇▇▇▇▇▇▇ – was going to be an important aspect of the fundraising effort in the UAE and KSA, the basic meaning ▇▇▇▇▇ is readily apparent. To be clear, the government does not intend to argue that the ▇▇▇▇▇ column intended to document Barrack's agency on behalf of the UAE, but it clearly was meant to reference, at a minimum, his special relationship with influential leaders in the region. Here, again, the Defendants will of course be free to urge some other inference, but the jury is entitled to evaluate the evidence for itself.

In sum, the ▇▇▇▇▇▇▇▇ is clearly admissible as a business record under Federal Rule of Evidence 803(6) and is highly probative as it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to the importance of Barrack to ▇▇▇▇ the ▇▇▇▇▇▇▇ and fundraising with Middle East-based sovereign wealth funds,[3]

---

[2] Defendants' contention that FBI agents will testify about the meaning of ▇▇▇▇ is incorrect. The government intends to elicit testimony from witness(es) who worked at ▇▇▇▇ about the meaning of that term.

[3] The Defendants' claim that ▇▇▇▇▇▇▇ cannot be probative of his conduct as a foreign agent of the UAE because it also includes sovereign wealth funds from other Middle East countries is without merit and misses the point. While Barrack had relationships with several sovereign wealth funds in the Middle East, it is the combination of his relationships with UAE sovereign

3

including ▮▮▮. Because the ▮▮▮▮▮▮▮▮▮ is admissible and relevant, Government Exhibits ▮▮▮▮▮▮▮▮▮ should be admitted into evidence ▮▮▮▮▮.

III. Conclusion

For the foregoing reasons, the Court should deny the Defendants' motion in its entirety.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By: /s/
Matthew J. McKenzie
Trial Attorney

---

wealth funds and his actions at the direction of the UAE government that is probative of Barrack's conduct—his peddling of access and influence to the Trump Campaign and Administration to the UAE while fundraising off those efforts with UAE sovereign wealth funds.

4