UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>　　　　　　　　　　Plaintiff,<br><br>　-against-<br><br><br>AL MALIK ALSHAHHI, et al., | No.　1:21-cr-000371-BMC-TAM |

**DEFENDANTS THOMAS J. BARRACK'S AND MATTHEW GRIMES'S REPLY BRIEF
IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE GOVERNMENT
EXHIBITS 510-A AND 510-B**

Defendants Thomas J. Barrack and Matthew Grimes respectfully submit this memorandum of law in brief reply to the Government's letter, *see* ECF No. 211, opposing Defendants' motion *in limine*, filed at ECF No. 180, to exclude GX-510A and GX-510B.

## PRELIMINARY STATEMENT

The text messages that are stamped GX-510A and GX-510B should not be admitted into evidence. The messages do not stand for the proposition that the Government wants to use them for, and the Government is well aware of that fact, since it interviewed the author of the text messages, who confirmed that the Government's interpretation was incorrect. The text messages, are, at best, confusing and unclear, and thus of no probative value.

## ARGUMENT

**I. THE GOVERNMENT'S ARGUMENTS REGARDING ADMISSIBILITY RELY ON AN INTERPRETATION OF THE TEXT MESSAGES THAT CANNOT BE SQUARED WITH THEIR PLAIN TEXT, THE REST OF THE RECORD, OR THE TESTIMONY OF THE TEXTS'S AUTHOR.**

In the text messages, Mr. Al Malik ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (ECF No. 180-1 (GX-510-A)). The text states: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) The Government contends that this exchange is an "admission" by Al Malik "of conduct on U.S. soil at the direction of the UAE," because, according to the Government's reading of the text, Al Malik is informing Professor Rivetti that he is serving as a ▮▮▮▮▮▮▮▮▮ on behalf of the *UAE* Government. (Opp. at 1, 3.) The Government's strained effort to put some gloss on the text messages is entirely unsupported..

First, the plain language of the exchange belies the Government's interpretation. If Al Malik was acting for the UAE Government, he would not say that he was serving as a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *which includes the UAE.* He would say he was a ▮▮▮▮▮▮▮▮ *for* or

1

*from* the "UAE." He did not. He did not even say that that he was a senior advisor *to* the UAE. He said he was a ▮▮▮▮▮▮▮ to the Middle East. The Middle East has sixteen different countries: certainly the Government doesn't contend that Mr. Al Malik was working for all of them when he sent this message. Moreover, if Mr. Al Malik was acting on behalf of the UAE Government, he would not have told Professor Rivetti that he was ▮▮▮▮▮▮▮ which is clearly a reference to either the ▮▮▮ putting together the Inauguration (or, although it is less likely, some other ▮▮▮ related to Mr. Barrack, such as a group of folks from Colony, or, perhaps, President Trump's ▮▮▮).

    The plain text of GX510-A is not the only clue as to what Mr. Al Malik might have meant when he said he would be attending the Inauguration as ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ What Al Malik might have meant in his text message to Professor Rivetti is certainly informed by Al Malik's *other* text messages. And *those* text messages demonstrate that what Mr. Al Malik meant by ▮▮▮▮▮▮▮ was that he was part of ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Viewed in context, it is therefore clear that when Mr. Al Malik ████████████████████████ ████████████████████████████████████████████████████████████████████ what he means is that he is helping Mr. Barrack with the Inauguration planning, including coordinating invites to various people in the Middle East, and thus will be at the Inauguration himself. (*Id.*)  He is *not* saying that he will be attending the Inauguration as a representative of the UAE Government.

The Government's "interpretation" is also inconsistent with the information that the Government learned from Professor Rivetti, who confirmed to the prosecutors that ██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Professor Rivetti's explanation is, of course, consistent with the light and jocular tone of the messages, which suggest that neither Professor Rivetti or Mr. Al Malik were speaking particularly seriously.

**II.    THE TEXT MESSAGES HAVE NO PROBATIVE VALUE.**

The Government claims that GX-510A and GX-510B should come into evidence because "Al Malik's statement that he would be at the inauguration as ████████████████ ██████ shows Al Malik's understanding that he was operating in the United States on behalf of

3

the UAE and in connection with U.S. Government functions." (Opp. at 3.) In fact, as discussed above, Al Malik's statement refers to his role helping *Mr. Barrack* with the *Inauguration Committee* and as such, is *not* evidence of any "understanding" on Al Malik's part that he was "operating in the United States on behalf of the UAE." Given how unlikely it is that the Government's "interpretation" of the text message is accurate—for the reasons discussed above—the Government should not be permitted to confuse the jury by insisting that the text message means what the Government says it means, especially given that Al Malik will not be present at Defendants' trial to correct the record. *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir. 1995) ("it is not enough" that an inference urged by the Government is "permissible" and within the realm of possibility. Instead, the Court "must also be satisfied that the inferences [urged by the Government] are sufficiently supported" by the evidentiary record); *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (explaining that the "line between permissible inference and impermissible speculation is drawn by the laws of logic and not judicial idiosyncrasies. As the Supreme Court has instructed, the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked. Thus, in a criminal case, the government must do more than introduce evidence at least as consistent with innocence as with guilt.") (internal citations omitted).

