RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                                      No. 21-CR-371 (S-1) (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
     also known as "Rashid Al Malik"
     and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

REPLY IN FURTHER SUPPORT OF THE GOVERNMENT'S
MOTIONS IN LIMINE TO ADMIT CERTAIN EVIDENCE
AND PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL

                                                       BREON PEACE
                                                       United States Attorney
                                                       Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this reply in further support of its motion in limine (the "Motion") to introduce certain evidence at trial and in response to arguments in opposition to the Motion filed by defendants Thomas J. Barrack and Matthew Grimes (the "Defendants").[1]  See ECF Nos. 201, 202 (the "Defense Motion" or "Def. Mot.").

ARGUMENT

I. The Court Should Admit the Specified Portions of Defendant Matthew Grimes's Grand Jury Testimony

The Defendants oppose the admission of the specified portions of Grimes's grand jury testimony at trial because they (1) violate Barrack's Confrontation Clause rights; (2) are inadmissible under Federal Rule of Evidence 403; and (3) are inadmissible because of lack of personal knowledge and constitute lay opinion testimony under Federal Rules of Evidence 602 and 701, respectively.  Def. Mot. at 1-15.  Given the complexity of the issues presented (including with respect to Barrack's confrontation rights) and after a careful reassessment of the probative value of the proffered statements viewed in the context of the government's additional evidence against Grimes, the government hereby withdraws a substantial number of the challenged statements from the Motion.  The remaining statements, specified in Exhibit A attached hereto, focus more directly on Grimes's conduct and entail few references to Barrack that require modification pursuant to Bruton.  To the extent the statements the government still seeks to

---

[1] This brief has been filed publicly in redacted form, to protect materials covered by the protective orders entered on July 28, 2021 and July 29, 2021.  See ECF Nos. 27, 29.  An unredacted version of the brief has been filed under seal.  The government has removed arguments related to issues already addressed by the Court's order entered earlier today.

introduce implicate the Defendants' few remaining completeness arguments, the government opposes the inclusion of the Defendants' proposed additional language, as it is not necessary to convey the meaning of the statements the government seeks to offer, which are clear on their own. See, e.g., United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming district court's decision to exclude portion of a defendant's statement where admitted portion did not distort the meaning of the full statement).

Finally, without citing any authority in this Circuit or any other, the Defendants claim that certain portions of Grimes's grand jury testimony should be admitted as impeachment evidence under Federal Rule of Evidence 806. The Court should reject this baseless argument.

### A. Admission of Grimes's Grand Jury Testimony Does Not Violate Barrack's Confrontation Clause Rights

The government has moved in limine to admit specified excerpts of Grimes's grand jury testimony of varying length. Of the nine excerpts that remain for the Court's consideration, eight of the nine do no longer contain any reference to Barrack that require modification.[2] The Defendants concede—as they must—that those excerpts do not violate Barrack's Confrontation Clause rights.[3] See United States v. Harris, 167 F. App'x 856, 859 (2d Cir. 2006) (where statements were offered only against declarant and accompanied by proper jury instruction, there was no Confrontation Clause issue). With respect to the remaining excerpt, the Defendants contend that the Court should preclude the statements because it fails to satisfy the Second

---

[2] Two statements offered have been shortened to remove answers to questions at the beginning or end that refer to Barrack, and the remaining portion of the statement contain no discussion of him.

[3] Recognizing, as they must, that these excerpts cannot violate Barrack's Confrontation Clause rights, the Defendants attempt to exclude them based on a misapplication of Federal Rules of Evidence 403, 602 and 701. The government addresses those arguments infra in Part I.B.

