UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

AL MALIK ALSHAHHI, et al.,

        Defendants.

Case No.:  1:21-cr-00371-BMC-TAM

**DEFENDANT THOMAS J. BARRACK'S REPLY IN FURTHER SUPPORT OF HIS MOTION *IN LIMINE* TO EXCLUDE PREJUDICIAL EVIDENCE AND ARGUMENT REGARDING UNRELATED INVESTMENTS INTO FUNDS MANAGED BY ▮▮▮▮ AND ▮▮▮▮**

Defendant Thomas J. Barrack respectfully submits this brief memorandum of law in reply to the Government's letter, (ECF Nos. 216, 221), opposing his motion to preclude the Government from offering evidence at trial regarding a $300 million investment from the ███████ ███████████████████████████████████████████████████████████ fund ██████████ ████████

## ARGUMENT

I.  **THE GOVERNMENT'S ARGUMENTS REGARDING THE "INFERENCES" THAT CAN BE DRAWN REGARDING MR. BARRACK'S ROLE IN SECURING THE ████████████ ARE UNSUPPORTED BY THE ACTUAL EVIDENCE AND THUS CONSTITUTE IMPERMISSIBLE SPECULATION.**

Defendants moved to preclude the Government from arguing at trial that ██████ $300 million investment in ██████ was the "result of" Mr. Barrack's efforts. The Government knows that such a claim is false, given that *none* of the witnesses involved in the █████████████ whom the Government has interviewed have said that Mr. Barrack was responsible for ██████ investment in ██████ (*See* ECF No. 199, Def. Br., at 2-4.) In response, the Government does not dispute that none of the witnesses it has interviewed have credited Mr. Barrack with securing the ██████ Investment. Still, the Government claims, there are "numerous email communications" and evidence that Mr. Barrack "met" with █████████████████ including █████████████ ██████████████████████████████████████████████████████████████████ ████████████ (Opp. at 2.) Thus, contends the Government, the "jury should be permitted to draw the entirely reasonable inference that Barrack was involved in securing the ██████ ████████ by leveraging his relationships with senior UAE officials." (Opp. at 3.)

In fact, it is fear that the jury will draw *exactly* this inappropriate and unsupported "inference" that motivated Mr. Barrack to file the instant motion. What the Government has evidence of is a couple of short meetings between Mr. Barack and ████████████████ It does



not have any evidence that ███ was ever even *mentioned* at these meetings.  Further, the

witnesses interviewed by the Government have confirmed that it was ███████ and the efforts

of ██████ that led to the ████ deal, not anything Mr. Barrack did.[1]  The Government

responds that ██████ was only involved in "more junior pitches to investment professionals ██████

████," *see* Opp. at 2, but this too is complete fabrication on the Government's part.  ██████

is not a "junior" in the investing committee.  He is, and has been for years, a billionaire in his own

right, with a reputation in the business community as one of the best, if not *the* best, investors in

██████—and ████ was a fund devoted entirely to investments in ██████

Indeed, ██████ had closed multiple deals with ████ in the past—he did not need Mr. Barrack's

involvement in order to obtain an investment from ████, especially not for a fund that would be

devoted to investments in ██████, which was not a sector of the economy that Mr. Barrack

had significant experience with.  ██████ historical track record with ████ demonstrates that

he was being truthful when he told the prosecutors ██████████

██████████, *see* (ECF 199-3 at 6), ██████████

██████████

The Government does not like these facts.  That is understandable—it is clear that the

Government wants to portray the ██████ as a "payoff" to Mr. Barrack—but the facts

are the facts.  The Government's current intention to leap-frog over the hole in its case by simply

*insinuating* to the jury that Mr. Barrack *must* have been responsible for the ██████

because he once met with ████ in December 2016—before the ████ fund was even created—is

---

[1] Contrary to the Government's assertion that the defense "cherrypicked" witness statements, see Opp. at 1, *every* witness the Government has interviewed about the ██████ has said ██████.  Notably, the Government's Opposition did not identify a single witness who is planning to testify at trial that Mr. Barrack was responsible for the ████ Investment.

completely inappropriate.  The Government is not permitted to ask the jury to engage in this type of unsupported speculation, especially when it is aware of so much contradictory evidence.  *See United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir. 1995) ("it is not enough" that an inference urged by the Government is "permissible" and within the realm of possibility.  Instead, the Court "must also be satisfied that the inferences [urged by the Government] are sufficiently supported" by the evidentiary record); *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (explaining that the "line between permissible inference and impermissible speculation is drawn by the laws of logic and not judicial idiosyncrasies. As the Supreme Court has instructed, the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked. Thus, in a criminal case, the government must do more than introduce evidence at least as consistent with innocence as with guilt.") (internal citations omitted).

