UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

AL MALIK ALSHAHHI, et al.,

        Defendants.

Case No.: 1:21-cr-00371-BMC-TAM

---

**DEFENDANT THOMAS J. BARRACK'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION TO EXCLUDE
<u>CERTAIN STATEMENTS FROM RASHID AL MALIK</u>**

# TABLE OF CONTENTS

Page

Contents

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** ..................................................................................................................................3

    **I.**    **THE STATEMENTS MADE BY MR. AL MALIK WERE NOT "LIES."** ..................................................................................................................3

        **A.**    Mr. Al Malik's Statement to the FBI On March 23, 2018 Was Not False.................................................................................................................... 3

        **B.**    Mr. Al Malik's "Statements" During His FBI Interview on March 5, 2018 Were Not False. .................................................................................... 4

    **II.**    **THE GOVERNMENT HAS NOT SHOWN MR. AL MALIK'S STATEMENTS ARE ADMISSIBLE AS THE STATEMENTS OF A CO-CONSPIRATOR MADE IN FURTHERANCE OF THE CONSPIRACY.** ..........................................................................................................8

    **III.**    **REQUIRING DEFENDANTS TO PROVE THE TRUTH OF MR. AL MALIK'S STATEMENTS WILL NECESSITATE A TIME-CONSUMING MINI-TRIAL ON ISSUES THAT ARE CLEARLY TANGENTIAL TO THE TRIAL'S FOCUS....................................................... 9

**CONCLUSION** ............................................................................................................................11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**CASES**

*United States v. Al-Moayad*, 545 F.3d 139 (2d Cir. 2008) ……………………………………8

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) …………………………………………..8

*United States v. Graziano*, 558 F. Supp. 2d 304 (E.D.N.Y. 2008) ……………………………...10

*United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009) …………………………….....8

*United States v. Mejia*, 376 F. Supp. 2d 460 (S.D.N.Y. 2005)……………………………….7-8

*United States v. Mermelstein*, 487 F. Supp. 2d 242 (E.D.N.Y. 2007) ……………………………8

*United States v. Okatan*, 728 F.3d 111 (2d Cir. 2013) ………………………………………….10

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006) ………………………………………….10

*United States v. Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015) ………………………………...10

**RULES**

Fed. R. Evid. 801(d)(2)(E) ……………………………………………………………………..2, 8

Defendant Thomas J. Barrack, Jr., respectfully submits this memorandum of law in opposition to the Government's motion *in limine*, filed at ECF No. 220, to admit purported "statements" made to law enforcement by Mr. Rashid Al Malik.

## PRELIMINARY STATEMENT

The Government seeks to introduce at Defendants' trial certain statements purportedly made by Mr. Al Malik to the FBI. The Government claims that Mr. Al Malik's "statements" are admissible as statements made in furtherance of the charged conspiracy and contends that they are relevant because they are a predicate to establish the liability of Mr. Barrack and Mr. Grimes, if the Government chooses to pursue an aiding and abetting theory against them. The Government's arguments are misguided: the evidence the Government wants to introduce is inadmissible.

According to the Government, on March 23, 2018, an FBI agent called Mr. Al Malik and told him that the FBI wished to speak with him about his associations "with the Trump Campaign." Gov. Br. 3. Mr. Al Malik said "sure," and scheduled a breakfast with the agents for the next morning. After getting off the phone with the FBI, Mr. Al Malik contacted an associate of Mr. Barrack and spoke to him for "two minutes"—an action that is totally unremarkable given that the primary person Mr. Al Malik knew with a connection to the "Trump Campaign" was Mr. Barrack. The Government notes that Mr. Barrack's associate then called Mr. Barrack—but the Government has no idea what was said to, or by, Mr. Barrack. About an hour after the initial call with the FBI, Mr. Al Malik returned the FBI's call and said that he longer wished to speak with the FBI without counsel, the following morning, but would retain an attorney. According to the Government, Mr. Al Malik also noted that he had "nothing to do with the Trump Campaign." Two weeks later, Mr. Al Malik, with counsel, appeared for a voluntary interview with the FBI, which appears to have lasted for multiple hours, given the length of the Form 302. Mr. Al Malik does not appear to have

- 1 -

refused to answer a single question, including every question posed to him about connections to the "Trump Campaign." *Id*. The Government now claims that Mr. Al Malik made four statements at that voluntary interview that were "lies." Gov. Br. 3-4.

