IA28GAT1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                    17 Cr. 686 (LAK)

JAMES GATTO, a/k/a "Jim,"
MERL CODE,
CHRISTIAN DAWKINS,

              Defendants.

------------------------------x

                                      October 2, 2018
                                      9:50 a.m.

Before:

              HON. LEWIS A. KAPLAN,

                                      District Judge
                                        and a Jury

                   APPEARANCES

ROBERT S. KHUZAMI
     Acting United States Attorney for the
     Southern District of New York
BY:  EDWARD B. DISKANT
     NOAH D. SOLOWIEJCZYK
     ALINE R. FLODR
     ELI J. MARK
     Assistant United States Attorneys

WILLKIE FARR & GALLAGHER LLP
     Attorneys for Defendant Gatto
BY:  MICHAEL S. SCHACHTER
     CASEY E. DONNELLY

SOUTHERN DISTRICT REPORTERS, P.C.
         (212) 805-0300

Case 1:21-cv-03717-BMC Document 59-2 Filed 09/21/22 Page 2 of 9 PageID #: 389
Case 3:17-cr-00684-LAK Document 245 Filed 11/02/18 Page 56 of 170
IA28GAT3                    Opening - Ms. Donnelly

1  offenses when Adidas took a tiny portion of the money that it
2  brought in and shared it with the families of the players on
3  the court.
4         Let me give you an example.  The government contends
5  that Jim committed two felonies because he purportedly agreed
6  to send $40,000 to the family of Dennis Smith, Jr.  This is a
7  family that lived in public housing down in Fayetteville, North
8  Carolina.
9         MR. MARK:  Objection.
10         THE COURT:  Sustained.  This is not appropriate.
11         MR. MARK:  Your Honor, we have actually never seen
12  this PowerPoint presentation before.
13         THE COURT:  I am not seeing a PowerPoint presentation
14  at all.
15         MR. DISKANT:  The jury can see it.
16         THE COURT:  Is the jury seeing a PowerPoint?
17         MS. DONNELLY:  Yes, they are.
18         THE COURT:  Counsel, in the robing room.
19         (In robing room)
20         THE COURT:  When did this PowerPoint start?
21         MS. DONNELLY:  The PowerPoint has been projected to
22  the jurors from the beginning of the opening.
23         THE COURT:  Has the government seen it in advance?
24         MR. SCHACHTER:  We understood it was presented on the
25  court's screen as well.  We had no idea that it was not.

IA28GAT3                Opening - Ms. Donnelly

1             THE COURT:  Had the government seen it in advance?
2             MR. SCHACHTER:  The government did not ask to see any
3    PowerPoints and we didn't ask to see the government's
4    PowerPoint.  It's standard, as I --
5             THE COURT:  Did the government use a PowerPoint?
6             MR. MARK:  We did not use a PowerPoint.  We did not
7    know they were going to use a PowerPoint.  We actually think
8    that some of those details in that PowerPoint might not be
9    accurate and consistent with the facts that will come in.
10            THE COURT:  Mr. Schachter, you just told me the
11   government used a PowerPoint.  Who is telling the truth?
12            MR. SCHACHTER:  I said that the government has a
13   standard operating procedure to use PowerPoints.
14            THE COURT:  You didn't use the word standard operating
15   procedure.  You said they used a PowerPoint.
16            MR. SCHACHTER:  If I did, then I apologize.
17            THE COURT:  Your colleague is agreeing with me.
18            MR. SCHACHTER:  What I meant to say was that it is
19   standard operating procedure for the government.  I know in
20   your Honor's last trial in opening statements the government
21   used a PowerPoint and we anticipated that the government would
22   be using --
23            THE COURT:  And I knew in advance and the defense knew
24   in advance and it was all approved.  This is a stunt and it's
25   unprofessional.

1         MR. SCHACHTER:  Your Honor, I can only say that I
2    assumed that the government's decision not to request our
3    PowerPoint was tactical and that they did not want to show me
4    theirs.  I had actually asked the question --
5         THE COURT:  Mr. Schachter, you said the government
6    made a decision not to request your PowerPoint.  Are you
7    representing to me that you had disclosed to the government
8    that you had intended to use a PowerPoint?
9         MR. SCHACHTER:  Absolutely not.  Nor did I understand
10   there would be any such obligation.
11        THE COURT:  Well, you have learned something.  Don't
12   ever do anything like that again.
13        MR. SCHACHTER:  I will not, your Honor.
14        THE COURT:  The PowerPoint is over.  You're not using
15   it.  I am instructing the jury to disregard it entirely.  And I
16   am shocked.
17        MR. SCHACHTER:  Your Honor, I can only say that in the
18   last number of trials I have had the government has always
19   employed some kind of PowerPoint, which of course needs to only
20   reflect what we believe to be the evidence.
21        THE COURT:  And it came as a surprise to you every
22   time and you didn't know it was being used from the very first
23   moment it was on the screen?  Are you telling me that?
24        MR. SCHACHTER:  I can only say that I was surprised
25   that the government did not employ a PowerPoint.  I expected

