

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| RCH/SPN/HDM/CRH | *271 Cadman Plaza East* |
| F. #2018R01309 | *Brooklyn, New York 11201* |

September 21, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas Joseph Barrack, et al.
      Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

   The government respectfully submits this letter in further support of its motion in limine (the "Motion") to admit at trial certain statements made to federal law enforcement by fugitive co-defendant Rashid Sultan Rashid Al Malik Al Shahhi ("Al Malik") and in response to the Defendants' recently filed arguments in opposition to the Motion. See Dkt. Nos. 219 (Motion), 248 (Barrack Opp.), and 250 (Grimes Opp.). Barrack argues that the Court should preclude the proffered statements because (1) they are not lies told in furtherance of the charged conspiracy and, in any event, (2) their introduction would be unduly prejudicial, particularly if coupled with evidence of Al Malik's effort to contact representatives of Barrack. Grimes joins Barrack's arguments and further contends that the government has misstated facts relating to Grimes's reaction to a grand jury subpoena served on him by the Special Counsel's Office. The Defendants are wrong. The Court should grant the government's motion.

   A. Al Malik's March 23, 2016 Statement was False and Aimed at Furthering the Charged Conspiracy

   The Defendants' argument that Al Malik told the truth when he stated to the FBI on March 23, 2016 that he had "nothing to do with the Trump campaign" is flatly contradicted by the record. In support of their argument, the Defendants twice recast Al Malik's answer, arguing that Al Malik "wasn't a member of the Trump campaign" and was not "part of" the Trump Campaign. Opp. at 3 (emphasis in original). The government has not suggested that Al Malik was a member or part of the campaign – but Al Malik stated that he had nothing to do with the campaign, a far broader and clearly false assertion. The Defendants' further description of the challenged statement as "an offhand comment to an FBI agent, over the phone" is far-fetched and makes light of a circumstance Al Malik surely took seriously, as evidenced in part by his making numerous phone calls to Barrack's associates, his decision to retain counsel, and his return call to the agent, all before Al Malik then lied to the FBI agent. Given the context of the conversation

with federal law enforcement, it is not remotely plausible that Al Malik's statement was anything other than careful and considered.

The Defendants also distort the record relating to Al Malik's efforts to assist the Trump Campaign's handling of the so-called "Muslim Ban." The government refers the Court to the brief summary provided in the Motion, which makes clear that Al Malik had a direct connection to the campaign, through Grimes and Barrack, and sought to provide assistance to the campaign.

Given the FBI's statement to Al Malik that it wished to discuss Al Malik's "associations with the 2016 Trump Campaign," Al Malik's initial response of, "sure, why not" – i.e., a tacit agreement to meet with the FBI to discuss the topic – and Al Malik's decision an hour later not just to cancel the meeting but to state that he had "nothing to do with the Trump Campaign," it is clear that Al Malik sought to deceive the FBI.

B. Al Malik's Statements During the April 5, 2018 Meeting with the FBI Were False and Aimed at Furthering the Conspiracy

That Al Malik ultimately agreed to participate in an interview with the FBI only reinforces the inference that Al Malik took steps to preserve his ongoing conspiracy with the Defendants in the face of law enforcement scrutiny. As discussed above, Al Malik began his interactions with federal law enforcement, on March 23, 2018, by trying to put the FBI off entirely, claiming that he had nothing to do with the Trump Campaign – that is, that he had nothing to do with the lone topic raised by the FBI agent on the phone. The next day, the FBI subpoenaed Al Malik to testify in the Grand Jury, a fact conspicuously left out of the Defendants' recitation of the facts. That Al Malik agreed to speak with the FBI while under subpoena is hardly surprising, because it gave him an opportunity to understand the potential scope of the questioning without having to do so before the grand jury. During that interview, Al Malik repeatedly sought to mislead the FBI, only to change his answers when confronted with the documentary record. Three days after the interview – which made clear that the FBI was aware of key aspects of Al Malik's conduct and relevant communications – Al Malik left the country and, more than four years later, has still not returned.

The Defendants argue that Al Malik's statements to the FBI were true and accuse the government of lying to the Court regarding those statements.[1] The argument is meritless. The government agrees that it is important for the Court to view the challenged statements in context – including in the context of the subpoena and flight referenced above – and urges the Court to

---

[1] The government once again rejects the Defendants' baseless accusation – the latest in a series of attempts to impugn the government's motives and conduct, couched in decidedly personal terms – that the government has misled the Court. The government understands why the Defendants would prefer that the jury not see or hear the government's evidence, and, needless to say, the Defendants are free to disagree with the government's positions. The Defendants also are free to argue that the government has left out relevant factual context – certainly the government takes that view of much of the Defendants' advocacy to date. But to suggest the government is lying to the Court – echoing previous arguments that the government has violated the rules of professional conduct, purposefully sought to tamper with the jury process, and so on – is sharp and unprofessional.

