

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH  *271 Cadman Plaza East*
F. #2018R01309  *Brooklyn, New York 11201*

September 27, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Thomas Joseph Barrack, et al.
Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

The government respectfully moves to preclude (1) the admission into evidence of certain documents only recently identified as defense exhibits, on the ground that they constitute inadmissible hearsay or are otherwise barred by the Federal Rules of Evidence; (2) admission of extrinsic impeachment evidence that does not satisfy the standard for admission thereof; and (3) the admission and publication of defense exhibits through government witnesses who have no personal knowledge of the information contained therein, as the defense is free to publish its own exhibits during its case in chief.

I. Certain Documents Identified as Defense Exhibits Are Inadmissible at Trial

The government respectfully moves to preclude certain defense exhibits identified by the defendants for the first time on September 21, 2022, which the defendants have indicated they intend to introduce through potential government witness ███████, ███████ ███████ defendant Thomas J. Barrack ("Barrack"). Specifically, the government moves to preclude Barrack Exhibits ("BX") 170, BX 180, and BX 183 and exhibits designated by defendant Matthew Grimes as Grimes Exhibits ("GE") 22, GE 28, GE 29, GE 61, GE 75, GE 92A, GE 92B, GE 104, GE 134, GE 136, and GE 137 (collectively the "Defendants' Exhibits") (attached hereto in Exhibit A).

A. Legal Standard

A defendant's out-of-court statement is not hearsay when offered by the government. Fed. R. Evid. 801(d)(2)(A). A defendant, however, does not have a parallel ability to offer his own statements. See, e.g., United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) (observing that the "Government was free to introduce a statement as an admission by a party opponent," but that the defendant "had no right to introduce it on his own"). Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect,

testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005); see also United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Nor, except in extremely limited circumstances, may a defendant introduce his own out-of-court statements as evidence of his state of mind. The state of mind exception to the hearsay rule allows into evidence "[a] statement of the declarant's then existing state of mind . . . but not including a statement of memory or belief to prove the fact remembered or believed." Fed. R. Evid. 803(3) (emphasis added). The state of mind must be relevant, and the statement cannot be offered for any underlying truth. See Funk v. Belneftekhim, No. 14-CV-0376 (BMC), 2018 WL 11169575, at *3 (E.D.N.Y. Nov. 30, 2018) (denying admission of statements under Rule 803(3) because "[n]either statement shows [declarant's] knowledge or state of mind independent from the truth of what it asserts and it is not clear how [declarant's] state of mind is relevant."). "The 'exclusion of statements of memory or belief [proffered] to prove the fact remembered or believed' is necessary to prevent the exception from swallowing the hearsay rule. This would be the result of allowing one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind." United States v. Cardascia, 951 F.2d 474, 487 (2d Cir. 1991) (cleaned up). The statement must be forward-looking and not backward-looking. See id. (citing Shephard v. United States, 290 U.S. 96, 104 (1933) (holding that the statement, "Dr. Shephard has poisoned me" is not admissible as an existing state of mind because it was backward-looking)).

In addition, evidence is relevant and admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence' and if 'the fact is of consequence in determining the action.'" United States v. Monsalvatge, 850 F.3d 483, 494 (2d. Cir. 2017) (quoting Fed. R. Evid. 401).

B. Discussion

Most of the defense exhibits challenged herein are either emails between ▆▆▆▆ and others, or text messages between Barrack and Grimes. The defendants appear to be offering these exhibits to prove the truth of certain facts in support of defense theories—for example, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Putting aside the tenuous relevance of some of the proffered exhibits, the Rules of Evidence do not permit their introduction because they contain inadmissible hearsay as they are being offered for the truth of the matters asserted therein.[1] Each of the aforementioned exhibits is addressed below:

---

[1] These exhibits would be admissible by the government as admissions of a party-opponent because Barrack and Grimes are party-opponents and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Barrack. See Fed R. Evid. 801(d)(2)(A), (D). The converse is not true, for the reasons already stated.

1. <u>BX 170</u>

    [redacted]

2. <u>BX 180</u>

    [redacted]

3. <u>BX 183</u>

    [redacted]

4. <u>GE 22</u>

    [redacted]

5. <u>GE 28 and GE 29</u>

6. <u>GE 61</u>

7. <u>GE 75</u>

8. <u>GE 92A and GX 92B</u>

---

[2] It is also not clear why it is necessary or appropriate to offer this exhibit through ▮, who is not on the email chain.



