**WILLKIE FARR & GALLAGHER LLP**

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 2, 2022

<u>**VIA ECF**</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: <u>United States v. Thomas J. Barrack</u>, et al., 1:2l-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

     We write on behalf of Mr. Barrack and his co-defendant, Matthew Grimes, to respond to the Government's letter, dated September 27, 2022. The Government seeks relief that is both sweeping in scope and premature in nature. Specifically, the Government seeks a blanket ruling precluding: (1) the "admission of extrinsic impeachment evidence," *see* ECF 271 ("Gov. Mot.") at 5-8; (2) "the admission and publication of defense exhibits through Government witnesses who have no personal knowledge of the information contained therein;" *see* Gov. Mot. at 8-9, and (3) certain defense exhibits involving a specific Government witness, *see* Gov. Mot. at 3-5. The Government's motion should be denied.

    **I.**    <u>**Defendants Have A Constitutional Right To Cross-Examination, Including Fulsome Questioning and Impeachment of the Government's Witnesses.**</u>

     ***A. The Government Misstates the Law Concerning Impeachment by Extrinsic Evidence.***

     The Government moves to "preclude admission of extrinsic impeachment evidence that does not satisfy the applicable legal standards." (Gov. Mot. at 5.) As an initial matter, Defendants have no intention of moving to admit extrinsic impeachment evidence that is outside the bounds of the Federal Rules of Evidence. Defendants understand the law and will abide by it. Defendants, however, are unable to satisfactorily respond, and the Court cannot possibly rule, on an "omnibus" objection that does not reference any specific exhibits or lines of cross-examination, which is all the Government offers here.

     Instead of identifying in its Motion those lines of cross-examination that the Government believes may run afoul of the Rules of Evidence, the Government proposes a formal procedure that not a single member of either defense team has *ever* seen employed in a courtroom: that is, that before engaging in the questioning of a Government witness, Defendants are obligated to halt the proceedings, and identify for the Court and the Government, the "specific fact testified to by

the witness on direct examination that the extrinsic impeachment evidence is meant to rebut." (Gov. Mot. 8).

By suggesting this novel procedure the Government reveals its misunderstanding of the evidentiary rules concerning extrinsic impeachment evidence. It suggests that Rule 608(b) permits extrinsic evidence to be used *only* to (i) demonstrate "specific instances of conduct" by the witness that is "probative of truthfulness or untruthfulness," *see* Mot. at 6, and to (ii) impeach "by contradiction," but only as to a "specific fact" offered by the witness, that the "opposing party seeks to prove was a lie." (Gov. Mot. at 7). This is incorrect. As the federal Advisory Committee on the Evidence Rules has explained, where a defendant "is using the extrinsic evidence for impeachment on any ground other than an attack on character," such as "to show bias, prior inconsistent statement, contradiction, or lack of capacity," the "extrinsic evidence limitation of Rule 608(b) is *not applicable*." *See* Ex. 1 (excerpt of Advisory Committee on Evidence Rules) (also noting that certain "court opinions can be found that misapply the Rule by invoking it to preclude extrinsic evidence offered for non-character forms of impeachment."). Indeed, the Advisory Committee considered revising the text of Rule 608(b) to specifically mention that extrinsic evidence *can* be used "for impeachment on any ground other than an attack on character," such as "to show bias, prior inconsistent statement, contradiction, or lack of capacity," but ultimately decided against the revision because "most Committee members" were concerned that "by mentioning the *basic forms* of impeachment, the *drafters might inadvertently leave out other forms of impeachment*, creating confusion for courts and litigants." (Ex. 1 (emphasis added)). In other words, other than attacking the character of a witness, *extrinsic evidence can be used for any form of impeachment*, not *just* "impeachment by contradiction" as the Government claims. *See* Fed. R. Evid. 608(b), Notes of Advisory Committee on 2003 Amendments ("The amendment conforms the language of the Rule to its original intent, which was to impose an absolute bar on extrinsic evidence *only if the sole purpose for offering the evidence* was to prove the witness' character for veracity.").

