**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH
F. #2018R01309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 2, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Thomas Joseph Barrack, et al.
Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

The government respectfully submits this letter reply to the Defendants' opposition to the government's motion requesting appropriate limitations on the scope of cross examination of government witnesses. See ECF Nos. 271 (Gov't Mot.), 281 (Def. Opp.). The Defendants have misconstrued the government's argument. Moreover, they now advance additional theories regarding the permissible scope of cross examination – including in support of a proposed effort to put the government on trial – that have no basis in law and should be rejected.

I. The Scope of the Government's Motion

The government seeks modest relief, all of it well grounded in applicable law and further supported by the interests of trial fairness and efficiency. The government asks simply that extrinsic impeachment evidence be precluded unless it satisfies the applicable legal standards for admission of such evidence and that the defense not be permitted to use a government publication witness to put the government's case on hold and publish the defense's case in chief. Nothing in the government's motion proposes to "insulate FBI agents against cross-examination." Def. Opp. at 3. Nor does the government seek an advisory opinion; rather the government supplied the relevant legal standards, and seeks an advance ruling, based on its understanding of the sorts of documents the defense intends to introduce (many of which the government does not yet possess) through cross examination, an understanding powerfully reinforced by the arguments advanced in the Defendants' opposition brief.

The government does not pretend that the lines in this area are crisply drawn. The government also recognizes that the Court "is afforded broad discretion in controlling the extent and scope of cross-examination." United States v. Wilkerson, 361 F.3d 717, 745 (2d Cir. 2004) (citations and quotations omitted). The government nevertheless respectfully requests that the Court impose the requested limitations in the interest of an orderly presentation of evidence, and

in keeping with the clear direction of the Federal Rules of Evidence that "[c]ross examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b).

II.    Extrinsic Evidence of Impeachment

The Defendants concede that extrinsic evidence of impeachment must be used to impeach the government's witnesses, a point central to the government's motion. The government appreciates the Defendants' citations to the document apparently drafted by the Federal Advisory Committee on the Evidence Rules ("FCER Doc."). The document provides helpful additional support – inexhaustive but illustrative – for the proposition that extrinsic evidence is admissible only to impeach a witness, i.e., "to show bias, prior inconsistent statement, contradiction, or lack of capacity" or to contradict "a material fact, or an inconsistency in a prior statement that is material to the witness' testimony." FCER Doc. at 4-5; see also, e.g., Fed. R. Evid. ("Rule") 611(b); United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990) ("Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." (emphasis added)).

Impeaching the government's investigation, by contrast, through extrinsic evidence (or otherwise), particularly through a witness, such as Special Agent Sidaros, who did not participate in the conduct of the government's investigation, is nowhere contemplated by the authorities – Rules, Advisory Committee notes, cases – cited in the Defendants' brief. Cf. United States v. Adeniyi, 2004 WL 1077963, at *3 (S.D.N.Y. May 12, 2004) ("The Court is also unpersuaded by [the defendant's] apparent contention that [the case agent's] acknowledgment during direct examination that he had participated in an investigation of Defendant, coupled with [the case agent's] testimony regarding certain specific aspects of that investigation, combined to give defense counsel carte blanche to inquire into any subject related to the investigation of Defendant."). Indeed, the conduct of the government's investigation is not and should not be on trial.[1] See United States v. Carton, No. 17 CR 680 (CM), 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018) ("[T]he Government is not on trial in this case, and the jury will not be asked to pass on the adequacy of its investigation."). The jury must decide only whether the evidence proves guilt beyond a reasonable doubt, not judge the manner in which the evidence was gathered. See e.g., United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (affirming decision by trial court

---

[1] The government moved in limine to preclude evidence or argument relating to the conduct of the government's investigation. See ECF No. 168 at 24 (Gov't MIL). The Court granted the motion in part and denied the motion only "to the extent it would preclude Barrack from introducing evidence or argument that the Government's conduct, including its delay in bringing the charges and its failure to make a record, reduces the probative weight of its evidence regarding the false statement charges." Order, ECF No. 226, at 5 (emphasis added). Cross-examination about "delay in bringing the charges and [the government's] failure to make a record" related to the false statement charges would be inappropriate as to the government's publication witnesses, who will not be testifying whatsoever about those false statement charges. Moreover, nothing in the order suggested that the defense would be permitted to put the broader course of the government's investigation on trial, and long lines of legal authority indicate that such argument would be improper. See, e.g., Gov't MIL at 27-28 (collecting cases).

to preclude evidence intended to attack the government's conduct and investigation because it could lead to the "very real possibility that the jury would improperly discredit the government's case in reaction to [a particular law enforcement agent's] allegedly gross misconduct"); United States v. Reese, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant 'may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case.'" (quoting United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004)).

The cases cited by the Defendants are not to the contrary, involve entirely different factual contexts (mostly, state murder convictions involving Brady violations), and, in any event, say little about the proper scope of cross examination or admission of extrinsic impeachment evidence. See, e.g., Kyles v. Whitley, 514 U.S. 419, 446 n.15 (1995) (state murder case in which Court indicated that evidence of "conscientious" or "slovenly" police work could be relevant when "the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud"); Bowen v. Maynard, 799 F.2d 593 (10th Cir. 1985) (involving a suspect (police officer) who had been abandoned as a subject of the investigation and a defendant who had twelve alibi witnesses); Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 279 (3d Cir. 2016) (indicating that improperly withheld documents "could have been used to impeach the police investigation or provide a defense that another person committed the murder"). In these cases, it was undisputed that a crime had been committed, but law enforcement failings contributed to identification of the wrong suspect and/or failure adequately to pursue alternative leads. The factual context at issue here is not remotely analogous.

In sum, the Court should preclude the admission of extrinsic impeachment evidence that is not, in fact, offered to impeach the testifying witness. In addition, because the Defendants fail to make any showing that purported government misconduct has made evidence less reliable in this case, the Defendants should be precluded from attempting to impugn the government's investigative choices.

## III. Scope of Cross Examination – The Defendants' Case in Chief

The Defendants spend a substantial portion of their brief discussing the importance of a defendant's cross examination right. The government, of course, takes no issue with that basic proposition; rather, the government seeks to preclude the Defendants from introducing their own, non-impeaching, case-in-chief exhibits through a government publication witness.[2]

Lengthy, even days-long cross examination of government (or defense) witnesses does at times have its place in a criminal trial, but almost exclusively in the context of efforts to

[2] The Defendants purport to be "perplexed by the Government's repeated complaints concerning the non-disclosure of impeachment exhibits," Def. Opp. at 3, but, as the Defendants know, the government has made no such complaints, much less repeated them. Rather, the government asks that the defense provide it with case-in-chief exhibits to be introduced through government witnesses. The Defendants cannot have it both ways – arguing both that they should be permitted to introduce defense exhibits for all purposes, without reference to or limitation by their impeaching effect, and that the government may not see these exhibits in advance. The documents are either impeachment evidence or they aren't.

impeach a witness's credibility with respect to facts at issue in the case. The cross examination of a key cooperating witness, for example, is often a lengthy process given the importance of the defense interest in challenging the reliability of such testimony and ensuring the jury has the tools to assess such testimony fairly. In addition, courts in this district and elsewhere sometimes permit the defense to introduce case-in-chief evidence through a government fact witness who otherwise would have to be recalled by the defense, often after posing some version of the question, "Are we really going to require the defense to make this witness come back?" A pure publication witness presents an entirely different set of considerations, however, both with respect to the proper scope of cross examination and the interests of trial efficiency. Special Agent Sidaros, for example, has acknowledged on direct that she is reading into the record certain exhibits selected from a much larger volume of evidence. She has indicated that she was not the one who selected these exhibits, nor was she involved in the government's pre-indictment investigation of this case. The defense has raised no completeness arguments (except with respect to videos, lengthier excerpts of which the government understands the defendants will be permitted to play).

None of this is to suggest that the defense should be foreclosed from arguing or introducing otherwise admissible evidence indicating that the government has not presented an accurate picture, or that the jury needs additional context in order to properly understand the government's case. That is precisely the purpose of a defense case. It is no more appropriate to shoehorn defense case-in-chief documents into the record through Agent Sidaros, however, than for the government to use a defense publication witness to enter the government's rebuttal case. Finally, as noted in the government's motion, counsel for Barrack (in contrast to counsel for Grimes), has refused to represent whether the government has received all exhibits presently marked by the defense for possible introduction at trial. The government will take this issue up in a separate filing, as warranted, but notes here that the defense should not be permitted to sandbag the government with case-in-chief exhibits never before identified (or possibly even produced) to the government during cross-examination of government witnesses. The government trusts that it has at least received all such exhibits the defense may seek to introduce through Agent Sidaros – that is, non-impeachment exhibits.

The government therefore respectfully requests that the Court preclude, or at least impose reasonable limits, on the use of Agent Sidaros for publication of the defense case-in-chief.

## IV. The Defendants' Arguments Regarding the Exhibits at Issue Misstate the Law

The government does not address every specific argument made regarding the exhibits at issue (and relies on its opening brief) but does write to respond to two general arguments made by Defendants that are legally incorrect.

The Defendants contend that the Court should not preclude certain exhibits on hearsay grounds because the "rules of evidence often must bend in favor a defendant's right to present a defense." See Def. Opp. at 6. In support, the Defendants cite a series of court decisions that have nothing to do with the issue before the Court—whether emails that clearly contain hearsay statements may be admitted in violation of the Federal Rules of Evidence because a defendant claims they are helpful to his defense. The answer is no. As to the cases the Defendants do cite, they are all inapposite. For example, in Chambers v. Mississippi, a state murder trial involving the killing of a police officer, the Supreme Court held that the Mississippi state court

erred in precluding another witness's confessions to the murder to several people, which should have been admitted as statements against penal interest and were corroborated by other evidence in the case. See 410 U.S. 284, 302 (1973). Similarly, in Green v. Georgia, a state rape and murder trial that resulted in the death penalty, the Supreme Court held that the Georgia state court erred in excluding his co-conspirator's statement that he had shot the victim as hearsay because the Court held it was a statement against interest. See 442 U.S. 95, 96-97 (1979).

The Defendants' citation to Crane v. Kentucky, 476 U.S. 683, 690 (1986) is even more egregious. In that case, another state murder trial, the state court excluded the circumstances surrounding the defendant's confession at trial—the defendant had "been detained in a windowless room for a protracted period of time, that he had been surrounded by as many as six police officers during the interrogation, that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a false confession." Id. at 685. The Supreme Court reversed, holding that the state court should not have "excluded competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." See id. at 690. Here, the Defendants selectively quote the holding—that the rules of evidence cannot be used to exclude "competent, reliable evidence" that is "central to the defendant's claim of innocence" (see Br. at 6)—conspicuously omitting the most significant part of the holding—that such evidence is admissible only where it has a "bearing on the credibility of the confession." See id. By contrast, this is not a murder case involving the death penalty where the evidence at issue is a confession to the murder by another person (which is admissible as a statement against penal interest).

The Court should reject the Defendants' baseless contention that the rules of evidence do not apply because the Defendants claim that the evidence at issue is purportedly helpful to their defense. That is not the law.

The Defendants' additional argument—that emails and text messages are somehow automatically admissible as business records—is also legally incorrect. See Def. Opp. at 9. While it is true that some emails are business records, that does not make them all business records. "An e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008) (citing Fed. R. Evid. 803(6)). Indeed, the case Defendants cite, Penberg v. HealthBridge Mgmt., 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011), explained that "[c]ourts have applied a similar approach to emails" as to "conventional letters, memos, or notes." Therefore, each email must satisfy each element of the Rule 803(6) test. To be admissible, an email must have been written "at or near the time" of the occurrence of the facts described in the email. In re Lyondell Chem. Co., No. 09-10023 (GCM), 2016 WL 6108526, at *2 (Bankr. S.D.N.Y. Oct. 19, 2016). Importantly, Rule 803(6) requires both that the activity recorded in the email be a "regularly conducted" business activity, *and* that sending the email be a regular part of that activity. Id. "[I]t is not enough to say that as a general business matter, most companies receive and send emails as part of their business model," In re Oil Spill, No. MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012); the email record must be "regularly made in furtherance of the employer's needs." Penberg, 623 F. Supp. 2d at 187. The party offering the document into evidence must provide a custodial witness to prove "all" of the conditions required by Rule 803(6) or a business records certification pursuant to Rule 902. The Defendants have provided neither

here nor can they rely on the parties' authenticity stipulation, which goes to authenticity not admissibility.

V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/
Matthew J. McKenzie
Trial Attorney

cc:   Counsel for Thomas Joseph Barrack (by ECF)
      Counsel for Matthew Grimes (by ECF)