

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH/MM                    *271 Cadman Plaza East*
F. #2018R001309                              *Brooklyn, New York 11201*

October 4, 2022

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Thomas J. Barrack and Matthew Grimes
       <u>Criminal Docket No. 21-371 (S-1) (BMC)</u>

Dear Judge Cogan:

    The government writes in response to the defendants' revised proposed jury instructions. <u>See</u> Defs. Proposed Jury Instructions (ECF No. 273) ("Defs. Revised Charge"). The government respectfully objects to a number of the defendants' instructions because they "fail[] to inform the jury adequately of the law" and/or "misle[a]d the jury about the correct legal rule." <u>See</u> <u>United States v. Quinones</u>, 511 F.3d 289, 314 (2d Cir. 2007). Many of these objections were addressed in the government's response to the defendants' initial set of proposed instructions. <u>See</u> ECF Nos. 161 & 274 (attached as Ex. C). The government incorporates those prior objections into this letter, and identifies newly-raised or revised objections with the notations "***New Objections***" or "***Revised Objections***."[1]

I.  <u>The Defendants' Proposed General Closing Instructions</u>

    The defendants seek to modify or omit several of the Court's standard instructions given at the beginning of the jury charge at the close of trial. There is no reason to modify or omit the instructions the Court typically gives for basic matters at issue in criminal cases, such as reasonable doubt, not considering punishment or the function of an indictment. The Court's instructions on these issues were appropriate for numerous prior trials, the government is aware of no instance in which any have been subject to reversal or disfavor on appeal (the defendant also identifies no such instance), and there is no reason why they should be altered for this one criminal

---

[1] The government has also altered the pagination and instruction numbering to correspond to the changes to the Defendants' Revised Charge, and made other formatting changes throughout. Where these are the only changes to a section, the government does not include the "Revised Objection" notation.

case. With respect to the defendants' particular proposed instructions, the government responds as follows:

A.   Defense Instruction No. 3 (Reasonable Doubt)

The defendants request an extremely brief instruction on reasonable doubt. The instruction only explains that reasonable doubt is a higher burden than the burden in a civil case and constitutes "proof that leaves you firmly convinced of the defendant's guilt." See Defs. Revised Charge at 7. As indicated in the Government's Charge, the government respectfully requests that the Court instruct the jury in its usual manner on the burden of proof and the meaning of "reasonable doubt." See Gov't. Request to Charge (ECF No. 274-1) ("Gov't Charge"), Request No. 1. The Court's standard instruction is, appropriately, more thorough and explains, among other things:

a)   Reasonable doubt is based on "reason and common sense" and made after "carefully weighing all the evidence."

b)   Reasonable doubt is not "impulse or whim," "speculation or suspicion" or "an excuse to avoid the performance of an unpleasant duty nor is it sympathy for any party."

c)   Under the standard, "the Government does not need to prove guilty beyond all possible doubt."

See, e.g., Closing jury charge in United States v. Guzman Loera, No. 09-CR-466 (BMC) (E.D.N.Y.), attached as Exhibit 1 to Gov't Charge (hereafter "Guzman Charge") at 6959-60; see also Sand, Modern Federal Jury Instructions ("Sand"), Instruction 4-2. The defendants' omission of important language risks confusing the jury, and it should be rejected in favor of the Court's usual instruction on this issue.

B.   Defense Instruction No. 4 (Defendant's Right Not to Testify) (***Revised Objections***)

As indicated in the Government's Charge, the government respectfully requests that the Court instruct the jury in its usual manner on the defendant's right not testify, if necessary. See Gov't Charge, Request No. 1. The defendants' instruction is legally erroneous. It is not true that "only the government has the burden of proof in a criminal case" and the defendant "never has any burden of proof." Defs. Revised Charge at 8. If the defendant puts forth an affirmative defense, as it appears both defendants intend to do here, they will bear a burden of proving that defense by a preponderance of the evidence. See Gov't Charge, Request No. 25 ("A defendant has the burden of proving the elements of an affirmative defense by a preponderance of the evidence."); Sand, Instruction 4-5 (same). The defendants conceded that they had this burden in their original set of proposed jury instructions (see Defs. Original Charge, Instruction No. 30 (ECF No. 148)), though they have now altered their instructions to incorrectly avoid mention of this legal requirement (see Defs. Revised Charge, Instruction No. 31), as discussed more fully below. The Court's usual instructions correctly explain that the government's burden is "to prove the guilt of the defendant beyond a reasonable doubt," and are sufficient. See Guzman Charge at 6959; see also Closing jury charge in United States v. Al Farekh, No. 15-CR-268 (BMC) (E.D.N.Y.),

2

attached as Exhibit 2 to Gov't Charge (hereafter "Farekh Charge") at 1601 (the government "always has the burden of proving beyond a reasonable doubt that the defendant was the person who committed the crime charged.").

C.       Defense Instruction No. 5 (Nature of the Indictment)

The Court should instruct the jury in its usual manner as to the function of the Indictment. See Gov't Charge, Request No. 1. The defendants' insertion of the comment that the Indictment "was written by the prosecutors" serves no purpose, except to attempt to prejudice the jury through the implication that the charge is improperly slanted against the defendant. The language is also deceptive. To be accurate, the Court would also have to explain that an indictment was reviewed, voted on and approved by a grand jury of at least 16 members of the community (and, in this case, that at least 32 people, constituting two grand juries, returned a true bill on the Indictment and Superseding Indictment). This dueling commentary is not necessary for the trial jury to consider. The Court's standard language is neutral and legally accurate.

D.       Defense Instruction No. 6 (Caution – Consider Only Crime Charged)

The defendants propose that the Court instruct the jury that the defendants are "not on trial" for conduct "not alleged in the indictment" and that they are not being asked to reach a verdict on "persons not on trial." Defs. Revised Charge at 10. The Court's usual instructions already make clear that a defendant is charged by an indictment, and that the jury must return a verdict as to each of the offenses charged in the indictment. See, e.g., Guzman Charge at 6979-80; Farekh Charge at 1585. The Court also usually instructs the jury not to draw any inferences towards the Government or defendant based on the fact that certain persons are not on trial, and the Government has requested an instruction based on the Court's usual instruction on this issue. See Gov't Charge, Request No. 16 (adapted from Guzman Charge at 6967-68). The Court should reject the defendants' confusing instruction and apply its own instructions on these issues.[2]

E.       Defense Instruction No. 7 (Multiple Defendants – Multiple Counts)

A multiple defendant instruction is not needed as part of the instructions. To the extent such an instruction is needed, it should track the usual instruction given in this Circuit. See L. Sand et al., Modern Federal Jury Instructions (hereafter "Sand") § 3A.01, Instruction 3-8 ("Multiple Counts – Multiple Defendants"); see also United States v. Sanzo, 673 F.2d 64, 69 (2d Cir. 1982) (finding no prejudice where court instructed jury that "you must as a matter of law consider each count of the indictment and the individual defendant's involvement in that count separately").

---

[2] The government is not currently aware of any evidence it intends to admit pursuant to Rule 404(b) of the Federal Rules of Evidence. Should such evidence be admitted, the government does not object to an appropriate "uncharged criminal acts" instruction. See, e.g., Guzman Closing at 6968.

F.      Defense Instruction Nos. 8 through No. 13

The government respectfully requests that the Court rely upon the instructions that were used in the <u>Guzman Charge</u> and the <u>Farekh Charge</u>.

G.      Defense Instruction No. 14 (Law Enforcement Witnesses)

The government does not object to the first paragraph of the defendants' proposed instruction, which is materially the same as the Court's usual instruction on law enforcement witnesses.  <u>Compare</u> <u>Guzman Charge</u> at 6973; <u>Farekh Charge</u> at 1584.

The government objects to the second paragraph, which asks the Court to advise the jury that it is "legitimate for defense counsel to try to attack the believability or credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case."  Defs. Revised Charge at 22.  Such an instruction would have the Court endorse particular conduct by defense counsel as to particular witnesses.  There is no legitimate reason to single out and provide judicial blessing for actions by defense counsel, and the proposed instruction could serve to give the impression that the Court approves of a line of questioning engaged in by defense counsel.  By the logic of this instruction, the Court should also instruct the jury that it is "quite legitimate for the prosecutors to attack the believability or credibility of defense witnesses" on the same grounds.  The instruction is neither necessary nor appropriate.

H.      Defense Instruction No. 15 (Character Evidence) (***Revised Objections***)

The defendants may call character witnesses in their defense.  <u>See</u> Fed. R. Evid. 404(a).  Should such witnesses testify, the government respectfully proposes an instruction consistent with those ordinarily given in this District.  <u>See, e.g.</u>, Charge of the Hon. John Gleeson, <u>United States v. Jose Tejada</u>, 08-CR-242 (E.D.N.Y.); Charge of the Hon. Dora L. Irizarry in <u>United States v. Lange</u>, 10-CR-968 (E.D.N.Y.); Sand, Instructions 5-15, 5-16.  The government attaches a proposed instruction hereto, as Exhibit 1, which is consistent with the traditional instruction given in this district.

The government further notes that the defendant is not permitted to offer specific instances of good character, and will object to any such testimony.  <u>See generally</u> Fed. R. Evid. 405(b) (permitting specific instances of conduct to prove character trait only "when a person's conduct or character trait is an essential element of a charge, claim or defense"); Weinstein's Federal Evidence, § 405.05 (explaining that it is only permitted "when character itself is an issue under substantive law" and provides, by way of example, a "damage action against an employer for hiring or retaining a known incompetent worker" and the evidence is that "an employer hires a well-known alcoholic with an extensive accident record as a taxi driver").  By contrast, the government is permitted on cross-examination to ask any of the defendant's character witness about relevant specific instances of conduct that reflect the defendant's character.  <u>See</u> Fed. R. Evid. 405(a).

I.    Defense Instruction No. 16 (The Charges in this Case) (***Revised Objections***)

The Court should reject this proposed instruction, as it makes several incorrect and confusing assertions. First, it incorrectly references a "willfulness" standard with respect to Section 951, as discussed further below. See Order Denying Mot. to Dismiss (ECF No. 120) (the "MTD Order") at 14-20 (rejecting the defendants' argument that Section 951 requires willfulness); Order Denying Motion for Reconsideration (ECF No. 166) (the "Reconsideration Order") at 5-6 (finding that Section 951 has only a "general intent" requirement, and that "knowingly and intentionally" agreeing to act as an agent of a foreign government "is all the law requires").[3]

Second, it instructs the jury that the indictment "groups the counts into three groups." Def. Revised Charge at 24. This language appears to track the Court's instruction in United States v. Nordlicht. But there, the Court was instructing the jury about "groups" of counts because they referred to different alleged fraud schemes. See Nordlicht, No. 16-CR-640 (E.D.N.Y.) (ECF No. 849) at 7124 (discussing the "investment scheme" charges and the "Black Elk bond scheme" charges). No such grouping by "scheme" exists here, and suggesting that the charges must be considered in groups (rather than individually) would only serve to confuse the jury. The Court should instruct the jury as to the charges in the Indictment in the manner proposed by the Government, which tracks the instruction used by the Court in the Guzman Charge. See Gov't Charge, Request No. 2.

J.    Defense Instruction No. 17 (Scienter) (***Revised Objections***)

The Court should reject this proposed instruction in favor of the government's instruction on scienter, which is more consistent with instructions provided by this Court and other courts in this District. See Gov't Charge, Request No. 3. The defendants' instruction is confusing and omits important instructions. For example, with regard to defining "intentionally," the instruction fails to explain that "it is sufficient that a defendant intentionally engages in conduct which the law forbids" or that "the Government isn't required to prove that a defendant is aware of the law that actually forbids his conduct." See, e.g., Farekh Charge at 1604.

Additionally, the purpose of this instruction is to explain to the jury the definition of terms that are expected to be used throughout the remainder of the instructions, so the Court does not have to repeatedly define those terms each time they appear. But the defendants' instruction includes definitions of "willfully" and "corruptly," even though those terms are only relevant to instructions related to the specific offenses of materially false statements (which requires willful conduct) and obstruction of justice (which requires acting corruptly). As discussed herein (and as this Court previously held), the charged Section 951 offenses do not require willful conduct. Including these terms in a general scienter instruction will only serve to confuse the jury and may mislead jurors into thinking that the Section 951 offenses require proof of a higher scienter than required under the law. See, e.g., Comment to 10th Circuit Pattern Criminal Jury Instruction

---

[3] The defendants have modified their proposed instruction to indicate that "willfully" only applies to conspiracy to commit a Section 951 offense. As discussed further below, this remains legally inaccurate and should be struck.

1.38 ("The Committee does not recommend any general instruction defining the term 'willfully' because no single instruction can accurately encompass the different meanings this term has in federal criminal law."); Ratzlaf v. United States, 510 U.S. 135, 141 (1994) ("'Willful,' this Court has recognized, is a word of many meanings, and its construction is often influenced by its context.") (cleaned up).

II.    The Defendants' Proposed Legal Element Instructions (***Revised Objections***)

        The government respectfully requests that the Court adopt the government's proposed charges as to the legal elements of the substantive offenses and associated concepts like conspiracy and aiding and abetting liability.  See Gov't Charge, Request Nos. 3-12.   The government's charges are consistent with underlying statutes, legal precedent, and prior jury instructions in this District and elsewhere related to these offenses and concepts.  For example, the government's proposed charge regarding a violation of 18 U.S.C. § 951 tracks the statute, applies this Court's Orders regarding the legal contours of the offense, and follows the precedent from this and other circuits.  By contrast, the defendants' proposal asks the Court to adopt an instruction that, among other things, (i) treats the "legal commercial transaction" exception as an element, contrary to every circuit court to consider this matter, and (ii) invites legal error by asking the Court to insert a "willfulness" requirement based on a misreading of the law.  The government will be prepared to discuss additional issues at the charging conference but identifies for the Court the following specific objections to the defendants' proposals.

    A.    Willfulness for Aiding and Abetting Liability and Section 951 Conspiracy Charge (***Revised Objections***)

        The defendants now concede, as they must, that Section 951 requires only knowing and intentional conduct, and have retracted their request to charge the jury that a substantive Section 951 offense requires "willful" conduct.  See Defs. Revised Charge, Instruction No. 18 ("the defendant acted knowingly and intentionally").  However, the defendants continue to seek a legally incorrect instruction that the government must prove "willfulness" as it relates to aiding and abetting a Section 951 offense, and to prove a conspiracy  to commit a Section 951 offense.  See Defs. Revised Charge, Instruction Nos. 16-17, 25-29.  This is wrong, and contrary to the Court's prior rulings on this issue.  The Court has already ruled, repeatedly, that Section 951 requires proof of knowledge and intent, not willfulness.  See MTD Order at 14-20; Reconsideration Order at 5-6.

        1.    Aiding and Abetting Liability & Willfulness (Defense Instruction No. 25)

        Consistent with these rulings, the Court has also found that aiding and abetting liability and a Section 951 conspiracy require only knowing and intentional conduct.  With regard to aiding and abetting liability, the Court held that "a defendant may be convicted of aiding and abetting a given crime . . . where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime."  MTD Order at 14 (internal quotations and citations omitted).  Consistent with this analysis, the Court's prior jury instructions on aiding-and-abetting liability instruct a jury that:

> To aid or abet somebody else to commit a crime, the defendant has to do two things. First, he must knowingly associate himself in some way with the crime; and, second, he must participate in the crime by doing some act, something that helped the crime succeed. To establish that the defendant knowingly associated himself with the crime, the Government must establish that the defendant acted knowingly and intentionally. I just told you what "knowing and intentionally" means. You'll apply those instructions here.

Guzman Charge at 6982 (Exhibit 1 to Gov't Charge); see also Zhong at 34-45 ("In order to be an aider or abettor, it is necessary that the defendant knowingly associated himself in some way with the crime, and that he knowingly tried to help make the crime succeed with some action."); Sand, Instruction 11-2. The Government's proposed instruction (Request No. 5) is consistent with the Court's prior ruling and instruction that aiding-and-abetting liability requires "knowing association" and doing some act to help the crime succeed, and should therefore be adopted. See Gov't Charge at 14-16.

The defendants' reliance on the Court's instruction in Nordlicht is misplaced. See Def. Revised Charge at 37 n. 26. Nordlicht involved several fraud-based offenses that have an explicit willfulness requirement in the statutes (unlike Section 951). See 15 U.S.C. §§ 78ff, 80b-17. Here, because the substantive offense requires only knowing and intentional conduct, aiding-and-abetting liability requires only knowing association. See Guzman Charge at 6982; United States v. Rodriguez, 392 F.3d 539, 545 (2d Cir. 2004) (in case involving aiding and abetting possession with intent to distribute, a crime that requires knowing and intentional conduct, "to prove that the defendant acted with . . . specific intent, the government must show that [the defendant] knew of the proposed crime") (emphasis added).

## 2. Section 951 Conspiracy & Willfulness (Defense Instruction No. 26 and 28)

The Court has likewise ruled that conspiracy to commit a Section 951 offense requires knowing and intentional, but not willful, conduct. The Court previously held that the government had adequately pled a conspiracy to violate Section 951 "by alleging that defendants 'knowingly and intentionally conspire[d]' to violate Section 951." MTD Order at 14; see also, id. ("the phrase 'intentionally and knowingly,' sufficiently alleged the specific intent required for a conspiracy charge") (quoting Guzman v. United States, No. 02-CR-5672, 2003 WL 22023985, at *3 n. 4 (S.D.N.Y. Aug. 27, 2003)). The Court recently reiterated this principle, holding that "[t]he intent requirement [to prove a Section 951 conspiracy] is satisfied so long as a defendant knew that he was not registered with the Attorney General as an agent of a foreign government." Order on Motion in Limine, at 1 (ECF No. 226). Consistent with these rulings, the Court's past conspiracy instructions for crimes that require knowledge likewise instruct the jury that a conspiracy requires knowing and intentional conduct:

> Before you may convict the defendant of conspiracy, the following two essential elements have to be established beyond a reasonable doubt: First, that the

conspiracy existed; and Second, that the defendant knowingly and intentionally became a member of that conspiracy.

Farekh Charge at 1605 (Exhibit 2 to Gov't Charge).

Now, in order for the defendant to be guilty of a conspiracy to violate Federal law, the Government has to prove two elements beyond a reasonable doubt: First, that two or more persons entering into the particular unlawful agreement charged in the indictment; and Second, that the defendant knowingly and intentionally became a member of that conspiracy.

Guzman Charge at 6984 (Exhibit 1 to Gov't Charge). The government's proposed instruction includes this language, and is otherwise consistent with the typical charges on conspiracy given in this district.

The defendants' basis to include a "willfulness" element in the conspiracy charge is unavailing. The defendant relies upon Rafiekian, but the court's instructions in Rafiekian contains no such willfulness requirement as to the Section 951 conspiracy count. See Jury Instructions at 38, United States v. Rafiekian, No. 18 CR 457 (E.D. Va. July 23, 2019) (ECF No. 354-5). The defendants also rely on Ruan v. United States, 142 S. Ct. 2370, 2376 (2022), but that reliance is misplaced for the same reasons previously articulated by the Court in denying the defendants' motion for reconsideration. See Reconsideration Order at 5-6. Finally, the defendants' reliance on this Court's instructions in Nordlicht is erroneous (as it was in the aiding-and-abetting context) because that case involved substantive offenses that (unlike Section 951) have an explicit willfulness requirement in the statutes. See 15 U.S.C. §§ 78ff, 80b-17. That is not the case here. See United States v. Arditti, 955 F.2d 331, 340 (5th Cir. 1992) ("'Willfulness' appears in neither the section 371 definition of conspiracy nor the section 1956 monetary-instrument laundering statute, and . . . it is not an element of the conspiracy offense, which requires the state of mind necessary for the substantive crime.").

The Court should rely on its instructions in Guzman and Farekh, cases in which the defendants were charged with conspiring to commit substantive offenses that contained no willfulness requirement, and on the government's proposed instructions modeled off those instructions.

B.     Venue (*Revised Objections*)

The defendants ask for repeated instructions about venue throughout their instructions. See, e.g., Defense Instruction Nos. 18, 24, 30, 38, 46. Addressing venue in this manner is inefficient, confusing to the jury and creates undue appellate risk. First, venue is not an element of the crime and need only be proven by a preponderance of the evidence. See United States v. Woolaston, No. 20-4233-cr, 2022 WL 905404, at *1 (2d Cir. 2022) ("Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence.") (quoting United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005)). Instructing on venue within instructions about the elements of each offense (and incorrectly referring to venue as an element of a crime) is legally incorrect and needlessly runs the risk that jurors will apply a

preponderance standard to elements requiring proof beyond a reasonable doubt and/or a reasonable doubt standard to venue, which requires only proof by a preponderance of the evidence. The defendants' instructions are also redundant, as they repeatedly note that the Eastern District of New York includes several different counties, and repeatedly defines the same preponderance standard when discussing venue.

The defendants' instructions on venue are also inadequate because they omit substantial information about what venue means and how it can be proven by the government. For example, the defendants' instructions on venue fail to explain, among other things, that:

1. Venue in the E.D.N.Y. includes the waters within New York and Bronx Counties, including waters surrounding Manhattan.

2. Venue includes the air space above the E.D.N.Y.

3. Venue can be based on electronic impulses, including email communications passing through a district, and where telephonic communications in furtherance of a crime was made or received.

These omissions are particularly glaring in a case that involves, among other things, international flights into and over the E.D.N.Y., electronic communications into and out of the E.D.N.Y., and other travel and conduct within or between the E.D.N.Y. and elsewhere. Although a defendant is permitted to waive venue, here the defendants have vigorously contested this issue. The defendants cannot have it both ways and seek cursory venue instructions that explain little on the law of venue, while simultaneously attacking the government's proof of venue at trial.

The defendants' instructions on venue also contain inaccuracies. For example, Defense Instruction No. 18 and 24 instruct the jury that the government must prove that the defendant "acted as an agent of the [United Arab Emirates ("UAE")] . . . within the Eastern District of New York." See Defs. Revised Charge, Instruction Nos. 18 and 24. Thus, the defendants' proposal would instruct the jury that the crime must be wholly completed in the Eastern District of New York. This is wrong. It is blackletter law that venue only requires that "some act in furtherance of the crime" occurred in the relevant district. See 18 U.S.C. § 3237(a) (offenses that span multiple districts "may be inquired of and prosecuted in any district in which such offense was begun, continued or completed"); United States v. Royer, 549 F.3d 886, 894 (2d Cir. 2008) ("venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue [and it does].") (internal citations and quotation marks omitted); Sand, Comment to Instruction 3-11 ("The recommended charge correctly states that venue may exist if an act in furtherance of the crime occurs in the district, even if the crime itself occurred elsewhere. Indeed, the Supreme Court has held that the defendant need not personally have been present in the district for venue to be proper.").

Notably, a defendant in a recent case involving a Section 951 offense similarly tried to argue that the government must prove that the defendant acted as an agent specifically in the district where he was charged; the Court expressly rejected such an instruction. See Court's

Proposed Jury Instructions, <u>United States v. Abouammo</u> (Exhibit 4 to Gov't Charge) at 51-52 ("the plain language of the statute requires only that the defendant act 'in the United States'"). Similarly, two weeks ago, the trial court in <u>United States v. Chaoqun</u> gave an instruction on a Section 951 charge that correctly stated the government need only prove that the defendant "committed some act in the United States," and did <u>not</u> have to prove that any particular act occurred in that district. <u>See</u> Jury Instructions at 23, <u>United States v. Chaoqun</u>, No. 18-CR-611 (ECF No. 376).

The proper approach would be to address venue in a separate and discrete instruction. This is the typical practice in this District when venue is contested. The government has proposed a comprehensive instruction on venue that is adapted from an instruction recently given by the Hon. Margo K. Brodie in <u>United States v. Ng</u>, No. 18-CR-538 (S-2) (MKB). <u>See</u> Gov't Charge, Request No. 12. This approach has several significant benefits. It eliminates the risk that the jury will apply a lower burden of proof to other elements by making clear that venue is a discrete issue that permits proof by a preponderance of the evidence. The government's instruction also eliminates redundancy; instructing on venue once rather than discussing it on six separate occasions (as is done by defendants) will be more efficient. Finally, an instruction that carefully and thoroughly explains the law of venue will ensure that the jury will be given the proper tools to apply the facts on this contested issue.

C.    <u>Defense Instruction Nos. 18-25 (Count 1: Section 951 Offense)</u>

The defendants' instructions related to Section 951 are replete with legal errors, and reflect an attempt to relitigate issues already decided by the Court. The Court should reject these instructions and use those proposed by the government. <u>See</u> Gov't Charge, Requests No. 4 and 8. The government highlights some of the most problematic elements of the defendants' proposed instructions below.

1.    <u>Defense Instruction No. 18 (Count 1: Section 951)</u> (***Revised Objections***)

Defense Instruction No. 18 contains several errors and inaccurate statements. The instruction refers to "unregistered agents." Defs. Revised Charge at 27. But Section 951 does not require "registration." The statute is violated when a person "acts in the United States . . . without prior notification to the Attorney General." 18 U.S.C. § 951(a). As the statute and underlying regulations reflect, Section 951 requires a one-time notification (typically in the form of letter or fax) to the Attorney General. <u>See</u> 18 U.S.C. § 951; 28 C.F.R. 73.3(a). FARA, unlike Section 951, requires "registration" in the form of a comprehensive registration statement for anyone who acts as an agent of a foreign principal (a broader group than a foreign government under Section 951), and does so for particular types of conduct. <u>See</u> 22 U.S.C. § 612(a). Registration and notice are different actions that entail different obligations. And because of the different purpose and requirements of FARA, the statute requires a "willful failure to file a registration statement or supplement thereto," a "willful false statement" or willful omission in the statement to constitute a criminal violation (though unregistered action on behalf of a foreign principal is unlawful even absent willfulness). <u>Id.</u> The defendants' insertion of "registration" throughout their instructions conflates two different statutes.

The defendants also ask to include language about the "legal commercial transaction" affirmative defense in their "elements" instruction. See Defs. Revised Charge at 27. As the defendants concede later in their proposed instructions, this part of the statute only creates an affirmative defense to the elements of the offense. See MTD Order at 12; Defs. Revised Charge, Instruction No. 31. Including this definition in the section discussing the elements risks confusing the jury and would constitute legal error to the extent it suggests that the jury must treat the "legal commercial transaction" exception as an element of the offense.

The defendants' proposed instruction also attempts to improperly instruct the jury that venue requires the person to act as an agent in the Eastern District of New York. See Defs. Revised Charge at 28. As discussed above, venue should be addressed separately, and should instruct the jury that any act in furtherance of the crime can establish venue.

2. Defense Instruction No. 19 (First Element of Section 951 Offense) (***Revised Objections***)

The defendants' proposed instruction related to the "first element of Section 951" contains numerous errors and omissions, and should be rejected. First, the defendants propose that the Court instruct the jurors about what conduct they believe does not amount to an agreement, including an instruction that "if one party decided to do something that aligned with the interests of another party, that is not enough to show an agreement between the two of them" and "[i]t is not enough for the defendant to want to be an agent of the foreign government, nor is it enough for the foreign government to want an individual to be its agent." See Def. Revised Charge at 30. The defendants also ask for instruction about "what sort of arrangement must they have mutually agreed to" and request language such as "it is not enough if there is simply some evidence of direction from the purported principal to the purported agent, such as requests from the purported principal asking the purported agent to execute certain tasks or collaboration between the purported agent and the purported principal." Id.

This language is confusing, and an inaccurate statement of the law on Section 951. It improperly suggests that the jurors' role—and obligation—to find facts, and to determine which inferences, if any, to draw from evidence, is limited and restricted. The defendants' instruction improperly suggests that if, for example, the evidence demonstrates that an alleged agent did something "that aligned with the interests" of a foreign government, the jurors could not infer the existence of an agreement. And that, where there is "some evidence of direction" such as "requests" to the agent to "execute certain tasks," the jurors cannot draw the inference that the request was part of a larger agreement to operate subject to the direction or control of a foreign government. That is wrong—it is axiomatic (and a proper legal instruction that the Court gives in the ordinary course of criminal trials) that as the finder of fact, the jurors may "draw <u>whatever reasonable inferences</u> [they] decide from the facts as [they] have determined them." <u>Guzman Charge</u> at 6957 (emphasis added); <u>see also</u> <u>Farekh Charge</u> at 1582 ("You draw <u>whatever reasonable inferences you decide to draw</u> from the facts as you have determined them, and you determine the weight of the evidence.") (emphasis added). As the Fourth Circuit explained when specifically discussing the fair inferences permitted in a Section 951 case, "[s]avvy operatives cover their tracks" and therefore "if the prosecution is to prove that a defendant acted as an 'agent of a foreign

government,' it may need to rely on circumstantial evidence and reasonable inferences to make its case—as it is entitled to do." Rafiekian, 991 F.3d at 545.

Indeed, multiple Section 951 cases highlight how jurors can infer the existence of an agency relationship, even where (unlike in this case) there is an absence of direct evidence of such a relationship, contrary to the defendants' proposed instructions. In Rafiekian, the Fourth Circuit concluded that the jurors were entitled to infer the agency relationship between the defendant and Turkey even though the government presented evidence of just a single meeting with Turkish officials, and relied on inferences from circumstantial evidence of, among other things, the timing of communications, the defendant's apparent "courting" of Turkey, and the use of an intermediary acting on behalf of the Turkish government. Id. at 545-46. Similarly, in United States v. Latchin, the Seventh Circuit held that the jury appropriately inferred the existence of an agreement to operate as an agent of a foreign government even though "there may not have been direct evidence of acts on behalf of Iraq," because there was evidence of telephone calls with a foreign government official, receipt of money, and travel to a foreign country to meet with the government official. 554 F.3d 709, 715 (7th Cir. 2009). As these cases indicate, the government need not present direct evidence of an agreement, and many different types of circumstantial evidence may permit a jury to infer the existence of such an agreement. Contrary to the defendants' instructions, "want[ing] to be an agent of a foreign government," a person "doing something that aligned with the interests of a [foreign government]," and "some evidence of direction from a [foreign government]" are all powerful examples of circumstantial evidence from which a juror reasonably could infer the existence of an agreement to act as a foreign agent. The defendants will of course be free to urge a contrary inference.

To the extent the defendants are requesting that the jurors be instructed that the government must prove the existence of an agreement, that is appropriate. But the government's proposed instruction more carefully and accurately does this. The governments' proposed instruction explains, consistent with existing case law, that the government "must prove that the defendant acted pursuant to an agreement to operate subject to the direction or control of the UAE, and that the UAE or a UAE official or officials directed or controlled the defendant's actions" and that "[t]o be an "agent of a foreign government," a person must do more than act in parallel with a foreign government's interests or independently pursue a mutual goal." See Gov't Charge at 9. This is a more accurate statement of the law, and does not improperly circumscribe the jurors right to make reasonable inferences about the evidence.

Next, the defendants request an instruction stating that "to violate Section 951, a defendant must have some sense of obligation to act subject to the foreign principal's instructions." Defs. Revised Charge at 30. This is the same argument previously raised by defendants and rejected by the Court. See MTD Order at 7-11 ("Section 951 does not require a duty"). There is no statute nor any caselaw that stands for this proposition. As the Court previously noted, the "some sense of obligation" language does not even arise out of Section 951 but instead is related to the Foreign Agent Registration Act ("FARA"); it is language from a guidance document on a different statute and not a statement of legal precedent. Id. The Court already ruled that Section 951 does not require a duty, and it need not take up the defendants' offer to create new law by importing FARA guidance into an instruction about Section 951.

The defendants' proposed instructions contain several other errors and omit important instructions about the offense. Defense Instruction No. 19 proposes to instruct that "the defendant and his foreign principal must have agreed that the defendant would act subject to the foreign principal's direction and control." Def. Revised Charge at 30 (emphasis added).[4] As the defendants concede elsewhere, Section 951 requires only direction or control. See 18 U.S.C. § 951(d). The defendants' proposed instructions also omit important, clarifying aspects of the applicable law, as found by this Court, that the jury should be instructed on with regard to Section 951. Among other things, the defendants' proposal would fail to instruct that:

    a) The relationship may be directly between the foreign government and agent, or indirectly through intermediaries.[5]

    b) There need not be any legal duty to comply with the foreign government's directives; a lesser degree of direction or control is sufficient.[6]

    c) A person who agrees to act subject to a "hands-off" form of direction also would be acting as an "agent of a foreign government."[7]

    d) The actions taken on behalf of a foreign government do not have to be done in secret.[8]

    e) The agreement need not be contractual or formalized, nor must payment or other compensation be received.[9]

---

[4] This does not appear to be a typo, as the defendants repeatedly write "direction and control" in several parts of the instruction, notwithstanding the statutory language that says it can be "direction or control."

[5] Rafiekian, 991 F.3d at 540 (explaining that the "agent-principal relationship" can be "established by direct contact or via an intermediary").

[6] See MTD Order at 7-11 ("Section 951 Does Not Require a Duty"); United States v. Rafiekian, 991 F.3d 529, 540-41 (4th Cir. 2021).

[7] Rafiekian, 991 F.3d at 540 (person who "agrees to operate subject to a more hands-off form of 'direction'" is still within Section 951's "reach"); see also MTD Order at 9.

[8] MTD Order at 27 ("Section 951 does not require that Barrack have acted in secret.")

[9] MTD Order at 9 ("as existing case law also clarifies, this agreement need not be contractual or formalized") (citing United States v. Butenko, 384 F.2d 554, 565 (3d Cir. 1967)); id. ("nor must renumeration be received") (citing United States v. Hung, 629 F.2d 908, 912 (4th Cir. 1980)).

    f) An agent does not need to be effective or successful, or act for any
     particular motive.[10]

   Lastly, the defendants request an instruction that several types of acts "suggest a
lack of an agreement." See Defs. Revised Charge at 31. These instructions are pure defense
argument, and amount to improper instruction about what the jurors should or should not infer
from the evidence. They do not assist the jurors to understand the law, and instead would only
serve to give judicial imprimatur on defense claims about what certain evidence may or may not
"suggest." The defendants may be permitted to make such arguments in closing, but they should
not be permitted to include them in a jury instruction.

    3. Defense Instruction No. 20 (Cautionary Instruction – Agency) (*New
     Objections*)

   The defendants' revised instructions add a new "cautionary instruction" that seeks
to charge the jury that "[t]outing access to and influence with government officials and
policymakers . . . does not make one person the agent of another" and that "[s]uch actions are an
ordinary part of business." See Def. Revised Charge, Instruction No. 20. The Court should reject
this proposed instruction out of hand. This is not an instruction on the law of Section 951; it is,
transparently, a defense argument. Apart from being improper, this argument is also inconsistent
with the Court's past findings, which explained that "information-gathering and perception
management" are the types of conduct "plainly targeted by Section 951." MTD Order at 22.

   The proposed instruction is also legally incorrect. The defendants do not rely upon
any recognized jury instruction to support this proposed charge. Instead, they cite to a Second
Circuit case related to the Foreign Corrupt Practices Act ("FCPA") and a Supreme Court case
about honest services fraud. Neither have any relationship to Section 951, the statutory definition
of agency contained in Section 951, or the myriad cases that have interpreted and explained the
meaning of "agency" under Section 951. Rather than engage with the meaning of agency under
Section 951, as this Court has already done, see MTD Order at 6-8, the defendants rely upon a case
involving a completely different definition of "agency,"[11] and a case that involves "official acts,"

---

   [10] See Mem. and Order, United States v. Angwang, No. 20-CR-442 (EK) (E.D.N.Y. Aug.
3, 2022) (ECF No. 113) at 6 n.2 ("In any event, Section 951(a) does not require that an 'agent' be
effective or successful, or that he act out of any particular motive — only that he be subject to a
foreign government's 'direction or control.'").

   [11] See Defs. Revised Charge at 32 n. 21 (citing United States v. Hoskins, 44 F.4th 140, 151
(2d Cir. 2022)). In Hoskins, the parties agreed that "the common law meaning of agency" was
applicable and, as the dissent noted, "the FCPA leaves the term 'agent' undefined." See id. at
150, 159 (J. Lohier, dissenting) (noting also that he found the government's decision to concede
that the common law definition of agency applied to be of "debatable" wisdom). The FCPA and
Hoskins thus stands in stark contrast to Section 951, which has a specific definition of "agent,"
and the caselaw that concluded the common law principals of agency do not map directly onto the
statute. See, e.g., United States v. Rafiekian, 991 F.3d 529, 539 (4th Cir. 2021) ("some aspects of

14

a different concept altogether.[12] As they have done since the beginning of this case, the defendants continue to "do[] exactly what that Court cautioned [them] not to do, which is 'force term-of-art definitions into contexts where they plainly do not fit.'" MTD Order at 8 (quoting Rafiekian, 991 F.3d at 539). The Court should reject this instruction as legally inaccurate and inappropriate.

    4.  <u>Defense Instruction No. 21 (Second Element of Section 951 Offense)</u> (***New Objections***)

        In their original proposed instructions, the defendants indicated that they would stipulate that neither defendant provided notice to the Attorney General, as required by the statute. <u>See</u> Def. Original Charge at 50 ("the parties have stipulated that the defendants did not notify the Attorney General"). The defendants now retract this concession, and request an instruction that would tell the jury "[i]t is up to you to determine, based on all the evidence, whether the defendant satisfied the notice requirements of Section 951." Defs. Revised Charge at 33.

        This is inaccurate. Section 951 requires that notice be made to the Attorney General, and contains specific requirements on the method and contents of the notification that must be made before acting as a foreign government agent. <u>See</u> 18 U.S.C. § 951(a); 28 C.F.R. §§ 73.1, 73.3. The government's charge, by contrast, specifically instructs the jury about these requirements. <u>See</u> Gov't Charge at 12. The defendants' omission of this information, coupled with their "it is up to you" language, appears to be an attempt to manufacture a "constructive notice" provision. <u>See</u> Defs. Revised Charge at 33 n. 22 (citing cases related to imputed notice). Neither Section 951 itself, nor any decision to interpret the statute the government is aware of, has ever held that a Section 951 notice can be "imputed" or "constructively" made, and the defendants do not cite any relevant case in support. Indeed, this Court previously held that "compliance with the statute mandates notification to the Attorney General, not to other Government officials." MTD Order at 27.

        In support of their argument for this instruction, the defendants quote another order of the Court. <u>See</u> Def. Revised Charge at 33 n. 22 (quoting Order at 5 (ECF No. 226)). But this is a mischaracterization of the Court's decision. The Court carefully explained that, while it had previously ruled that the statute "mandates notification to the Attorney General, not to other officials," evidence that the defendants notified other government officials about their conduct was still relevant to a defense theory that open disclosure of the relationship "belie[s] the existence of an agency agreement." Order at 5-6. In other words, the Court was saying that evidence of notice to other government officials could be used to challenge the governments' claims about the existence of an agency relationship—a completely <u>different</u> element of the Section 951 offense than the notification requirement. The Court's ruling that the defendants may argue that "openly and repeatedly disclosed his contacts and interactions with the UAE" to U.S. officials is

_____

common-law agency . . . don't jibe with § 951's language and purpose, and we must not force term-of-art definitions into contexts where they plainly do not fit.").

[12] <u>See</u> Defs. Revised Charge at 32 n. 21 (citing <u>McDonnell v. United States</u>, 579 U.S. 550, 571-74 (2016)).

inconsistent with an agency relationship does not excuse them from the actual notification requirement in the statute.  This instruction should be rejected.

5.  Defense Instruction No. 24 (Fifth Element of Section 951 Offense) **(*Revised Objections*)**

As discussed above, the defendants inclusion of venue as an element of the Section 951 offense causes confusion and reflects several legal errors.  Including venue in instructions with other elements of the offense that must be proven beyond a reasonable doubt will confuse jurors into thinking that the standard of proof for venue is higher than required.  In addition, the defendants' instructions on venue omit important information about the nature of venue and the methods by which the government can establish venue, as discussed above.  The government respectfully submits that addressing venue in a separate and discrete instruction is the proper approach.

D.  Defense Instruction No. 25 (Aiding and Abetting)

The Court should reject the defendants' aiding and abetting instruction in favor of the instruction offered by the government.  See Gov't Charge, Request No. 5.  The government's aiding and abetting instruction is adapted from this Court's instruction from Guzman, and is consistent with the instruction given by other courts in this District, as well as with the instruction recommended by the Sand treatise.  See id.; see also Guzman Charge at 6981-83; Farekh Charge at 1626-29.  The defendants' instruction contains several errors.  The instruction includes a "willfulness" requirement that, as discussed above, is not an element of the Section 951 offenses.[13]

The defendant also identifies aiding and abetting as a second theory of liability, but does not at all mention that the government may prove guilt through the Pinkerton doctrine of co-conspirator liability for a substantive offense.  See Gov't Charge, Request No. 6.

E.  Defense Instruction Nos. 25-29 (Conspiracy to Violate Section 951)

The defendants' instructions on conspiracy contain several significant omissions and multiple legal errors.

Instruction Nos. 26 and 27 omit language on the nature of conspiracies that is regularly used by this Court and other judges in this District to ensure the jury is properly apprised on how to evaluate the evidence.  For example, it fails to instruct the jury that "since a conspiracy is, by its very nature, characterized by secrecy, direct proof is often not available" and thus a jury "may infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved." Farekh Charge at 1606.  This is so because, "[i]n the context of conspiracy

---

[13] The defendants' reliance on Nordlicht in support of their instruction is misplaced, as previously discussed.  As the Court is aware, that case involved securities fraud and wire fraud-related charges.  Unlike Section 951, those offenses require "willful" misconduct.  Thus, while such an instruction may have been appropriate in Nordlicht, it is not appropriate in this case.

cases, actions can speak louder than words," id., and "[c]ommon sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding. A conspiracy, by its very nature, is almost invariable secret in both origin and execution," United States v. Li, No. 18 CR 302 (BMC) (E.D.N.Y. Nov. 25, 2019), Jury Charge at 21 (ECF No. 307). The government respectfully submits that its proposed instructions more closely track the conspiracy instructions that have repeatedly been administered by this Court and other judges in this courthouse without any finding of error on appeal. See Gov't Charge, Request No. 7.

Defense Instruction No. 29 incorrectly states that the object of the conspiracy was "to act as unregistered agents of a foreign government within the United States." That is incorrect, as Section 951 has a notice requirement, not a registration requirement, as discussed above. Rather, the Court's instructions to the jury should track the language of the Superseding Indictment and the statute, namely that the object of the conspiracy was "to act in the United States as agents of a foreign government, to wit: the United Arab Emirates, without prior notification to the Attorney General of the United States." Ind. (S-1) ¶ 116.

In addition, Defense Instruction No. 29 erroneously provides that, in the context of the charged conspiracy, the jury "must unanimously agree on which overt act was committed." This is contradicted by Second Circuit precedent. In United States v. Kozeny, 667 F.3d 122 (2d Cir. 2011), the Second Circuit addressed this very question, holding that "although proof of at least one overt act is necessary to prove an element of [conspiracy], which overt act among multiple such acts supports proof of a conspiracy conviction is a brute act and not itself [an] element of the crime. The jury need not reach unanimous agreement on which particular overt act was committed in furtherance of the conspiracy." Id. at 132. The Second Circuit has reaffirmed Kozeny and concluded that it is "binding Second Circuit precedent [that] forecloses [a defense] argument that the jury be instructed to find unanimously a specific overt act in order to return a conviction on [a] Section 371 conspiracy offense." United States v. Cote, 615 F. App'x 39, 40 (2d Cir. 2015).

Similarly, Defense Instruction No. 29 states that the jury must conclude that the overt act committed in furtherance of the conspiracy was "alleged in the indictment or an overt act that is substantially the same as one explicitly charged." Kozeny once again instructs otherwise, holding that "the government may plead one set of overt acts in the indictment and prove a different set of overt acts at trial without prejudice to the defendant." 667 F.3d at 132 (citing United States v. Kaplan, 490 F.3d 110, 129 (2d Cir. 2007) ("We have routinely found that no prejudice results from a variance between overt acts charged in an indictment and those proved at trial." (citing cases))); see also United States v. Van Hise, No. 12 CR 847, 2017 WL 3425750, at *28 (S.D.N.Y. Aug. 8, 2017) ("The overt act may itself be lawful and need not be charged in the indictment.").

Defense Instruction No. 29 in the defendants' instructions also states: "Bear in mind, however, that the overt act standing alone may be an innocent lawful act, and if that is all it is, then the third element is not satisfied." This instruction is legally erroneous and risks confusing the jury. The law is clear that an overt act may itself be an innocent or lawful act and nonetheless satisfy the elements of conspiracy. See United States v. Abdullaev, 761 F. App'x 78, 84 (2d Cir. Feb. 7, 2019) ("It is well-established that an 'overt act' is 'any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy." (citing United States v. Tzolov,

642 F.3d 314, 320 (2d Cir. 2011)); Van Hise, 2017 WL 3425750, at *28 (holding that "[t]he overt act may itself be lawful" (citing Iannelli v. United States, 420 U.S. 770, 786 n.17 (1975) ("The [overt] act can be innocent in nature, provided it furthers the purpose of the conspiracy.")))). The defendants' proposal risks erroneously instructing the jury that the overt act must itself be criminal to satisfy this element, which is not the law. See United States v. Montour, 944 F.2d 1019, 1026 (2d Cir. 1991) ("[A]n overt act need not be inherently criminal to support a conspiracy conviction.").

Lastly, the defendants' instructions on venue related to Count Two, specifically Defense Instruction Nos. 26 and 30, also suffer from the same deficiencies referenced earlier. As previously discussed, lumping instructions on venue into instructions with other elements of the various offenses that must be proven beyond a reasonable doubt may confuse jurors into thinking that the standard of proof for venue is higher than required. In addition, the defendants' instructions on venue omit important information about the nature of venue and the methods by which the government can establish venue, as discussed above. The government respectfully submits that addressing venue in a separate and discrete instruction is the proper approach.

F.    Defense Instruction No. 30 (Affirmative Defense to Section 951)

The defendants' proposed "legal commercial transaction" instruction is inappropriate. The Court should reject the instruction because the defendants have failed to satisfy their burden of showing that the defense is applicable in this case. Even if the defense were applicable, the Court should reject the defendants' instruction and instead rely upon the government's proposed instructions, which are more carefully based upon the relevant statutes and past precedent on this legal issue. See Gov't Charge, Request Nos. 25-26.

1.    The Court Should Not Give a Legal Commercial Transaction Defense
      Instruction (**Revised Objections**)

As indicated in prior filings, see, e.g., Letter dated Sept. 28, 2022 at 4-5 (ECF No. 274), the government opposes the inclusion of any affirmative defense instruction unless and until the Court finds that the defendants have established facts warranting such a defense. See United States v. Abouammo, 19-CR-621, ECF No. 348 (rejecting legal commercial transaction defense); United States v. Ji Chaoqun, No. 18-CR-611 (N.D. Ill.), ECF No. 368 (rejecting legal commercial transaction defense). Because the defendants' conduct was (1) not ordinary commercial activity and (2) in flagrant violation of the Foreign Agent Registration Act, the defendant should not be permitted to raise this affirmative defense.

Courts have consistently held that a defendant is entitled to an affirmative defense instruction only if he or she marshals sufficient evidence to support the defense at trial. See, e.g., United States v. Bailey, 444 U.S. 394, 414-15 (1980) (holding that defendants were not entitled to any instruction on duress or necessity where they failed to proffer evidence in support of the defenses, other than "[v]ague and necessarily self-serving statements"); United States v. Bifield, 702 F.2d 324, 346 (2d Cir. 1983) ("Where the evidence, even if believed, fails to establish all of the elements of the duress defense, the trial court may rule upon the defense as a matter of law and need not submit it to the jury."). In both of the two most recent Section 951 cases that have gone

to trial, the court has denied the defendant's request to raise a legal commercial transaction defense. In United States v. Abouammo, the district court declined to give a proposed instruction on the legal commercial transaction defense because the court found that the government's theory, if proven, would not permit a claim that the actions were "legal commercial transactions." See 19-CR-621 (N.D.Cal.), ECF No. 348 (explaining that, if the jury found that the defendant "accessed and provided nonpublic account information" to a foreign government outside the scope of his employment at Twitter, then "there would be no such defense to the specific charge").[14]

In United States v. Ji Chaoqun, the district court held that the legal commercial transaction defense was inapplicable to a defendant who had a long-term relationship with the Ministry of State Security for the People's Republic of China. See No. 18-CR-611 (N.D. Ill.), ECF No. 368 (the "Chaoqun Order," attached as Exhibit 2). The court reviewed the legislative history of Section 951 and the legal commercial transaction exception and noted that Section 951 was "not intended to cover those individuals in routine commercial matters but is intended to cover individuals who represent foreign governments in political activities that may or may not come within the scope of the Foreign Agent[s] Registration Act." See Chaoqun Order at 3 (quoting S. Rep. No. 98-225) (emphasis added). Based on this history, the court concluded that the legal commercial transaction exception was limited to individuals who have a "strict commercial relationship with the foreign nation," because an alternative reading would "gut the purpose of the statute and allow an individual who is alleged to have engaged in (and is subsequently convicted of engaging in) acts against the interests of the United States to escape conviction simply by cloaking any one of the alleged acts in the protective cover of a 'legal commercial transaction.'" Id. The court also found that, even if an alternative interpretation of the exception were appropriate, the defendant's conduct included a substantial number of non-commercial actions that would still render the exception inapplicable. See id. at 4 ("Defendant's alleged criminal conduct is not restrictive to the purchase of background information."). Among other things, the court identified evidence that the defendant (1) traveled between the United States and the foreign country on multiple occasions; (2) exchanged text messages and emails with an intelligence officer; and (3) transmitted information to the intelligence officer. Id. As the court explained, citing United States v. Latchin, the fact that the defendant "took acts of some kind on behalf of [the foreign government] without first registering as a foreign agent" was sufficient for a conviction and was not excused by the legal commercial transaction defense. Id.

The same is true here. The defendants actions were far outside the realm of commercial activity, and involved substantial non-commercial conduct alongside members of the UAE's national security apparatus. Such actions included, among other things: (1) influencing public opinion and the foreign policy positions of the Trump Campaign; (2) relaying non-public information about the foreign policy positions and decisions of the Trump Campaign; (3) developing a backchannel line of communication to the Trump Campaign on behalf of the UAE government; (4) designing plans to increase the UAE's political influence and promote its foreign policy preferences; (5) pushing UAE favored policy positions; (6) elevating UAE-favored individuals for positions in the administration; (7) disclosing non-public information about Trump

---

[14] The defendant in Abouammo also advised the court that he would not raise a "legal commercial transaction" defense if the jury proceeded on this theory. See id. at 2.

Administration appointments, actions and internal deliberations; and (8) arranging meetings for UAE officials and Kingdom of Saudi Arabia ("KSA") officials who were closely aligned with the UAE. Like the defendant in <u>Chaoqun</u>, Barrack and Grimes engaged in numerous activities that were non-commercial in nature. Indeed, the defendants themselves argue that there was no payment for their conduct. If the jury convicts the defendants based on this theory, then, as in <u>Abuoammo</u> and <u>Chaoqun</u>, there is "no such defense" as a "legal commercial transaction."

### 2. The Defendants Deliberately Omit The Fact That They Have To Meet a Burden to Satisfy the Affirmative Defense (***Revised Objections***)

In the defendants' original proposed jury instructions, they correctly requested that the Court instruct the jury that the defendants bear a burden of proving, by a preponderance of the evidence, the applicability of the legal commercial transaction defense. <u>See</u> Def. Original Charge, Instruction No. 30 (ECF No. 148). The defendants have retracted that concession and appear to be requesting an instruction that omits any mention of their burden of proof. They claim that, even though this is an affirmative defense, the government bears the burden of proving "that the defendants were not engaged in a lawful commercial transaction." Defs. Revised Charge at 52-53. But the defendants still concede, as they must, that "an affirmative defense requires a defendant to produce 'some evidence' placing the exception in issue . . . ." <u>See</u> <u>id.</u> at 51 n. 32 (quoting <u>United States v. Durrani</u>, 835 F.2d 410, 420 (2d Cir. 1987) (finding "official use" to be exception rather than element of export violation).

The defendants' retraction is based on the new and unusual assertion that the "legal commercial transaction" defense is not actually a defense, but rather "negates the 'agency' element of Section 951." <u>See</u> Defs. Revised Charge at 51 n. 32. This is just another way of arguing that it is an element of the offense, rather than an affirmative defense. And this argument is foreclosed by multiple prior decisions finding "legal commercial transaction" to be an affirmative defense that the defendant must initially prove by a preponderance of the evidence. <u>See</u> <u>United States v. Rafiekian</u>, 991 F.3d 529, 544 (4th Cir. 2021) ("the 'legal commercial transaction' exception provides for an affirmative defense—which must be raised first, if at all, by a defendant—rather than an essential element of the offense."); <u>United States v. Abouammo</u>, No. 19-CR-621 (N.D. Cal. July 5, 2022) (ECF No. 288) at 52-54 ("the § 951(d) exceptions are affirmative defenses, not elements of the offense . . . and has revised the "burden of proof" instructions to convey that [the defendant] bears the burden to prove the affirmative defense by a preponderance of the evidence"); <u>United States v. Chaoqun</u>, No. 18-CR-611 (ECF No. 368) (granting government motion to exclude "the legal-commercial-transaction affirmative defense"); <u>United States v. Duran</u>, No. 07-20999-CR, 2008 WL 11333989, at *2 (S.D. Fla. Oct. 10, 2008), <u>aff'd</u> 596 F.3d 1283 (11th Cir. 2010) ("whether [the defendant] merely engaged in legal commercial transactions is an issue <u>that must be raised and proven by Duran as an affirmative defense</u>" and "is not an element of Section 951 which the Government must negate . . . ."). Although the Court did not decide the issue on the defendants' motion to dismiss, the Court similarly noted that "this exception likely provides only for an affirmative defense rather than an element that must be alleged in an indictment"). <u>See</u> Order at 12 (ECF No. 120).

The defendants appear to be misreading the uncontroversial Supreme Court holding that a legislature may not redefine the essential elements of an offense to be "affirmative defenses"

because it would shift the burden of proof for conviction. See Patterson v. New York, 432 U.S. 197, 206-07 (1977) (noting, in dicta, that doing so would constitute a violation of the Due Process Clause). But, as noted above, multiple courts have already analyzed the "legal commercial transaction" language in Section 951, and concluded (as in Abouammo, Chaoqun, and Duran), that it is an affirmative defense that requires the defendants to meet the preponderance standard. Even if there were no cases that already rejected this argument, a claim that the conduct was a "legal commercial transaction" is plainly an exception and does not negate any of the elements the government must prove (such as mens rea, acting in the United States, "direction or control," or the involvement of a foreign government). See, e.g., Smith v. United States, 568 U.S. 106, 110 (observing that where affirmative defense "excuses conduct that would otherwise be punishable, but does not controvert any of the elements of the offense itself, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt").

Now that the issue is ripe, the Court should rule and confirm that it is, in fact, an affirmative defense that must be raised and proven by a preponderance of the evidence by the defendant.

*3.* The Defendants' Instruction Includes Unnecessary Discussion of Other Foreign Countries *(Revised Objections)*

The defendants' proposed instruction includes a lengthy paragraph that advises the legal commercial transaction exception is not available to agents of Cuba or certain other countries specifically designated to be a "threat to the national security interest." Although this is an accurate recitation of a portion of the statute, see 18 U.S.C. § 951(e)(2)(A), it is wholly irrelevant in this case. The jury does not need to be instructed that the exception is inapplicable to Cuban agents or other countries that have been specially designated by the President, because the government has not made any such allegation in this case. The government is not arguing that the exception is inapplicable because the UAE or KSA meet these categories. The defendants appear to want the instruction to argue the opposite point—because the UAE and KSA have not been expressly designated as exceptions under this provision, then the legal commercial transaction "must" be applicable. This is wrong, and illogical. Apart from specific designated countries like Cuba, the defense does or does not apply based on the statutory definition of "legal commercial transaction," and whether the defendants have offered sufficient facts in this case to show that the exception is applicable. Language about Cuba and other designated countries unrelated to this case would only serve to confuse the jury, and should not be included in the instruction.

4. The Court Should Give the Instructions Proposed by the Government Related to the Affirmative Defense and to the Foreign Agent Registration Act (FARA) **(Revised Objections)**

In the event the Court decides to give an instruction on the "legal commercial transaction" defense, the government respectfully requests that the Court adopt the government's proposed instructions regarding the defense and the Foreign Agent Registration Act ("FARA").

See Gov't Charge, Request Nos. 25-26.[15]  The government proposes two instructions.  The first instruction advises the jury of the law on the affirmative defense.  The instruction is based upon the statute and implementing regulations, the Court's order on the motion to dismiss as it relates to this defense, and past precedent.  Id.  The government's second supplemental instruction requests that the Court advise the jury about the registration requirement under FARA for agents of foreign principals.  This instruction is necessary because, if the jury finds that a defendant was obligated to register under FARA for his actions on behalf of the UAE, and did not do so, then that defendant's conduct was "prohibited by a federal or state law or regulation" and his conduct cannot be protected by the "legal commercial transaction" defense.  See 28 C.F.R. § 73.1(f).

The defendants' instruction, by contrast is confusing, fails to adequately inform the jury of the law as to this defense, and is peppered with defense arguments.  For example, the defendants would have the Court advise the jury that "legal commercial transaction" is "defined broadly."  See Defs. Revised Charge at 51.  The language "defined broadly" is both vague and inconsistent with the fact that the implementing regulations for Section 951 specifically and precisely defines the parameters of a "legal commercial transaction."  See 28 C.F.R. § 73.1(f) ("Definition of Terms").  The defendants' proposal also fails to advise the jury that the defense must be considered for the overall conduct, and for each action, taken on behalf of the defendant for the foreign government.  This is particularly important in the present case, where the defendants are alleged to have engaged in a wide variety of actions over the course of several years at the direction or control of the UAE.  See, e.g. Chaoqun Order at  4 ("Even assuming arguendo that Defendant's interpretation of the term "legal commercial transaction" is accurate, Defendant's alleged criminal conduct is not restricted to [a particular commercial transaction]").  As the government's instruction explains, the jury needs to evaluate whether all of the conduct done for the UAE was "legal" and "commercial" to consider whether this defense applies.  See Exhibit 1.

The defendants' proposal also omits any explanation that "legal," "commercial" and "transaction" are discrete legal concepts, and that each needs to be met for the defense to apply.  Even if some of the defendants' conduct was commercial (and nearly all of it was not), the defense would not apply if it were not legal.  This is why the governments' second supplemental instruction, regarding the law on FARA, is important and should be given in conjunction with any instruction on the "legal commercial transaction" defense.  In addition to being a criminal violation of Section 951, the defendants' conduct was "prohibited by federal . . . legislation," because the defendants were obligated to register under FARA and did not register as required by law.[16]  Thus,

---

[15] The instruction related to FARA was modified slightly from the original submission to include additional relevant definitions of terms from the statute.

[16] Whether or not the defendants are guilty of a criminal violation of FARA—that is, they willfully failed to register—is not relevant for purposes of the "legal commercial transaction" affirmative defense.  The defense is inapplicable if there is any violation of a federal or state law or regulation, whether or not it constitutes a criminal violation of the law.  See United Sates v. Ying Lin, No. 15-CR-601 (S-2) (DLI), 2018 WL 3416524 (E.D.N.Y. July 11, 2018) (denying motion to dismiss Section 951 charges based on allegation that defendant smuggled items on

even if the defendants can prove by a preponderance that all of their actions for the UAE government were commercial (which they were not), the defense is still inapplicable if (as is the case here) they were required to register under FARA and failed to do so. See, e.g., 22 U.S.C. 612(a) (providing, inter alia, that "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement").

G.    Defense Instruction No. 32 (Unanimity of Theory as to Counts 1 and 2)

The defendants' "unanimity as to theory" instruction is contrary to well-established law. It would be legally incorrect to instruct that the jury "cannot convict [the defendants] on either Count 1 or Count 2 unless you are unanimous that the government has proven its case beyond a reasonable doubt as to the same theory." See Defs. Revised Charge at 54. The Second Circuit affirmed the rejection of just such an instruction, and explicitly held that juries may convict a defendant "even if some jurors convicted on a theory of principal liability and others on aiding and abetting" and even where the theories might require different mental states. See United States v. Ferguson, 676 F.3d 260, 279-80 (2d Cir. 2011) (affirming district court's denial of "'specific unanimity' instruction, which would have ensured that, as to each defendant, the jurors unanimously agreed on the theory of conviction"). Unsurprisingly given this precedent, the defendants identify no decision in this Circuit that supports such an instruction; rather, they cite a Second Circuit case for the proposition that it "encourages more specific unanimity instructions" to avoid jury confusion. See Defs. Revised Charge at 54 n. 33 (citing United Sates v. Schiff, 801 F.2d 108, 115 (2d Cir. 1986)). Notably, the defendants fail to mention that the case they cite affirmed the use of a general unanimity instruction in a complex tax fraud case. See id. (distinguishing from case where more specific instruction was required because the case involved "separate acts of extortion carried out by various individuals, acts directed at different victims at different times and in widely separated locations").

As this Circuit has repeatedly explained, "[a] general instruction on unanimity is sufficient to insure that such a unanimous verdict is reached, except in cases where the complexity of the evidence or other factors create a genuine danger of jury confusion." Ferguson, 676 F.3d at 279. The defendants' conduct is serious, but it is hardly so complex as to necessitate the unusual step of a specific unanimity instruction. See id. (finding that "[t]he accounting and insurance concepts in the case may have been complicated, but they did not add significant complexity to the theories of liability"). The Court's usual instruction, as requested by the government, is more than appropriate for this case. See Gov't Charge, Request No. 1; Farekh Charge at 1648.

H.    Defense Instruction Nos. 33-38 (Obstruction of Justice)

Defense Instruction Nos. 33 to 38 suffer from multiple defects. For example, Instruction No. 33 fails to instruct that a defendant must act "corruptly" to violate 18 U.S.C.

---

behalf of the People's Republic of China, and did so in violation of Transportation Security Administration regulations).

§ 1512(c)(2). Similarly, Instruction Nos. 34, 35 and 38 erroneously omit the "or attempts to do so" provision of 18 U.S.C. § 1512(c)(2), which is also quoted in the Superseding Indictment.[17]

Defense Instruction No. 37 also misleads the jury by implying that "merely uttering false statements" to federal law enforcement officers is not sufficiently obstructive conduct to violate 18 U.S.C. § 1512(c)(2). In United States v. Mangano, the district court rejected a proposed instruction that used this very language. See 16 CR 540 (JMA), 2022 WL 2872670 at *8 (E.D.N.Y. July 20, 2022) (finding objection to instruction "does not present a substantial claim"). As explained in Mangano, an instruction that the government must prove that "the defendant obstructed, influence or impeded a federal grand jury investigation" is sufficient, and an additional instruction like the one proposed by the defendants was unnecessary. Id.[18]

Such an instruction is not only unnecessary, but is also a misstatement of the law. It is true that, "uttering false statements to an investigating agent . . . who might or might not testify before a grand jury is [not] sufficient," absent "a relationship in time, causation, or logic" with an official proceeding. United States v. Aguilar, 515 U.S. 593, 599-600 (1995). But it is one thing to state that false statements to a law enforcement officer must have a relationship in time, causation, or logic with an official proceeding; it is quite another to state, as Instruction No. 37 does, that "[m]erely uttering false statements does not 'corruptly influence' within the meaning of the statute." Instruction No. 37 misstates the law and risks misleading the jury by implying that defendant Barrack cannot have obstructed justice merely by lying to federal law enforcement officers, even if the government establishes the required nexus to an official proceeding.

Instruction No. 37 also omits language commonly administered in this courthouse on the meaning of the term "corruptly" in the context of 18 U.S.C. § 1512(c)(2). As set forth in

---

[17] Specifically, Instruction No. 34 should state: "First, that the defendant obstructed, influenced, or impeded an official proceeding, or attempted to do so." Similarly, Instruction No. 35 should state: "As just noted, the first element the government must prove beyond a reasonable doubt is that the defendant obstructed, influenced or impeded an official proceeding, or attempted to do so." Instruction No. 38 should state: "With respect to Count 3, the obstruction of justice count, you have to consider whether the official proceeding alleged to have been obstructed or attempted to be obstructed . . . ."

[18] The Court relied upon several other cases, which likewise held that identifying a "grand jury proceeding" or "grand jury investigation" was sufficient and no additional instruction was needed. See id. (quoting United States v. Smith, 831 F.3d 1207, 1215 (9th Cir. 2016) ("There was no need for the district court to give an additional instruction proposed by the [defendants] which stated that it was insufficient for the Government to show that they obstructed an FBI investigation, as opposed to a grand jury investigation.") and United States v. Monus, 128 F.3d 376, 390 (6th Cir. 1997) (rejecting argument that jury instruction was erroneous because it failed to state that "it is not enough for the government to prove that the defendant knew an investigation was being conducted by the FBI or IRS" and finding that instruction that only referenced "Grand Jury proceedings" was sufficient)).

the government's proposed jury instructions, an instruction on the term "corruptly" should include the following language:

> A defendant does not need to know with certainty that his conduct would affect judicial proceedings, nor does this conduct need to actually obstruct justice. Instead, the defendant's conduct must only have the natural and probable effect of interfering with the due administration of justice.
>
> The 'due administration of justice' refers to the fair, impartial, uncorrupted and unimpeded investigation, prosecution, disposition or trial of any matter, civil or criminal, in the courts of the United States. It includes every step in a matter or proceeding in the federal courts to assure the just consideration and determination of the rights of parties, whether Government or individual. Thus, the due administration of justice includes, but is not limited to, a federal grand jury investigation or a federal prosecution and criminal trial.

Gov't Charge, Request No. 9 (adapted from the jury charges of the Hon. Dora L. Irizarry in <u>United States v. Sampson</u>, No. 13-CR-269 (E.D.N.Y.) and the jury charges of the Hon. Joan M. Azrack in <u>United States v. McPartland</u>, No. 17-CR-587 (E.D.N.Y.)).

Lastly, as previously discussed, the defendants continue to weave instructions on venue throughout their instructions on each of the crimes charged, which risks confusing the jury as to whether venue is an element of the offenses charged (which it is not) and the standard to be applied.[19]

I.   <u>Defense Instruction Nos. 39-47 (False Statements)</u> ***(Revised Objections)***

The government respectfully requests that the Court adopt the government's proposed instructions regarding materially false statements, because the charge is more consistent with charges ordinarily given in this Circuit. <u>See</u> Gov't Charge, Request No. 10.

The defendants' instructions contain omissions and are legally inaccurate. For example, the defendants' instructions omit the fact that, under the law, "[i]t is not necessary for the Government to prove that the defendant had actual knowledge that any false statement was to be utilized in a matter that was within the jurisdiction of the Government of the United States." <u>See, e.g.</u>, Gov't Charge, Request No. 10.

Additionally, Defense Instruction No. 42 claims that a statement is material if it "is reasonably likely to influence the government in making a determination the entity must make." This is not the legal standard. The standard, as reflected in the government's instruction and past

---

[19] Indeed, Defense Instruction No. 38 refers to venue as the "fourth element" of the crime. But "venue is not an element of a crime." <u>Woolaston</u>, 2022 WL 905404 at *1.

instructions given in this Circuit, is that a statement is material if is "capable of influencing the Government's decision or activities." See, e.g. Gov't Charge, Ex. 7 at 63-67 (charges in United States v. Sampson, No. 13-CR-269 (DLI)); Ex. 9 at 7-10 (charges in United States v. Khan, 18-CR-195 (JAM)); see also United States v. Reyes-Batista, 844 F. App'x 404, 410 (2d Cir. 2021) ("Under § 1001, a statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it [is] addressed.'") (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)). The defendants' decision to replace "capable of" with "likely to" appears to be an attempt to improperly heighten the burden of proof. The use of this inaccurate instruction is particularly concerning since the legal citation the defendants quote in support expressly indicates that the standard is "capable of influencing." See Defs. Revised Charge at 65 n.43 (quoting United Sates v. Rigas, 490 F.3d 208 (2d Cir. 2007)).

Defense Instruction No. 42 was revised to include new proposed language, which would instruct the jury that "If the government took no meaningful action following the alleged false statement, that is evidence that you may consider in determining that the statement was not material." Defs. Revised Charge at 65. Similar to the defendants' attempt to alter the definition of materiality from "capable of" to "reasonably likely to," this instruction runs counter to the well-settled law on what is sufficient to show materiality. Because the government need only prove that the false statements were "capable of influencing the Government's decision or activities," whether the statements in fact did or did not actually influence a decision is not determinative. Notably, the defendants do not cite a single jury instruction in this district to use the language that they propose. The cases the defendants cite also do not support this instruction, as they largely involve cases where the court held that the conduct was simply incapable of influencing a government decision, and often related to other offenses than the material false statement statute. See, e.g., United States v. Litvak, 808 F.3d 160, 172 (2d Cir. 2015) (concluding that statements were not material because the decision-making body, the Department of Treasury, had no decision-making authority that could have been influenced by defendant's statement); United States v. Rigas, 490 F.3d 208 (2d Cir. 2007) (in bank fraud case, certain statements were immaterial because no evidence that they could have influenced the bank's decisions).

Defense Instruction No. 43 is problematic for several reasons. First, the defendants ask the Court to instruct the jury that "a literally true statement, even if it is misleading or incomplete, is not false, fictitious, or fraudulent within the meaning of the statute." This is not legally accurate and would mislead the jury. See United States v. Sampson, 898 F.3d 287, 306 n.14 (2d Cir. 2018) (explaining that the Circuit has only indicated in dicta that literal truth may be a defense to a false statement offense under 18 U.S.C. § 1001). As the court in Sampson explained, a statement that may be a "literally true" statement in isolation may actually be misleading or false in the context of the question and surrounding circumstances. Id. at 306-07 ("If, in the context in which the statements were made, they were materially untrue, then [a violation] is established. This is so even if the statements could be literally true in isolation.") (quoting United States v. Shafrick, 871 F.2d 300, 304 (2d Cir. 1989)). Notably, the Sand treatise does not propose any such "literal truth" instruction and notes the Second Circuit's view that statements that may be literally true can still be viewed as false in context and support a conviction. See Sand, Comment to Instruction No. 36-5 ("a literally truthful statement can still be a violation of the statute") (citing Sampson).

Defense Instruction No. 43 also contains a lengthy instruction about "fundamentally ambiguous" questions. This is improper. Whether or not a question is "fundamentally ambiguous" is a matter of law to be decided by the Court. See United States v. Lighte, 782 F.2d 367, 375 (2d Cir. 1986) ("When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction.") (emphasis added); United States v. Markiewicz, 978 F.2d 786, 808 (2d Cir. 1992) ("Although it is the province of the jury to determine whether a witness believed that the testimony she gave in response to a particular question was false . . . we may reverse a jury's verdict of perjury if we determine that a line of questioning is so fundamentally ambiguous that the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction.") (internal citations and quotation marks omitted).[20] The defendants' instruction is thus an improper attempt to have jurors decide a question of law. This portion of the instruction should be rejected in its entirety.[21]

Finally, Defense Instruction No. 43 also includes confusing language about the burden of proof. There is no need to include such language since, as discussed above, the Court's usual instruction on the burden of proof is sufficient and less confusing.

The defendant's instructions regarding materially false statements also contain instructions about venue, and refer to it as an element. See Defense Instruction No. 45. As discussed above, venue should be instructed in a separate charge to avoid confusing or misleading the jury about the law.

J.      Defense Instruction No. 48 (First Amendment)

The defendants' proposed First Amendment "Cautionary Instruction" is inappropriate. This Court rejected multiple First Amendment challenges raised by the defendants in their motions to dismiss. See MTD Order at 10-11, 11 n.6 (rejecting arguments that Section 951 was overbroad, unduly burdens political speech, constitutes speaker-based discrimination or is an unconstitutional prior restraint). As the Court further explained in that decision, "Section 951 regulates conduct, that is, *acting* as a foreign agent," id. (emphasis in original),[22] and therefore does not encroach upon the First Amendment.

---

[20] Notably, the defendants cite Lighte but fail to quote the portion that indicates this is a question of law, not of fact.

[21] The defendants have failed to identify any even partly ambiguous questions. To the extent they do so, the Court should, at most, include the optional instruction recommended by the Sand treatise about ambiguity. See Sand, Instruction 36-12 ("If [the government's question] was ambiguous, so that it reasonably could be interpreted in several ways, then the government must prove that defendant's answer was false under any reasonable interpretation of the question.").

[22] See also United States v. Duran, 596 F.3d 1283, 1292 (11th. Cir. 2010) ("[W]hether a defendant must [provide notice] under § 951 depend on the defendant's action and conduct as an agent of a foreign government") (emphasis in original); United States v. Latchin, 554 F.3d 709,

27

The defendants' only support for including this instruction is the claim that other courts have "given similar instructions." See Def. Charge at 16 n. 29. This is disingenuous. The defendants cite United States v. Turner, a case in which the defendant, a political radio show host and blogger, was charged with making threats against judges. See 720 F.3d 411, 418 (2d Cir. 2013). Cases involving criminal threats—i.e. charging a defendant expressly because of the content of their speech—directly target speech and thus implicate First Amendment concerns. Juries are required in threat cases to specifically consider whether the speech is itself a criminal act based on whether such speech constitutes a "true threat." Such cases thus require instruction on certain First Amendment principles. See id. at 425-27 (affirming "true threat" instruction that discusses First Amendment in context whether defendant's statements were a "threat as I have defined the term"). As the defendants are well-aware, no such issue exists in this case because the statute bars conduct (without notification), not speech, notwithstanding that speech may fall within the reach of the statute. See MTD Order at 10-11.

The implication that a First Amendment instruction is necessary because the case touches upon government and politics is similarly misplaced. Courts in this District and Circuit, including this Court, have conducted many trials involving emotionally-charged issues, politically sensitive facts and polarizing conduct. That is why this Court, and most others in this District, instruct a jury that it should not base its verdict on bias, prejudice, or sympathy. See Gov't Charge, Request No. 1 (Requesting the Court's usual instructions on "No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited"). The Court's usual instruction is more than adequate to ensure that the jurors base any verdict on the facts and law, and not on political views.

K.    Defense Instruction No. 48 (Theory of the Defense)

The defendants request an instruction on their theory of the case, but have indicated that they will file such a proposed instruction at a later date. The government reserves its right to object to any such filing.

L.    Missing Instructions

The defendants' proposed instructions also omit several important instructions. See, e.g., Gov't Charge, Request No. 6 (Co-Conspirator Liability), Request No. 35 (Co-Conspirator Acts and Statements); Request No. 15 (Expert Witnesses); Request No. 22 (Particular Investigative Techniques Not Required); Request No. 23 (Evidence Lawfully Obtained). The government respectfully requests that the Court instruct the jury on these issues as described in the Government's Request to Charge.

---

715 (7th Cir. 2009) (Section 951 "requires *acts* as an agent on behalf of a foreign country") (emphasis in original).

III.    <u>The Defendant's Proposed Deliberation Instructions</u>

        The government respectfully submits that the Court's usual instructions regarding deliberations are appropriate.  <u>See</u> <u>Guzman Charge</u> at 7037-41; <u>Farekh Charge</u> at 1647-51.

IV.    <u>Conclusion</u>

        For the foregoing reasons, the Court should reject the defendants' proposed instructions because they would cause confusion and invite legal error, and instead adopt the governments' proposed instructions.


Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
       Ryan C. Harris
       Samuel P. Nitze
       Hiral D. Mehta
       Craig R. Heeren
       Assistant U.S. Attorneys
       (718) 254-7000

       MATTHEW G. OLSEN
       Assistant Attorney General
       Department of Justice
       National Security Division

By:     /s/
       Matthew J. McKenzie
       Trial Attorney

Enclosures

cc:    Clerk of the Court (by email)
      Counsel of Record (by ECF)