

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH/MM  *271 Cadman Plaza East*
F. #2018R001309  *Brooklyn, New York 11201*

October 7, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Thomas J. Barrack and Matthew Grimes
              Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

      The government respectfully requests that the Court conduct an in camera inspection of a small subset of documents (50 documents out of more than 1,400 withheld) that are responsive to the government's Rule 17 subpoena to fact witness Alison Marckstadt but that Marckstadt claims are privileged. See Exhibit A (list of documents for Court review).[1] Counsel for Marckstadt has advised the government that they will not provide the documents to the Court without an order. Given that trial is well underway, and the need to resolve this issue, the government respectfully requests that the Court order counsel to provide the documents to the Court forthwith for in camera review

      The documents addressed herein do not appear to be privileged based on the limited information provided in the privilege log because (1) they are communications between, or documents created by, non-lawyers that do not appear to seek or contain legal advice; (2) they were created during the indictment period, before Marckstadt was hired as a purported consultant for defendant Thomas Barrack's legal team; and/or (3) they were created after the date on which, according to representations by Barrack's counsel, Marckstadt's consultant relationship was terminated. Because the government seeks review of only a sampling of materials withheld on the basis of privilege (in recognition that this is just one among many issues before the Court during an ongoing trial), the government further requests that, in the event the Court determines that documents contained in the subset presented here are not privileged, the Court order counsel for Marckstadt to disclose to the government forthwith any similarly situated documents. The government also respectfully requests that the Court inspect the underlying privilege log, and order Marckstadt to produce a more specific and legally adequate log to replace the vague and broad privilege log produced to the government. See Exhibit B (Marckstadt Privilege Log).

---

[1] Exhibit A includes the information provided about each document by Marckstadt from her privilege log.

I.   Background

As the Court is aware, during the time period of the indictment in this case, Marckstadt was an executive assistant for defendant Thomas Barrack at Colony Capital, worked with defendant Matthew Grimes, and played important roles in several events directly relevant to the facts of the criminal case. Shortly after the defendants were indicted, Barrack's attorneys retained Marckstadt "as a consultant for the legal defense team." Marckstadt Mot. to Quash, at 1 (ECF No. 186-1). In January 2022, the government sought to interview Marckstadt. On March 31, 2022, approximately a week prior to the scheduled interview, counsel for Barrack contacted the government, noted that they were aware that the government was scheduled to interview Marckstadt the following week, and indicated that they would no longer continue to engage Marckstadt as a consultant for the legal defense team. On May 17, 2022, Barrack's counsel similarly advised the Court, in a publicly filed letter, that they "discontinued the consulting engagement" with Marckstadt after the government's interview request, and that they "ended the retention." See Def. Letter to Court, dated May 17, 2022 (ECF No. 106) (attached as Exhibit B). In her motion to quash, Marckstadt states that she was "retained as a consultant to Mr. Barrack's legal team from August 2021 until April 2022." Marckstadt Mot. to Quash at 1. Counsel for Barrack also indicated that they would consider calling Marckstadt as a witness at trial in Barrack's defense. See Def. Thomas J. Barrack's, Jr.'s Initial Witness List at 1 n.1 (indicating that Barrack reserves the right to call "any witness on the government's witness list.").

On August 1, 2022, the government issued a trial subpoena to Marckstadt for her testimony, and for certain documents and records. After discussions with counsel, the government agreed to revise the subpoena and issued a new subpoena on August 30, 2022 (the "Marckstadt Subpoena") for a narrower set of records. Following a motion to quash filed by Marckstadt, on September 13, 2022, the Court ordered that Marckstadt comply with portions of the Rule 17 Subpoena issued by the government. See Rule 17 Order, ECF No. 214. With regard to potentially privileged materials, the Court directed that Marckstadt produce a privilege log and that, "if Marckstadt's privilege log is too vague or broad, the Government can challenge it, and the Court will evaluate the privilege log after conducting an in camera review of the withheld documents." Id. at 2.

On September 30, 2022, more than 2 weeks after the Court's order and 11 days after the start of trial, Marckstadt completed her production in response to the Rule 17 Subpoena, which contained more than 8,000 pages of documents.[2] Marckstadt produced a privilege log that indicates she is withholding more than 1,400 documents on the ground that they are privileged. See Marckstadt Privilege Log, attached as Exhibit A.

---

[2] As the Court is aware, the government issued a grand jury subpoena in 2019 to Marckstadt, but withdrew the subpoena when counsel for Marckstadt (who was also counsel for defendant Thomas Barrack) requested the opportunity to voluntarily provide the requested materials. Marckstadt produced only 88 pages of records. Her recent voluminous production of nearly 100 times the number of pages of documents than what she produced in 2019, when not legally compelled to do so, and her decision to withhold even more, is notable and surprising.

II. <u>Applicable Law</u>

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." <u>In re Cnty. of Erie</u>, 473 F.3d 413, 418 (2d Cir.2007) (citing <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir.1996)). The attorney-client privilege "exists for the purpose of encouraging full and truthful communications between an attorney and his client and 'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" <u>In re von Bulow</u>, 828 F.2d at 100 (citing <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981)). It is the burden of the proponent of the privilege to establish its applicability, and courts should construe assertions of privilege narrowly, sustaining the privilege "only where necessary to achieve its purpose." <u>See</u> <u>Erie</u>, 473 F.3d at 418 (citing <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976); <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000)). To substantiate a claim of attorney-client privilege, the proponent must establish three elements: "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." <u>See</u> <u>Erie</u>, 473 F.3d at 419 (citing <u>Constr. Prods. Research</u>, 73 F.3d at 473). For the attorney-client privilege to apply, "the predominant purpose" of the communication must be "to render or solicit legal advice." <u>Erie</u>, 473 F.3d at 420 (citing <u>United States v. Int'l Bus. Machs. Corp.</u>, 66 F.R.D. 206, 212 (S.D.N.Y.1974)); <u>see also id.</u> at 421.

To invoke a work product privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation. <u>See</u> <u>United States v. Constr. Prod. Rsch., Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996) (citations omitted). It is settled law that the work-product protection "generally applies only to materials prepared by an attorney or his or her agent," and not to the underlying facts or materials themselves. <u>See</u> <u>United States v. Bergstein</u>, 2017 WL 4535944, at *2 (S.D.N.Y. Oct. 10, 2017) ("To that end, 'the word "obtain" as it appears in several cases concerning the work product doctrine . . . has never been used to suggest that merely by gathering pre-existing materials, . . . an attorney transforms them into work product.'") (quoting <u>In re Grand Jury Subpoenas Dated Mar. 19 & Aug. 2, 2002</u>, No. M 11-189, 2002 WL 31040322, at *5 (S.D.N.Y. Sept. 12, 2002), aff'd, 318 F.3d 379 (2d Cir. 2003)); <u>see also</u> <u>In re Grand Jury Subpoenas Dated Mar. 19 & Aug. 2, 2002</u>, 318 F.3d 379, 384-85 (2d Cir. 2003) (noting that the limited "selection and compilation" exception is only applied narrowly, such as "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be," and holding that "the party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents") (internal quotations and citations omitted).

The Second Circuit has held that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." <u>United States v. Ackert</u>, 169 F.3d 136, 139 (2d Cir. 1999) (citations omitted). Rather, the third party's involvement must be "to improve the comprehension of the communications between attorney and client." <u>Id.</u> (attorney-

3

client privilege was waived where the third party, an investment banker, was not acting "as a translator or interpreter of client communications"). In this vein, courts have repeatedly rejected claims of privilege over nonlegal advice regarding communications and public relations strategy. See In re Allergan plc Sec. Litig., No. 18-CIV-12089 (CMG), 2021 WL 4121300, at *5 (S.D.N.Y. Sept. 9, 2021) (denying claim of privilege where communication's "primary purpose . . . is clearly to craft a response to the upcoming news story about [the company], not to seek or provide legal advice"); Haugh v. Schroder Inv. Mgmt. N. Am. Inc., No. 02-CV-7955 (DLC), 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (no privilege over attorneys' communications with public relations consultant, because "[a] media campaign is not a litigation strategy. Some attorneys may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice."); McNamee v. Clemens, No. 09 CV 1647 (SJ), 2013 WL 6572899, at *6 (E.D.N.Y. Sept. 18, 2013) (applying New York law and holding that privilege did not apply to communications between client and public relations firm retained by counsel, because "the majority of the communications . . . facilitated the development of a public relations campaign and media strategy primarily aimed at protecting [the client's] reputation"); compare with In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness, 265 F. Supp. 2d 321 (S.D.N.Y. 2003) (privilege applied to certain of client's communications with public relations firm that was hired by counsel specifically to create an environment in which prosecutors would be less likely to indict client).

To facilitate its determination of privilege, a court may require "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." Constr. Prod. Rsch., Inc., 73 F.3d at 473 (citations omitted). The privilege log should:

> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

Id. (citation omitted); see also von Bulow, 811 F.2d at 146; In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224–25 (2d Cir.1984).

III. The Court Should Conduct an In Camera Review of Select Documents That Do Not Appear to Be Privileged

As discussed further below, the Marckstadt Privilege Log provides very little information about the documents that have been withheld and thus is unreasonably vague and broad. The government has been able to determine, however, the following:

1. More than 300 withheld documents were created during or before 2016 through 2018, i.e. the period of the criminal conduct in this case or earlier. It is also the period before Marckstadt was hired to be a consultant for Barrack's legal defense team, and instead was when she was operating as an executive assistant.

2. An additional 300 withheld documents were created after counsel for Barrack affirmatively stated that their relationship with Marckstadt was terminated, and she was no longer operating as a part of the legal defense team. It also contains records created after counsel for Barrack affirmatively indicated that Marckstadt was a potential trial witness. Claims of privilege made after the Court was told that Marckstadt was no longer employed by the legal team should be viewed with skepticism. This is particularly the case for the many documents that reflect communications between Marckstadt (a known fact witness by this point) and defendant Barrack (who was specifically advised in a Curcio proceeding of Marckstadt's status as a fact witness).

3. Numerous withheld communications, including during the two time periods discussed above, are between non-lawyers. For example, there are a large number of communications where the only persons involved are Marckstadt and Barrack, or Marckstadt and another former employee from Colony Capital.

4. Many documents appear to have been withheld not because they are themselves privileged, but because they are attached to privileged communications. The government has advised counsel for Marckstadt that the law provides that they should provide these underlying non-privileged communications (in a manner that would not reveal whatever "mental impressions" are reflected in their collection and connection to the privileged parent), but counsel has declined to provide those records.

Based on the above, the government concludes that a substantial number of documents from these two time periods, where no lawyers are involved in the communication, are unlikely to reflect communications "made for the purpose of obtaining or providing legal assistance" or products "prepared principally or exclusively to assist in anticipated or ongoing litigation." Mindful of the Court's schedule given the ongoing trial, the government, at this time, seeks in camera review of a relatively small subset of documents on the privilege log. The government has selected 50 records based on the above factors: (1) they are from a time period when any privileged relationship is unlikely to have existed between Marckstadt and anyone else; (2) they involve records that do not (according to the privilege log) involve attorneys in any fashion and (3) they include certain underlying records that apparently were withheld only because they are attached to a privileged "parent."

A spreadsheet of the particular documents requested to be reviewed is attached hereto as Exhibit A and has requested that counsel for Marckstadt turn over these documents to the Court forthwith. As noted above, counsel for Marckstadt has advised that they will provide these documents upon order of the Court, and therefore the government requests such an order as

soon as possible.[3]  The government requests that the Court order the production of any documents it determines are non-privileged.  Because this is only a sampling of materials, the government further requests that upon identifying non-privileged documents, the Court order counsel for Marckstadt to disclose any other similarly situated documents forthwith to the government.

IV.     The Court Should Order Marckstadt to Prepare a Revised Privilege Log

The government respectfully requests that the Court also review the Marckstadt Privilege Log, and order that a more appropriate, complete, and specific log be filed with the government.  The Marckstadt Privilege Log is vague and overbroad, and fails to comply with Second Circuit precedent, in that it fails to "provid[] sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure."  See Constr. Prod. Rsch., Inc., 73 F.3d at 473.

First, the privilege log withholds hundreds of documents without identifying any information about the document, such as its author, and makes only a cursory claim of privilege.  For example, AM-0002229 to AM-0002234 is a series of four documents that apparently were attached to an email from Marckstadt to several attorneys for Barrack, and another non-attorney third party.  The log simply states that each of these four items are "Documents," that they are "providing information for the purpose of obtaining legal advice of counsel," are "reflecting work product of counsel," and relate to "advising on criminal proceedings."  There is no indication of who authored any of these documents or, beyond the previously described cursory information, what they generally relate to or why they are privileged (beyond being attached to a communication that includes several attorneys).  A document generally does not become privileged merely through its attachment to or association with a document that is privileged.  Rather, each attachment must have its own independent basis for privilege (again, the government does not seek to know which documents, as a group, were selected by or for an attorney, which arguably could implicate work product protections).  See, e.g., Bergstein, 2017 WL 4535944, at *2 (observing that work product doctrine does not mean that "merely by gathering pre-existing materials an attorney transforms them into work product") (cleaned up); In re Grand Jury Subpoenas Dated Mar. 19 & Aug. 2, 2002, 318 F.3d at 384-85 (holding that "the party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents") (cleaned up).

Second, there are numerous documents involving third-party public relations professionals whose presence could vitiate the privilege.  For example, numerous communications involve, among others, Tommy Davis and Owen Blicksilver, both public relations professionals.

---

[3] The government previously advised counsel for Marckstadt, on September 27, 2022, while their production was still ongoing, that they should be prepared for the fact that the government may quickly seek an in camera review of certain documents.  The government advised counsel for Marckstadt earlier today that they should provide the Court with copies of these records immediately; counsel for Marckstadt has advised that they will provide documents upon Court order.

If those communications are about a public relations campaign or about Barrack's reputation or do not contain legal advice, they are not privileged and should be turned over to the government.

Accordingly, the Court should find that this privilege log is insufficient, and order counsel for Marckstadt to provide an appropriately specific basis justifying the claims of privilege, or otherwise turn over the documents.

V.  Conclusion

Accordingly, for the forgoing reasons, the government respectfully requests that the Court (1) review in camera the sample set of withheld documents and order immediate disclosure of any documents the Court determines are not privileged; (2) order Marckstadt to turn over other similarly situated withheld documents; and (3) order that Marckstadt revise and re-submit the Marckstadt Privilege Log to permit the government a meaningfully opportunity to assess whether the remaining documents are properly withheld.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By: /s/
Matthew J. McKenzie
Trial Attorney

Enclosures
cc: Clerk of the Court (by email)
    Counsel of Record (by ECF)