

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH  *271 Cadman Plaza East*
F. #2018R01309  *Brooklyn, New York 11201*

October 8, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas Joseph Barrack, et al.
     Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

  The government respectfully submits this motion to admit limited testimony and related exhibits regarding the requirements, mechanics, and consequences of the notification required by 18 U.S.C. § 951, including when that notification is satisfied by registration under the Foreign Agent Registration Act ("FARA"), 22 U.S.C. § 611 et seq. The testimony and documentary evidence addressed herein are highly relevant to contested points in this case and pose minimal, if any, risk of undue prejudice under the balancing test set forth in Federal Rule of Evidence 403. Accordingly, and for the reasons discussed below, the Court should grant the government's motion.

  I. Relevant Background and Overview of the Proposed Testimony and Documentary Evidence

  No one, other than diplomatic, consular officers, or attachés, may act as an agent of a foreign government in the United States without prior notice to the Attorney General. See 18 U.S.C. § 951(a). For agents other than those engaged in law enforcement or judicial investigations, the National Security Division has been delegated the responsibility of receiving notifications made pursuant to Section 951. 28 C.F.R. § 73.3(a). The notification requirement of Section 951 also may be satisfied by the filing of a proper registration pursuant to FARA. 28 C.F.R. § 73(e). In fact, filing of a proper registration pursuant to FARA is far and away the most common method of satisfying the notification requirement of Section 951.

  During its case in chief, the government intends to call Heather Hunt, Senior Counsel of the FARA Unit in the Department of Justice's National Security Division, to provide testimony about, among other things: (1) the mechanisms by which Section 951 notification can be made, including by FARA registration, and a review of the forms required to be completed to satisfy the Section 951 notification requirement via FARA registration or otherwise; and (2) the

dissemination of information contained in the notice provided by foreign agents to the National Security Division, including via FARA registration.[1]

The FARA Unit is responsible for, among other things, the administration of FARA, including the maintenance and dissemination of registration paperwork submitted pursuant to the Act, including registrations that satisfy the notification requirement set forth in Section 951. See 28 C.F.R. § 73.3(e) (providing that notification required by Section 951 is effective only if provided in compliance with applicable regulations or "if the agent has filed a registration under the Foreign Agents Registration Act" providing the required information). The publicly available FARA database is replete with agents of foreign governments who have provided notice to the Attorney General of political influence activities in the United States, which satisfies Section 951's notification requirement. Ms. Hunt will not be asked to provide details on direct examination about the number or nature of such registrants or registrations. Rather, the government intends to elicit testimony from Ms. Hunt about the information required to be provided by agents acting at the direction of foreign governments where they satisfy the notification requirement of Section 951 via FARA registration, the form in which that information is provided, and the fact that such information is disseminated to the Department of State, Congress, and, through the public website, the American public.[2]

Ms. Hunt also is expected to testify that, in the event a person provides notice to the National Security Division via a means other than FARA registration that they are acting as an agent of a foreign government for conduct covered by FARA (e.g., political influence activities), that information would be disseminated to the FARA Unit and the person would be directed to separately register under FARA.

II. The Proposed Evidence is Relevant and Admissible at Trial

The proposed testimony and related exhibits are relevant to important, contested issues at trial and pose minimal, if any, risk of unfair prejudice.

A. The Defendants' Arguments Regarding Lobbying for Foreign Governments Require Admission of the Proffered Evidence

First, Barrack has placed at the center of his case the notion that, as Mr. Schachter framed it in his opening statement, the evidence will show Barrack "engaging in, literally, the most meaningless, most inconsequential acts that you can imagine." Tr. at 386:12-14. Moreover,

---

[1] Ms. Hunt also is expected to testify that neither the defendants nor Rashid Al Malik provided notice to the Attorney General of their agreement to act on behalf of the UAE (or any other government) pursuant to Section 951, including via FARA registration.

[2] Relatedly, the government intends to introduce into evidence through Ms. Hunt blank FARA registration forms that are completed by persons satisfying the notification requirement of Section 951 via FARA registration. The proposed exhibits, all publicly available on the FARA website, are marked Government Exhibits 1081 through 1086 and are attached hereto, collectively, as Exhibit A.

counsel for both defendants have argued that this case is simply about a missing form or letter. Mr. Schachter told the jury that Barrack is accused of being a foreign agent "without faxing a one-page notice to the Attorney General," that "[t]he Government allows people to be an agent for a foreign country," and that "[y]ou can be a lobbyist advocating for the interest of a foreign country; hundreds, maybe thousands, of people in the Untied States do that.  You just need to submit this one-page form."  Tr. 412:25 – 413:10.  Mr. Lowell told the jurors that the case is about Grimes failing to file "a simple letter with the Justice Department."  Tr. 441:5.  He stated that "[d]ozens of countries have such people as lobbyists, PR specialists working in the United States, as we in the United States have people doing the exact same thing in foreign countries abroad."  Tr. at 441:10-14.  Mr. Lowell argued further:

> But all that notice requires is to send or fax – who faxes, by the way, anymore? – a simple letter to the Justice Department that provides your name, the identity of the foreign government, and includes a brief description of the activities to be covered.  It costs nothing.

Tr. 445:22-446:4

The clear intention of these arguments was to suggest that the defendants' conduct was insignificant and that, in any event, all of it would have been fine had they just sent over a one-page form, as many others have done who lobby on behalf of foreign governments.  Ho hum, nothing to see here, this is, at most, a paperwork case.  Every element of that argument is wrong, as the government will explain to the jury at the close of the case, but the government focuses here on the defendants' repeated references to lobbying and the one-page form.

The jury cannot be left with the misimpression that, with respect to notification under Section 951, all that is required of those who lobby on behalf of foreign governments, which Mr. Schachter has (correctly) informed them thousands do, is the faxing of a single-page, bare-bones document.  The jury must be permitted to evaluate the evidence, including the significance (or insignificance, as the defense would have it) of the conduct at issue, including the failure to notify, in light of the relevant context.  That context includes the fact that those who engage in political influence activities on behalf of foreign governments must provide detailed information about, among other things, the nature of their advocacy, the identities of their principals overseas, and the contents of the informational materials, if any, they intend to disseminate.  The jurors must understand the agent's obligation to update its registration filings every six months.  The jurors must further understand that all of this information is provided to the Secretary of State, Congress, and the American people.  As a practical matter, this dissemination occurs regardless of whether an agent required to notify under Section 951 satisfies that requirement through a letter, fax, or telex to the Attorney General, see 28 C.F.R. § 73.3(a), or via FARA registration, see 28 C.F.R. § 73.3(e).  This so because, as Ms. Hunt is expected to testify, the FARA Unit would require registration by an agent who provided notice pursuant to 28 C.F.R. § 73.3(e) of political influence activity undertaken in the United States at the direction of a foreign government.

This factual context is significant both because the regulatory framework at issue highlights the importance placed on understanding who is engaging in political influence activities on U.S. soil on behalf of foreign governments and also because, the government will argue, there

would have been real downstream effects of adequate notice, including limitations on Barrack's and Grimes's ability to secure the same level of access to national medial platforms and to officials at the highest levels of the United States government.

### B. The Defendants' Arguments Regarding the Legal Commercial Transaction Defense Heighten the Relevance of the Proffered Evidence

The probative value of the proffered evidence is heightened by the defendants' clear intention to argue that their conduct was really just about business and, in particular, that their conduct fell within the statutory carve-out – an affirmative defense – for "legal commercial transaction[s]". 18 U.S.C. § 951(d)(4). For example (there are many), Mr. Lowell informed the jury during his opening statement that the law:

> exempts what is called a legal commercial transaction, which we will want you, at the end of the case, to consider from what you hear in the evidence, which means any exchange, transfer, purchase sale of any commodity of any kind, including information, intellectual property not prohibited by federal or state legislation, et cetera. And you already heard the enormous amount of evidence you are going to hear about what Colony Capital was, a firm that sought the funds to invest for their clients. We will want you to keep that in mind.

Tr. 446:24 – 447:8. During cross-examination of expert witness Dr. Christopher Davidson, Mr. Lowell asked, in connection with Dr. Davidson's testimony regarding "soft power": "And in that way, it would be fair in your lexicon to call those kinds of soft-power investments commercial transactions. Would that be accurate?" Tr. 663:12-14. During his cross-examination of FBI Forensic Examiner Victoria Tenpenny, Barrack's counsel, referencing Government Exhibit 542 (a photograph of a whiteboard showing various figures and charts), asked, "Am I correct that what is depicted here appears to be some sort of commercial transaction?," to which Tenpenny responded, "I have no idea." Tr. 884:21-23.

Whether or not the defendants carry their burden of establishing that an affirmative defense instruction is appropriate – the government expects that they will not – the defendants will doubtless (continue to) argue that business-related aspects of their conduct suggest that they were acting lawfully. The arguments clearly suggest, as all but expressly stated by Mr. Schachter in his opening statement, that the jury should not care about the charged conduct. Having argued to the jury that the charged conduct constituted a lawful commercial transaction, that the acts were "literally, the most meaningless, most inconsequential acts that you can imagine," and that the charges "are nothing short of ridiculous," the government is entitled to ensure that the jury weighs the relevant facts with an appropriate understanding that engaging in political influence activity without registering under FARA is unlawful (regardless of knowledge of the statute), and that the (multi-page) forms required to be submitted serve a real and important purpose, including with respect to the information gathered and its dissemination to the Secretary of State, Congress, and the American people. In this connection, Ms. Hunt's testimony will briefly explain the sorts of conduct that fall within the registration requirements by reference to the forms that registrants are required to submit.

\* \* \*

The government respectfully submits that the limited testimony and related exhibits addressed herein would be admissible even absent the above-quoted arguments and factual assertions advanced during the defendants' opening statements; the proffered evidence is all the more relevant now that the door has been opened so wide. Cf. United States v. Bari, 750 F.2d 1169, 1180 (2d Cir. 1984) (affirming admission of evidence of prior escape attempt where defense opening statement suggested that defendant's injuries rendered charged attempted escape improbable, thus opening door and "permitting the government to rebut this argument in its case-in-chief"); United States v. Chervin, No. 10 CR 918 RPP, 2013 WL 124270, at *6 (S.D.N.Y. Jan. 10, 2013) (permitting introduction of prior conviction evidence after "the Defense opened the door: Defendant's counsel first raised the Defendant's prior conviction in its opening statement").

### C. The Proffered Testimony and Exhibits Present Minimal, if Any, Risk of Unfair Prejudice

The proffered testimony and related exhibits present minimal, if any, risk of unfair prejudice or jury confusion, particularly since the forms are not difficult to understand and contain no inflammatory information. The government emphasizes that it does not intend to elicit testimony regarding the availability of criminal prosecution for FARA violations, or regarding the mens rea (or any other) element of civil or criminal liability under FARA. Rather, the testimony will orient the jury to the nature of the information that must be provided to the government, and to the American people, by agents engaging in political influence activities on U.S. soil at the direction of a foreign government and add facts necessary to complete the highly misleading picture painted by defense references to meaningless conduct and single-page faxes.

Notably, in United States v. Rafiekian, 18-CR-457 (AJT) (E.D. Va. 2019), the Court permitted a witness employed by the FARA Unit to introduce the same blank forms the government seeks to introduce here, along with basic testimony regarding the information required by the forms. The Court permitted the testimony after limiting its scope to avoid testimony about the broader requirements of the FARA framework.[3] See Tr. (attached hereto as Exhibit B). The government seeks to do much the same here.

---

[3] In Rafiekian, the defendant was charged with a substantive Section 951 violation and with conspiring both to violate 951 and to make false statements in a FARA filing. See Rafiekian, 991 F.3d at 536. Notwithstanding the FARA-related charge, the testimony referenced herein was introduced for much the same purpose. With respect to the FARA-related object of the charged conspiracy, the government introduced the filled-out forms that contained the allegedly false information.

III.  Conclusion

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:  /s/
Matthew J. McKenzie
Trial Attorney

cc:  Counsel for Thomas Joseph Barrack (by ECF)
Counsel for Matthew Grimes (by ECF)