**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 10, 2022

*VIA ECF*

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: United States v. Thomas Barrack, et al., 1:21-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

Defendants Thomas Barrack and Matthew Grimes respectfully submit this response in opposition to the Government's motion to admit certain testimony about the registration requirements necessary to satisfy the Foreign Agent Registration Act ("FARA"), 22 U.S.C. § 611 *et seq.*, through its witness, Heather Hunt. (Dkt. 298.) The testimony that the Government seeks to elicit from Ms. Hunt is irrelevant to a Section 951 charge, and thereby runs the risk of confusing the jury, with no probative value with regard to the actual charges in this case, and would unfairly prejudice the defendants by implying that they are also guilty of violating FARA, a crime with which they are not charged. For these reasons, the Government should be precluded from eliciting such testimony from Ms. Hunt during her direct examination. *See* Fed. R. Evid. 401, 403, and 404(b)(3).

**I.   Completing a FARA Registration Is Not Necessary to Satisfy 18 U.S.C. § 951's Notice Requirement**

The Government *concedes* that completion of FARA registration is unnecessary to satisfying Section 951's notice requirement, but nevertheless seeks admission of FARA evidence without any coherent justification. (Dkt. 298 at 1) (observing that only one of the multiple "mechanisms by which Section 951 notification can be made, includ[es] by FARA registration."). The Government's shifting and contradictory position on the relevance and admissibility of FARA evidence in the Section 951 case it chose to charge has become a clear pattern through its filings. *Compare* Gov't MTD Opp'n (Dkt. 80) at 16 ("Moreover, the Defendants' reliance and comparison to FARA is misplaced"); Gov't Rev'd Proposed Jury Instr. (Dkt. 288) at 10 ("registration and notice are different actions that entail different obligations") *with* Gov't Mot. to Admit GX-275 (Dkt. 278) at 1 ("establishing the defendants' awareness of the requirements of FARA is highly relevant here"); Gov't Mot. to Admit Testimony (Dkt. 298) at 3 ("The jurors must understand the agent's obligation to update its registration filings every six months"). But, as the Government has noted in the past, "Section 951's notification requirement is often conflated with FARA's registration requirement." Govt MTD Opp'n (Dkt.

80) at p. 17, n.5.  Based on the testimony that it plans to elicit from Ms. Hunt, it appears that the Government has now succumbed to the very error it previously identified.

A form of notification sufficient to satisfy the requirements of Section 951 is set out 28 C.F.R. § 73.3(a), which provides:

> Notification shall be made by the agent in the form of a letter, telex, or facsimile addressed to the Attorney General, directed to the attention of the National Security Division[.] . . . The document shall state that it is a notification under 18 U.S.C. 951, and provide [1] the name or names of the agent making the notification, [2] the firm name, if any, and the business address or addresses of the agent, [3] the identity of the foreign government or official for whom the agent is acting, and [4] a brief description of the activities to be conducted for the foreign government or official and the anticipated duration of the activities. Each notification shall contain a certification . . . that the notification is true and correct.

The regulations also provide that notification under Section 951 "shall be effective . . . if the agent has filed a registration under" FARA.  28 C.F.R. § 73.3(e) (emphasis added).  As the regulations make clear, registration under FARA is a sufficient but far from necessary condition to satisfy Section 951's notification requirement.

The Government takes issue with counsel for both defendants making entirely true statements during openings that all that is necessary to satisfy Section 951's notification requirement is the submission of a one-page fax or letter to the Attorney General.  The Government asserts that the opening statements have left the jury "with the misimpression that, with respect to notification under Section 951, all that is required of those who lobby on behalf of foreign governments . . . is the faxing of a single-page, bare-bones document." (Dkt. 298 at 3).  But, as 28 C.F.R. § 73.3(a) makes clear, such a "bare-bones" document *is* exactly all that is necessary to satisfy Section 951.  *See also* Testimony of Heather Hunt, *United States v. Park*, Tr. at 1156:5-8 (Jul. 7, 2006) (attached hereto as Exhibit A) ("Q. And what does someone have to do to notify the Attorney General that they're an agent of a foreign government? A. They need only send us a fax or a letter indicating they are.").

By seeking to elicit testimony from Ms. Hunt about the information required to satisfy FARA, it is the *Government* that will leave a misimpression with the jury that the law requires individuals to comply with FARA in order to satisfy Section 951's notice requirement.  This is simply untrue.  FARA registration is more onerous than the notification to the Attorney General that is required under Section 951, and it requires the registrant to provide much more information and complete numerous complex forms.  *See* 28 C.F.R. § 5.200–§ 5.202; Government Exhibits (1081 through 1086) (attached to the Government's Motion as Exhibit A).  And, unlike FARA registrations, notifications made to the Attorney General in the form contemplated under 28 C.F.R. § 73.3(a) are not public. *See* Exhibit A at 1156:5-6 (Q. And like the [FARA] registrations, are the [Section 951] notifications made public?  A. No, they are not).  Ms. Hunt should be precluded from confusing the jury by conflating what is legally required to satisfy FARA with what is necessary to comply with Section 951.

Ms. Hunt also should not be permitted to testify that, "in the event a person provides notice to the National Security Division via a means other than FARA registration that they are acting as an agent of a foreign government for conduct covered by FARA (*e.g.*, political influence activities), that information would be disseminated to the FARA Unit and the person would be directed separately to register under FARA." Dkt. 298 at 2. Defendants are not accused of violating FARA. What the Department of Justice would have hypothetically done if Defendants had provided notice to the Attorney General in some form other than FARA registration is irrelevant to determining whether Defendants, in fact, acted as agents of a foreign government without providing notice to the Attorney General. Such testimony would invite the jury to consider that Defendants may also have violated FARA, a question not properly before it.

The Government claims that it should be permitted to elicit testimony that the Department of Justice would have required Defendants to register under FARA if they had provided otherwise sufficient notice under Section 951 because it "will argue [that] there would have been real downstream effects of adequate notice, including limitations on Barrack's and Grimes's ability to secure the same level of access to national medial [sic] platforms and to officials at the highest levels of the United States government." Dkt. 298 at 4. This testimony should be precluded. First, this would be unnoticed and improper expert testimony on issues that Ms. Hunt could not possibly be qualified to testify. Fed. R. Evid. 702-703. Second, regardless of notice or the identity of the witness, the Government would have no evidentiary basis for making such an argument. The Court can take judicial notice of the fact that Washington, DC is littered with agents who have registered under FARA and who still have "access to national media[] platforms" and "the highest levels of the United States government." The very reason why foreign principals hire political agents is to engage in public relations and to lobby public officials. There is nothing strange or unusual about that. *See, e.g.*, FARA Registration Statement of Akin Gump Strauss Hauer & Feld (May 22, 2009) (attached hereto as Exhibit B) (describing the activities provided on behalf of the UAE government as "provid[ing] periodic briefings and analysis on legislative proposals and communicat[ing] with relevant Executive Branch and Legislative Branch offices regarding issues of concern to the Government of the UAE."). The reason Defendants did not register as political agents of a foreign government was not because they feared losing access to media platforms or high ranking government officials and there is not a scintilla of proof supporting such an assertion. Rather, Mr. Barrack and Mr. Grimes did not register as foreign agents simply because they were not foreign agents.

The Government's citation to what the district court permitted in *United States v. Rafiekian*, 18-CR-457 (AJT) (E.D. Va. 2019) is inapposite. The Government's suggestion that *Rafiekian* is somehow instructive here is more sharp practice where it comes to purportedly applicable precedent. The Government does not even allege that the court in *Rafiekian* allowed the type of broad and improper testimony it here seeks, but observes rather that the district court in that case permitted the government to introduce "the same blank forms the government seeks to introduce here, along with basic testimony regarding the information required by the forms." (Dkt. 298 at 5). This is misleading. As the

Government is well aware, in *Rafiekian*, admitting these forms made sense, because in addition to violating Section 951 the defendant in *Rafiekian* was actually charged with making false statements *in a FARA filing*. Nothing in the transcript excerpt that the Government attached to its letter indicates that the FARA-related testimony in *Rafiekian* was admitted as relevant to the Section 951 charges. Indeed, even though there was a FARA-related charge in that case, the *Rafiekian* district court explicitly prohibited the government from doing what it seeks to do here and made clear that the testimony regarding the forms was *only* admitted as relevant to the FARA charges. *See* Dkt. 298-2 at 183:12-15 ("THE COURT: "The jury is going to be instructed on what FARA requires. I think you can bring out the process [the witness] follows without asking him to opine on what FARA actually, in fact requires.").

## II. The Proffered FARA Evidence Is Irrelevant to Section 951's Legal Commercial Transaction Exception

The Government argues that because defendants have "argued to the jury that the charged conduct constituted a lawful commercial transaction" it should be entitled to inform the jury that "engaging in political influence activity without registering under FARA is unlawful (regardless of knowledge of the statute)," and that the FARA registration forms "serve a real and important purpose, including with respect to the information gathered and the dissemination to the Secretary of State, Congress, and the American people." Dkt. 298 at 4-5. The Government's argument is wrong for at least four reasons.

First, the Government did not provide the defendants with pretrial notice that it would seek to offer evidence of uncharged criminal conduct. To the extent that it now seeks to offer evidence that the defendants violated FARA in order to support its position that they were not engaged in a legal commercial transaction, the Court should preclude such evidence under Fed. R. Evid. 404(b)(3). *See* Fed. R. Evid. 404(b)(3) (providing that "evidence of any other crime, wrong, or act is not admissible" in a criminal case, unless the prosecutor, "in writing before trial," provides "reasonable notice of any such evidence that the prosecutor intends to offer at trial.")

Second, the Government is incorrect when it says that "engaging in political influence activity without registering under FARA is unlawful (regardless of knowledge of the statute)." Dkt. 298 at 4. As the Government has stated in the past, "[u]nder FARA, the wrongful conduct is itself the failure to register, not the particular actions taken on behalf of the foreign principal." Dkt. 176 at 8; *see also* 22 U.S.C. § 618 (a) (violation to "willfully violate" registration requirements and related provisions). The Government therefore cannot prove a violation of FARA without establishing that a defendant willfully failed to register, which means that the government must prove that a defendant knew of the registration requirement. The Government is trying to have its cake and eat it too with respect to FARA. It wants to elicit testimony from Ms. Hunt suggesting that Defendants are guilty of a FARA violation without having to prove the *mens rea* necessary to obtain a FARA conviction. Such testimony has no probative value in this case and is unfairly prejudicial.

Third, the Government's argument that the legal commercial transaction exemption does not apply because the defendants were engaged in unlawful "political influence activity" is misplaced. As the evidence proffered to date makes clear, defendants' conduct with respect to the UAE was part of their jobs and not part of some agreement to enhance the political influence of a foreign power. As Executive Chairman of Colony Capital, Mr. Barrack was responsible for developing relationships with wealthy investors, and members of Middle Eastern royal families are among the wealthiest investors in the world. He also built Colony's brand by going on television and writing articles to demonstrate his knowledge about a wide array of subject matters that may be of interest to potential investors. As Mr. Barrack's assistant and junior analyst, Mr. Grimes was responsible for helping Mr. Barrack do his job by, among other things, arranging calls and meetings and developing investment presentations. As will be explained more fully in Defendants' forthcoming response to the Government's September 28, 2022 letter seeking to "supplement" its proposed jury instructions, Dkt. 274, Defendants' conduct is precisely the type of activity that Congress sought to protect by enacting the legal commercial transaction exemption. The only question the jury will need to answer with regard to this aspect of the definition of agency under Section 951 is whether the defendants' actions were in furtherance of a commercial transaction. There is no scenario where the jury would be asked to determine whether the defendants violated FARA. The Government cannot bootstrap the commercial transaction exemption in Section 951 into a requirement that Defendants disprove that they violated an entirely different statute.

Indeed, as Defendants will explain in their forthcoming submission, the Government's analysis is entirely circular, dictating that the only way to avoid providing notice under Section 951 is to give notice. The Government contends that any person seeking to utilize Section 951's "legal commercial transaction" exception is, in effect, admitting to serving as an agent of a foreign government and, as an admitted agent of a foreign power, the individual must "register" under FARA before he or she can engage in the "commercial transaction." Where such a person has not registered under FARA, the commercial transaction that he or she is has engaged in is rendered "illegal" and thus, the "legal commercial transaction" excerption to Section 951 becomes inapplicable. But registering under FARA constitutes giving notice under Section 951. 28 CFR 73.3(e). In short, according to the Government's theory, in order for a person to avail himself of an exception that exempts him from having to provide notice to the Government regarding his conduct, he must first provide the Government with notice of his conduct. In addition to violating the rule against construing any part of a statute to be surplusage, this is precisely the type of absurd statutory reading that the Supreme Court has long cautioned against. *See Nixon v. Mo. Municipal League*, 541 U.S. 125, 138 (2004) ("Court will not construe a statute in a manner that leads to absurd or futile results."); *Bostock v. Clayton Cty.*, 140 S. Ct 1731, *Holy Trinity Church v. United States*, 143 U.S. 457, 460 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construes as to avoid the absurdity. The court must restrain the words.").

Finally, the Government's argument that FARA's registration forms "serve a real and important purpose, including with respect to the information gathered and the dissemination to the Secretary of State, Congress, and the American people," is entirely

irrelevant in a Section 951 case. As mentioned above, notifications to the Attorney General in the form contemplated by 28 C.F.R. § 73.3(a) are *not* public. The Government should not be permitted to elicit the "important purpose" of registration forms that defendants had no obligation to complete to satisfy the notification requirement of the crimes with which they are actually charged.

Respectfully Submitted,

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP | WINSTON & STRAWN LLP |
| /s/ Michael S. Schachter | /s/ *Abbe David Lowell* |
| Michael S. Schachter | Abbe David Lowell |
| Randall W. Jackson | Christopher D. Man |
| Steven J. Ballew | Sofia R. Arguello |
| | Johanna Rae Hudgens |
| O'MELVENY & MYERS LLP | *Counsel for Defendant Matthew Grimes* |
| James A. Bowman | |
| *Counsel for Defendant Thomas J. Barrack, Jr.* | |

Cc (via ECF): Hiral D. Mehta
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie