Halpern May Ybarra Gelberg LLP
550 South Hope Street, Suite 2330
Los Angeles, California 90071
(213) 402-1900 – telephone
(213) 402-1901 – facsimile
www.halpernmay.com

Grant B.Gelberg
(213) 402-1940 – direct dial
grant.gelberg@halpernmay.com




October 11, 2022

**Via ECF**

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Rashid Sultan Rashid Al Malik Alshahhi, et al.*
Case No. 1:21-cr-00371-BMC-TAM

Dear Judge Cogan:

Consistent with the Court's order this past Friday, non-party Alison Marckstadt submits this supplemental response in opposition to the government's letter challenging (1) the privilege assertions over forty-nine documents that are protected by the attorney-client privilege, attorney work product, and/or common interest privileges; and (2) the adequacy of her privilege log more generally. *See* Dkt. 293, 294, 295.[1] Ms. Marckstadt is separately submitting, under seal and *in camera*, the underlying documents and their family members for forty-eight of the challenged entries, along with a short letter, index, and declaration providing factual context related to the privilege that has been asserted over these materials.[2]

**Overview and Relevant Background**

On September 13, 2022, the Court ordered Ms. Marckstadt to respond to the government's Rule 17 subpoena, as modified by the Court. *See* Order, Dkt. 214. By September 22, Ms. Marckstadt and her counsel had reviewed thousands of documents

---

[1] Although the government's motion purports to seek review of fifty documents from Ms. Marckstadt's privilege log, the list submitted by the government for *in camera* review only identified forty-nine documents.

[2] Ms. Marckstadt submits these materials under seal and *in camera* because they necessarily disclose the substance of the privileged communications, as well as actions being taken by defense counsel at the time of the communications. Counsel has determined that one document from the set of forty-nine is not privileged and has produced this document to the government. There are therefore forty-eight remaining documents at issue. This response will therefore refer to the challenged documents as the forty-eight documents identified by the government.




and produced her first privilege log. Ms. Marckstadt produced her final log just eight days later on September 30. More than two weeks after receiving that initial log—twice as long as it took Ms. Marckstadt to create it—the government challenged forty-nine documents on Ms. Marckstadt's log and asserted that the privilege log itself was insufficient. But the government's challenges do not align with the law of privilege.

***First***, the government argues that forty-eight documents on Ms. Marckstadt's log cannot be privileged because they are (i) emails between Ms. Marckstadt and non-attorneys (mostly, as the log shows, defendant Thomas J. Barrack, Jr. and Mr. Barrack's other assistants and consultants); or (ii) documents created by non-lawyers outside of Ms. Marckstadt's consulting period with Mr. Barrack's defense counsel. Even if these claims were accurate, these are not adequate reasons to deny privilege: Ms. Marckstadt was, for all relevant periods, an employee of Mr. Barrack (and for some periods a privileged consultant of Mr. Barrack's defense counsel), and the records at issue were all collected, compiled, and transmitted by Ms. Marckstadt either at the direction of counsel or in furtherance of Mr. Barrack seeking legal advice and defending himself in these criminal proceedings. These records are therefore privileged.

***Second***, the government argues Ms. Marckstadt's privilege log is inadequate. But Ms. Marckstadt's log, in all instances, identifies the document, the type and basis for privilege, and the attorneys associated with that privilege. That information, which supplies enough data to establish the basis for Ms. Marckstadt's privilege assertion, is more than sufficient under the law.

Ms. Marckstadt addresses each of these issues in turn.

**The Forty-Eight Documents the Government Identified are Privileged**

The forty-eight records identified by the government are privileged because (1) they were transmitted as part of Ms. Marckstadt's consulting arrangement with Mr. Barrack's defense counsel and/or as part of her work on behalf of her longtime employer Mr. Barrack; and (2) they were communicated, collected, or created in furtherance of seeking or obtaining legal advice, and are thereby protected by the attorney-client privilege, attorney-work product protection, and/or common interest privilege.

***First***, the government's claim that many of the forty-eight documents "are from a time period when any privileged relationship is unlikely to have existed between Marckstadt and anyone else" because they purportedly fall outside the date range in which Ms. Marckstadt served as a consultant to Barrack's defense team is not just legally wrong; it is also factually inaccurate. *See* Dkt. 293 at 5. While the government asserts that the forty-eight documents fall outside the consulting period and/or have no connection to the legal advice of counsel, a review of the documents along with their parents shows that, in fact, many of the documents at issue are documents attached to emails sent to or received from lawyers during the consulting period. *See, e.g.*, AM-0002208 and AM-0002209 (attached to February 8, 2022 email between Ms. Marckstadt, Tom Davis, and counsel). Further, almost all the text messages (*see* AM-0008787) fall within the consulting period.




Even for documents outside the consulting period, all records on the government's list are subject to Mr. Barrack's privilege relationship with his attorneys because all were made during, and pursuant to, Ms. Marckstadt's longtime employment—beginning in 2013 and continuing to this day—as an executive assistant, project manager, and family office member of Mr. Barrack.[3] The consulting arrangement serves as a separate basis for privilege over her communications, but Ms. Marckstadt throughout the period at issue assisted Mr. Barrack in connection with this case and other legal issues. As part of her role as Mr. Barrack's assistant, Ms. Marckstadt was tasked with gathering files and information requested by attorneys, sending documents and files relevant to legal matters among Mr. Barrack and counsel, and otherwise facilitating the flow of essential documents and information between Mr. Barrack and his attorneys.

Privilege between a client and attorney extends to that client's employees, consultants, and other agents, where there is a reasonable expectation of privacy and disclosure was necessary to obtain legal advice. *See United States v. Kovel*, 296 F.2d 918, 920 (2d Cir. 1961). "Executives frequently do not open their own mail, answer their own telephone lines, initiate or receive their own faxes or even emails. Administrative assistants perform these functions for executives, and in this capacity, they are necessary to facilitate the transmission of the communication." *Hayden Royal LLC v. Hoyt*, 2021 WL 2637501, at *9 (D. Ariz. Jan. 22, 2021) (holding that "interposing" an assistant between a client and attorney "does not destroy the privileged nature of the communication"). These blackletter privilege principles are routinely recognized, in this circuit, and in courts across the country. *See Abbott Laboratories v. Airco, Inc.,* 1985 WL 3596, at *4 (N.D. Ill. Nov. 4, 1985) ("A recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication."); *In re Adelphia Communications Corp.*, 2005 WL 425498, at *8 (S.D.N.Y. Feb. 16, 2005) (receipt of privileged e-mail by secretary for purpose of passing it along to intended recipient did not waive privilege); *United States v. Koerber*, 2011 WL 2174355, at *9-10 (D. Utah June 2, 2011) ("In addition to Ms. Taylor's general role of acting as Mr. Koerber's assistant, she was, in practical terms, a person on whom he could rely not to disclose confidential information. She had a duty not to disclose important company documents until directed to do so, and it is clear from the record that she understood this duty. . . . It is also clear to the court that Ms. Taylor realized that office documents were to be kept confidential, whether or not she had signed an agreement to that effect.").

The same reasoning applies to Ms. Marckstadt. When one of Mr. Barrack's attorneys requests a document, it is Ms. Marckstadt's role to find and circulate the document. It is also her role to ensure Mr. Barrack has documents his attorneys want him to see, and to find materials needed by attorneys to facilitate legal advice. Such transmissions are protected by privilege when they involve Ms. Marckstadt, just as they

---

[3] Counsel for Mr. Barrack confirmed during the June 3, 2022 *Curcio* hearing that Ms. Marckstadt continued to work directly with Mr. Barrack after the consulting relationship with defense counsel ended.




are protected when they involve Mr. Barrack directly. *See* Mueller, Evidence – Practice Under the Rules, 4th ed. § 5.13 (2019) (explaining that the presence of an agent of the attorney or the communicative intermediary of the client does not destroy privilege).

The same goes for those emails sent among Mr. Barrack, Ms. Marckstadt, and Mr. Barrack's other assistants and consultants for the purpose of furthering legal work. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (finding communications among non-attorney employees were privileged because "it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice . . . [o]ther documents reflect the requests and directions of counsel transmitted from one employee to another for the purposes of obtaining the information for counsel on which legal advice was to be premised."). If privilege were broken every time a secretary emailed an executive concerning a legal matter in the capacity of their employment relationship, it would hollow out privilege to the point of being valueless, and courts accordingly do not mandate that such a thing occur. *Id.*

***Second***, the records at issue here are privileged because they were transmitted in furtherance of the privileged relationship described above. The records themselves are covered by the attorney-client privilege, and, where appropriate, work-product and common-interest privileges.

Almost all records subject to the government's challenge involve Ms. Marckstadt transmitting, collecting, and compiling information and documents for ultimate use by attorneys. These documents are privileged. Documents collected at the direction of attorneys for the purpose of facilitating the giving and requesting of legal advice are protected by attorney-client privilege, even if the standalone documents are not. *See Gen. Elec. Co. v. United States*, 2015 WL 5443479, at *1 (D. Conn. Sept. 15, 2015) ("information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege"). If opposing parties had the ability to see every document that counsel requested from their client or reviewed, it would allow opposing parties to "reverse engineer" the contents of otherwise privileged communications from the attachments. *Hilton-Rorar v. State & Fed. Commc'ns, Inc.*, 2010 WL 1486916, at *8 (N.D. Ohio Apr. 13, 2010) (stating it "would undercut a bedrock principle underlying the attorney-client privilege" to force counsel to disclose specific attachments included in an email, because the privilege exists to encourage "clients to make full disclosure to their lawyers"); *see also Willis Elec. Co. v. Polygroup Trading Ltd.*, 2021 WL 568454, at *6 (D. Minn. Feb. 16, 2021) ("[E]ven though the underlying content of the independently-discoverable attachments is not privileged, the act of sending the attachments is privileged . . . ."); *U.S. v. Davita, Inc.*, 301 F.R.D. 676, 683-84 (N.D. Ga. 2014) (holding same); *Barton v. Zimmer Inc.*, 2008 WL 80647, at *5 (N.D. Ind. Jan. 7, 2008) (same*); In re Vioxx Products Liability Litig.*, 501 F. Supp. 2d




789, 806 (E.D. La. 2007) (same); *Muro v. Target Corp*., 250 F.R.D. 350, 363 (N.D. Ill. 2007) (same).[4]

Separate from the attorney-client privilege, the documents are also covered by work product protection because they were compiled in anticipation of litigation as part of preparing the defense to specific allegations charged in this case. In *Sporck v. Peil*, the Third Circuit held that when particular documents are compiled as part of a litigation strategy, the compilation is subject to work-product protection. 759 F.2d 312, 315 (3d Cir. 1985) (work product applies where "identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions"). The Second Circuit has expressly adopted the *Sporck* principle: "[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992); *see also Gould Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676 (2d Cir. 1987). And while the Second Circuit has characterized *Sporck* as a "narrow" exception that may not apply to voluminous record requests over broad time periods, the compilations at issue here fall neatly within the kinds of records that are entitled to work product protection because they involve specific records selected or requested by counsel that were collected and compiled in anticipation of litigation to prepare Mr. Barrack's defense at trial. *Contra Matter of Grand Jury Subpoenas,* 959 F.2d at 1167 (no protection to demand for "all telephone company records for the targeted phone lines for a five year period").[5]

Indeed, the documents Ms. Marckstadt collected and sent via attachment to attorneys, or to Mr. Barrack at the request of attorneys, are documents compiled at the direction of counsel, and/or in a manner reflecting the mental impressions and thought process of the attorneys involved. If these documents are produced, it would necessarily disclose the documents Mr. Barrack's attorneys found important to preparing his legal defense to these criminal proceedings, including the junctures when those documents arose in light of developments in the case over the past year. Additionally, a small

---

4 Ms. Marckstadt is *not* asserting that all copies of a particular document are privileged simply because it was sent once to an attorney. Rather, Ms. Marckstadt is asserting privilege over the *particular* documents attached to privileged emails. In fact, many of the documents the government identified are non-responsive documents with responsive family members, and therefore would not have been independently produced *absent* their affiliation with these privileged emails, because the documents are themselves not responsive to any of the government's requests.

5 The government's cases say no different. In *United States v. Bergstein*, 2017 WL 4535944, at *2 (S.D.N.Y. Oct. 10, 2017), a party was prevented from asserting work product privilege over materials that had simply come into his attorney's possession; there were no allegations in *Bergstein* that the attorney had ever used, selected, or relied upon the materials as part of his representation of the client. Here, all the documents at issue are documents collected expressly for the purpose of legal representation and Mr. Barrack's criminal defense.




number of the documents the government identifies are documents prepared by Ms. Marckstadt pursuant to her role as a consultant, or prepared by another litigation consultant. These documents are work product. *See United States v. Nobles*, 422 US 225, 238-239 (1975) (Recognizing that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."). *See, e.g.,* AM-0004396.

Finally, the common interest privilege protects communications between Mr. Barrack and Ms. Marckstadt. Given the government's indictment of Mr. Grimes, who, like Ms. Marckstadt, was one of Mr. Barrack's subordinates, Mr. Barrack's and Ms. Marckstadt's interests were aligned in her response to the government's inquiries. This continued throughout 2022 as the government used pressure tactics—issuing and then withdrawing a grand jury subpoena, followed by a trial subpoena—with offers to negotiate the burdens of these subpoenas if Ms. Marckstadt would agree to "voluntary" cooperation with their prosecution of her employer. Under these circumstances, the common interest doctrine independently protects communications between Mr. Barrack and Ms. Marckstadt, even where attorneys are not copied. *See Brunckhorst v. Bischoff*, 2022 WL 2764020, at *3 (S.D.N.Y. July 15, 2022) ("Bischoff challenges some communications between Brunckhorst and the Trustees in which no lawyer was present as falling outside the common interest. . . That criticism does not track the common interest doctrine: 'If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication.'"); *see also Sportvision, Inc. v. MLB Advanced Media, L.P.*, 2022 WL 4467054, at *3 (S.D.N.Y. Sept. 26, 2022) (same) (collecting cases).

**<u>The Privilege Log is Sufficient</u>**

In addition to the challenges associated with a subset of entries in Ms. Marckstadt's privilege log, the government also challenges the sufficiency of the privilege log itself. This assertion is meritless.

A privilege log need only "describe the nature of the documents in a manner that will enable other parties to assess the claim," and "need not be so detailed as to reveal information itself privileged or protected." *NovaFund Advisors, LLC v. Capitala Grp.*, LLC, 2021 WL 2109112, at *2 (D. Conn. May 25, 2021) (citations omitted). Courts in this Circuit have held that "log entries stating that the withheld documents were correspondence or e-mails seeking, transmitting or reflecting legal advice" were sufficiently descriptive to meet the requirements to assert privilege. *See id.* (internal quotations omitted); *see also Mitre Sports Int'l Ltd. v. Home Box Office, Inc.,* 2010 WL 11594991, at *16 (S.D.N.Y. Oct. 14, 2010) (special master decision observing that "identifying e-mails in a privilege log as 'seeking, transmitting or reflecting legal advice' . . . provides a sufficient description to sustain an assertion of privilege").




Here, under considerable time pressure, Ms. Marckstadt produced a privilege log with over 1,400 entries that far exceeds the minimum requirements for what needs be disclosed on a log. As the privilege log makes clear, Ms. Marckstadt identified the Bates range, date, senders, recipients, privilege type, document type, the privilege attorney associated with each document, and a description for each document of the nature and subject matter of the privilege. Nothing more is required. *NovaFund Advisors*, 2021 WL 2109112, at *2.

The government complains that Ms. Marckstadt did not include the author of each document.[6] But Ms. Marckstadt is not asserting privilege on the grounds that documents were authored by a nondisclosed individual. She has identified where a record is a document, indicated when a document was—among other bases for privilege—drafted by, or at the direction of, counsel, and has disclosed the attorney or firm involved in the asserted privilege. There is no basis to disclose additional information concerning the document when the full bases for Ms. Marckstadt's privilege determination have been disclosed.[7]

* * *

//

//

//

//

//

---

[6] Ms. Marckstadt disclosed the senders of emails on the log.

[7] For the same reason, the government's complaint that communications involving PR consultants "could" break privilege is misplaced, speculating that privilege would not apply "if" the communications concerned a public relations campaign or "Barrack's reputation." They do not. As the government knows—because Ms. Marckstadt has already told the government in a communication on this topic the government did not reference in its letter to the Court—the PR firm at issue was hired by Barrack's legal counsel for the purpose of providing advice and support to counsel in a case involving multiple allegations related to media appearances and news articles. The attorney-client privilege extends to "those assisting a lawyer in representing a client, such as public relations consultants and agents," *Gawker Media v. EJ Media Grp.*, 2014 WL 1789293, at *1 (N.Y. Sup. Ct. May 6, 2014), if the communication is made in confidence and to facilitate the provision of legal advice. *See JBGR LLC v. Chicago Title Ins. Co*., 2017 WL 3480245, at *3 (N.Y. Sup. Ct. Aug. 2, 2017); *see also McNamee, McNamee v. Clemens*, 2013 WL 6572899, at *5 (E.D.N.Y. Sept. 18, 2013). Courts have "extend[ed] the protection of the attorney-client privilege to a party's and its counsel's communications with a public relations consultant *which are directed at supporting the client's legal position*." *Grand Canyon Skywalk Dev. LLC v. Cieslak*, 2015 WL 4773585, at *9 (D. Nev. Aug. 13, 2015) (emphasis added).




Because Ms. Marckstadt's privilege assertions are justified, and because her privilege log adequately discloses information necessary to assess the basis for privilege, the government's request that Ms. Marckstadt produce the documents at issue and produce a revised privilege log are misplaced, and should be rejected.

Respectfully submitted,

***/s/ Grant B. Gelberg***

**Grant B. Gelberg**
HALPERN MAY YBARRA GELBERG LLP

***/s/ Emil Bove***

**Emil Bove**
CHIESA SHAHINIAN & GIANTOMASI

cc: Counsel of Record (Via ECF)