# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 12, 2022

***VIA ECF***

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *United States v. Rashid Sultan Rashid Al Malik Alshahhi*, et al., 1:2l-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

None of the documents that the government is seeking to preclude in its motion are being offered for any hearsay purpose. Although the government has no record of the specific questions asked or actual answers given in the June 2019 interview, the government now seeks to preclude Mr. Barrack from introducing, even during cross-examination, the contemporaneous notes made by the FBI during Mr. Barrack's interview and the memorandum prepared by the FBI which purports to serve as a record of Mr. Barrack's statements. The government's motion is contrary to law and should be denied.

The circumstances surrounding that interview are straightforward:

- After learning of the government's investigation, Mr. Barrack approached the government and volunteered to answer questions for several hours in a pre-scheduled interview. Mr. Barrack set no conditions or constraints on his voluntary interview, and sought no immunity.

- Despite having no barriers and every incentive to record, the government chose not to make an audio or video recording, or transcribe Mr. Barrack's interview, even though DOJ policy expressly encourages the FBI to do so. *See U.S.* Dep't of Justice, Justice Manual § 9-13.001; *see also United States v. Ruzicka,* 333 F. Supp. 3d 853, 869 n.6 (D. Minn. 2018) (finding "no reason to defend an unsupportable policy of not recording interviews when the Department of Justice itself' envisions that U.S. Attorneys and the FBI will tape witness interviews).

- Instead, a single FBI agent (Agent Warren Chiu) took handwritten notes that subjectively combined the questions and answers in a manner that fails to disclose key aspects and nuances of Mr. Barrack's statements. FBI Special Agent Tracee Mergen, who will testify tomorrow, did not scribble a single note throughout the five-hour interview. Agent Chiu then waited more than three weeks before completing the first draft of the FD-302 memorandum.

- Thereafter, other government participants, despite not taking a single note, suggested and discussed changes to the memorandum, including changes that now form the basis for some of the charges. The agents did not finalize the memorandum until more than a month after the interview.

- The government then waited more than two years (while memories faded) before charging Mr. Barrack with multiple felony counts of making false statements and one count of obstruction of justice.

There is no question that the FBI's notes of Mr. Barrack's interview and at least limited parts of the FD-302 are admissible. Indeed, the government has previously assured the Court and Mr. Barrack that he would have "every opportunity" to challenge the record that was made regarding his statements and the FBI agents' credibility at trial. *See* Gov't Opp. to Mot. to Dismiss, Dkt. 80 at 45. The government now, however, contends that the jury's verdict on these seven felony charges should be limited solely to the purported recollection of these witnesses (Special Agents Mergen and Chiu, and potentially Mr. Barrack, should he choose to testify) about what specific words were uttered at the interview three years ago.

The government claims that the rule against hearsay bars the admission of the FBI's notes and the FBI-302, arguing that the memorandum and notes are double hearsay (the first level of hearsay being the agents' statements about what Mr. Barrack said, and second the truth of Mr. Barrack's purported statements). Mot. 2-5. That assertion is wrong on both counts.

*First*, the notes and the memorandum are not first level hearsay (as to the agents' statements about what Mr. Barrack said) because they are not being offered for the truth or the accuracy of what Mr. Barrack said during the interview.[1] Instead, the notes and the memorandum are necessary to show the jury that the government's own decisions resulted in an inadequate record regarding his statements that is insufficient to convict him on any of these charges. This is particularly concerning where there is evidence that one of the charged false statements is not even reflected in the contemporaneous notes, was only added to a near-final version of the FBI-302 weeks after the interview, and only after the agents met together to discuss the content of the final memorandum.

Given the foundational nature of the notes and FBI memorandum, it is critical that the jury be able to assess the adequacy (or inadequacy) of the record the government chose to create regarding the statements. Courts in the Second Circuit and elsewhere have held that the records are admissible for these purposes. *See infra* Part I. This Court in its earlier rulings in this case recognized that the government's failure to create an adequate record of the alleged statements is a critical part of Mr. Barrack's defense and is for the jury to decide. *See* Dkt. 120 at 29, n. 12 (MTD Order) ("The lack of a record, and corroboration [go] to the sufficiency and persuasiveness of the Government's evidence, which *will be determined at trial by the jury*.") (emphasis added); *see also id.*, at 29 n. 12 ("As to Barrack's arguments that the Government's

---

[1] Even if the notes and the memorandum *were* offered for the truth as to what Mr. Barrack said during the interview, those records are admissions of a party opponent and are thus not hearsay. *See* Fed. R. Evid. 801(d)(2).

notes were inadequate, that argument, again, *is for the jury*.") (emphasis added); 10/12/2022 Trial Tr. 2417:23-25; 2418:1-2 (admitting investigator report of interviews and the underlying statements in connection with Mr. Barrack's submission of his SF-86 application).

*Second*, Mr. Barrack's statements during the interview are not second level hearsay because they are not being offered at trial for their truth. Instead, Mr. Barrack's statements demonstrate his state of mind, that he highlighted rather than concealed his contacts with government officials from the UAE, and that he did not knowingly or intentionally make false statements to the government. This includes numerous instances where Mr. Barrack openly discussed his meetings with Sheikh Tahnoon and MBZ, the fact that MBZ had said Tom would be the main line of communications with the Trump campaign, and that he had shared the May 2016 Energy Speech with Rashid al Malik and asked for his input. For these statements, as with the statements the Court admitted earlier today during the testimony of Heidi Parsons from her interview memoranda, it "[d]oesn't matter if it's true. Just matters that it was said, true or false." *See* 10/12/2022 Trial Tr. 2418:1-2.

Finally, the government's rule of completeness arguments fare no better. In case where the government has alleged, through its obstruction of justice charge, that Mr. Barrack threw sand in the eyes of the investigators, the fact that Mr. Barrack answered five hours of questions, in a fulsome and descriptive manner, on every topic that the government asked about, is evidence that the jury is entitled to see. The jury cannot evaluate the truth of the government's obstruction claim on a record that conceals the vast majority of Mr. Barrack's interview with law enforcement.

The government's motion should therefore be rejected.[2]

## I. **The Government's Records of The June 2019 Interview Are Admissible**

### A. **The Notes and the FD-302 Are Not Barred By the Rule Against Hearsay Because They Are Not Being Offered For Their Truth.**

The FD-302 memorandum and the agent's notes of the June 2019 interview are admissible because they are not being offered for their truth.

In false statement cases, it is axiomatic that the specific questions posed by the government and the defendant's specific answers are essential for the jury to render a verdict on the charges. Although no *per se* rule requires a verbatim transcript or written statement as a predicate for these offenses, the "absence of a verbatim record . . . raises serious difficulties" in false statement cases, *United States v. Clifford,* 426 F. Supp. 696, 701 (E.D.N.Y. 1976). That is because "what is actually said by a defendant becomes a critically important part of any prosecution under § 1001," *United States v. Poutre*, 646 F.2d 685, 688 (1st Cir. 1980) (en banc). Since technical points about a defendant's exact statements can make a "vast[] differen[ce], not

---

[2] The government complains that Mr. Barrack should not be allowed to introduce the contemporaneous typewritten notes of his own attorney during the examination of the agents because "the PDF is undated, unpaginated, unsigned and does not indicate the author." Mot. 2. Had the government conferred with counsel before filing this motion (as it has said the defense should do), it would have learned that Mr. Barrack does not intend to admit those notes through these witnesses.

only in form, but in substance, especially if a determination of literal-truthfulness vel non is to be made," the creation of the records, the delay in memorializing them, and the circumstances surrounding changes to them are critical. *Clifford,* 426 F. Supp. at 702; *see also, e.g., United States v. Razzaia,* 370 F. Supp. 577, 579 (D. Conn. 1973) (in false swearing cases, "the careful use of words becomes important").

That is why context, nuance, qualifications and ambiguity are essential in a false statements case—all of which would be reflected in a recording (consistent with DOJ policy had it been followed), or an adequate contemporaneous record. *United States v. Meek*, 2022 U.S. Dist. LEXIS 133317, *16 (S.D. Ind. July 27, 2022) (observing that the "Court could have been spared days of time and work had the Proffer Interview been recorded"). An adequate record is essential because the specific details that could determine guilt or innocence often cannot be recalled with precision years later. *Id.* at *9 ("the failure to record the contents of the Proffer Interview in a question-and-answer format is problematic and, in some instances, misleading"). The jury is entitled to see that "Special Agent [Chiu and Mergen's] FD-302 report, which was based in part on [their] handwritten notes and in part on [their] recollection of the Proffer Interview, similarly does not utilize a question-and-answer format, and instead represents a summary of [their] version of what they believe [Mr. Barrack] said during the Proffer Interview." *Id.* at 10. The government should not be allowed to shield its failure to create a meaningful record from the jury.

The government erroneously relies on *United States v. Sampson*, 898 F.3d 287, 308 (2d Cir. 2018), but that reliance is entirely misguided because *Sampson* is easily distinguishable from the facts and circumstances at issue here. For starters, the defendant in *Sampson* "offered [the agent's] notes to prove the truth of their contents." *Id.* at 308. There were no issues raised over the adequacy or form of the notes, nor does there appear to be any issues over the approach or delay in creating them. *Id.* And Sampson was charged within nine months of his interview. *Id.* at 296-297 (noting that the interview occurred in July 2012 and the indictment returned in April 2013).

None of those circumstances mirror what happened here. Unlike *Sampson*, Mr. Barrack is not offering the notes and the FD-302 memorandum for the truth. Instead, the notes and the memorandum are offered to show the woefully inadequate record the government chose to create in spite of its own policies so that the jury can properly assess the credibility of the agents' testimony and their recollection of specific statements made at Mr. Barrack's interview more than three years ago. *See United States v. Ehrlichman,* 379 F. Supp. 291, 292 (D.D.C. 1974) (entering judgment of acquittal for Section 1001 conviction where the defendant was "faced with the difficult task of arguing that his statements to the F.B.I. were literally true on the sole basis of the agent's sketchy notes, which do not purport to be a verbatim record of either the questions or the answers at issue").

With the passage of time (a result of the government's own strategic decision), it is not enough to simply have the witness describe them from memory, divorced from the record the government chose to create at the time of the interview. That is especially true where, as Mr. Barrack expects, witness testimony will establish that the FD-302 memorandum was based on the FBI's notes, and the FD-302 was relied on to refresh the recollection of the very agents who are testifying to the jury about specific utterances that Mr. Barrack allegedly made to the FBI. The

jury must be allowed to see the notes and the FD-302, not for their truth, but so that the jurors can draw the entirely reasonable inference that any error, gap, or failure in the initial notes was replicated or carried over into the FD-302 (which was drafted weeks later) and which in turn, influenced the case agents' testimony during their direct examination, since those case agents undoubtably have used the FD-302s to refresh their recollection prior to testifying.

As just one example, in support of Count Eight, the defense anticipates that the government, during its direct examination, will elicit testimony from its Special Agents that Mr. Barrack "falsely stated and represented" that he had "no role in facilitating communications" between the Trump Campaign and the Administration with officials in the United Arab Emirates. Superseding Indictment ¶ 129. But the FD-302 and the notes show, by contrast, that Mr. Barrack openly and repeatedly disclosed to the FBI that he had facilitated communications to those officials (and many others). These notes are not being offered for the truth of what Mr. Barrack said (i.e., whether he in fact did facilitate the communications), but rather to show that Mr. Barrack made this disclosure. *See, e.g.,* Mot., Ex. B at 8 ███████████████████████████████████████████████████████████████ *see also* 10/12/2022 Tr. 2419:6-7, 13-14 ("There's statements in this document . . . where Mr. Forsyth said something to this witness . . . It's not evidence that it's true. All it's evidence of is that Mr. Forsyth said it to this witness.")

Nor is there any dispute that courts in this circuit and elsewhere routinely permit the use of FD-302 memoranda or an agent's rough notes for these purposes, and the extenuating combination of circumstances that resulted from the government's own decisions in this case only underscore why it should do so here. *See, e.g.*, *United States v. Bramble*, 103 F.3d 1475, 1479 (9th Cir. 1996) ("The court correctly allowed [defendant] to attempt to impeach [FBI Agent] Cox by cross-examining him at length about the [302] report"); *United States v. Torres-Galindo,* 206 F.3d 136, 143 (1st Cir. 2000) (noting with approval that agent "was subjected to extensive cross-examination on the inconsistencies between the 302's and his notes of the interviews"); *United States v. Diaz,* 26 F.3d 1533, 1539 (11th Cir. 1994) (agent cross-examined with notes); *Cowan v. Arutz,* 1996 WL 631726, *13 (S.D.N.Y. Oct. 24, 1996) ("defense counsel was free" to cross-examine police officer with notes); *United States v. Machor,* 879 F.2d 945, 954 (1st Cir. 1989) (district court permitted agents to be cross-examined using notes); *Unites States v. Andrade,* 788 F.2d 521, 531-33 (8th Cir. 1986) (agents' handwritten notes and reports were used for cross-examination regarding what defendant said during interview and concerning errors in written report).

### B. The Notes and the FD-302 Are Also Admissible Pursuant to Multiple Exceptions to the Hearsay Rule.

Even if Mr. Barrack *were* to offer the notes and the FD-302 for their truth, those records and the underlying statements are admissible under multiple exceptions to the hearsay rule.

Both the FBI Notes and the FD-302 are admissible if offered by Mr. Barrack, as party opponent admissions. *See* Fed. R. Evid. 801(d)(2)(A) (for Special Agent Chiu) and Fed. R. Evid.

801(d)(2)(B) (for Special Agent Mergen).[3] The underlying statements are likewise admissible under multiple other hearsay exceptions, including state of mind[4] and as statements against interest.[5]

*Picard v. Sage Realty*, a district court case in the Second Circuit that post-dates *Sampson*, provides helpful guidance. 2021 U.S. Dist. LEXIS 243460 (S.D.N.Y. Dec. 21, 2021). There, the court was asked to preclude the admission of an FD-302 memorandum and the underlying statements by Bernie Madoff about his fraud scheme as inadmissible hearsay. *Id.* at *2. The court rejected that motion, finding that the "302 Report and Madoff's proffer statements are independently admissible under separate exceptions to the rule against hearsay." *Id.* at *12. As to the first level of hearsay, the court found that "FBI 302 reports may be admissible as public records under Fed R. Evid. 803(8)" where, like here, "statements memorialized in the 302 Report were made by [the] during a voluntary proffer session" during the government's criminal investigation. *Id.* at *10; *see also id.* at *9 (collecting cases). As to the second level, the Court found "with little doubt that Madoff's proffer statements satisfy the two requirements of Rule 804(b)(3)(A)." *Id.* at *11. Madoff was unavailable within the meaning of to testify because he had already died. And the statements were against his interest because they concerned the scope and duration of his activities that "exposed him to significant criminal liability." *Id.* at *12.

So too here. The statements at issue, like the examples cited above, obviously exposed Mr. Barrack to criminal liability given the government's nine-count felony count indictment that it filed against him, including seven counts that solely arise from statements he allegedly made during the interview. And, as explained above, the Court's rulings earlier today, admitting Ms. Parson's interview report and the underlying statements, only substantiates the admissibility of similar evidence in cross examining the case agents tomorrow and demonstrates that there are multiple grounds to admit the case agent's records and the underlying statements over the government's hearsay objections. *See* 10/12/2022 Trial Tr. 2417:23-25; 2418:1-2 ("THE

---

[3] Depending on the witness's testimony, the documents may be admissible as recorded recollections under Fed. R. Evid. 803(5). *See, e.g.,* 10/12/2022 Trial Tr. 2417:23-25; 2418:1-2 ("THE COURT: I'm still going to allow it. I do believe it's past recollection recorded on the one level, and on the next level, it's not being offered for its truth.")

[4] The state of mind exception applies to show Mr. Barrack's absence of intent, which is an essential element the government must prove to sustain a Section 1001 conviction. Sand, Instruction 36-13; *Bryan v. United States*, 524 U.S. 184, 191, 196-98 (1998).

[5] The underlying statements are also independently admissible as statements against interest. For instance, during the interview, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

COURT: I'm still going to allow it. I do believe it's past recollection recorded on the one level, and on the next level, it's not being offered for its truth.")

That same logic provides a compelling basis to overrule the government's hearsay objections here.

## II. The Government's Rule of Completeness Arguments Provide An Independent Basis for Admissibility

The government separately argues that the rule of completeness does not apply to Mr. Barrack or provide grounds for Mr. Barrack to elicit any of his statements from the June 2019 interview that the government chooses not to elicit from its case agents on direct examination. This is argument is baseless.

Where the Government has brought an obstruction of justice charge, as the Government has done here, the Government's allegation is that the defendant—here Mr. Barrack—was "throwing sand" into the eyes of the investigators. As such, where the evidence shows that the defendant was cooperative and thoughtful in response to the investigator's questions, making every effort to give full and detailed answers, the Government's contentions as to the defendant's intention to "obstruct" may be exposed as false. Mr. Barrack must be entitled to demonstrate the efforts he made during his interview to work *with* the Government and to respond in good faith to their questions. In order to make this showing, the Notes and the FBI-302 must come in.

Separately, admitting the Notes and the FD-302 is essential in order to avoid misleading the jury. Where the Government intends to selectively present only narrow snippets of evidence to the jury, Mr. Barrack is entitled to expose those gaps to the jury on cross examination and during his case-in-chief, if he presents one. The Government should not be permitted to prevent Mr. Barrack from examining the case agents beyond the selective finite statements that the government apparently plans to elicit on their direct examinations. *See* 10/3/2022 Tr. 1371:11-18 ("To me, that's just standard cross-examination. Whether it's done on cross or in the defendant's case-in-chief. I'm probably going to let it be done on cross because I don't see any need to call her back and we waive scope all the time in order to avoid the necessity of recalling a witness. So I'm going to give the defendant some leeway here.")

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

/s/_____
Michael S. Schachter
Randall W. Jackson
Casey E. Donnelly
Steven J. Ballew

O'MELVENY & MYERS LLP

James A. Bowman

*Counsel for Defendant*
*Thomas J. Barrack*, *Jr.*

Cc (via ECF): Hiral D. Mehta
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie