October 14, 2022

***VIA ECF***

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: ***United States v. Rashid Sultan Rashid Al Malik Alshahhi, et al., 1:2l-cr-371 (BMC) (S-1)***

Dear Judge Cogan:

We write on behalf of Mr. Barrack to respectfully request re-argument concerning one aspect of the Court's ruling on October 13, 2022 concerning the privileged status of certain documents logged by counsel for Alison Marckstadt. Specifically, counsel respectfully requests that the Court reconsider its finding, as stated on October 13, 2022, that all communications with Mr. Davis are not privileged. Counsel for Mr. Barrack understands that this submission is untimely, should have been filed *before* the Court reviewed the communications challenged by the Government and apologizes deeply for the error. That was an error which sits firmly on the shoulders of Mr. Barrack's counsel, not Mr. Barrack.

Mr. Barrack, along with Ms. Marckstadt's counsel, intends to fully comply with the Court's ruling regarding the 48 documents that were submitted for *in camera* review. In addition, the Court stated the following:

The only ones I can say are clearly privileged -- and that is being generous on the issue -- 8389, 8400 and 8787. And the rest of them you have to go through the process I suggested, which is if it is a transmission of a pre-existing document, the pre-existing document is not privileged. The cover memo may be, if it relates to communications between the attorneys that led to the sending of the documents.

Now, the other thing that [Ms. Marckstadt] did not say, nor did her letter brief, nor did Mr. Barrack's team, is these documents have been largely shared with some third-parties. **And I have no idea who those third-parties are, but generally speaking, when you share a privileged document with a third-party, you lose the privilege. For example, several of the documents, in fact some substantive memos, are between Tommy Davis and O'Melveny. I happen to know who Tommy Davis is. I don't think he practices law and no one has told me what he is doing in this case. Those are not privileged**.

Mr. Barrack now respectfully asks the Court for the opportunity to explain that Mr. Davis is a litigation, crisis management and media relations consultant who has been retained by Mr.

Barrack's defense counsel since 2019, and to argue that, at least in certain instances, Mr. Davis falls within Mr. Barrack's privilege and thus, communications concerning privileged defense strategy and litigation considerations, but which include Mr. Davis, should remain protected by Mr. Barrack's privilege.[1]

The factual background concerning Mr. Davis's role on the defense team is set forth in detail in the attached Declaration of James Bowman, which is attached to this letter as Ex. A (the "Bowman Declaration"). In addition, a short declaration from Mr. Davis is attached as Ex. F. In particular we ask the Court to consider that many of the key allegations and evidence in this case relate to Mr. Barrack's engagement with the media and this fact has necessitated the specific expertise of Mr. Davis in preparing Mr. Barrack's defense.

<em>Legal Argument</em>

### *Defense Communications Involving Litigation Consultants Do Not Waive Privilege.*

As the Second Circuit has acknowledged, privileged communications may include individuals other than the defendant and his attorneys, where the other individuals facilitate counsel's provision of legal advice. *See e.g.*, *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("the presence of an accountant, whether hired by the lawyer or by the client . . . ought not destroy the privilege . . . the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."). The attorney-client privilege extends to "those assisting a lawyer in representing a client," *Gawker Media v. EJ Media Grp*., 2014 WL 1789293, at *1 (N.Y. Sup. Ct. May 6, 2014), if the communication is made in confidence and to facilitate the provision of legal advice. *See JBGR LLC v. Chicago Title Ins. Co.*, 2017 WL 3480245, at *3 (N.Y. Sup. Ct. Aug. 2, 2017); *see also McNamee, McNamee v. Clemens*, 2013 WL 6572899, at *5 (E.D.N.Y. Sept. 18, 2013).

The law also protects investigators hired by defense counsel, where they are working at the direction of counsel. *In re Grand Jury Proceeding*, 79 F. App'x 476, 477 (2d Cir. 2003) ("The attorney-client privilege may extend to communications with a third party, such as an accountant or private investigator hired to assist in the rendition of legal services."). *In re Grand Jury Subpoena Dated Mar. 20, 2013*, No. 13-MC-189, 2014 WL 2998527, at *8 (S.D.N.Y. July 2, 2014). Private investigators are "within a certain class of professionals" whose work is necessary, "or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.*; *see also U.S. Dep't of Educ. v. Nat'l Collegiate Athletic Assn.,* 481 F.3d 936, 938 (7th Cir.2007) (quoting *Kovel*, 296 F.2d at 922) ("[T]here is no private - investigator's privilege. [But][t]he lawyer-client privilege can embrace a lawyer's agents (including an investigator), for example when the 'client in the first instance consults a lawyer who

---

[1] As described in the Bowman Declaration, Mr. Davis was retained as a litigation and public relations consultant for Mr. Barrack's then-criminal defense counsel, Paul Hastings, LLC. A true and correct copy of Mr. Davis' August 2021 consulting agreement is attached as Exhibit 1 to the Bowman Declaration. Additionally, in February 2019 during the investigation of this matter, Mr. Davis and Davis Advisors, LLC were also retained by Paul Hastings as a litigation and public relations consultant. A true and correct copy is attached as Exhibit 2 to the Bowman Declaration.

retains an accountant as a listening post.' "); *In re Grand Jury Proceeding,* 79 F. App'x 476, 477 (2d Cir.2003) ("Under certain limited circumstances ... the attorney-client privilege may extend to communications with a third party, such as an accountant or private investigator hired to assist in the rendition of legal services."). A contrary conclusion would force attorneys to forego the services of private investigators, lest their communications with the investigators ultimately be revealed at the business end of a subpoena. *In re Grand Jury Subpoena Dated Mar. 20, 2013*, No. 13-MC-189, 2014 WL 2998527, at *8 (S.D.N.Y. July 2, 2014). As Judge Friendly recognized in *Kovel,* the privilege must extend to encompass the realities of modern legal practice. *See Kovel,* 296 F.2d at 920–21.

Furthermore, courts have "extend[ed] the protection of the attorney-client privilege to a party's and its counsel's communications with a public relations consultant which are directed at supporting the client's legal position." *Grand Canyon Skywalk Dev. LLC v. Cieslak*, 2015 WL 4773585, at *9 (D. Nev. Aug. 13, 2015). Here, as described in the Bowman Declaration, Mr. Davis serves as a litigation consultant with wide responsibilities, including factual investigation, media relations and consulting, at the direction of defense counsel. Indeed, with respect to a public relations consultant, the law is clear that privilege may apply. For example, the SDNY has recognized the following as valid legal purposes for which a consultant can be advised, without breaking privilege:

- o  Assisting with the law firm's representation of the client in connection with specific litigation and facilitate the rendition of legal services;

- o  Advising the client of the legal risks of speaking publicly (including in light of local rules) and of the likely legal impact of possible alternative expressions;

- o  Making efforts in support of client's seeking of acquittal or vindication; and

- o  Advisory work regarding how possible statements to the press would be reported in order to advise a client as to whether the making of particular statement would be in the client's best interest legally.

*See In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F.Supp. 2d 325, 331 (S.D.N.Y. 2003). In *In re Grand Jury Subpoenas*, the court held that communications involving media relations experts were privileged, and the court acknowledged that the practice of law can touch on public relations and media issues. *See* 265 F. Supp. at 331. The court held that whether the communications took place in the presence of the attorney was not important so long as the communication was for legal purposes. *Id.*

Thus, where Mr. Davis is included in strategic communications, alongside defense counsel, and where Mr. Barrack's litigation strategy, including evaluations of the strengths and weaknesses of the Government's charges, is being discussed, his inclusion should not serve as a waiver of the privilege that otherwise attaches to those communications. By way of example, there are multiple entries on Ms. Marckstadt's privilege log that Mr. Barrack submits are clearly privileged, even though they include Mr. Davis. *See* Ex. B, C, D. Mr. Barrack contends that these communications fall cleanly within the guidance set forth by the Second Circuit with respect to litigation consultants

and submits that these communications, and the other communications like them, need not be produced to the Government.[2]

In addition, communications between Mr. Barrack and Mr. Davis, including Ms. Marckstadt, but not including attorneys, may still fall within the privilege. Mr. Barrack agrees that not every communication between Mr. Davis and Ms. Marckstadt would constitute privileged material, nor would every communication between Mr. Davis and Mr. Barrack. But where those communications are to further defense strategy, or where they discuss privileged information, they do fall within the privilege. For example, *see* Ex. E.[3] That is especially true given that Mr. Barrack understood that Mr. Davis fell within the privilege and thus worked with him on defense strategy and approach. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig., 352 F. Supp. 3d 207, 211 (E.D.N.Y. 2019)* ("Communications fall within the exception [to third-party waiver] if the parties had a reasonable expectation of confidentiality and the third party was 'nearly indispensable or served some specialized purpose in facilitating the attorney-client communication.'")

There are approximately 288 communications on Ms. Marckstadt's privilege log that include Mr. Davis. Counsel respectfully requests that the Court reconsider its finding, as stated on October 13, 2022, that all communications with Mr. Davis are not privileged.

Sincerely,

WILLKIE FARR & GALLAGHER LLP

/s/ Michael S. Schachter
Michael S. Schachter
Randall W. Jackson
Steven J. Ballew

O'MELVENY & MYERS LLP


James A. Bowman

*Counsel for Defendant*
*Thomas J. Barrack*, *Jr.*

Cc (via ECF): Hiral D. Mehta

---

[2] Indeed, given that these communications post-date the Indictment and concern Mr. Barrack's legal strategy, they have no relevance to the Government, or the issues that the Government must prove to the jury, and their disclosure would have no impact other than to severely prejudice Mr. Barrack by giving the Government a window into defense counsel's thinking, hamstringing Mr. Barrack's efforts to mount an effective defense. That is unfair.

[3] This document is not on Ms. Marckstadt's log, as it does not include her, but is included here as an example of the types of communications between Mr. Barrack and Mr. Davis.

Nathan Daniel Reilly
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie