# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>-against-<br><br>AL MALIK ALSHAHHI, et al.,<br>Defendants. | No. 1:21-cr-000371-BMC-TAM<br><br>DECLARATION OF JAMES BOWMAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, James Bowman, hereby declare pursuant to 28 U.S.C. 1746(1) as follows:

1. I am a partner at O'Melveny & Myers, LLP and represent defendant Thomas J. Barrack in this matter. I have personal knowledge of the facts set forth herein.

2. Thomas Davis and his firm, Davis Advisors LLC, were retained in August 2021 as a litigation, crisis management, and media relations consultant for Mr. Barrack's then-criminal defense counsel, Steptoe & Johnson, LLP. A true and correct copy of Mr. Davis' August 2021 consulting agreement is attached as **Exhibit 1**. Additionally, in February 2019 during the investigation of this matter, Mr. Davis and Davis Advisors, LLC were also retained by Steptoe as a litigation and public relations consultant. A true and correct copy is attached as **Exhibit 2**.

3. When O'Melveny was retained as counsel in October 2021 and Paul Hastings withdrew as counsel of record, our firm also signed an engagement letter with Mr. Davis and Davis Advisors as a litigation consultant. A true and correct copy of that agreement is attached as **Exhibit 3**.

4. Many of the allegations in this case relate specifically to Mr. Barrack's statements and engagement with the media, including news reports, op eds, and interviews that the government has introduced into evidence in this case and identified in the indictment. In his role as a defense consultant, Mr. Davis has frequently been included on communications with Mr. Barrack and defense counsel, including counsel at Willkie Farr & Gallagher LLP and O'Melveny, provided input and analysis of defense strategy and the government's case.

5. In or about September 2021, the government produced in discovery in this case a search warrant from February 2019 for Mr. Davis' iCloud account. The fact that the government had applied for and obtained a search warrant of Mr. Davis' materials, who had been retained by counsel in 2019 and who was retained by counsel in this matter after the indictment, raised concerns that the government viewed Mr. Davis as a potential witness and that communications

between Mr. Davis, defense counsel, and Mr. Barrack may be obtained by the government or considered not-privileged.

6. On September 23, 2021, Paul Hastings sent a letter to the government raising concerns about the fact that it had obtained a search warrant in 2019 for Mr. Davis' iCloud account. Paul Hastings asserted that Mr. Davis had been a member of the privileged defense team in 2019 and asserted that the government had not objected to his role. A true and correct copy of this letter is attached as **Exhibit 4**. The government responded on October 1, 2021, asserting that it had not conceded that Mr. Davis' communications were privileged. A true and correct copy of the government's letter is attached as **Exhibit 5**. The government noted, however, that it had used a filter team and a filter review process when reviewing the materials for Mr. Davis that were obtained from the warrant.

7. In December 2021, I, along with my colleagues Dan Petrocelli and Nicole Argentieri, met with the prosecutors in this case at their office in the Eastern District of New York to discuss the case.

a. During this meeting, among other things, we raised the 2019 search warrant for Mr. Davis' materials and the government's October 1, 2021 letter.

c. We also told them that Mr. Davis had been retained after the indictment by Paul Hastings, and subsequently by O'Melveny, and asked if the government would recognize his role as a privileged consultant for the defense team or whether there would be any issue.

b. Assistant United States Attorney Sam Nitze affirmatively responded that the retention of Mr. Davis would not be a problem. The government also confirmed, again, that a filter team and process had been used to review Mr. Davis' materials from the prior search warrant.

8. Attorneys from Willkie and O'Melveny have been counsel of record for Mr. Barrack in this case from October 2021 and have been in frequent contact with counsel for the government. To my knowledge, at no point have any of the prosecutors on the case expressed concern to any defense counsel about Mr. Davis' role as a consultant for the legal defense team, nor has the government during that time period expressed the view that Mr. Davis' presence on communications rendered those communications not privileged.

9. Earlier today in Court, AUSA Nitze informed told the Court "[w]e sent legal authority to Ms. Marckstadt's counsel and said help us understand why we're wrong. There's a fair amount of authority suggesting that PR consultants don't, by virtue of being brought in by a law firm, become privilege holders. And we were just ghosted."

10. This representation was not accurate. A true and correct copy of the email correspondence between the government and counsel for Ms. Marckstadt is attached as **Exhibit 6**. That correspondence makes clear that (a) the government asked Ms. Marckstadt to provide authority, among other things, regarding claims over communications with public relations consultants, (b) Mr. Davis was not called out in this email and the specific documents identified

in the government's email invariably included a public relations firm, Lambert Media, rather than documents specific to Mr. Davis, (c) the government provided no authority against protection for such communications, and (d) Ms. Marckstadt did not "ghost" the government, but instead provided extensive authority supporting privilege for public relations consultants.

      I declare under penalty of perjury that the forgoing is true and correct.

Dated this day 14 of October 2022
in New York, New York

/s/ James Bowman
James Bowman

# Exhibits 1-3
# to the Bowman Declaration
# Submitted In Camera

# Exhibit 4
# to Bowman Declaration

PAUL HASTINGS

1(202) 551-1820
matthewherrington@paulhastings.com

September 23, 2021

**VIA ELECTRONIC MAIL**

Samuel P. Nitze, Esq.
Ryan C. Harris, Esq.
Hiral D. Mehta, Esq.
U.S. Attorney's Office for the Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Matthew McKenzie, Esq.
National Security Division
Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Re: United States v. Al Malik Alshahhi, et al., 21-CR-371 (BMC)

Dear Counsel:

On September 13, 2021, the government produced materials collected related to Thomas Davis, including his Apple ID records, email records, phone records, text message records, and web browsing history ("Davis Materials"). On April 4, 2019, in a meeting that included Nathan Reilly and Ryan Harris, we explained to the government that Mr. Davis is currently, and has been, a member of the privileged team representing Mr. Barrack. The government did not, and has not, objected to the classification of Mr. Davis as a member of the privileged team. At the time, the government did not inform us of the collection of the Davis Materials or any review procedures in place though the collection took place only three months earlier. *See* BARRACK-00062056–71 at 28–34 (warrant dated February 1, 2019 to obtain all materials within Thomas Davis' Apple ID).

We are extremely concerned. The Davis Materials were produced directly by the Prosecution Team, with no indication that the appropriate process was followed for the collection and review of potentially privileged materials. As detailed below, the government had an obligation to follow the process outlined in the Justice Manual to prevent tainting the investigation by members of the Prosecution Team reviewing privileged materials. Specifically, if the government began review of the Davis Materials before we noticed Mr. Davis' privileged status on April 4, 2019, then the government had an obligation to disclose that fact at that time and further had an obligation to follow the required process thereafter. If the government began review of the Davis Materials after April 4, 2019, the government had an obligation to follow the required process, outlined in the Justice Manual, and separate the Prosecution Team from the review.

Thus, we write to inquire as to the process that the government used in the collection and review of the Davis Materials. As you are aware, the Justice Manual outlines procedural obligations that the government must follow when reviewing potentially privileged materials. *See* Dep't Just., Justice Manual § 9-13.420 (generally, Department of Justice guidance instructs prosecutors to "ensure that privileged material are not improperly viewed, seized or retained" during the course of a search warrant).

First, the Justice Manual requires the government to receive approval – from the United States Attorney or the Assistant Attorney General for the Criminal Division and the Criminal Division through the Office of Enforcement Operations, Policy and Statutory Enforcement Unit – as a prerequisite to review potentially privileged materials. *See* Dep't Just., Justice Manual § 9-13.420. Accordingly, please confirm whether the government sought and received approval from the abovementioned entities.

Second, the Justice Manual requires the government to use a taint team consisting of agents and lawyers not involved in the investigation or prosecution team, to review potentially privileged material. *See* Dep't Just., Justice Manual § 9-13.420 ("[T]o ensure that the investigation is not compromised by exposure to privileged material relating to the investigation or to defense strategy, a 'privilege team' should be designated, consisting of agents and lawyers not involved in the underlying investigation."). As to the review of the Davis Materials, please disclose: (1) whether there was a taint team that reviewed the materials collected; (2) the individual supervising the taint team; (3) whether the taint team reviewers were attorneys or agents; (4) the affiliated agency or department of each member of the taint team; and (5) whether any members of the investigation or prosecution team were involved with the review of the Davis Materials.

Third, the Justice Manual requires the government to have instructions designed to minimize the intrusion into privileged material and ensure that the investigation and prosecution team do not view privileged materials. *See* Dep't Just., Justice Manual § 9-13.420 ("Instructions should be given and thoroughly discussed with the privilege team prior to the search. The instructions should set forth procedures designed to minimize the intrusion into privileged material, and should ensure that the privilege team does not disclose any information to the investigation/prosecution team unless and until so instructed by the attorney in charge of the privilege team."). As to the instructions provided to the reviewers of the Davis Materials, please disclose: (1) whether there were instructions; (2) what the instructions said; (3) what procedural safeguards were in place to ensure that privileged material was not seen by members of the investigation or prosecution team; (3) whether the instructions were written or recorded; (4) whether search terms or limitations were used; and (5) whether the taint team created a privilege log.

Fourth, the Justice Manual also states that the taint team must document, in advance of the review, whether potentially privileged documents will be submitted to a judicial officer or special master. *See* Dep't Just., Justice Manual § 9-13.420. Accordingly, please state: (1) whether the documents were submitted to a judicial officer or special master; (2) what documents were submitted; and (3) the rationale for the government's decision. Similarly, Rule 41(f) requires an officer executing a warrant to "prepare and verify an inventory of any property seized," and to "return [the warrant]—together with a copy of the inventory—to the magistrate judge designated on the warrant." Fed. R. Crim. P. 41(f)(1)(B), (D). Please disclose (1) whether the government used a special master in their process of reviewing the Davis Materials; (2) whether the Davis Materials were submitted to the magistrate judge; and (3) whether any Davis Materials were withheld from the magistrate judge.

Fifth, when electronic records, such as an Apple ID, are searched, the Justice Manual requires that the taint team follow the procedures set forth in the current edition of Searching and Seizing Computers. Under the section "Privileged Documents," the manual requires first that "agents should make sure that the search will not violate the Attorney General's regulations relating to obtaining confidential information from disinterested third parties," and second that "agents should devise a strategy for reviewing the seized computer files following the search so that no breach of a privilege occurs." *Id.* at 109. Under the section entitled "Strategies for Reviewing Privileged Computer Files," the CCIPs Manual provides, "Agents contemplating a search that



may result in the seizure of legally privileged computer files should devise a post-seizure strategy for screening out the privileged files and should describe that strategy in the affidavit." *Id.* at 110. It further provides, "When agents seize a computer that contains legally privileged files, a trustworthy third party must examine the computer to determine which files contain privileged material. After reviewing the files, the third party will offer those files that are not privileged to the prosecution team." *Id.*

Sixth, the Justice Manual further encourages providing copies of the seized records to the individual to whom the documents were seized. *See* Dep't Just., Justice Manual § 9-13.420. Please confirm that Mr. Davis received a copy of all documents that the government seized.

Seventh, the Justice Manual requires that the prosecution team determine that review of potentially privileged materials is the least intrusive means to obtain this evidence. *See* Dep't Just., Justice Manual § 9-13.420. Please disclose (1) the other methods considered to obtain this evidence; (2) whether the government documented their rationale for this being the least intrusive method; and (3) the government's rationale for this being the least intrusive method.

Finally, the government must implement procedural safeguards in the warrant to shield against potentially privileged information, and the warrant must state the breadth of the search with reasonable particularity. Whereas here, the warrant requests all records from Mr. Davis' Apple ID, courts find this search to be overbroad. *See, e.g.*, *United States v. Cioffi*, 668 F. Supp. 2d 385 (E.D.N.Y. 2009) (finding a warrant for the search of the defendant's e-mail account, which did not on its face limit the items to be seized to e-mails containing evidence of securities or wire fraud, was held by the court to be constitutionally overbroad). Here, the warrant sought a wide range of materials contained within Mr. Davis' Apple ID, which contains an array of materials unrelated to the claims stated in the warrant.

Please promptly (1) provide the dates on which the review of the Davis Materials began and concluded; (2) explain the process used to review the Davis Materials, including any modifications of process throughout the review; (3) provide records of decisions reached as to the privileged (or not privileged) nature of the Davis Materials; and (4) provide documentation of the procedural safeguards put in place to ensure that no member of the Prosecution Team reviewed potentially privileged Davis Materials.

Sincerely,

***/s/ Matthew J. Herrington***

Matthew J. Herrington
of PAUL HASTINGS LLP

# Exhibit 5
# to Bowman Declaration

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SPN:HDM/RCH
F. #2018R01309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 1, 2021

By E-mail

Matthew Herrington, Esq.
Phara Guberman, Esq.
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

Randall Jackson, Esq.
Michael Schachter, Esq.
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019

Re: United States v. Thomas J. Barrack, et al.
Criminal Docket No. 21-371 (BMC)

Dear Counsel:

We write in response to your letter dated Sept. 23, 2021 in which you express concerns and make requests for information relating to data obtained by the government pursuant to a search warrant for an Apple iCloud account associated with Thomas Davis.

Your purported concern and list of requests derive principally from your assertion that Mr. Davis is "a member of the privileged team" representing Mr. Barrack. We do not concede that communications involving Mr. Davis, a public relations consultant, are protected by the attorney-client privilege held by your client but nevertheless confirm that, in an abundance of caution, a filter team and an appropriate filter review process were used in connection with the referenced materials to ensure that communications involving counsel for Mr. Barrack were withheld from the prosecution team.

We respectfully decline to provide the requested details regarding our filter team process. You list a series of provisions of the Justice Manual in support of your various requests, but, as you know, the Justice Manual does not create any substantive or procedural rights for third parties and may not be relied upon to create any such rights. See, e.g., United States v. Russell, 916 F. Supp. 2d 305 (E.D.N.Y. 2013) ("[T]he U.S. Attorney's Manual is not intended to, does not,

and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal.") (quoting United States v. Goodwin, 57 F.3d 815, 818 (9th Cir. 1995)). We are aware of the relevant provisions of the Justice Manual but are unaware of any authority suggesting that defense counsel is entitled to supervise our compliance with that guidance. If you are aware of any such authority, we ask that you provide it to us.

Relatedly, we note that to date we have received and responded to approximately 20 letters from you, including a demand for a bill of particulars listing several hundred itemized requests and subsequent letters seeking various types of information that you are not entitled to under the law. Many of your letters request information without citing to any supporting legal authority. We ask that, going forward, to the extent you request information or materials from the government, you cite to applicable legal authority (if any) in support of your request.

Very truly yours,

JACQUELYN M. KASULIS
Acting United States Attorney

By: /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Assistant U.S. Attorneys
(718) 254-7000

# Exhibit 6
# to Bowman Declaration

**From:** Nitze, Samuel (USANYE) <Samuel.Nitze@usdoj.gov>
**Sent:** Tuesday, September 27, 2022 10:10 AM
**To:** Grant Gelberg; Catherine Thompson; Alisha Chandler; Jillian Song
**Cc:** Harris, Ryan (USANYE) 1; Mehta, Hiral (USANYE); Heeren, Craig (USANYE); McKenzie, Matthew (NSD)
**Subject:** [EXTERNAL] RE: U.S. v. Barrack, et al., 21-CR-371 (BMC) - Trial Subpoena Compliance

Grant,

Thank you for this. We disagree with some of your characterizations and analysis but will put that to the side for the moment, with this exception: We understand that compilations of unprivileged documents can carry work product protection. We are not asking for the compilations. But, as you know, it is standard practice to produce responsive, stand-alone documents, even if they were later compiled for attorney review. They can easily be produced without reference to the compilation. To the extent any of the compiled attachments are not privileged standing on their own (we note your phrase "in almost every instance"), we request that you fold those documents into your productions. We will hold our motion to compel until Friday based on your representation that the productions/full compliance with the subpoena will be completed by then. Could you let us know the estimated scope of the final production – that is, will it be a cleanup production with a relatively light set of documents or should we expect a substantial volume on Friday? Also, we assume this was your plan, but to confirm: we request that you update the existing privilege log with each production so that we have an up-to-date, comprehensive log, rather than individual sub-logs related to each production. We may seek in camera review of certain subsets of documents before Friday. If we do, we will confer with you before we file.

Thank you again for your work over the holiday.

Sam

---

**From:** Grant Gelberg <grant.gelberg@halpernmay.com>
**Sent:** Monday, September 26, 2022 11:50 PM
**To:** Nitze, Samuel (USANYE) <SNitze@usa.doj.gov>; Catherine Thompson <catherine.thompson@halpernmay.com>; Alisha Chandler <alisha.chandler@halpernmay.com>; Jillian Song <jillian.song@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <RHarris1@usa.doj.gov>; Mehta, Hiral (USANYE) <HMehta@usa.doj.gov>; Heeren, Craig (USANYE) <CHeeren@usa.doj.gov>; McKenzie, Matthew (NSD) <Matthew.McKenzie@usdoj.gov>
**Subject:** [EXTERNAL] Re: U.S. v. Barrack, et al., 21-CR-371 (BMC) - Trial Subpoena Compliance

**Sam,**

**While a motion to compel may be warranted where a party refuses to produce the required materials, Ms. Marckstadt is not contesting the subpoena. Instead, we have been working diligently to produce responsive documents and log privileged communications. Where Ms. Marckstadt fully intends to comply, where we have provided you with a schedule for producing materials in response to the subpoena (which you did not respond to), where we will be producing the bulk of the remaining responsive, non-privileged documents on Wednesday, and where we expect to complete our production in response to the subpoena by the end of this week, any motion would be premature and unnecessary.**

**To raise doubts about Ms. Marckstadt's diligence, you cite the amount of time that subpoena was pending. But that is misleading; we could not respond to the subpoena until the Court determined the proper scope of the government's requests in response to the motion to quash. The Court issued an order on the motion to quash less**

**than two weeks ago (September 13), substantially narrowing the government's requests. Since that time, we have produced 986 documents as well as a privilege log reflecting 366 privileged communications.**

**Your comparison to the response by Digital Bridge to Mr. Barrack's subpoena is also not a fair comparison. Digital Bridge is a multi-billion dollar company, with an in house legal team and represented by a large law firm. Ms. Marckstadt is an individual. Further, because you have sought documents from the time period that Ms. Marckstadt was a privileged consultant, there are complicated privilege issues to resolve (which we made clear in our motion to quash) that necessarily take time to resolve.**

**Nevertheless, in the hope that it will resolve your concerns (or at least narrow the issues to be resolved), we have provided responses to your specific questions below.**

Grant,

We plan to file a letter with the court early this week moving to compel completion of your compliance with the trial subpoena and seeking in camera review of a subset of the documents referenced in your privilege log. You have been under subpoena for many weeks and the pace of production, particularly given the volume of documents at issue, has been entirely unreasonable. You were required by court order to provide responsive materials at the start of trial, on September 19. Trial is now well under way. We note that subpoenas issued pursuant to Rule 17 by the defendants in this case long after your client was first under subpoena have generated productions on a far tighter timeline.

We would like to make this process as efficient as possible for you and for the Court. To that end, please provide answers to the following questions/requests or indicate that you decline to provide answers/to comply with our requests by tomorrow afternoon.

1. Please confirm that we will receive the finalized log and all responsive documents no later than Wednesday.

**Response: We will be producing approximately 650 documents on Wednesday, along with a privilege log reflecting approximately 330 documents and communications. We will follow up with what we expect will be a final privilege log and production on Friday.**

2. We assume you will be ready to produce to the court any documents we identify for in camera review – please confirm that all documents referenced in the log are prepared for efficient production to the court.

**Response: If the Court asks to see *in camera* any materials from the privilege log, those materials have been collected and we will be able to provide them.**

3. We ask that you immediately produce all documents that are responsive to the subpoena that have been withheld on the basis that they are attached to a purportedly privileged communication. As you know, once separated from their parents, underlying documents that do not themselves contain privileged material would fall outside of the work product doctrine and do not become privileged by virtue of their being sent to an attorney. See, e.g., the set of documents listed on p.12 of the log, and the set Marckstadt attaches to an email on Aug. 8, 2021 starting at bates 2430. Please let us know immediately if you take a different view and provide us with authority for your position, as we are likely to litigate this question and seek in camera review of the document attachments.

**Response: We disagree with your assertion that all attachments to a privileged email must be somehow severed from the original privileged communication and disclosed. That is not the law – under *Upjohn*, the very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected. *See, e.g., Gen. Elec. Co. v. United States*, 2015 WL 5443479, at *1 (D. Conn. 2015 ("information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege"); *Muro v.***

***Target Corp.*, 2007 WL 3254463, at *12 (N.D. Ill. 2007); *Willis Electric Co., Ltd. v Polygroup Trading, Ltd.*, 2021 WL 568454 (D. Minn. 2021); *Hilton-Rorar v. State & Fed. Commc'ns, Inc.*, 2010 WL 1486916, at *7 (N.D. Ohio 2013). The Second Circuit has also made clear that "privilege attaches not to the information but to the communication of the information." *United States v. Cunningham*, 672 F.2d 1064, 1073, n.8 (2d Cir. 1982); *see also Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *8 (S.D.N.Y. Jan. 24, 2018) (privilege applies to attachments "communicated in confidence between counsel and client for the purpose of obtaining or providing legal advice").**

**Further, in almost every instance, the attachments were materials that were compiled after the indictment as part of preparing a defense to the charges in this case. Courts have made clear that such compilations of documents are protected work product. *See Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) (agreeing that where "identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions," work product privilege is implicated); *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992) ("where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected.")**

**As courts have noted, your proposed position would allow parties to "reverse engineer" the contents of otherwise privileged communications from the attachments. *Hilton-Rorar*, 2021 WL 11486916 at *8 (forcing counsel to disclose the specific attachments on privileged emails "would undercut a bedrock principle underlying the attorney-client privilege, [which is that] the privilege [exists to encourage] clients to make full disclosure[s] to their lawyers."**

**Where responsive materials are in Ms. Marckstadt's possession, separate and aside from any privileged communication, however, those materials have been collected and produced.**

4. We are confused about many of the entries in the log. We can ask the Court to direct that you provide more detail but we hope to avoid having to seek that relief. Some examples follow:

   a. AM-0002157 is listed as a communication but there is no from, to, cc information. What sort of communication is it? Which parent does it belong to?

**Response: The metadata from this document appears to have been corrupted in some manner. We will supply a corrected log that gives the missing To, From, and Date fields that can be identified through a review of the document. All other fields (including the basis for its privilege and attorneys associated) remain unchanged from the original log entry.**

   b. When you list Date/Time created as same as parent, do you mean to represent that the attached documents were created at the same time as the parent? For example, were the documents at AM-0002229-2232 all created on April 3, 2022 at 12:33 p.m.? If not, please provide accurate dates and times (this is just an example of an issue that occurs throughout the log).

**Response: The "Date/Time Created" entry reflects the date & time the document was created as reported by the metadata of the document itself. All dates/times therefore reflect the date and time of creation as each separate document itself indicates.**

   c. Please confirm that every document described as "prepared by counsel" is a document drafted by a lawyer. We might be able to avoid in camera review if you could give us a better understanding of what these documents are (without revealing anything privileged, of course). For example, the documents described both as "prepared by counsel" and "same as parent" dated August 9, 2021 on p. 13-14 of the log.

Response: **Of the documents marked "prepared by counsel," all but two were correctly marked. For the two that were not, one was prepared at the direction of counsel and the other is with a privileged family member. We will provide corrected entries for these documents.**

d. We intend to seek in camera review of AM-0002308, 2312, 2314, 2316 and all others like them – there are many – that include several PR people on the email chain, but we are open to being persuaded that such communications are protected. There is fairly substantial caselaw rejecting claims of privileged over communications related to PR strategy so we would be interested in the authorities you rely on in this respect. We are not interested in engaging in lengthy back and forth on this and you telling us that the PR people are part of the legal team, without more, is not going to be persuasive, so please just send us your best cases/arguments or let us know that you prefer to have us go directly to the Court.

Response: **We understand that the PR professionals in this case were retained by Mr. Barrack's counsel to assist with evaluating strategy and the evidence. Courts have held that under those circumstances, communications with the PR consultant are privileged. *See In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003).**

**The allegations in this case involve media interviews, articles, and op ed pieces; the government alleges that Mr. Barrack acted as a foreign agent, in part, based on statements he made to the media. It's our understanding that Mr. Barrack's counsel retained PR consultants to assist with evaluating these statements, the context in which they were made, and analyze ongoing developments in related matters. The materials prepared by these professionals were thus done under the direction of counsel, to inform the litigation strategy.**

**The attorney-client privilege extends to "those assisting a lawyer in representing a client, such as public relations consultants and agents," *Gawker Media v. EJ Media Grp.*, 2014 WL 1789293, at *1 (N.Y. Sup. Ct. May 6, 2014), if the communication is made in confidence and to facilitate the provision of legal advice. *See JBGR LLC v. Chicago Title Ins. Co.*, 2017 WL 3480245, at *3 (N.Y. Sup. Ct. Aug. 2, 2017); *see also McNamee, McNamee v. Clemens*, 2013 WL 6572899, at *5 (E.D.N.Y. Sept. 18, 2013). Courts have "extend[ed] the protection of the attorney-client privilege to a party's and its counsel's communications with a public relations consultant *which are directed at supporting the client's legal position*." *Grand Canyon Skywalk Dev. LLC v. Cieslak*, 2015 WL 4773585, at *9 (D. Nev. Aug. 13, 2015) (emphasis added).**

**Because the analysis the PR professionals provided here was "directed at handling . . . legal problems," it is protected under attorney-client and work product privileges. *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003).**

We look forward to your prompt response tomorrow. We are available to confer by phone if helpful.

Best regards,

Sam

______________________________________

Sam Nitze
Assistant United States Attorney/Sr. Trial Counsel
United States Attorney's Office, EDNY
271-A Cadman Plaza East, Brooklyn, NY 11201
Desk: (718) 254-6465
Cell: (718) 749-8674

---

**From:** Nitze, Samuel (USANYE) <Samuel.Nitze@usdoj.gov>
**Date:** Monday, September 26, 2022 at 11:49 AM

**To:** Grant Gelberg <grant.gelberg@halpernmay.com>, Catherine Thompson <catherine.thompson@halpernmay.com>, Alisha Chandler <alisha.chandler@halpernmay.com>, Jillian Song <jillian.song@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <Ryan.Harris2@usdoj.gov>, Mehta, Hiral (USANYE) <Hiral.Mehta@usdoj.gov>, Heeren, Craig (USANYE) <Craig.Heeren@usdoj.gov>, McKenzie, Matthew (NSD) <Matthew.McKenzie@usdoj.gov>
**Subject:** [EXTERNAL] RE: U.S. v. Barrack, et al., 21-CR-371 (BMC) - Trial Subpoena Compliance

Grant,

Understood. We very much regret that we have been put in a position where we have to disturb your holiday, and we appreciate your efforts to get us a response today. Our current plan is to file our motion tomorrow, and we will of course incorporate any new information we have by then.

Best regards,

Sam

---

**From:** Grant Gelberg <grant.gelberg@halpernmay.com>
**Sent:** Monday, September 26, 2022 1:36 PM
**To:** Nitze, Samuel (USANYE) <SNitze@usa.doj.gov>; Catherine Thompson <catherine.thompson@halpernmay.com>; Alisha Chandler <alisha.chandler@halpernmay.com>; Jillian Song <jillian.song@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <RHarris1@usa.doj.gov>; Mehta, Hiral (USANYE) <HMehta@usa.doj.gov>; Heeren, Craig (USANYE) <CHeeren@usa.doj.gov>; McKenzie, Matthew (NSD) <Matthew.McKenzie@usdoj.gov>
**Subject:** [EXTERNAL] Re: U.S. v. Barrack, et al., 21-CR-371 (BMC) - Trial Subpoena Compliance

Sam,

We are gathering information in response to your email. The Rosh Hashanah holiday (which impacts me) is affecting our timing, but we are doing our level best to write back to you later today.

Best,
Grant

---

**From:** Nitze, Samuel (USANYE) <Samuel.Nitze@usdoj.gov>
**Date:** Sunday, September 25, 2022 at 8:43 PM
**To:** Grant Gelberg <grant.gelberg@halpernmay.com>, Catherine Thompson <catherine.thompson@halpernmay.com>, Alisha Chandler <alisha.chandler@halpernmay.com>, Jillian Song <jillian.song@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <Ryan.Harris2@usdoj.gov>, Mehta, Hiral (USANYE) <Hiral.Mehta@usdoj.gov>, Heeren, Craig (USANYE) <Craig.Heeren@usdoj.gov>, McKenzie, Matthew (NSD) <Matthew.McKenzie@usdoj.gov>
**Subject:** [EXTERNAL] U.S. v. Barrack, et al., 21-CR-371 (BMC) - Trial Subpoena Compliance

Grant,

We plan to file a letter with the court early this week moving to compel completion of your compliance with the trial subpoena and seeking in camera review of a subset of the documents referenced in your privilege log. You have been under subpoena for many weeks and the pace of production, particularly given the volume of documents at issue, has been entirely unreasonable. You were required by court order to provide responsive materials at the start of trial, on

September 19. Trial is now well under way. We note that subpoenas issued pursuant to Rule 17 by the defendants in this case long after your client was first under subpoena have generated productions on a far tighter timeline. We would like to make this process as efficient as possible for you and for the Court. To that end, please provide answers to the following questions/requests or indicate that you decline to provide answers/to comply with our requests by tomorrow afternoon.

1. Please confirm that we will receive the finalized log and all responsive documents no later than Wednesday.
2. We assume you will be ready to produce to the court any documents we identify for in camera review – please confirm that all documents referenced in the log are prepared for efficient production to the court.
3. We ask that you immediately produce all documents that are responsive to the subpoena that have been withheld on the basis that they are attached to a purportedly privileged communication. As you know, once separated from their parents, underlying documents that do not themselves contain privileged material would fall outside of the work product doctrine and do not become privileged by virtue of their being sent to an attorney. See, e.g., the set of documents listed on p.12 of the log, and the set Marckstadt attaches to an email on Aug. 8, 2021 starting at bates 2430. Please let us know immediately if you take a different view and provide us with authority for your position, as we are likely to litigate this question and seek in camera review of the document attachments.
4. We are confused about many of the entries in the log. We can ask the Court to direct that you provide more detail but we hope to avoid having to seek that relief. Some examples follow:
    a. AM-0002157 is listed as a communication but there is no from, to, cc information. What sort of communication is it? Which parent does it belong to?
    b. When you list Date/Time created as same as parent, do you mean to represent that the attached documents were created at the same time as the parent? For example, were the documents at AM-0002229-2232 all created on April 3, 2022 at 12:33 p.m.? If not, please provide accurate dates and times (this is just an example of an issue that occurs throughout the log).
    c. Please confirm that every document described as "prepared by counsel" is a document drafted by a lawyer. We might be able to avoid in camera review if you could give us a better understanding of what these documents are (without revealing anything privileged, of course). For example, the documents described both as "prepared by counsel" and "same as parent" dated August 9, 2021 on p. 13-14 of the log.
    d. We intend to seek in camera review of AM-0002308, 2312, 2314, 2316 and all others like them – there are many – that include several PR people on the email chain, but we are open to being persuaded that such communications are protected. There is fairly substantial caselaw rejecting claims of privileged over communications related to PR strategy so we would be interested in the authorities you rely on in this respect. We are not interested in engaging in lengthy back and forth on this and you telling us that the PR people are part of the legal team, without more, is not going to be persuasive, so please just send us your best cases/arguments or let us know that you prefer to have us go directly to the Court.

We look forward to your prompt response tomorrow. We are available to confer by phone if helpful.

Best regards,

Sam

________________________________________

Sam Nitze
Assistant United States Attorney/Sr. Trial Counsel
United States Attorney's Office, EDNY
271-A Cadman Plaza East, Brooklyn, NY 11201
Desk: (718) 254-6465
Cell: (718) 749-8674

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.