UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MALIK ALSHAHHI, et al.<br><br>    Defendants. | Case No.: 1:21-cr-00371-BMC-TAM |

# DEFENDANT THOMAS J. BARRACK'S TRIAL BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A CURATIVE JURY INSTRUCTION

WILLKIE FARR & GALLAGHER LLP

Michael Steven Schachter
Randall Wade Jackson
Steven J. Ballew
787 Seventh Avenue
New York, NY 10019-6099
mschachter@willkie.com
(212) 728-8000 (ph)
(212) 728-8111 (fax)

O'MELVENY & MYERS LLP

James A. Bowman (admitted *pro hac vice*)
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
jbowman@omm.com
(213) 430-6000 (ph)
(213) 430-6407 (fax)

*Counsel for Thomas J. Barrack, Jr.*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................3

    I.    COUNSEL'S OPENING STATEMENT WAS PROPER .............................................3

        A.    Counsel's Statement Asked The Jury To Draw A Permissible Inference ...............3

        B.    Counsel's Opening Statement Did Not Implicate CIPA's Restrictions On The Use Of Classified Information ................................................................................6

    II.    THE COURT'S INSTRUCTION COMPOUNDED THE PREJUDICE TO MR. BARRACK AND WARRANTS AN ADDITIONAL INSTRUCTION TO THE JURY ..........................................................................................................................11

CONCLUSION ............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                          Page(s)

*Bogan v. Nw. Mut. Life Ins. Co.,*
    144 F.R.D. 51 (S.D.N.Y. 1992) ........................................................................................................4

*Bouzo v. Citibank, N.A.,*
    No. 88 Civ. 1446 (VLB), 1993 WL 525114 (S.D.N.Y. Dec. 13, 1993) ................................5, 6

*Garcia v. Sklar (In re Sklar),*
    2022 WL 256793 (Bankr. S.D.N.Y. Jan. 27, 2022) ................................................................4

*Graves v. United States,*
    150 U.S. 118 (1893) ................................................................................................................4

*Interstate Circuit, Inc. v. United States,*
    306 U.S. 208 (1939) ................................................................................................................4

*In re Terrorist Bombings of U.S. Embassies in E. Afr.,*
    552 F.3d 93 (2d Cir. 2008) ......................................................................................................6

*United States v. Abu Ali,*
    528 F.3d 210 (4th Cir. 2008) ................................................................................................8, 9

*United States v. Abu-Jihaad,*
    No. 3:07CR57 (MRK), 2008 WL 346121 (D. Conn. Feb. 4, 2008) ........................................6

*United States v. Mahone,*
    537 F.2d 922 (7th Cir. 1976) ...................................................................................................5

*United States v. Pappas,*
    94 F.3d 795 (2d Cir. 1996) ....................................................................................................10

*United States v. Smith,*
    780 F.2d 1102 (4th Cir. 1985) .................................................................................................6

**Statutes**

18 U.S.C. App. III § 5 ....................................................................................................................10

18 U.S.C. App. III § 6(c) .................................................................................................................7

**Other Authorities**

George Lakoff, *The All New Don't Think of an Elephant!* 1 (2014) .............................................13

*Graymail Legislation: Hearings Before the Subcomm. on Legislation of the House
    Permanent Select Comm. on Intelligence*, 96th Cong., 1st Sess. 4-5 (1979) ..........................11

2 *McCormick On Evidence* § 264 (8th ed.)......................................................................................4

2 *Wigmore on Evidence* § 285 (Chadbourn rev. 1979).....................................................................4

Defendant Thomas J. Barrack respectfully submits this memorandum of law (i) in support of the instruction the Court indicated it would give on the issue of classified information; and (ii) as a trial brief regarding the Court's treatment of classified evidence.

**INTRODUCTION**

During the opening statement of Mr. Barrack's counsel, the Court sustained an objection to counsel's statement that "[t]his is a country with the NSA and the CIA. You should expect to see intercepted communications in which--." 9/21 Tr. 385:12-13. The Court explained that it viewed counsel's statement as improper because counsel could not "say the CIA or the NSA, with all their resources, would have had something." *Id.* at 428. That was "not necessarily true," the Court reasoned, "[b]ecause the government may have decided it has extremely inculpatory information but it's not going to use it." *Id.* The Court thus delivered a modified version of the government's proposed jury instruction, telling the jury that "there are many reasons why the government may not want to introduce evidence as to classified information in a public criminal trial" and that "[w]e don't know" whether there is "stuff that the government held back." *Id.* at 437. After that moment, at different points in the trial, Defendants objected to interjections on the part of the government that seemed to underscore the possible existence of inculpatory classified information that the jury could not see. (*e.g.*, Tr. 1506) (Government: "Q. Okay. And **without getting into classified information**, what was the conclusion?") (emphasis added); (Tr. 1781-82) (Defense: "I'm not trying to say that this was intentional, but there was a portion during Mr. Tillerson's testimony yesterday where Mr. Mehta prefaced a question by saying, Classified information aside, and then proceeded to the question. This, for us, raises – that type of formulation of a question -- raises for us the concern that we highlighted earlier. We don't think it's appropriate to suggest to the jury, even in that sort of casual way, that there could be classified information relevant to this case that the jury is not being exposed to."). The Court noted that it would give the

1

jury a curative or limiting instruction on the issue. (Tr. 1793) ("THE COURT: But then I really do see the defense's point. It's not that big a deal because it was just a preface to a question and there have been lots of questions and it won't mean anything to the jury and **I will give the jury an instruction on it with the charge**. But you do have to stay away from that. MR. MEHTA: Yes, your Honor. I was trying to be careful, that's all. THE COURT: I know. You tried to be careful and you erred too much the other way") (emphasis added).

Mr. Barrack submits this memorandum of law for two reasons. *First*, the issues raised by the government's objection to counsel's opening statement can be expected to appear again in the future when the Court is asked to rule on proposed jury instructions and during closing arguments. Mr. Barrack therefore submits this memorandum as a trial brief on these important issues. As we explain in detail below, we respectfully disagree with the Court's conclusion that counsel's opening statement was improper and we urge the Court to reconsider its view. Counsel's statement previewed for the jury that at the end of the case, it would be asked to draw a permissible inference regarding the evidence that the government introduced at trial. In particular, counsel explained that Mr. Barrack would ask the jury to conclude that, because one would expect to see corroboration from intelligence intercepts if the government's allegations against Mr. Barrack were true, the fact that the government would not offer any such intercepts is a reason to infer that those allegations are false. Federal courts routinely permit parties to ask juries to draw those inferences. And *nothing* in the Classified Information Procedures Act ("CIPA") precludes them from doing so. To the contrary, as this Court has previously emphasized, CIPA is a purely procedural statute that does not alter a defendant's substantive rights. CIPA therefore cannot be construed to foreclose a line of defense that would otherwise be available to Mr. Barrack.

*Second*, the instruction that the Court delivered to the jury reinforced the ruling on counsel's opening statement, which we respectfully submit was incorrect, and then compounded the prejudice to Mr. Barrack by suggesting the possibility that classified information exists that the government has simply chosen not to offer in this case. That instruction places the defense in the impossible position of seeking to prove a negative and negate undisclosed, non-existent evidence that the government will never offer in this case. This point took on even more importance and urgency after Rule 29 arguments, since the Government made clear that it intends to argue, *with no evidence whatsoever*, that the defendants could have engaged in conversations over an "app" from the UAE that were not intercepted. Given this, the prejudice to the defendants is severe in not being allowed to fully point out the lack of evidence per the prior instruction. Although the prejudice to Mr. Barrack's defense cannot be eliminated, we respectfully urge the Court to deliver a further instruction that would help to reduce that prejudice.

**ARGUMENT**

**I.  COUNSEL'S OPENING STATEMENT WAS PROPER**

   **A.  Counsel's Statement Asked The Jury To Draw A Permissible Inference**

Counsel's opening statement asked the jury to draw a straightforward—and time-honored—inference from the proof that the defense anticipated would be presented at trial in this case. The relevant chain of reasoning proceeds as follows:

   1. In light of the substantial intelligence-gathering capabilities of the U.S. government, if the prosecution's account of events were correct, then one would expect that account to be corroborated by intercepted communications.

   2. The government is not expected to offer any such intercepted communications at trial.

   3. The government's failure to offer any such intercepted communications at trial, under circumstances in which such communications would naturally be expected to corroborate the government's account of events if it were correct, should lead the jury to infer that the government's account is not in fact correct.

3

We expect that, in most circumstances, this chain of reasoning would be uncontroversial. The inference that counsel asked the jury to draw is logically sound. Indeed, it is simply common sense to conclude that, when there is a type of evidence that would naturally be expected to corroborate a party's allegations if they were true, the absence of such evidence tends to suggest that that the allegations are false.

That is why the law has long permitted juries to draw just this sort of inference: "When it would be natural under the circumstances for a party . . . to produce documents or other objects in his or her possession as evidence and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference." 2 *McCormick On Evidence* § 264 (8th ed.).[1] That rule derives from courts' recognition that "[t]he production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939); *see also, e.g.*, *Graves v. United States*, 150 U.S. 118, 121 (1893) ("The rule . . . is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."). The rule applies both to the failure to produce a witness[2] and the failure to produce documentary evidence.[3]

---

[1] *See also* 2 *Wigmore on Evidence* § 285 (Chadbourn rev. 1979) ("The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so; and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.").

[2] *See, e.g.*, *Graves*, 150 U.S. at 121; *Garcia v. Sklar (In re Sklar)*, Adv. Proc. No. 20-01318 (MG), 2022 WL 256793, at *8 (Bankr. S.D.N.Y. Jan. 27, 2022) ("Sklar failed to produce the only witness who could have corroborated Sklar's hearsay assertion . . . [so] the Court presumes that [the witness's] testimony would have been detrimental to Sklar's case.").

[3] *See, e.g.*, *Bogan v. Nw. Mut. Life Ins. Co.*, 144 F.R.D. 51, 55 (S.D.N.Y. 1992) ("Adverse inferences might also be drawn from failure to produce evidence within the control of a party; such

4

And at least one appellate court has held that a district court's refusal to allow the defendant's counsel to draw attention in his closing to the failure to produce a relevant government witness was error. *See United States v. Mahone*, 537 F.2d 922, 927-28 (7th Cir. 1976).

Indeed, this Court itself recognized the validity of this type of argument in the course of resolving Defendant Grimes's CIPA § 5 notice. *See* Dkt. No. 224. Grimes sought to question witnesses at trial regarding classified records because he "believe[d] that a dearth of such [classified] records would be evidence of his innocence." *Id.* at 3. In particular, Grimes argued that this line of questioning was proper because the absence of such records would "show[] that neither the UAE nor the U.S. Government considered him an agent of the UAE." *Id.* The Court concluded, however, that "Grimes does not need this evidence to make his point" because the relevant question is "whether the Government will introduce any inculpatory classified evidence to prove its case." *Id.* at 6. Thus, the Court explained, Grimes is "free to argue" that the government's (anticipated) failure to offer classified records mentioning Grimes "means that the Government has not proved its case beyond a reasonable doubt." *Id.*

Critically, the Court held that Grimes *could* argue to the jury not only (1) that "you have not seen a single document from the Government mentioning Grimes," but also (2) that "one would expect that if Grimes were as deeply involved in this as the Government contends, there would be abundant documentation showing you that" and "the Government hasn't shown you any such thing." *Id.* at 6. Put another way, the Court permitted Grimes to argue that the jury should take an "adverse inference" from "documents . . . [that were] within the exclusive or primary control

---

inferences might refer to specific matters or to the entire case. "); *Bouzo v. Citibank, N.A.*, No. 88 Civ. 1446 (VLB), 1993 WL 525114, at *1 (S.D.N.Y. Dec. 13, 1993) ("Where documents, witnesses, or information of any kind relevant issues in litigation is or was within the exclusive or primary control of a party and is not provided, an adverse inference can be drawn against the withholding party. ").

5

of [the government] and [were] not provided." *Bouzo*, 1993 WL 525114, at *1. That tracks the common-sense logic that Mr. Barrack's counsel sought to invoke here: Whereas argument (1) focuses exclusively on the absence of evidence in the government's case-in-chief, argument (2) goes further by emphasizing that this absence of evidence is contrary to what one would expect to see if the government's allegations were true, which in turns offer an additional reason to infer that those allegations are false. That is precisely the point that counsel sought to make here.

\* \* \* \* \*

For all of these reasons, well-settled principles of evidence law—reinforced by this Court's own prior ruling—make clear that counsel's opening statement previewed for the jury that at the end of the case, it would be asked to draw a permissible inference regarding the evidence that the government introduced at trial. As a general matter, asking the jury to draw that inference is entirely proper, and Mr. Barrack would ordinarily be permitted to pursue this line of defense at trial. If a different result were nonetheless warranted here, it could be justified only by CIPA's restrictions on the use of classified information at trial. As we explain below, however, CIPA does not justify any such departure from the ordinary rules of evidence.

### B. Counsel's Opening Statement Did Not Implicate CIPA's Restrictions On The Use Of Classified Information

Any suggestion that CIPA forecloses a line of argument that would otherwise be open to a criminal defendant fails because the CIPA merely "establishes rules for the management of criminal cases involving classified information*," In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 115 (2d Cir. 2008), without effecting any "substantive change in the law of evidence." *United States v. Smith*, 780 F.2d 1102, 1109 (4th Cir. 1985); *see also, e.g.*, *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *3 (D. Conn. Feb. 4, 2008) ("CIPA is a procedural statute" that "neither grants new substantive rights nor limits existing

ones."). As this Court has correctly observed, "CIPA neither creates new discovery rights nor expands the rules governing the admissibility of evidence." MIL Op. at 4 (citing *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005); *United States v. Johnson*, 139 F.3d 1359, 1365-66 (11th Cir. 1998); *Smith*, 780 F.2d at 1106).

Indeed, any other reading of CIPA would conflict with the basic principle that a criminal defendant must be left with "substantially the same ability to make his defense" that he would have absent application of CIPA's restrictions on the disclosure and use of confidential information at. MIL Op. 4; *see also* 18 U.S.C. App. III § 6(c) (providing that Court may authorize government to proceed with substitutes for classified information only when the substitution "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information"). To state the obvious, invoking CIPA to foreclose a line of defense that would otherwise be available results in substantial *prejudice* to a criminal defendant. It plainly does not leave the defendant in substantially the same position that he would be in without CIPA.

This Court nonetheless sustained the government's objection to counsel's opening statement based on a conclusion that it was improper for counsel to "say the CIA or the NSA, with all their resources, would have had something." 9/21 Tr. 428. The Court stated that this premise was "not necessarily true . . . [b]ecause the government may have decided it has extremely inculpatory information but it's not going to use it." *Id.*

With deepest respect, the Court's rationale is in conflict with CIPA's operation. To be sure, in the event that inculpatory classified information exists, the government has the discretion to *use or decline to use* that information in order to avoid disclosing it in a public forum (and the need for disclosure to the defense in pre-trial discovery). Indeed, the Government has exercised

7

that discretion in numerous cases and introduced information that it has declassified. *See, e.g., United States v. Abu Ali*, 528 F.3d 210, 249 (4th Cir. 2008) ("the government provided Abu Ali's uncleared defense counsel with slightly redacted copies of the classified documents, which it described as '**newly declassified communications** between the defendant and Sultan Jubran Sultan al-Qahtani occurring on May 27, 2003, and June 6, 2003,' in their Arabic versions and with English translations, and advised counsel of the government's '**inten[t] to offer these communications into evidence at tria**l as proof that the defendant provided material support to al-Qaeda.' SCA 107. The first declassified document was dated May 27, 2003."). The existence of the Government's discretion as to whether to use classified information or not, as it did in *Abu Ali*, means only that the government is *entitled to make a decision*. It cannot relieve the government of the evidentiary consequences of whatever decision it makes. CIPA cannot be both sword and shield for the government. Indeed, in *Abu Ali*, the Fourth Circuit cautioned district courts against extending to the Government rights under CIPA not explicitly authorized by the statute. *Abu Ali*, 528 F.3d at 254 ("The error in the case, which appears to have originated in the October 2005 CIPA proceeding, was that CIPA was taken one step too far."). The Fourth Circuit observed that, specifically, in *Abu Ali* "for reasons that remain somewhat unclear to us, the district court granted the government's request that the complete, unredacted classified document could be presented to the jury via the 'silent witness' procedure. The end result, therefore, was that the jury was privy to the information that was withheld from Abu Ali." *Id.* The Fourth Circuit explained that so limiting the defendant's rights was error because it extended beyond the explicit areas of protection of classified information in the statute a protection that infringed on the defendant's trial rights, observing "CIPA contemplates and authorizes district courts to **prevent the disclosure of classified information**, as was done in this case, **so long as it does not deprive the defendant of**

**a fair tria**l." *Id.* at 255 (emphasis added). Nothing about the argument defense counsel made in opening statement exposed classified information, but the curtailing of Mr. Barrack's right to identify gaps in the government's presentation has curtailed, and will continue to curtail as the case grows closer to its conclusion, Mr. Barrack's right to a fair trial.

Indeed, the Fourth Circuit emphasized the problems with essentially exactly what the Government is doing here, noting that "there is a stark difference between *ex parte* submissions from prosecutors which protect the disclosure of irrelevant, nonexculpatory, or privileged information, and situations in which the government seeks to use *ex parte* information in court as evidence to obtain a conviction. *Id.* (citing *United States v. Claudio*, 44 F.3d 10, 14 (1st Cir. 1994) ("The notion that the government can have a defendant's defense dismissed based on government evidence that the defendant is not allowed to see goes even further than the withholding of irrelevant or privileged information . . . [t]he idea that general safeguards against wide-ranging discovery like the Jencks Act and Rule 6 **would be sufficient to justify a conviction on secret evidence is patently absurd**.") (emphasis added). Where, as here, the Government attempts to use CIPA to prevent Defendants from pointing out the lack of information from any intelligence agencies, the Government is effectively using the suggestion of the existence of inculpatory *ex parte* information to secure a conviction. That is contrary to law and Defendants's fundamental rights.

The fact is that in this case the government does not intend to offer intelligence intercepts implicating Mr. Barrack even though one would naturally expect those intercepts to exist if the government's allegations were true. As a logical matter, the government's failure of proof will tend to support an inference that the government's allegations are false. *See supra* Section 1(A). Foreclosing counsel's ability to invoke that common-sense inference—based on unsupported

speculation that contrary evidence *might* exist after all, but the government has not seen fit to introduce it—would alter Mr. Barrack's substantive rights in a way that CIPA does not countenance, and that no court has ever found is appropriate under law.

For similar reasons, there is no merit to the government's suggestion that counsel's argument amounted to "quintessential graymail." 9/21 Tr. 427:3. The government misled the Court about the nature of "graymail" as that term was understood in the process of enacting CIPA. The "problem of so-called graymail" refers to "a threat by the defendant to disclose classified information in the course of trial." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (quoting S. Rep. No. 823, 96th Cong., 2d Sess. 2). That threat can put the government in an impossible position, such as when the defense "press[es] for the release of sensitive classified information the threatened disclosure of which might force the government to drop the prosecution." *Id.* (quoting S. Rep. No. 823, 96th Cong., 2d Sess. 2). CIPA addresses that concern by "requiring a ruling on the admissibility of the classified information before trial," *id.* ((quoting S. Rep. No. 823, 96th Cong., 2d Sess. 2), facilitated by a requirement of pre-trial notice, *see* 18 U.S.C. App. III § 5, and by permitting the government to take an interlocutory appeal from adverse decisions, *see id.* § 7(a). As noted above, CIPA also authorizes the government to provide the defendant with substitutes for classified information when doing so does not substantially prejudice the defendant's ability to make a defense. *See id.* § 6(c).

The "graymail" risk derived from *uncertainty* regarding what classified information might have to be disclosed as a result of evidentiary determinations made as a criminal trial unfolded. As the Assistant Attorney General for the Criminal Division explained to Congress before CIPA's enactment, "[w]ithout a procedure for pretrial ruling on the disclosure of classified information, the deck [was] stacked against proceeding with these cases because all of the sensitive items that

might be disclosed at trial must be weighed in assessing whether the prosecution is sufficiently important to incur national security risks." *Graymail Legislation: Hearings Before the Subcomm. on Legislation of the House Permanent Select Comm. on Intelligence*, 96th Cong., 1st Sess. 4-5 (1979). CIPA is a procedural mechanism for resolving that uncertainty before trial, thereby permitting the government to reach an informed *decision* on whether to proceed with the prosecution. This is all about a decision the Government is entitled to make – it is not about curtailing a defendant's rights at trial to argue the absence of evidence.

No similar "graymail" concerns are implicated here. Instead, the government's real complaint seems to be that, by calling the jury's attention to the absence of classified intelligence intercepts, Mr. Barrack's line of defense would incentivize the government to introduce classified information. The government could seek to introduce either classified intelligence intercepts, to the extent they exist, or classified information regarding the government's intelligence-gathering operations as part of an effort to explain away the absence of intercepts. But this dynamic simply means that the government must make a decision about what evidence to introduce and then live with the consequences of its own litigation decisions. Because the decision of whether or not to disclose classified information is left up to *the government*, this situation has nothing to do with the "graymail" concern that *the defendant's* actions may lead to an unanticipated disclosure of sensitive confidential information. There is accordingly no sound reason to foreclose Mr. Barrack from arguing to the jury that the government's failure to introduce intelligence intercepts supports an inference that the government's allegations are false.

**II.   THE COURT'S INSTRUCTION COMPOUNDED THE PREJUDICE TO MR. BARRACK AND WARRANTS AN ADDITIONAL INSTRUCTION TO THE JURY**

After sustaining the government's objection to counsel's opening statement, the Court delivered the following instruction to the jury:

> Secondly, you heard a reference during the last opening argument by Mr. Schachter in which he made a reference to certain classified information. Now, the fact of the matter is, there are many reasons why the government may not want to introduce evidence as to classified information in a public criminal trial; however, that doesn't mean there is such information. I don't want you thinking about, well, gee, is there stuff that the government held back or is there stuff that exists out there? We don't know. It doesn't really matter, okay. What matters is you listen to the evidence that the government is going to put into this case and you decide if that evidence is sufficient to prove the defendants' guilt beyond a reasonable doubt.

9/21 Tr. 437:20-438:7.

While we deeply appreciate the Court's careful weighing of the complex issues in this trial, the government's improper objection put the Court in an impossible position, forced to rule quickly on an objection that should never have been made, and ultimately to give an instruction that presents serious problems. As an initial matter, the instruction reinforced the ruling on counsel's opening statement. As we have explained above, if the jury finds that the government's allegations against Mr. Barrack would naturally be corroborated by intelligence intercepts if they were true, then it is permissible for the jury to infer from the absence of intelligence intercepts that the allegations are false. *See supra* Section 1(A). By directing the jury not to consider the absence of classified information, the Court's instruction forecloses that permissible inference. Indeed, the instruction virtually invites the jury to draw the *opposite* inference because it directs the jury to accept—as "the fact of that matter"—that "there are many reasons why the government may not want to introduce evidence as to classified information in a public criminal trial."

The instruction also compounds the prejudice to Mr. Barrack because it creates a risk that the jury will speculate about the existence of inadmissible on nonexistent evidence against Mr. Barrack. To be sure, the Court noted that the jury should "listen to the evidence that the government is going to put into this case." The Court also stated that "I don't want you thinking about, well, gee, is there stuff that the government held back or is there stuff that exists out there." But that well-intentioned direction is bound to be self-defeating. Telling the jury that it should not

12

ask "is there stuff that the government held back" all but guarantees that the jury will ask itself precisely that question.[4] That risk is especially acute because the instruction effectively excuses the government's failure to offer classified evidence by telling the jury that "there are many reasons why the government may not want to introduce evidence as to classified information in a public criminal trial" and that "[w]e don't know" whether such evidence exists.

The possibility of such speculation effectively reverses the burden of proof in this case. Faced with the risk that the jury will assume that the government has undisclosed evidence that it has "many reasons" not to offer, the defense must attempt to prove a negative and negate non-existent evidence that the government will not introduce. We understand that this was not the Court's intent, but the unfortunate reality is that the instruction places the defense in this impossible position.

Under these circumstances, we respectfully submit that the following instruction to the jury is warranted to address these issues:

> At the outset of the case, I sustained an objection during Mr. Schachter's opening and gave you an instruction regarding arguments about the absence of information from intelligence sources, such as the CIA or NSA. You should disregard that instruction. The defense is entitled to argue all appropriate inferences based on the lack of evidence, including the lack of evidence from intelligence sources. It is up to you to decide whether these arguments are consistent with the evidence or lack of evidence.
>
> You should decide this case based only on the evidence that is introduced at trial. At the end of the trial, you will decide whether the evidence introduced by the government is sufficient to prove the defendants' guilt beyond a reasonable doubt. You should not speculate that any evidence exists that is not introduced at trial.

---

[4] The Court's instruction presents the jury with an impossible task:

> When I teach the study of framing . . . in Cognitive Science 101, the first thing I give my students is an exercise. The exercise is: Don't think of an elephant! Whatever you do, do not think of an elephant. I've never found a student who is able to do this.

George Lakoff, *The All New Don't Think of an Elephant!* 1 (2014).

13

> In addition, if you find that there is evidence that you would expect to see if the government's allegations were true, but the government has not offered that evidence at trial, you may treat that as a reason to find that the government's allegations have not been proven.

The first two paragraphs of the proposed instruction would address the issue created by the first instruction and reduce the risk that the jury will speculate about the possible existence of evidence that the government does not introduce at trial. The third paragraph would correctly instruct the jury that it may draw a negative inference from the government's failure to offer evidence of the sort that one would naturally expect to see if the government's allegations were true. Particularly given that the government, as it emphasized in arguing Rule 29, intends to argue to the jury that the jury can infer the possible existence of communications that the government never intercepted, the government cannot be allowed to hide behind a CIPA protection that does not exist.

## CONCLUSION

The Court should permit Mr. Barrack's counsel to ask the jury to draw a negative inference from the government's anticipated failure to offer intelligence intercepts into evidence at trial and should deliver the instruction requested above.

Dated: October 20, 2022
　　　　New York, New York

| WILLKIE FARR & GALLAGHER LLP | O'MELVENY & MYERS LLP |
|---|---|
| /s/ Randall W. Jackson | James A. Bowman (admitted *pro hac vice*) |
| Michael Steven Schachter | 400 South Hope Street, 18th Floor |
| Randall Wade Jackson | Los Angeles, CA 90071 |
| Steven J. Ballew | jbowman@omm.com |
| 787 Seventh Avenue | (213) 430-6000 (ph) |
| New York, NY 10019-6099 | (213) 430-6407 (fax) |
| mschachter@willkie.com | |
| (212) 728-8000 (ph) | |
| (212) 728-8111 (fax) | |

*Counsel for Thomas J. Barrack, Jr.*