The Government also argues that the text messages are admissible because "when Rivetti suggested that Al Malik get a license, *the context of the statement makes clear that Rivetti understood Al Malik to be operating in the United States on behalf of his home government, the UAE.*" (Opp. at 3 (emphasis added)). According to the Government, that "Al Malik said nothing to correct Rivetti's conception of Al Malik's role" constitutes "probative evidence that Al Malik

4

agreed with that characterization." (*Id*). The Government is being disingenuous—it *knows* that its proposed interpretation of what Professor Rivetti "understood" is incorrect: Professor Rivetti has already told the Government that ███████████████████████████████████ ███████████████████████████████. The Government is not permitted to argue to the jury that because Al Malik did not "correct *Rivetti's conception* of Al Malik's role," Al Malik can be deemed to have "agreed" with that "conception of [his] role," where the Government knows perfectly well that the "conception" of Al Malik's role that it is attributing to Professor Rivetti is *not* what Professor Rivetti actually thought, intended, or expressed. *See Thomas v. Kuhlman*, 255 F. Supp. 2d 99, 108 (E.D.N.Y. 2003) (quoting *Hamric v. Bailey*, 386 F.2d 390, 394 (4th Cir. 1967) ("Misconduct may also occur where a prosecutor knowingly presents ambiguous evidence to the jury in a misleading manner [because] prosecutorial misconduct occurs 'not only where the prosecution uses perjured testimony to support its case, but also where it uses evidence which it knows creates a false impression of a material fact.'").

The Government barely mentions the second text exchange—GX510-B—████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ (ECF No. 180-2 (GX510-B).) In its Opposition, the Government claims—without citing to any specific statements—in this exchange, "Rivetti went on to make several statements reflecting his understanding that Al Malik was operating on U.S. soil on behalf of the UAE." (Opp. 4). The fact that the Government could not identify for the Court *any* specific statement in GX510-B from Professor Rivetti that

5

purportedly "reflects his understanding that Al Malik was operating on U.S. soil on behalf of the UAE" is not surprising, because there *are no such statements* in GX510-B. Professor Rivetti and Al Malik are clearly just "riffing" and having fun with a (wholly implausible) fantasy that Al Malik could obtain an ambassadorship and all its "perks." Given this context, there was nothing substantive for Al Malik to have "corrected" in Professor Rivetti's texts, and thus, the Government cannot argue that GX510-B serves as evidence that Mr. Al Malik "agreed" that he was "operating on U.S. soil on behalf of the UAE," which is what the Government otherwise intends to do.

The Government appears to believe that it is permitted to offer any potential interpretation it wants to the evidence, even one Professor Rivetti himself has told the Government is incorrect, so long as Defendants have the ability to call Professor Rivetti as a witness in the defense case. That is not the law: Defendants do not have any burden in this case, while the Government is ethically bound not to knowingly mislead the jury. *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998) (holding that "it was a due process violation for the prosecutor to suggest that certain witnesses, who had not testified at trial but who had testified before the grand jury, supported the government's theory of the case, when in fact their testimony before the grand jury did not [] because this 'violated the due process prohibition against a prosecutor's making "knowing use of false evidence," including by misrepresenting the nature of nontestimonial evidence.'") (quoting *United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987)).

Unless Professor Rivetti is called as a witness to explain exactly the context of these exchanges, these text messages have no probative value. As described in Defendant's Opening Brief, these text messages are, on their face, extremely confusing with respect to what, exactly,

6

Professor Rivetti is even referring to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* Op. Br. at 3, 6.) Ambassadors and diplomats do not even fall under the auspices of the Section 951, so whatever Professor Rivetti was talking about, it *wasn't* the statute that is at issue in this case. There is simply no compelling reason why the jury should be distracted from the actual issues in this case by a mini-trial regarding the meaning of these text messages. In these circumstances, even if Exhibits 510-A and 510-B did bear some minimal relevance, they must be excluded under Rule 403.

## CONCLUSION

The Court should grant Mr. Barrack's and Mr. Grimes' motion to preclude the government from introducing into evidence Government Exhibits 510-A and 510-B, for all the reasons above.

Dated:   New York, New York
         September 15, 2022

| **WILLKIE FARR & GALLAGHER LLP** | **O'MELVENY & MYERS LLP** |
|---|---|
| By: /s/ Michael S. Schachter  <br>   Michael S. Schachter  <br>   Randall W. Jackson  <br>   Casey E. Donnelly  <br>   Steven Ballew  <br>   787 Seventh Avenue  <br>   New York, New York 10019  <br>   Phone: (212) 728-8000  <br>   Email: mschachter@willkie.com | /s/ James A. Bowman  <br>James A. Bowman (admitted *pro hac vice*)  <br>400 South Hope Street, 18th Floor  <br>Los Angeles, CA 90071  <br>Telephone: (213) 430-6000  <br>Facsimile: (213) 430-6407  <br>E-mail: jbowman@omm.com |

*Attorneys for Defendant Thomas J. Barrack, Jr.*

7

WINSTON & STRAWN LLP

By:  /s/ Abbe Davis Lowell

| | |
|---|---|
| Abbe David Lowell, Bar No. 358651DC | Sofia Arguello |
| Christopher D. Man, Bar No. 453553DC | 200 Park Avenue |
| 1901 L Street, NW | New York, NY 10166 |
| Washington, DC 20036 | SArguello@winston.com |
| ADLowell@winston.com | 212-294-6700 (ph) |
| 202-282-5000 (ph) | 212-294-4700 (fax) |
| 202-282-5100 (fax) | |

*Attorneys for Defendant Matthew Grimes*

8