Circuit's standard for substitutions as articulated in United States v. Jass, 569 F.3d 47 (2d Cir. 2009). The Defendants are wrong. The remaining proposed redactions in this statement are not about Barrack's actions, do not "distort the relationship between Mr. Grimes and Mr. Barrack," and do not suggest that the original statements contained actual names. Def. Mot. at 3-11. See United States v. Ashburn, 76 F. Supp. 3d 401, 424 (E.D.N.Y. 2014) (citing Jass, 569 F.3d at 62 (upholding the government's proposed redacted statements because they "do not manifest obvious signs of alteration, or otherwise signal to the jury that they originally contained actual names.")); see also United States v. Alshahhi, et al., 21-CR-371 (BMC), Dkt. 207 (Order Denying Motion for Severance) (citing Richardson v. Marsh, 481 U.S. 200, 208 (1987) (holding that "the scope of Bruton is limited to a co-defendant's confession that is 'incriminating on its face.'")).

    B.    <u>The Specified Portions of Grimes's Grand Jury Testimony Are Admissible Under the Federal Rules of Evidence</u>

The Defendants also move to preclude Grimes's statements to the grand jury on several grounds based on the Federal Rules of Evidence, none of which are persuasive. The arguments continue the defense theme of conflating the standards for admitting evidence with arguments relating to the weight to be given such evidence by the trier of fact, the jury. The arguments should be rejected.

The Defendants claim in conclusory fashion that Grimes's testimony should be excluded because it "would be hopelessly confusing to the jury." Mot. at 11. The Defendants appear to be asking the Court to exclude <u>all</u> of the proposed testimony. See id. But the admission of relevant evidence or its exclusion under Rule 403 is not an all-or-nothing affair. It is axiomatic that relevant evidence is admissible unless specifically prohibited by some rule or law, see Fed. R. Evid. 402, and trial courts routinely admit portions or excerpts of relevant evidence even where it finds that other portions (or the cumulative amount of evidence) may be unduly prejudicial or

3

otherwise excludable under Rule 403. See, e.g., United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010) (finding that trial court was "conscientious in ensuring against unfair prejudice" by "approving only selected excerpts [of videos] for display to the jury"). A Rule 403 analysis must be based on the particular evidence offered into evidence, and none of the particular statements offered suffer from any Rule 403-related defect.

The Court may exclude relevant evidence if the probative value is substantially outweighed by concerns such as prejudice, confusion of the issues, or misleading the jury, among other things. See Fed. R. Evid. 403 (emphasis added). And even where that high burden of "substantially outweighed" is met, the Circuit has directed that Rule 403 be considered "an extraordinary remedy that must be used sparingly." George v. Celotex Corp., 914 F.2d 26, 31 (2d Cir. 1990). There is no such risk here.

The Defendants next argue erroneously that many of Grimes' statements should be excluded, pursuant to Rules 602 and 701, because they "were based on speculation rather than from personal knowledge" and are "inadmissible lay opinion." Mot. at 12. But the Federal Rules of Evidence make clear that neither Rule applies to this type of evidence.

Grimes' testimony is being offered as party-opponent admissions pursuant to Rule 801(d)(2). Neither Rule 602 nor Rule 701 apply to statements offered pursuant to this Rule. The Federal Rules of Evidence expressly state that such statements do not need to meet the provisions of Rule 602 or Rule 701. See Advisory Committee Notes to Rule 801(d)(2) (party-opponent admissions are free "from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge"). It is well-settled that both party-opponent admissions and statements of a co-conspirator in furtherance of the conspiracy are excluded from these two rules. United States v. Lauersen, 348 F.3d 329, 340 (2d Cir. 2003) (explaining that personal knowledge of hearsay

4

witness was "readily inferable from her statement" and, "[i]n any event we have not required personal knowledge for statements by a party's agent."); United States v. Lindemann, 85 F.3d 1232, 1238 (7th Cir. 1996) ("every court that has addressed the issue has held that coconspirator statements are not subject to the requirements of Rule 602") (collecting cases); United States v. Ferguson, 246 F.R.D. 107, 123 (D. Conn. 2007) ("the admissibility of statements in furtherance of a conspiracy is not dependent on personal knowledge"). Defendants cite no case or Rule to the contrary. Their argument can be denied on this basis alone.

Even if Rules 602 or 701 did apply—which they clearly do not—the statements at issue would still be admissible. Indeed, none of the remaining statements squarely implicate the Defendants' arguments on this point. In any event, ample evidence will be offered at trial, independent of the statements themselves, to conclude that Grimes was not guessing, but had firsthand knowledge that supports the statements.

Accordingly, the Federal Rules of Evidence present no bar to the admission of the proffered statements.

C. Completeness and Impeachment

The Defendants request, in the alternative, that the Court permit the introduction of additional statements by Grimes pursuant to the "rule of completeness." The government has removed the vast majority of statements that implicated the Defendants' completeness arguments, rendering them moot. As to the few that remain, it is well-established that while the government may admit a defendant's statements as party opponent-admissions, a defendant is generally prohibited from introducing their own out-of-court statements at trial. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). A defendant may not elicit his own statements as an "attempt to get [his] side of the . . . story in front of the jury without

him[self] testifying and opening him[self] up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004). These rules preclude a defendant from offering his or her own prior statements even where the government offers parts of those statements. See, e.g., United States v. Johnson, 507 F.3d 793 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement); United States v. Black, No. 13-CR-316 (DLI), 2014 WL 5783067, at *2 (E.D.N.Y. Nov. 5, 2014) ("[T]he defendant's self-serving, exculpatory statements are inadmissible hearsay ....").

One exception to this principle is the rule of completeness, wherein "an omitted portion of the statement" may be admitted where "necessary to explain the [ad]mitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. 2017) (summary order). Importantly, "[t]he rule of completeness is 'not a mechanism to bypass hearsay rules for any self-serving testimony.'" United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (internal quotation and citation omitted). Accordingly, the rule "does not … require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Gupta, 747 F.3d 111, 139 (2d Cir. 2014) (citations omitted).

As a result, courts must parse a defendant's statements to admit the inculpatory statements offered by the government and to exclude the self-serving, unconnected statements offered by the defendant. See Fawwaz, 691 F. App'x at 678 (affirming district court's refusal to admit statements under rule of completeness noting that "admitted statements [were] independent of the omitted statements"); United States v. Lange, 834 F.3d 58, 79 (2d Cir. 2016) (finding that

6

"omitted statements were generally post-hoc explanations for prior conduct, which did not alter the meaning of the admitted redacted portion."). Ultimately, the burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the government intends to offer. See United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case and must show that it clarifies or explains the portion offered by the opponent."). The Defendants have not carried that burden here.

The Defendants seek to admit additional statements of Grimes as impeachment evidence under Federal Rule of Evidence 806. See Def. Mot. at 7, 16 n. 3, 17. As an initial matter, the Defendants make clear that much, if not all, of this impeachment material is being offered by Barrack to impeach Grimes. See Def. Mot. at 17 ("Attached as Exhibit 2 are additional statements that Mr. Barrack may wish to introduce to impeach a hearsay declarant under Rule 806."). But because Grimes's grand jury testimony will not be offered against Barrack, Barrack has no basis to impeach it. To the extent that Grimes is seeking to impeach his own grand jury testimony under Rule 806, that is also not permitted. Federal Rule of Evidence 806 makes clear that it only applies where "a hearsay statement – or a statement described in Rule 801(d)(2)(C), (D), or (E) – has been admitted in evidence." Grimes's grand jury testimony will be offered against Grimes as a statement of a party-opponent under Rule 801(d)(2)(A), not Barrack, and is thus neither hearsay nor subject to any of the other exceptions that make Rule 806 applicable.

II. <u>Notes and Draft Messages Created by Al Malik About the Status and Progress of the Conspiracy Are Admissible at Trial</u>

The Defendants continue to press the argument that notes created by Al Malik on his cellphone (together, the "Notes") constitute inadmissible hearsay and therefore should be precluded at trial. They argue that three of the fives Notes are inadmissible as co-conspirator

7

statements because they concern the Qatari Blockade and the government has not alleged or established a "meeting of the minds" regarding the blockade. Def. Mot. at 18. The Defendants argue further that the Notes cannot be admitted as statements in furtherance of a conspiracy because there is no evidence they were conveyed to anyone and because, in any event, they were not written in furtherance of any conspiracy. Id. at 19-21. Each of these arguments fail for reasons already articulated in the government's motions to admit the Notes and in opposition to exclusion of the Notes. See ECF Nos. 168 (Motion to Admit), 177 (Opposition Motion).[4]

With respect to the Qatari Blockade, the Defendants argue that until the government proves a "unity of interests stemming from a specific shared criminal task with respect to the Qatar Blocka[d]e" the notes are inadmissible. The argument is close to a non sequitur, as the government has repeatedly made clear that it seeks admission of the notes on the ground that, among other things, they contain statements in furtherance of the <u>charged</u> conspiracy to act as illegal agents of the UAE.[5] See Mot. to Admit at 11. The questions before the Court, therefore, are (1) whether the government has established the existence of the charged conspiracy, and (2) whether the Notes constitute statements in furtherance of that conspiracy. See, e.g., United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999) ("To admit a statement under the coconspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and

---

[4] The Defendants moved to preclude introduction of the Notes and the government moved, separately, to introduce them. See ECF Nos. 162, 163 (Def. Notes Mot.), 168, 169 (Gov't Notes Mot.). In the Defense Motion addressed herein, the Defendants have consolidated their opposition to the government's Notes Motion and their reply in further support of the Defense Notes Motion. See Br. at 18.

[5] The government also expects the evidence at trial to establish that there was a meeting of the minds with respect to assistance the Defendants and Al Malik provided to the UAE in the context of the Qatari Blockade, but that is not the theory of admissibility advanced here.

second, that the statement was made during the course of and in furtherance of that conspiracy."). The answers are yes and yes.

The Defendants argue that the Notes do not satisfy the requirements of Rule 801(d)(2)(E) because they were not conveyed to anyone and did not further the conspiracy. Def. Mot. at 19-21. As noted previously, the government does not rely on the Notes having been communicated in support of their admissibility. See Gov't Opp. Mot. at 26. In any event, the Defendants' argument on this point is unavailing. The Defendants profess to have "no idea" what "context" the government had in mind when it argued that, viewed "in context, most of the notes clearly appear to have been written by Al Malik in preparation to relay information to a UAE government official." Def. Mot. at 19 (citing Mot. to Admit at 12). As discussed in the government's brief, the Notes lay out key aspects of the relevant context, including that the Notes begin with the word "Sir," were written after meetings between Al Malik and Barrack, reference subjects that other evidence (and common sense) will show were priorities of the UAE government, and were written during a period when Al Malik was regularly updating his handlers in the UAE about Al Malik's – and the Defendants' – progress on their shared goals. See Mot. to Admit at 13, 17-20. It could hardly be clearer that Al Malik was drafting the "Sir" notes towards a communication – oral or written – with his handlers in the UAE. If the Defendants draw some other inference, they have not said what it is. They will be free to argue it to the jury.

The Defendants make the further specious claim that the "the Government appears to have obtained a complete set of Al Malik's communications with Khalifa al Ghafli" and that, therefore, the government "can easily verify whether or not these Notes were communicated, in sum or substance, or not." Of course, the government does not have a complete set of communications between Al Malik and Al Ghafli – or of communications between the Defendants

9

and their UAE handlers. This is so for a variety of reasons, including (but not only) that the conspirators often spoke by phone, including over a burner phone; met in person; and, as indicated in communications the government <u>was</u> able to obtain, sometimes switched to a more secure messaging application, frequently referred to by Al Malik and Al Ghafli as "S." In fact, Al Malik and Al Ghafli's repeated references to switching their communications to messaging over "S" affirmatively evidences that the government does not have all of their communications.

Finally, with respect to whether the Notes were made in furtherance of a conspiracy, the Defendants challenge the government's reliance on "three unreported Second Circuit decisions" upholding the admission into evidence of drug ledgers, lists, and other such statements made by individual co-conspirators and not communicated to their confederates.[6] Def. Mot. at 20. The Defendants' attempts to distinguish the cited cases are unpersuasive, relying principally on the proposition that in the cited cases "a person familiar with the document, often the author, offered testimony at trial explaining the nature of the hearsay statements at issue and how they furthered the conspiracy." The argument fails on its own terms, as, to the contrary, not all of the cited cases involved a witness who testified in the manner described by the Defendants. In Fawwaz, for example, and contrary to the Defendants' argument, the witness did not testify about the purpose of the list at issue, or that it had been compiled in furtherance of a conspiracy – rather, the testimony was relied on to support the inference that the list "was accurate and therefore more

---

[6] To the extent the Defendants mean to suggest that "unpublished" summary orders have no bearing on this Court's decision, they are mistaken. See United States v. Payne, 591 F.3d 46, 58 (2d Cir. 2010) ("[D]enying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." (internal quotations and some alterations omitted)); Abrue v. United States, No. 16-CV-5052, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020) ("[T]his Court is not at liberty to disregard or contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order." (cleaned up)). In any event, the district court rulings affirmed by the cited Circuit opinions also constitute relevant authority.

10

likely to have been authored by an Al Qaeda member." 694 F. App'x at 850. Here, there is no dispute as to who authored the Notes. On the question of whether the list was created in furtherance of the charged conspiracy, the court relied on the same principle the government relies on here. See id. ("[T]his Court has previously held that the type of information contained in the List, namely information regarding the current status of the conspiracy and its membership, is sufficiently in furtherance of a conspiracy for the co-conspirator exception to the hearsay rule to apply." (cleaned up)).

In any event, none of the cited cases held or stands for the proposition that the government must call a witness to explain how a writing furthers a conspiracy in order for the statement to be admissible. Other authorities not cited by the Defendants similarly undermine their position. See, e.g., United States v. Orena, 32 F.3d 704, 715 (2d Cir. 1994) (affirming introduction of loan sharking records as statements made by members of a loansharking conspiracy because they included names and numbers with notations such as "collect" and "paid" and had been linked to the defendant); United States v. Jaramillo-Montoya, 834 F.2d 276, 279 (2d Cir. 1987) (affirming admission of address book as containing co-conspirator statements).

In sum, testimony explaining the nature of a document simply is not required to establish its admissibility. Rather, the government must establish by a preponderance of the evidence – documentary, testimonial, or otherwise – that the Notes constitute statements made in furtherance of the conspiracy.[7] Here, the Notes were taken by an operative of the UAE on subjects relating to his work in the United States carried out in concert with the Defendants on behalf of the UAE – in fact, many of the Notes directly reference the Defendants and their work. The only

---

[7] The government reiterates that certain portions of the Notes are not being admitted for the truth of the matter asserted, or do not contain assertions, and thus would be admissible even if the Court were to find they do not constitute co-conspirator statements.

11

fair inference is that Al Malik drafted the Notes to help himself (and others) in that endeavor. The Defendants will of course be free to argue that the Notes served some other purpose, that did not advance the conspiracy.

"To be 'in furtherance' of a conspiracy, the statements must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy." United States v. Pena, 978 F. Supp. 2d 254, 264 (S.D.N.Y. 2013) (internal quotation marks omitted). That standard is easily met here. Accordingly, and for the reasons stated in the government's previous submissions on the point, the Notes should be admitted into evidence at trial.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions in limine.

Dated:       Brooklyn, New York
               September 15, 2022

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

By:    /s/
        Ryan C. Harris
        Samuel P. Nitze
        Hiral D. Mehta
        Craig R. Heeren
        Assistant U.S. Attorneys
        (718) 254-7000

        MATTHEW G. OLSEN
        Assistant Attorney General
        Department of Justice
        National Security Division

By:    /s/
        Matthew J. McKenzie
        Trial Attorney