## II.    EVIDENCE OF ███'S $300 MILLION INVESTMENT IN ███ SHOULD BE EXCLUDED.

As Mr. Barrack argued in his Opening Brief, because the Government cannot present a tangible connection between Mr. Barrack and ███ investment in ███ the investment itself is of no probative value and, given the size of the investment, is highly prejudicial, given that the jury is unlikely to be able to put into context what a $300 million investment actually means for a fund like ███, which has hundreds of *billions* of dollars in assets.  The Government's Opposition simply assumes that Mr. Barrack was responsible for the ███ and thus offers no rebuttal to Mr. Barrack's arguments concerning prejudice related to the size of the investment.

The Government does, however, contend that it should be permitted to admit the ███████ ███████████████████████. [2] (ECF Nos. 199-1; 199-2)).  The Government concedes that it "does not intend to argue that the ████████████ column [was] intended to document Barrack's agency on behalf of the UAE."  (Opp. at 3).  Nevertheless, the Government argues that ████████████ "was clearly meant to reference, at a minimum, [Mr. Barrack's] special relationship with influential leaders in the region."  *Id.*  Thus, the Government continues, ████████ is probative of Mr. Barrack's "conduct," which the Government describes as "peddling . . . access and influence to the Trump Campaign and Administration while fundraising off those efforts with UAE sovereign wealth funds."  *Id.* at 3 n.3.  The problem with the Government's argument is that Mr. Barrack is not on trial for "influence peddling."  The Government may not attempt to try Mr. Barrack in a criminal court for activity that is neither unusual nor unlawful, but (apparently) offensive to the sensibilities of these particular prosecutors.  *Kelly v. United States*, 140 S. Ct. 1565 (2020) (the federal laws should not be employed as a general policing mechanism to "enforce [a prosecutor's] view of integrity.").[3]  Indeed, now that the Government has confirmed that its

---

[2] The Government's assertion that it "intends to elicit testimony from witness(es) who worked at ███████ about the meaning of" ████████████ is mystifying, since it has provided the defense with no Section 3500 material for any witness who purports to provide such information.  If the Government has in fact spoken to any witnesses who have provided such information, it should disclose that Section 3500 material now.

[3] The Government should not be permitted to argue that there is anything wrong with Mr. Barrack using his perceived relationship with the Trump administration to garner investments from sovereign wealth funds.  There is nothing criminal with an investment manager touting his relationship with policymakers to suggest that his insights might be valuable.  Indeed, businessmen of all stripes and in all industries often advertise their relationships with public officials to develop a client base.  Indeed, lawyers regularly tout their experiences with judges and prosecutors to suggest that they have greater insights than their competitors.   The fact that a businessman might market his relationship with public officials to develop business does not tend to make it more probable that he would agree to act subject to the direction or control of a foreign power.

purpose in offering the ███████████ is to establish that Mr. Barrack was "influence peddling," the Court should certainly exclude the evidence, as irrelevant under Rule 401, because influence peddling is not the charged offense, and under Rule 403, because arguments suggesting that Mr. Barrack must be unethical or immoral, given his "influence peddling" are clearly prejudicial and inappropriate.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Barrack's motion *in limine* to exclude argument and evidence regarding █████ $300 million investment in ██████ including but not limited to the ████████████████, GXs 449 and 457.

Dated: New York, New York
September 16, 2022

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
    Michael S. Schachter
    Randall W. Jackson
    Casey E. Donnelly
    Steven J. Ballew
    Jordan D. Reisch
    787 Seventh Avenue
    New York, New York 10019
    Phone:  (212) 728-8000
    Email:  mschachter@willkie.com

**O'MELVENY & MYERS LLP**

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407
E-mail:  jbowman@omm.com

*Attorneys for Defendant Thomas J. Barrack, Jr.*