The Government contends that these events and Mr. Al Malik's "false statements" are relevant and admissible. They are not. While the Government claims admissibility under the exception for statements of co-conspirators, *see* Fed. R. Evid. 801(d)(2)(E), because the purported "statements" were "lies" designed to "conceal the existence of the conspiracy," in fact, nothing Mr. Al Malik said was a lie. Mr. Al Malik never worked for President Trump's Campaign. Mr. Al Malik was a business school student at Pepperdine during the time of the 2016 Presidential Campaign. Likewise, as described in Section I.B below, none of the four "lies" identified by the Government were actually false.

The admission of this evidence is also plainly prejudicial. The Government has no idea what was said on the phone calls between Mr. Barrack's associate and Mr. Al Malik—much less what was said between Mr. Barrack's associate and Mr. Barrack. The only thing that *is* clear is that Mr. Al Malik decided to postpone his voluntary interview by a measly two weeks and that he retained a lawyer—actions which reflect good judgment, not a intent to conceal criminal activity. Regardless of whether the Government refrains from specifically arguing that retention of counsel is indicative of guilt, it is obvious that permitting this evidence into the record—including ███ ████████████████████████████████—will create an impression in the jurors' minds that Mr. Barrack was somehow trying to impede the FBI from interviewing Mr. Al Malik or otherwise trying to control the FBI's access to Mr. Al Malik—an impression which is completely unfair, given that Mr. Al Malik *did* appear for an interview and answered questions for hours, and the fact that the FBI has *no idea* what Mr. Barrack or Mr. Grimes knew or said about

- 2 -

any of this. The Government's motion should be denied.

## ARGUMENT

### I.  THE STATEMENTS MADE BY MR. AL MALIK WERE NOT "LIES."

#### A. Mr. Al Malik's Statement to the FBI On March 23, 2018 Was Not False.

The Government claims that Mr. Al Malik "lied" to the FBI when he said over the phone that he had "nothing to do with the Trump Campaign." But, as noted above, that statement is *true*, or at least, it is not clearly false. Mr. Al Malik *wasn't* a member of the Trump Campaign—he was studying at graduate school during the 2016 Presidential Campaign and living in Los Angeles. The action that the Government points to, in claiming that Mr. Al Malik was "lying," is the fact that Mr. Al Malik once reviewed a draft speech on energy policy *drafted by folks at Colony* and offered comments to *Mr. Barrack*. Gov. Br. 2. There is no evidence Mr. Al Malik spoke to *anyone* who officially belonged to the Trump Campaign about the speech. Moreover, it is undisputed that the Trump Campaign threw out the speech that Mr. Barrack drafted, in favor of an entirely different speech written by the Trump Campaign's speechwriter, Stephen Miller. The fact that Mr. Al Malik once reviewed, through Mr. Barrack, a speech that Trump never gave is completely consistent with an offhand comment to an FBI agent, over the phone, that Mr. Al Malik wasn't part of the "Trump Campaign."

The other "action" that the Government points to is the fact that Mr. Al Malik was *forwarded* a public press release, issued by the Trump Campaign, concerning the Muslim Ban. But millions of people reviewed that press release—that doesn't make them part of the "Trump Campaign." Likewise, the fact that Mr. Al Malik attended the Inauguration in January 2017 is not evidence that Mr. Al Malik was part of the Trump "Campaign": indeed, the Trump "Campaign" had ended months earlier, on the evening of the November 8, 2016, when President Trump was

elected.

The Government's argument that Mr. Al Malik's supposed "lie" that he "had nothing to do with the Trump Campaign" was an act of deception meant to conceal the alleged conspiracy makes little sense. Indeed, Mr. Al Malik voluntarily sat down with the FBI two weeks later and spent hours answering questions about Mr. Barrack and the Trump Campaign. Given these facts, the Government cannot seriously contend that Mr. Al Malik's statement that he had nothing to do with the Trump Campaign was meant to conceal anything.

### B. Mr. Al Malik's "Statements" During His FBI Interview on March 5, 2018 Were Not False.

The Government also misrepresents the record when it claims that Mr. Al Malik offered four "lies" to the Government during his voluntary April 5, 2018 interview. Gov. Br. 3. The Government has so flagrantly cherry-picked Mr. Al Malik's statements that its representations to the Court about what Mr. Al Malik actually said are borderline deceitful. Moreover, the Government omits evidence suggesting that what Mr. Al Malik said was actually true. Taking each of the purported "lies" that the Government identifies in its motion in turn:

*First*, the Government claims that Mr. Al Malik falsely stated that he "could not describe any career role for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Gov. Br. 3. But here is the complete statement that the Mr. Al Malik made on this topic, which the Government largely omits from its letter:



Ex. 1 at 2. Mr. Al Malik also openly provided other details about ▮▮▮▮ such as:

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

All of the above disclosures that Mr. Al Malik made about ▮▮▮▮ in his April 5 interview undermine the Government's accusation that he was lying about not knowing ▮▮▮▮▮▮▮▮. If Mr. Al Malik was trying to conceal a supposed conspiracy to act as a foreign agent, he would not have explained that ▮▮▮▮▮▮▮▮▮▮▮▮—nor would he have disclosed all of the meetings with senior UAE officials that ▮▮▮ helped arrange.

Indeed, the Government's own evidence demonstrates that Mr. Al Malik in fact did not know what ▮▮▮ job actually was. On March 6, 2018, a month before Mr. Al Malik's interview, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 (GX-530-A.) In other words, he told Mr. Grimes, his alleged co-conspirator, essentially the same thing that he told the FBI a month later.

*Second*, the Government claims that Mr. Al Malik said: "In May 2016, the UAE did not have any interest in meeting with Candidate Trump." Gov. Br. 3. This is a complete perversion of what Mr. Al Malik actually said. The *very next sentence* in Mr. Al Malik's Form 302 is:



Ex. 1 at 4. Additionally, Mr. Al Malik's Form 302 makes clear that he told the FBI the following: "███████████████████████████." *Id.* In other words, Mr. Al Malik was entirely *forthcoming* about the UAE's interest in meeting with Candidate Trump in 2016. The Government's suggestion otherwise is an outright lie.

*Third*, the Government claims that Mr. Al Malik lied by telling the FBI the following: "Among the reasons Barrack sent Al Malik a copy of a May 2016 campaign speech on energy was to ensure that the pronunciation of the names of the Middle Eastern leaders was correct and that their titles were correctly identified. Al Malik shared the speech with ███ but did not know whether ███ shared it with anyone else." Gov. Br. 3-4. Again the Government is misrepresenting Mr. Al Malik's statements. The very next paragraph in Mr. Al Malik's Form 302 reads: "████████████████████████████████████████████████████████████████████████████████." Ex. 1 at 6. Mr. Al Malik also explicitly stated that, "████████████████████████████████████████████████████████████████████████████████" *Id.* The Government creates a misleading impression of Mr. Al Malik's statement

by omitting the above from its letter. Also, making sure the names and titles of Middle Eastern leaders were correct was, in fact, "among the reasons," why Mr. Barrack sent the speech to Mr. Al Malik. Mr. Al Malik actually corrected Mr. Barrack at one point by saying that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Ex. 3 (GX119).

With respect to the second sentence of the allegedly false statement—where the Government claims that Mr. Al Malik falsely said that he "shared the speech with ▆▆▆ but did not know whether ▆▆▆ shared it with anyone else," *see* Gov. Br. 4—the Government again cherry picks the statement. After the Government showed Mr. Al Malik a document to refresh his recollection, Mr. Al Malik said that "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." Ex. 1 at 6. There is no reason to believe that Mr. Al Malik was lying when he said that he could not remember whether anyone else saw the speech, when he admitted that he expected that ▆▆▆ was *supposed* to review it.

*Fourth*, the Government says that Mr. Al Malik represented that he "did not receive any messages from either ▆▆▆▆▆▆▆▆ Advisor to provide to Barrack." Gov. Br. 4. Aside from the meetings with ▆▆▆ that he attended with Mr. Barrack, the Government has no evidence that Mr. Al Malik ever personally spoke to ▆▆▆▆▆▆▆, let alone passed messages from them to Mr. Barrack.

The government cannot show that a statement was in furtherance of the conspiracy because it was an effort to conceal the conspiracy without showing that it was actually *concealing* something. Only "acts or statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy" and thus admissible on that basis. *United States v. Mejia*, 376 F. Supp. 2d 460,

463 (S.D.N.Y. 2005).

## II. THE GOVERNMENT HAS NOT SHOWN MR. AL MALIK'S STATEMENTS ARE ADMISSIBLE AS THE STATEMENTS OF A CO-CONSPIRATOR MADE IN FURTHERANCE OF THE CONSPIRACY.

The Government's argument in its brief is that Mr. Al Malik's "statements" can come in because they were "false," and thus, "furthered the alleged conspiracy by concealing it." But this argument has several holes: First, as described above, the statements at issue are *not* false. And second, even if the statements *were* false, they would still be inadmissible because they do not further the alleged conspiracy to violate Section 951.

Although the Federal Rules of Evidence allow admission of a defendant's statements as evidence against a co-defendant in the limited circumstance where the defendants were "co-conspirators" and the statement in question was "in furtherance" of that conspiracy, that is an exacting standard. *See* Fed. R. Evid. 801(d)(2)(E). To admit testimony under Rule 801(d)(2)(E), "the district court 'must find (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.'" *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008) (quoting *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003)).

Even assuming that the Government is correct that Mr. Al Malik lied, those lies would be an example of a coverup *after* the central objectives of the conspiracy had been attained, and not concealment done in furtherance of the conspiracy. Indeed, the Government's own authority recognizes that the co-conspirator exception applies only to "act[s] taken to conceal an *ongoing* illegal agreement." *United States v. Kahale*, 789 F. Supp. 2d 359, 384 (E.D.N.Y. 2009) (emphasis added); *see also, e.g.*, *United States v. Mermelstein*, 487 F. Supp. 2d 242, 261 (E.D.N.Y. 2007) (similar). Although the Superseding Indictment cherry-picks the dates of the supposed conspiracy

as running from April 2016 through April 2018, *see* S.I. ¶ 116, the last substantive allegation of any act done in furtherance of the conspiracy is from October 2017, *see id.* ¶ 117.  If the alleged conspiracy remained ongoing through April 2018, the Government would be able to point to some action the defendants took in the six months between October 2017 and April 2018 to further the conspiracy.  The Government should not be allowed to play games with the dates in its indictment to expand the scope of the statements it can admit under the co-conspirator statement exception.

In any event, as described above, Mr. Al Malik appeared to be completely open and honest with the FBI, notwithstanding the Government's blatant misrepresentations about his statements. Taking his statements in the proper context, and considering all the disclosures he made, it cannot be said that Mr. Al Malik was trying to further an alleged conspiracy by concealing anything from law enforcement.

### III. REQUIRING DEFENDANTS TO PROVE THE TRUTH OF MR. AL MALIK'S STATEMENTS WILL NECESSITATE A TIME-CONSUMING MINI-TRIAL ON ISSUES THAT ARE CLEARLY TANGENTIAL TO THE TRIAL'S FOCUS.

The Government's motion should be denied pursuant to Rule 403.

It is inappropriate for the Government to force Mr. Barrack and Mr. Grimes to prove the truth of Mr. Al Malik's statements—which are not even about particularly meaningful or important matters in the first place—especially since Mr. Al Malik is not even at trial.  Defense counsel will need to introduce all of the *other* portions of Mr. Al Malik's statements discussed in this motion to prove Mr. Al Malik wasn't lying during his interview, as well as all the supporting documents necessary to prove the negative—*i.e.*, for example, that Mr. Al Malik was *not* receiving messages from ▇▇▇▇▇▇ to pass along to Mr. Barrack.

All parties will need to devote significant time during closing arguments to these five "statements" of Mr. Al Malik and whether they were true or false—which is a complete distraction

from the actual allegations in this case, which are predicated upon *Mr. Barrack* and *Mr. Grimes* and whether *they* agreed to act at the direction or control of a foreign government. The question, for example, of whether Mr. Al Malik was being truthful when he gave his opinion to the FBI regarding the appetite of the UAE Government to meet with President Trump during the 2016 Presidential Campaign is an issue so far removed from the core issues that need to be resolved in this case that the Court should preclude the admission of these statements on the basis of trial efficiency alone. *See, e.g.*, *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492-93 (S.D.N.Y. 2015) (precluding evidence where allowing it would lead to a mini-trial on collateral issues); *United States v. Graziano*, 558 F. Supp. 2d 304, 324 (E.D.N.Y. 2008) (precluding evidence where it "would lead to a 'mini-trial' concerning . . . the defendant's knowledge and/or involvement with respect to any such activities"); *United States v. Stewart*, 433 F.3d 273, 313 (2d Cir. 2006) (upholding preclusion of cross-examination necessitating "mini-trial").

In addition to trial efficiency, it seems clear that the real reason why the Government wants to introduce these "statements" is to provide a hook for the admission of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The fact is, even if Mr. Al Malik were being tried alongside Defendants—which he is not—the Government could never introduce the fact that Mr. Al Malik exercised his right to remain silent and retained counsel when dealing with law enforcement. These are fundamental rights guaranteed under the Fifth and Sixth Amendments and an individual's decision to exercise those rights cannot be admitted into evidence *against* him at a criminal trial. *See, e.g.*, *United States v. Okatan*, 728 F.3d 111, 118 (2d Cir. 2013). Introducing these facts at Mr. Barrack's and Mr. Grimes's trial is even *more* prejudicial, since the unspoken

insinuation will be that Defendants did something wrong, as they *must have* encouraged Mr. Al Malik to decline an open dialogue with the FBI, instead suggesting that he "lawyer up," and maybe even lie during his interview. This is deeply prejudicial and unfair, especially because there is not the slightest bit of evidence suggesting that either Defendant wanted to keep Mr. Al Malik from speaking with the FBI—indeed, he spoke to them voluntarily *two weeks* later—or wanted Mr. Al Malik to "lie" about the meaningless and unimportant facts that the Government contends were "false" in Mr. Al Malik's FBI interview. Given the significant possibility of real prejudice to both Mr. Barrack and Mr. Grimes from the admission of this evidence, the Court should deny the Government's motion.

## **CONCLUSION**

The Court should deny the Government's motion to admit the statements from Al Malik identified in its September 13, 2022 letter.

Dated:   New York, New York
         September 18, 2022

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
    Michael S. Schachter
    Randall W. Jackson
    Steven Ballew
    Jordan Reisch
    787 Seventh Avenue
    New York, New York 10019
    Phone:  (212) 728-8000
    Email:  mschachter@willkie.com

**O'MELVENY & MYERS LLP**

    James A. Bowman (admitted *pro hac vice*)
    400 South Hope Street, 18th Floor
    Los Angeles, CA 90071
    Telephone:  (213) 430-6000
    Facsimile:  (213) 430-6407
    E-mail:  jbowman@omm.com

*Attorneys for Defendant Thomas J. Barrack, Jr.*