1  them to use a PowerPoint display as the government does on a
2  regular basis.
3           THE COURT:  Your argument holds no common sense, let
4  alone anything else.  This is outrageous behavior.
5           Let's go back.
6           And you, ma'am, you don't instruct the jury on the law
7  in an opening statement.
8           (In open court)
9           THE COURT:  Members of the jury, you are instructed to
10 disregard whatever PowerPoint you have seen altogether.  It is
11 out of this case.  You are to pay no attention.  It should not
12 have been shown to you without advance notice to the other side
13 or to the court.
14          Go ahead, Ms. Donnelly.
15          MS. DONNELLY:  Ladies and gentlemen, as I was --
16          THE COURT:  Just so it's clear, you saw it, but I saw
17 none of it and the government saw none of it.  Nobody knew it
18 was there.
19          Go ahead, Ms. Donnelly.
20          MS. DONNELLY:  Ladies and gentlemen, as I was saying,
21 the government contends that Jim is guilty of a crime because
22 he purportedly agreed to send $40,000 to the family of Dennis
23 Smith, Jr.  You will learn during this trial that Dennis Smith,
24 Jr. ended up going to his local state university, NC State.
25 The government says that Dennis agreed to go there because of

Case 1:21-cv-03717-BMC Document 59-245 Filed 09/12/18 Page 6 of 9 PageID #: 6993
Case 1:17-cv-06646-LAK Document 250 Filed 02/21/18 Page 75 of 170

Ia2dgat4

1           (Jury not present)

2           THE COURT:  Be seated, folks.

3           Let me just get something up on my screen here.

4           (Pause)

5           My recollection, without having gotten it back up on my screen yet -- ah, here it is -- is this:  Ms. Donnelly was going on talking about Dennis Smith and some statement about the family living in public housing.  Mr. Mark, you objected, and I sustained it.

10          Mr. Mark, you then said, "Your Honor, we have actually never seen this PowerPoint presentation before."  When was the first moment you became aware, in relation to what I read, that there was a PowerPoint being used by Ms. Donnelly?

14          MR. MARK:  We became -- I think there was a presentation on the screen at the beginning of her argument.  It started.  We -- you know, we assumed that your Honor was also seeing what we were seeing for the first time.  We didn't want to stand up and object right that second, candidly, because we wanted to give her some latitude in her opening statement.  But then when it got to a certain point, it clearly became objectionable and we raised that to your Honor.

22          THE COURT:  Did you know, before she began her argument, that they had a PowerPoint that they intended to use?

24          MR. MARK:  We did not know that, your Honor.

25          THE COURT:  Ms. Donnelly, Mr. Schachter, did you

Case 1:21-cv-03717-BMC Document 59-245 Filed 09/21/22 Page 7 of 9 PageID #: 6994
Case 1:17-cr-00630-LAK Document 250 Filed 12/10/18 Page 76 of 170

Ia2dgat4

1 disclose to the government, or to me, that you intended to use
2 a PowerPoint, yes or no?
3     MR. SCHACHTER: No.
4     THE COURT: Ms. Donnelly?
5     MS. DONNELLY: No.
6     THE COURT: As I said in the robing room, this
7 behavior is inappropriate. I consider it to have had a
8 deceptive effect, whatever its intention was, and it was
9 unprofessional.
10     Now, I don't yet know from a technical standpoint how
11 you managed to get that on the screens in the jury box, and I
12 want to know that now, because it was not on any of the screens
13 that court personnel had.
14     Was it on your screen, Mr. Mark?
15     MR. MARK: It was on our screen and we assumed it was
16 on your screen. That is why we were so confused.
17     THE COURT: How did you get that to happen?
18     MR. SCHACHTER: I don't know the answer to that. I
19 assumed it was on your Honor's screen as well.
20     (The law clerk conferred with the Court)
21     THE COURT: On my display, the controls for video
22 publishing are all set to off.
23     MR. SCHACHTER: We were of course, unaware of that,
24 your Honor. I assumed that anything that could be displayed --
25 I assumed that nothing could ever be displayed before the jury

1    that your Honor was unable to see.
2             THE COURT:  Well, you can be sure that's always my
3    assumption because every system I've ever used left the final
4    control of what was displayed to the jury in my hands and my
5    deputy's.
6             Now, do you have an IT consultant here?
7             MR. SCHACHTER:  I do, your Honor.
8             THE COURT:  Who set this up?
9             MR. SCHACHTER:  That I don't know.
10            THE COURT:  All right.  I want an affidavit of how
11   they managed to accomplish that.
12            MR. SCHACHTER:  Yes, your Honor.
13            THE COURT:  And, furthermore, there will be no use of
14   any audio/visual until I am assured that the ability of the
15   lawyers to put anything in front of the jury before Andy or I
16   displays it is totally disabled.
17            Where did you ever get the idea that you could display
18   material to the jury without the Court being made explicitly
19   aware of it?
20            MR. SCHACHTER:  Your Honor, I have reached an age
21   where I cannot say that my memory is completely clear, but I
22   believe in my last trial against the Justice Department, the
23   government put on a PowerPoint and we put on a PowerPoint and
24   there was no exchange of PowerPoints.
25            THE COURT:  And you put it on two juries without the

1  court knowing you were going to do it or seeing it at the same
2  time, you did that?
3         MR. SCHACHTER:  Absolutely not, because we never in a
4  million years believed that your Honor could not see whatever
5  was displayed to the jury.  I would never, ever present
6  something to the jury that the Court was unable to see.  It was
7  my understanding -- I didn't even think that would be
8  technologically possible.  And we, of course, had no intent to
9  hide what was going on from the Court.
10         I can only apologize and of course we'll find out
11  exactly how that happened.  But that was in no way our
12  intention and it would have been -- it would never have
13  occurred to me that that was a technological possibility.
14         THE COURT:  All right.  Just one minute.
15         (Pause)
16         OK.  I'll see you at 2 o'clock.
17         THE CLERK:  All rise.
18         (Luncheon recess)