2

review the FD-302 of Al Malik's interview (the "Malik 302") attached as Exhibit 1 to the Defendants' opposition motion.[2] The government's motion is not premised on the proposition that Al Malik refused to adjust his false statements in certain respects once confronted by documents that directly contradicted those statements. Cf. United States v. Kishk, 63 F. App'x 11, 13 (2d Cir. 2003) ("The fact that [the defendant] eventually recanted his false statement in no way renders it any less false."). The point is that Al Malik lied repeatedly in hopes of shielding the ongoing conspiracy. When those efforts failed, he fled.

1. Al Malik's Statements Regarding Khalifa Al Ghafli

Al Malik stated that he could not describe any career role for        beyond his position in the President Protocol Office and that        did not provide Al Malik with details about his work. The statements were false, and nothing in the additional statements referenced by the Defendants rendered them true. The government agrees that, later in the interview, Al Malik provided more detail when confronted with documents, but still nothing like the detail that would have been required to answer questions about        role accurately. That Al Malik, when confronted with documents, acknowledged that        arranged meetings and offered some details broadly consistent with the notion that he was part of the Presidential Protocol Office does not cure the falsity of his statements. Al Malik's statement about Al Ghafli, set against the context of at times daily communications between Al Malik and Al Ghafli regarding Al Malik's work in the United States on behalf of the UAE, cannot be viewed as anything other than deceitful.

2. Al Malik's Statement Regarding Meeting with Candidate Trump

Al Malik told the FBI that in May 2016, the UAE did not have any interest in meeting with Candidate Trump. As the Defendants point out, Al Malik went on to state that, "as time went on," the UAE "considered Candidate Trump as a potential person to meet with." Al Malik suggested that at some point after May 2016, Al Malik spoke with        and asked him if the UAE should get closer to Candidate Trump. These statements were false, and only after Al Malik was shown certain documents did he adjust his story to accommodate information he could no longer deny. For example, AL Malik was confronted with documents designated in the FD-302 by numbers ending 1391930, 1396197, 1390428, and 1395590, which, taken together, make abundantly clear that the UAE – including        , whom Al Malik (falsely) stated was not interested in meeting with Candidate Trump – was acutely interested in meeting Candidate Trump starting at the beginning of May 2016. Those documents are attached hereto as Exhibit A for the Court's reference. The Defendants' contention that Al Malik was "entirely forthcoming about the UAE's interest in meeting with Candidate Trump" (emphasis in original) and that the government's contrary suggestion is an "outright lie" are belied by the record. See supra at 2 n. 1.

3. Al Malik's Statement Regarding the Energy Speech

Malik also lied when he told the FBI that "[a]mong the reasons Barrack sent Al Malik a copy of a May 2016 campaign speech on energy was to ensure that the pronunciation of the names of the Middle Eastern leaders was correct and that their titles were correctly identified"

---

[2] The interview was littered with additional false statements and omissions by Al Malik, but the government has chosen to focus on just a few.

3

and that Al Malik "shared the speech with          but did not know whether          shared it with anyone else." Mot. at 3-4. Al Malik also stated that Barrack may also have wanted to ensure the speech was in the "right way for Middle Eastern thought." Only after he was confronted with documents did Al Malik acknowledge – and then only vaguely – that          shared the speech with others. Al Malik stated that his memory was "refreshed" that, in fact,                                    and the UAE                                                        had discussed the energy speech that Al Malik provided through          . Malik FD-302 at 7. It is important not to allow months-long immersion in the facts of this case to obscure the significance of such a statement, and others like it. To put a finer point on it, Al Malik, whom the Defendants quaintly describe as a "business school student at Pepperdine" during the relevant period, stated to the FBI, in effect, "Oh, right, now that you remind me, I sent a draft campaign speech to be delivered by a candidate for the Presidency of the United States through an intermediary to two of the most powerful people in the Middle East and I relayed their feedback back to the campaign." The notion that Al Malik forgot such an exchange is preposterous.

The government refers the Court to its description of additional relevant conduct in the Motion and to the Malik FD-302, including document 1388899, referenced therein and attached hereto as Exhibit B, for further context, all of which makes clear that Al Malik sought to mislead the FBI. Notably, Exhibit B shows that Barrack sent his latest draft of the speech in an email with the subject line "Totally Confidential" to Al Malik, who promptly forward it on to          (as he had previous drafts of the speech). In the email, Barrack states, "Note reference to                    ." This is the email that, as documented in the FD-302, Al Malik stated had "refreshed" his recollection. Again, it is true that Al Malik eventually provided more detail when confronted by documents, but the documents also make clear that Al Malik's initial answers were false and that he ultimately admitted (even then with distinct minimization) what he could no longer deny.

4.  Al Malik's Statement Regarding Receipt of Messages from UAE Officials

As argued in the Motion, Al Malik's representation that he "did not receive any messages from either          or the                                    to provide to Barrack" is obviously false. Here, the Defendants retreat to a technical argument that the government has no evidence that Al Malik every personally spoke with                    or        , but of course, even if that were so, one may pass messages through intermediaries. Had Al Malik been "forthcoming," he would have acknowledged the many messages passed from these UAE leaders through          and Al Malik and on to the Defendants in this case. But of course that would have exposed aspects of the conspiracy he was trying to protect.

C.  The Statements Were Made in Furtherance of the Charged Conspiracy

The Defendants argue that even if the statements the government seeks to admit were lies, they were not made in furtherance of the charged conspiracy. They contend that the government is "play[ing] games" with the dates of the conspiracy. Mot. at 9. Not so. The conspiracy is alleged to extend through April 2018. There is conduct referenced in the Motion itself – apparently missed by the Defendants – from February of 2018. And the statements at issue here were designed to continue a conspiracy that was still ongoing, for the reasons stated in the

4

Motion. In addition, as argued in the Motion, the statements are admissible to prove Al Malik's guilt of a substantive Section 951 violation, a predicate to proving one theory of aiding and abetting liability.

D. <u>The Proffered Statements Satisfy Rule 403</u>

The Defendants also contend that the statements should be precluded on the independent basis that they fail Rule 403's balancing test because the Defendants would be required to prove the truth of the statements at issue. The argument is unpersuasive. To the extent the Defendants rely on principles of completeness, the Court can consider the argument and determine whether additional portions of the interview should be admitted into evidence. In any event, the Defendants will not have to prove the truth of              statements – <u>e.g.</u>, that he did not relay messages – because such proof would lie in the absence of evidence. That is, the burden will fall to the government – as it does on all these matters – to establish the falsity of the claims.

Here, the Defendants again turn from substantive argument to baseless invective, suggesting that the <u>real</u> reason the government seeks to admit the statements is as a means of admitting phone records contained in Government Exhibit 706. The Defendants suggest without any record support in the Motion or elsewhere that the government somehow intends to question Al Malik's exercise of his constitutional rights and thereby prejudice the Defendants. The argument is frivolous. The government has no intention of suggesting there is or was anything surprising or improper about an effort to retain or consult with counsel in the face of a law enforcement inquiry. Rather, the government will focus the jury on Al Malik's decision to deceive the FBI.

E. <u>The Government Stands by its Description of the Factual Record Related to Grimes</u>

Grimes separately argues that the text he sent to Al Malik on March 5, 2018, stating,                                   was not in response to the fact that he had learned that exact same day that he would be served with a grand jury subpoena by the Special Counsel's Office but, rather a reference to a news account from a day or two earlier regarding                 . Grimes Mot. at 1. Grimes argues further that the government "knows better" because Grimes explained the text in his grand jury testimony. <u>Id.</u> The government does not know better because it does not credit Grimes's statements on the subject during his grand jury testimony. The relevant chronology is as follows: Grimes received word of the forthcoming grand jury subpoena, by his own admission, in the afternoon of March 5, 2018. <u>Id.</u> at 2. That same afternoon, Grimes, sent Al Malik the above-quoted text. The substance of the text clearly indicates some urgency and a need to talk about something                    involving or relating to Grimes, Barrack, and Al Malik. Obviously, receipt of a federal grand jury subpoena by the Special Counsel's Office would fall into that category. Confronted with the above-quoted email, Grimes suggested he was reaching out to Al Malik to tell him that President Trump was upset about a recent article regarding              . Leaving aside the lack of evidence to support this assertion, there was surely no pressing reason – if there was any reason at all – for Grimes to inform Al Malik, the purported Pepperdine student and business associate, of this matter.

Insistence that their version of the facts is correct, and that the Court must therefore prevent the jury from seeing or hearing disputed evidence, is a recurring theme of the defense

5

motions. But it is a bedrock principle that it is for the jury to determine the weight, if any, to assign to probative evidence.

I. Conclusion

For the foregoing reasons, false statements of the Defendants' co-conspirator Al Malik made to conceal, and thereby further, the charged conspiracy should be admitted into evidence at trial as acts in furtherance of the charged conspiracy, and as evidence that Al Malik committed a substantive violation of Section 951.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:    /s/
Matthew J. McKenzie
Trial Attorney

cc: Counsel for Thomas Joseph Barrack (by ECF)
Counsel for Matthew Grimes (by ECF)
Clerk of the Court (BMC) (by ECF)