9. GE 104

10. GE 134, GE 136, GE 137

II.  Extrinsic Impeachment Evidence is Inadmissible Except in Limited Circumstances

The government respectfully moves the Court to preclude admission of extrinsic impeachment evidence that does not satisfy the applicable legal standards.

A.  Relevant Background

The government submits this motion given counsel for Barrack's efforts to admit extrinsic impeachment evidence during the cross examination of government expert witness Dr. Christopher Davidson. Specifically, Barrack's counsel moved into evidence, over the government's objection, undated video excerpts of statements by General James Mattis (the "Mattis Video"), apparently produced by the UAE embassy, and an article published in the Washington Post on Nov. 9, 2014, entitled "In the UAE, the United States has a quiet, potent ally nicknamed 'Little Sparta'" (the "Article"). The Court admitted the Mattis Video (marked BX-832) "subject to connection during the defendants' case." Tr. 599: 15-16.[3] The Court admitted the

---

[3] The government understands from defense counsel that they offered the Mattis Video for impeachment purposes as well. To the extent this video was admitted as part of the Defendants' case in chief, it was not properly admitted through a government expert who had never seen the video and had no personal knowledge of its context, substance, or authenticity. Moreover, the

5

Article, marked Defense Exhibit BX1237, for impeachment purposes only, on the theory that it contained information of the type Dr. Davidson relied upon. See Tr. 605:16-20 ("It's a secondary source, and it contains statements of fact. I think, you know, whatever he said, it's sure close enough to that to allow it to come in. So I'm going to allow it. I will say it's for impeachment purposes only."). Although the defendants made no proffer of relevance, the government's best guess is that the document was intended to impeach aspects of Dr. Davidson's testimony indicating that the relationship between the United States and UAE had deteriorated during the Obama Administration.

B. <u>Legal Standard</u>

Extrinsic impeachment evidence is generally inadmissible at trial except in limited circumstances.

1. <u>Character for Truthfulness</u>

One well-settled limitation on impeachment arises from Rule 608(b)'s categorical bar on the introduction of extrinsic evidence to prove specific instances of a witness's untruthfulness. See <u>United States v. Peterson</u>, 808 F.2d 969, 973–74 (2d Cir. 1987); <u>United States v. Brown</u>, 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("Under the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may not be admitted to attack his truthfulness.").[4] The Rule also addresses the permissible scope of cross-examination regarding specific instances of a witness's conduct—it "is intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." <u>United States v. Nelson</u>, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (quoting Weinstein & Berger, Weinstein's Federal Evidence § 608.22[2][c][i] (2d ed. 1997)). Thus, Rule 608 permits cross-examination concerning specific instances of conduct, if at all, only insofar as the conduct in question is "probative of truthfulness or untruthfulness." <u>United States v. Flaharty</u>, 295 F.3d 182, 191–92 (2d Cir. 2002). Even then, inquiry into specific instances of conduct may be further curtailed in order to "protect [a] witness from harassment or undue embarrassment," Fed. R. Evid. 611(a)(3), or pursuant to Rule 403 balancing.

2. <u>Impeachment by Contradiction</u>

"The common-law rule of 'impeachment by contradiction' operates as a narrow exception to Rule 608, allowing for the introduction of extrinsic evidence to contradict facts a witness puts at issue on his direct." <u>Laureano v. City of New York</u>, 2021 WL 3272002, at *2 (S.D.N.Y. July 30, 2021); see also <u>United States v. Ramirez</u>, 609 F.3d 495, 499 (2d Cir. 2010) (explaining that "impeachment by contradiction . . . operates as a limited exception to Rule 608(b)"). This exception may apply only when a witness testifies as to a "specific fact" that the

---

government had not seen the exhibit (or, for that matter, <u>any</u> of the exhibits introduced through Dr. Davidson) before they were placed on the government's trial table during cross-examination.

[4] "A general attack on credibility is, concededly, a collateral matter." <u>United States v. Treacy</u>, 639 F.3d 32, 45 (2d Cir. 2011).

opposing party seeks to prove was a lie. Ramirez, 609 F.3d at 499 (quoting United States v. Beverly, 5 F.3d 633, 639 (2d Cir. 1993)). Thus, the party seeking to offer collateral evidence to impeach the witness by contradiction must point to a specific fact testified to by the witness on direct examination that the offeror is rebutting as untrue.[5]

Even if evidence is admissible under the "impeachment by contradiction" exception, "that evidence is still 'subject to the probative-prejudice balancing test in Rule 403.'" Laureano, 2021 WL 3272002, at *2 (quoting Williams v. Geraci, 2020 WL 5848738, at *8 (E.D.N.Y. Sept. 30, 2020)).

### 3. Prior Inconsistent Statements

Impeachment by extrinsic evidence of a prior inconsistent statement of the witness is governed by Federal Rules of Evidence 613(b) and 403. Rule 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

Fed. R. Evid. 613(b). Thus, "[a] witness's prior statement may be offered to impeach that witness's credibility if (1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to [ ]examine the witness thereon." United States v. Strother, 49 F.3d 869, 874 (2d Cir.1995); accord Johnson v. Pacheco, No. 20-3758-CV, 2022 WL 102072, at *2 (2d Cir. Jan. 11, 2022).

Although statements offered for impeachment need not be "diametrically opposed" to a witness's testimony in court, they must in fact be inconsistent, and inconsistent in a manner that reasonably bears on credibility. United States v. Trzaska, 111 F.3d 1019, 1024-25 (2d Cir. 1997). "The inconsistency requirement is satisfied if there is any variance between the statement and the testimony that has a reasonable bearing on credibility or, if the jury could reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a statement of this tenor." United States v. Preldakaj, 456 F. App'x 56, 58 (2d Cir. 2012) (internal quotation marks and citations omitted) (emphasis in original); see also United States v. Ebbers, 458 F.3d 110, 123 (2d Cir. 2006) (same); Smith v. Lee, No. 12 CIV. 6215 PGG HBP, 2015 WL 5011422, at *9 (S.D.N.Y. Aug. 24, 2015) ("[A]s the meaning of the out-of-court statement approaches the meaning of the in-court testimony, the impeachment value diminishes."). In addition, a "witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral." United States v. Rivera, 273 F. App'x. 55, 58 (2d Cir. 2008)

---

[5] In fact, the impeachment-by-contradiction exception may be even more narrowly construed where the witness is someone other than the defendant. As the Second Circuit has explained, "the point of this exception is that a defendant may not invoke the Federal Rules of Evidence in order to shield his perjury from contradiction." Ramirez, 609 F.3d at 499.

7

(internal quotation marks omitted) (quoting United States v. Blackwood, 456 F.2d 526, 531 (2d Cir. 1972)).

Finally, the trial court "enjoys substantial discretion with respect to extrinsic evidence of inconsistent statements and is not unequivocally bound to admit any or all extrinsic evidence of a prior inconsistent statement." United States v. Mahaffy, No. 05CR613 (S-3)(ILG), 2007 WL 1213743, at *4 (E.D.N.Y. Apr. 24, 2007) (internal quotation marks omitted).

C. Argument

The government moves to preclude the introduction of extrinsic evidence to impeach government witnesses that does not satisfy the above-referenced standards. If the Defendants seek to impeach a witness through a prior inconsistent statement, the government respectfully requests that the Court ensure that any variance between the statement and the challenged testimony has a reasonable bearing on credibility. Preldakaj, 456 F. App'x at 58.

Similarly, to the extent the Defendants seek to introduce evidence meant to "impeach by contradiction," the government respectfully requests that the Court first require reference to a specific fact testified to by the witness on direct examination that the extrinsic impeachment evidence is meant to rebut as false.

A defendant has every right to present a full defense, but that "does not entitle him to place before the jury evidence normally inadmissible." Yousef, 327 F.3d at 128; see also Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). Accordingly, the Court should apply the foregoing precedents when determining the admissibility of any evidence offered during cross-examination of government witnesses.

III. The Defense Should Be Precluded from Publishing Exhibits Through Government Witnesses Who Have No Personal Knowledge of the Information

The government respectfully requests that the Defendants be precluded from introducing their own case-in-chief exhibits through government publication witnesses who have no personal knowledge of the substance of the proffered exhibits. As the Court knows, a substantial aspect of the government's proof at trial will be communications between and among the Defendants and their co-conspirators. The government intends to begin publication of some of the relevant exhibits this week through a "publication witness," i.e., a witness who will read portions of the exhibits into the trial record but who has no direct, personal knowledge of the substantive matters raised in the communications. The government moves to preclude the introduction of defense case-in-chief exhibits through such witnesses for several reasons.

First, the government has an overriding interest in "manageably presenting [its] evidence to the jury" and, because the government bears the burden of proof, it is "entitled to present [its] case in the best light." Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 199 F.R.D. 487, 490 (JBW) (E.D.N.Y. 2001) (citing Charles E. Wagner, Federal Rules of Evidence Case Law Commentary 775 (2001))). The Supreme Court has noted that "[t]he adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity

8

to assemble and submit evidence to contradict or explain the opponent's case" and therefore "[n]either [party] may insist on the right to interrupt the opposing party's case…." Taylor v. Illinois, 484 U.S. 400, 410–11 (1988). The defendants' use of government witnesses for their case-in-chief, together with the expected trial interruption resulting from mid-week religious holidays, undermines these interests. Cf., e.g., Old Chief v. United States, 519 U.S. 172, 187 (1997) ("Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."). Accordingly, the government respectfully requests that the Court exercise its discretion under Rule 611(a) to "see that the evidence is presented to the jury in as orderly and intelligible a manner as possible," United States v. Stamp, 458 F.2d 759, 773 (D.C. Cir. 1971), and to "require that an affirmative defense be presented through defense witnesses in order to ensure that the trial proceeds in an orderly fashion," United States v. Sampol, 636 F.2d 621, 663 (D.C. Cir. 1980).

In addition, any interest in efficiency that might be advanced by admission of defense exhibits through government witnesses is not present in the context of a pure publication witness, as there will be no need for the defendants to recall the same witness; rather, the defense will be free to put on its own publication witness or witnesses, to the extent they wish to do so. See, e.g., United States v. Ng, 18-CR-538 (MKB) (E.D.N.Y. March 24, 2022), Tr. 4369 (calling office manager at Brafman & Associates as publication witness); United States v. Nordlicht, 60-CR-640 (BMC) (E.D.N.Y. June 24, 2019), Tr. 6342:7-10 ("And, Judge, our final witness, I'm calling my associate, Ms. Jeong, to the stand and we're going to go through these records I just put in evidence so the jury can see them."); cf. Est. of Smart by Smart v. Chaffee, No. 14-2111-JPO, 2020 WL 7643505, at *8 (D. Kan. Dec. 23, 2020) ("For those witnesses both sides plan to use, in the interest of efficiency and to avoid having the same witness (especially a non-party witness) testify twice during trial, the court will allow defendant's questioning to exceed the scope of direct examination. But when cross-examination exceeds the scope of direct examination, only non-leading questions will be allowed." (emphasis added)).

Finally, the government has repeatedly requested that the defense provide advance copies of all currently marked defense exhibits. Indeed, notwithstanding the parties' mutual agreement to exchange preliminary marked exhibits in early August, and a further agreement to provide three-day notice of exhibits to be introduced on each trial day, the defendants last week sent the government nearly 40 new defense exhibits at 10:30 p.m. on the night before the anticipated testimony of a particular government witness through whom the defendants indicated they intended to introduce those defense exhibits and just produced another 201 exhibits this evening. The government submits that late disclosure of defense exhibits is a further reason to require that the defendants admit their case-in-chief exhibits during their own case, particularly given the potential for litigation over admissibility.

For the foregoing reasons, the government respectfully requests that the Court preclude the presentation of defense case-in-chief exhibits through its publication witnesses.

IV. Conclusion

    For the foregoing reasons, the government respectfully requests that the Court grant this motion to preclude (or, as specified, defer) admission of certain exhibits at trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
    Ryan C. Harris
    Samuel P. Nitze
    Hiral D. Mehta
    Craig R. Heeren
    Assistant U.S. Attorneys
    (718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/
    Matthew J. McKenzie
    Trial Attorney

cc:   Counsel for Thomas Joseph Barrack (by ECF)
      Counsel for Matthew Grimes (by ECF)