One well-established form of impeachment that the Government neglects to mention in its Motion is impeachment of the investigation, generally utilized when cross-examining Government law enforcement agents. *See Kyles v. Whitley*, 514 U.S. 419, at 445-46 (1995) (undisclosed *Brady* evidence was material because, *inter alia*, if it had been disclosed, "the defense could have examined the police to good effect on their knowledge of [witness's] statements and so have attacked the reliability of the investigation in failing even to consider [witness's] possible guilt and in tolerating (if not countenancing) serious possibilities that incriminating evidence had been planted"); *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 279-80 (3d Cir. 2016) (granting a new trial where documents undisclosed by the government "could have been used to impeach the police investigation"); *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant"); *Mendez v. Artuz*, 98 Civ. 2652 (LMM)(AJP), 2000 U.S. Dist. LEXIS 8841, at *61-63 (S.D.N.Y. June 6, 2000) (agreeing that defense counsel could have impeached the government's witnesses by "pointing out that Detective Martinez had failed to pursue information" concerning suspects other than the defendant). As described further in Section B below, Defendants anticipate that there will be significant impeachment of the Government's investigation in this case.

Because extrinsic evidence can be utilized by the defense for *any form* of impeachment, including impeachment of the investigation, the Government's argument that Defendants must first identify for the Court the "specific fact testified to by the witness on direct examination" before seeking to admit extrinsic evidence is clearly unavailing.

Likewise, Defendants are perplexed by the Government's repeated complaints concerning the non-disclosure of impeachment exhibits. While defense counsel understands that the Government would like an advance roadmap of the defense's strategy, Defendants are not obligated to preview for the Government, in advance, what their cross-examination of the Government's witnesses will consist of, thus enabling the Government to amend its direct examinations to respond to those points and neuter the force of Defendants' cross-examination. The Government is able to review the impeachment exhibits when offered (and in the case of video excerpts, Defendants provided transcripts so that the Government could review the statements made in the video, thus enabling the Government to lodge any objections it believed were warranted). This is the standard procedure for impeachment evidence that is followed in every criminal case and there is no reason why Mr. Barrack's and Mr. Grimes's trial should deviate from this norm. Moreover, with respect to the Government's complaints about "case in chief" exhibits, Defendants have already provided the Government with hundreds of "case in chief" exhibits. It is unclear why the Government asserts that Defendants should have already developed a final strategy with respect to a defense case, which is weeks away, and which Defendants have no obligation to put on. If Defendants do decide to put on a defense case, the contours of that case will depend in large part on how the Government's evidence comes in and thus, Defendants do not currently know what material they will seek to admit in any (theoretical) defense case. As Defendants have assured the Government on multiple occasions, Defendants will turn over case in chief exhibits once identified by the defense.

### B. The Government Cannot Shield Its Case From Cross-Examination By Admitting Evidence Through Witnesses Who Claim to Have No Personal Knowledge.

The Government moves to preclude Defendants from "introducing their own case-in-chief exhibits through government publication witnesses who have no personal knowledge of the substance of the proffered exhibits." (Gov. Mot. at 8.) To support this request, the Government claims that it is "entitled to present [its] case in the best light," which the Government appears to believe includes the right to insulate FBI agents against cross-examination. Not so.[1] Although it

---

[1] In support of this argument, the Government cites a single *civil* case from more than two decades ago that relies on a treatise that is so old Defendants have not even been able to obtain a copy electronically. *Id.* (citing *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487, 490 (JBW) (E.D.N.Y. 2001) (citing Charles E. Wagner, Federal Rules of Evidence Case Law Commentary 775 (2001))). In any event, a civil case does not serve as persuasive precedent here because criminal defendants, unlike civil defendants, have cross-examination rights under the Confrontation Clause that implicate Constitutional concerns that do not exist in ordinary civil trials. *McCray v. Capra*, 45 F.4th 634, 645–46 (2d Cir. 2022) ("Supreme Court case law clearly establishes that the Confrontation Clause entitles a criminal defendant to 'a meaningful opportunity to cross-examine witnesses against him.'") (collecting cases).

is true that both sides are allowed to present their case-in-chief, that is not through a series of monologues, consisting of the reading of documents the witness has no personal knowledge of, in which opposing counsel sit by as potted plants. The defense has the right to "interrupt" the narrative of the Government's case-in-chief by cross-examining the Government's witnesses, just the same as the Government can "interrupt" the narrative in the defense's case-in-chief by cross-examining defense witnesses.[2]

It is clear from the Government's witness list and its trial presentation thus far that the Government will seek to establish Defendants' guilt almost exclusively through documentary evidence. It has chosen to admit many of these documents through FBI agent Elizabeth Sidaros, who has now spent several days reading selective excerpts of the Government's exhibits into the record. Defendants are entitled to impeach Ms. Sidaros by demonstrating that the documents presented to the jury through her testimony were purposefully selective and thus misleading. Indeed, one of the very purposes of cross-examination is to ensure the *accuracy* and *completeness* of the evidence. *Rodgard Corp. v. Miner Enterprises, Inc.*, 914 F.Supp. 907 (W.D.N.Y. 1995) ("It has long been regarded that the opportunity to cross-examine is an essential safeguard of the credibility, accuracy and completeness of testimony.") (vacated in part on other grounds); 2A Fed. Prac. & Proc. Crim. § 417 (4th ed.) ("For two centuries, judges and lawyers have regarded the opportunity of cross-examination as an essential safeguard of the accuracy and completeness of testimony."). Much as a defendant would be entitled to cross-examine a "summary witness" presented by the Government to testify about voluminous records, by demonstrating though cross examination the existence of other records that that the Government and its summary witness chose *not* to include in its presentation, Defendants are also entitled to cross-examine the Government's "publication witness" who is performing a nearly identical function.

Likewise, where the Government failed to identify exculpatory information that otherwise would have been discovered via a fair and thorough investigation, Defendants are entitled to impeach on that basis. As the cases cited above demonstrate, *see supra* at 2, Defendants have a clear Constitutional right to impeach the Government's investigation and Defendants intend to exercise that right. *See Hale v. Soto*, No. CV 12-6840-DDP (OP), 2013 U.S. Dist. LEXIS 184052, at *41 (C.D. Cal. Aug. 28, 2013) (agreeing that where defendant's counsel "impeach[ed] the

---

[2] The Government quotes *Taylor v. Illinois*, 484 U.S. 400, 11 (1988) for the proposition that no party has the "right to interrupt the opposing party's case" (Dkt. 120 at 9), but the Supreme Court plainly was not viewing cross-examination of an opponent's witnesses as such an improper interruption. Just the opposite, the preceding sentence in *Taylor* states: "The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony." 484 U.S. at 411. In a similar vein, the government cites *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 199 F.R.D. 487, 490 (JBW) (E.D.N.Y. 2001), for the proposition that it has a right to present its case in the "best light." (Dkt. 120 at 9.) Again though, that is not a right free from cross-examination. That case concerned the rule of completeness and the Court highlighted that "it is of some significance that the court in the instant case has ordered plaintiff to read portions of documents defendants wished read when portions relied upon by plaintiff were published to the jury." *Blue Cross*, 199 F.R.D. at 490. Defendants seek to engage in similar cross-examination here.

investigation," by attempting to show that the investigation was not adequate and the police had jumped to erroneous conclusions, he was engaged in "a well established tactic used by defense counsel" that is aimed at "trying to plant the seeds of reasonable doubt."). While Defendants of course agree that the Court "may impose reasonable limits on cross-examination to protect against, *e.g.* harassment, prejudice, confusion, and waste," the law is equally clear that Defendants "must also [be] give[n] wide latitude. . .in a criminal case to cross-examine government witnesses," because the Confrontation Clause gives a defendant the right not only to cross examination, but to "effective cross-examination." *United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011) (citations omitted).[3]

Indeed, the Government's request that the Court permit its witnesses to be insulated from cross-examination is directly contrary to the Federal Rules of Evidence. Federal Rule of Evidence 611 expressly permits cross-examination concerning "the *subject matter* of the direct examination." Fed. R. Evid. 611 (emphasis added). The Advisory Committee noted an internal discussion over whether to adopt "wide-open or restrictive rules" on cross examination but concluded that the merits were "overwhelmingly in favor of the wide-open rule," meaning a "rule allowing questions upon any part of the issue known to the witness." *See* Fed. R. Evid. 611, at Advisory Committee Notes. It is for that reason that cross-examination need only "reasonably" relate to the witness's direct examination. As the Second Circuit has explains: "It is, of course, unrealistic to expect that direct examination and cross-examination will be perfectly congruent. . . . The latter need only be reasonably related to the former." *United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) (quoting *Macaulay v. Anas*, 321 F.3d 45, 53 (1st Cir. 2003)). Nor do courts waste their time in trying to police this line. *See, e.g.*, *United States v. Mahaffey*, 2007 WL 121374 (E.D.N.Y. Apr. 23, 2007) (Glasser, J.) ("This Court has previously indicated to counsel its general disinclination to preclude cross-examination into relevant issues simply on the ground that the cross-examination exceeds the scope of direct examination, and sees no reason to modify that approach. . . .") Defense "counsel is entitled to reasonably wide latitude in testing a witness' credibility by cross-examination." *United States v. Carr*, 584 U.S. 612, 617 (2d Cir. 1978).

The Government is also incorrect that its proposal to preclude the introduction of defense exhibits through Government witnesses would promote trial "efficiency." (Gov. Mot. at 9). It is unclear what would be efficient about allowing the Government to present extensive testimony about Defendants' communications on certain subjects and then precluding the Defendants from offering other communications concerning those same subjects until the defense case. And while

---

[3] In an email to Defendants, the Government suggested that if impeachment exhibits are admitted during Defendants' cross-examinations, the Court should give a "limiting instruction" that they may only be considered in "connection with [witness name's] credibility." Because "credibility" suggests only the question of whether the witness is "being truthful" or not, Defendants oppose. In fact, as described above, impeachment takes many forms and is not cabined to the question of whether the witness's testimony was "truthful." For example, Agent Sidaros was almost certainly truthful when she was examined by the Government about the exhibits that the Government admitted through her, but those exhibits (and the portions actually shown to the jury) were selective and misleading, as Defendants will demonstrate during Agent Sidaros's cross-examination. The exhibits that Defendants will offer during that cross-examination can be, and should be, considered by the jury in considering Defendants' guilt, not just in considering whether Agent Sidaros was "credible."

the Government points to "the expected trial interruption resulting from mid-week religious holidays" in support of their argument, that fact cuts in precisely the opposite direction. Given the trial calendar, and the pace at which the Government is presenting its case, it is likely that Mr. Barrack and Mr. Grimes may not have an opportunity to begin their defense case for several weeks. Defendants will be extremely prejudiced if the Government is permitted to present a false and misleading narrative over a period of weeks without the scrutiny of cross-examination concerning defense exhibits on the same subjects. Especially given Defendants' Confrontation Clause rights, the Government's misguided and unprecedented request for the Court to insulate its witnesses from potentially damaging cross-examination invites constitutional error and should be denied.

## II. The Government's Objections to Defendants' Exhibits Should Be Overruled.

The Government also moves to exclude certain defense exhibits on the basis of hearsay. *See* Gov. Mot. at 3-5. The Government's motion betrays a fundamental misunderstanding of Federal Rule of Evidence 801 and Second Circuit case law. As the Second Circuit has said many times, "no statement is inherently hearsay. Whether or not a statement is hearsay *depends upon what use the offeror intends the fact-finder to make of it*." *United States v. Detrich*, 865 F.2d 17, 20 (2d Cir. 1988) (emphasis added). Where the offeror is *not* offering the statement to prove "the truth of the matter asserted," it is it not hearsay under Federal Rule 801, which limits excludable hearsay to those out of court statements being offered to prove "the truth of the matter asserted." *See* FRE 801. As the Second Circuit explained in *United States v. Certified Envtl. Servs., Inc.,* "an out of court statement offered for some other purpose, such as to show that a statement was made, to demonstrate the statement's effects on the listener, or to show circumstances under which subsequent events occurred, *is not hearsay*." 753 F.3d 72, 89 (2d Cir. 2014) (emphasis added); *see also Cameron v. Cmty Aid for Retarded Children*, 335 F. 3d 60, 65 n.2 (2d Cir. 2003) (finding that, because a declarant's statements were "not used to prove the truth of the matter asserted, but to establish [declarant's] state of mind, they are not hearsay . . . .").

Moreover, it is well settled that in the criminal context, the rules of evidence often must bend in favor of a defendant's right to present a defense. That is especially true in the hearsay context, where the Supreme Court has made clear that "where the constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see also Green v. Georgia*, 442 U.S. 95, 96-97 nn.1, 3 (1979) (overriding hearsay restriction on constitutional grounds). A defendant's due process "right to a fair opportunity to defend against the State's accusations" must take precedence over the rules of evidence. *Chambers*, 442 U.S. at 294, 302. Thus, the rules of evidence cannot be used to exclude "competent, reliable evidence" that is "central to the defendant's claim of innocence." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (reversing conviction where defendant was denied right to argue third-party guilt under state evidence rule); *Rock v. Arkansas*, 483 U.S. 44, 62 (1987) (state could not prevent defendant from testifying under rule prohibiting all hypnotically refreshed testimony); *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988) (finding *Chambers* error in excluding prior testimony of unavailable witness that provided impeachment of government's key witness at trial).

### A. The Barrack Exhibits Challenged By the Government Are Admissible.

#### 1. BX-180

[redacted]

#### 2. BX-170 and BX-183

[redacted]



### B. The Grimes Exhibits Challenged By the Government Are Admissible.

The Government seeks to exclude several of Mr. Grimes' exhibits, but its objections to the admissibility of these exhibits are wrong for many of the same reasons discussed above.[4]

1. **GE 22**



---

[4] There are no issues of authenticity raised in any of the exhibits pursuant to the stipulation of the parties and the agreement of the parties to forego either side having to call record custodians.

<1/>



---

[5] The residual exception is especially appropriate for text messages and emails. No common law exception exists for this technology because it did not exist then, but it bears all the trustworthiness of conventional business records when used for business purposes. Metadata helps confirm authenticity and, like traditional business records, texts and emails are preserved (automatically on servers).



2. **GE 28 & GE 29**



3. **GE 61**



4. **GE 75**

5. **GE 92A & 92B**

6. **GE 104**

---

[6] If the Court prefers, it can conditionally admit this exhibit subject to subsequent testimony establishing its relevance.



7. **GE 134, GE 136 & GE 137**



- 14 -

### III. Conclusion

The Government's motion should be denied.

Sincerely,

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP | WINSTON & STRAWN LLP |
| /s/ Michael S. Schachter | /s/ *Abbe David Lowell* |
| Michael S. Schachter | Abbe David Lowell |
| Randall W. Jackson | Christopher D. Man |
| Casey E. Donnelly | Sofia R. Arguello |
| Steven J. Ballew | David Kolansky |
| Jordan D. Reisch | |
| | *Counsel for Defendant* |
| O'MELVENY & MYERS LLP | *Matthew Grimes* |
| James A. Bowman | |
| *Counsel for Defendant* | |
| *Thomas J. Barrack*, Jr. | |

Cc (via ECF): Hiral D. Mehta
Nathan Daniel Reilly
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie