# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 23, 2022

***VIA ECF***

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *United States v. Rashid Sultan Rashid Al Malik Alshahhi*, et al., 1:2l-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

Defendants submit this letter to set forth Defendants' objections to the Government's Requests to Charge, which were filed at Dkt. 274 (Gov't Proposed Instructions). Defendants' Objections to the Government's Proposed Instructions are set forth in Section I and II below.

In addition, Defendants briefly respond to the Government's October 4, 2022 letter (hereafter, the "Gov't Objections") filed at Dkt. 288, objecting to Defendants' Requests to Charge, which were filed at Dkt. 273. The Government's Objections largely ignore the extensive footnotes that Defendants submitted with their instructions, explaining why their proposed instructions are appropriate. Defendants' proposed jury instructions accurately state the law and were tailored to help this jury fairly evaluate the law and the facts that are at issue in this case. Of course, the Government can identify other variations of instructions that have passed muster in other cases, but the Court's goal should be to give the most appropriate instructions for this case. Nor is there any reason not to try to improve upon jury instructions, and to do a better job of more clearly conveying the law to a jury than courts have done in the past. Defendants' brief response to the Government's Objections is set forth in Section III below but Defendants are prepared to address these issues at greater length at the charge conference.

Attached as Exhibit A to this letter is a set of revised Proposed Instructions from Defendants, which takes into account certain objections from the Government that Defendants agreed with, and which includes a few additional proposed items that Defendants now believe are necessary, given how the evidence has come in. Attached as Exhibit B is a redline showing the revisions made to Defendants' Proposed Instructions, as compared to the Instructions submitted on September 28.

## I.   DEFENDANTS' OBJECTIONS TO THE GOVERNMENT'S PROPOSED INSTRUCTIONS (DKT. 274)

As an initial matter, Defendants respectfully request that the Court adopt in their entirety the text of the requests set forth in Defendants' Proposed Jury Instructions, filed at Dkt. 273 ("Def's Prop. Instructions") and object to the Government's Proposed Instructions to the extent they are inconsistent with Defendants' Proposed Instructions.  In particular, Defendants wish to raise with the Court the following objections which reflect what Defendants believe to be serious errors in the Government's Proposed Instructions.

### *Government's Request No. 2* **("The Indictment")**

1.     Defendants do not believe that the Superseding Indictment should be given to the jury in the deliberation room and thus, the references in this Proposed Instruction to the text of the Superseding Indictment should be struck.  As the Court has explained, an indictment is not evidence.  It is a document drafted by the Government that presents *its* view of the facts, which the Government can describe for the jury during the closing argument.  By contrast, jury instructions should be neutral and not include an advocacy piece for the Government. Accordingly, Defendants fear that jurors, despite the Court's instruction that an indictment is not evidence, may give weight to the Superseding Indictment that should not be imputed to it.  The Court will explain to the jury what Defendants have been charged with and the parties will argue during closing arguments what evidence exists or does not exist with respect to those charges.  As such there is no need for the Superseding Indictment to be given to the jury in the deliberation room.

2.     Defendants believe that in the description of Counts One and Two, the Court should specify that Defendants are charged with acting as "agents of the United Arab Emirates," rather than the generic phrase, "agents of a foreign government."  There is no question as to what "foreign government" is at issue and the instructions should aim at being as clear as possible for the jury and to avoid any possibility of a constructive amendment of the indictment, especially given the amount of evidence that has been introduced concerning the Kingdom of Saudi Arabia.  Indeed, it is for this reason that Defendants have now proposed a separate instruction which makes clear that the UAE is the only country that Defendants are alleged to have acted as an agent of and the jury may not convict on any other basis.

### *Government's Request No. 3* **("Knowledge and Intent")**[1]

1.     Defendants object to the following sentence in the Government's proposed instruction:  "You may infer that a person ordinarily intends all natural and probable consequences

---

[1] For the avoidance of doubt, Defendants have, and continue to, maintain a continuous objection to any jury charge that does not require the jury to prove a willful violation of Section 951, as Defendants have explained in various briefing to the Court.  However, given that Court has ruled on that question, and found that Section 951 is a general intent crime, *see* Dkt. 166, Defendants have crafted their proposed jury instructions and respond to the Government's proposed jury instructions in light of the Court's Order.  But, in no way are Defendants waiving their objection to the lack of a willfulness instruction.

of an act knowingly done."  This sentence is unnecessary and may cause juror confusion about what it means to act "intentionally."  The fact that a "consequence" *may* follow, or even would be "probable" to follow, in the eyes of reasonable person, is the not the same thing aa subjective intent for such a consequence to follow, which is what the Government actually must prove with respect to the Defendants' mental state.  On an issue as important as the Defendants' *mens rea*, the jurors should not be instructed in any manner that may confuse them as to the relevant legal standard.  Moreover, it diminishes the Government's burden of proof to something below "beyond a reasonable doubt" to suggest that the jury can find that standard met with respect to an inference that may "ordinarily" be true but is not always true.  The jury should focus on determining Defendants' actual intent here.

2.      Defendants object to the following sentence in the Government's proposed instruction:  "It is sufficient that a defendant intentionally engages in conduct that the law forbids.  The Government is not required to prove that a defendant is aware of the law that actually forbids his conduct."  The focus of the jury instructions should be to instruct the jury on what the Government must prove to obtain a conviction, and the Court should be careful not to diminish those requirements by recounting any number of things that the Government is *not* required to prove.  Here, this additional instruction is unnecessary because any charge that the Court will give telling the jury what it must find will not suggest anything to the contrary.

3.      Defendants object to the following sentences in the Government's proposed instruction:  "Indeed, experience has taught that frequently actions speak louder and more clearly than words, and in your everyday affairs, you are frequently called upon to determine a person's state of mind from their words and actions in given circumstances. You are asked to do the same here."  There is no need for this instruction.  The instruction otherwise explains that the jury is permitted to consider "all of the circumstances shown by the evidence and the exhibits" and that is sufficient to apprise the jury of what it is being asked to do.  Indeed, beyond being unnecessary, the Government's proposed language diminishes the Government's burden of proof, in violation of Defendants' due process rights.  The jurors are being asked to exercise significantly more care in their decision-making regarding Defendants' guilt than they are asked when making decisions in their "ordinary" every day affairs.  For the same reason, just because something is "frequently true," doesn't relieve the Government of proving that it is true in this case.  Moreover, Defendants object to an instruction that "actions speak louder than words" in a case where one of the operative questions is whether an agreement was ever entered into to act subject to control and direction of the UAE or whether Defendants were just acting as they wished to act.  The Government can make this argument during its closing argument but the Court should not put its thumb on the scale by making this argument part of the jury charge.

4.      This is a criminal case where decision making is conducted like "everyday affairs" or where it is safe to assume that something is true because it is "frequently" true.  This is an extraordinary proceeding with potentially heavy consequences involving the deprivation of Defendants' liberty, so the jury's decision must reflect something far higher than decision making on "everyday affairs" or the presumption that something that is "frequently" true is true here.  Proof beyond a reasonable doubt is required, and that is diminished by this proposed instruction.

***Government's Request No. 4* ("Count One—Acting As Illegal Agents of a Foreign Government")**

1.     **Inclusion of Rashid Al Malik**.  Defendants object to the inclusion of "Rashid Sultan Rashid Al Malik Alshhahhi" in the first sentence of the proposed charge, describing the charges in Count One against Defendants, as well as in the description in the proposed charge of what the Indictment states.  The jury is not being asked to render a verdict against Mr. Al Malik and the fact that he has been charged alongside Defendants is not something that the jury needs to know in order to assess the Government's proof (or lack thereof) regarding Defendants. Moreover, since the jury is aware that Mr. Al Malik is not a defendant in the trial before them, the inclusion of his name will only lead to impermissible juror speculation as to why that might be, which will prejudice the Defendants and distract the jury from the actual task in front of them.

2.     ***Mens Rea***.  Defendants object to the Government's instruction in that it only states that the Government must prove that Defendants acted "knowingly." In addition to explaining that the Government must prove that Defendants acted "knowingly," the Court should also explain that the Government must prove that Defendants acted "intentionally."  While the Government requests that the Court previously instruct the jury that the definition of   "knowingly" is acting "intentionally and voluntarily," and that acting "intentionally" means to "act deliberately and purposefully," it is not fair to expect the jurors to look up what "knowingly" means in order to realize that it means *intentionally*, which in turns means purposefully and deliberately.  The jurors should not be expected to decipher these lengthy jury instruction the way a lawyer would review a lengthy contract with specifically defined terms.  Because the definition of these mental states is not in dispute, the Court should speak plainly to the jurors and tell them that the Government must prove that the Defendant acted knowingly and intentionally.

This change—inclusion of "intentionally" in the description of the *mens rea* of the offense—should be utilized in each instance in which the Government refers to the required mental state.  Thus, in the sentence on page 11 where the Government proposes that the jury be told, "To find a defendant guilty of this offense, you must find that the defendant *knew* that he was acting as an agent of the Government or an official of the UAE and *knew* that he had not provided prior notification to the Attorney General," that instruction should be changed to, "To find a defendant guilty of this offense, you must find that the defendant knew and intended to act as an agent of the UAE while knowing that he had not provided prior notification to the Attorney General."

3.  **Discussion of "Direction or Control**."   Defendants object to the inclusion of the following:

- "However, a foreign government or official's involvement in the relationship does not need to mirror an employer's control over the workings of an employee, with a foreign government dictating both a desired end and the more granular means of performance;" and

- "A lesser degree of direction or control is sufficient," and

- "A person who agrees to act subject to a more hands-off form of direction also would be acting as an "agent of a foreign government."

These are not meaningful or helpful instructions, as they tell the jury what level of direction and control is *not* necessary without telling the jury what actually *is* required. The Government's proposed instruction is written in the negative, in which the jury is simply informed that something "less" than an employer's control over an employee is sufficient to demonstrate direction or control, but provides no other explanation for what *is* the level of direction or control that defines an agency relationship. Defendants understand that the Government's instruction is based on *Rafiekian,* but in the context of a discussion by the Court as to the open question as to what it means to act pursuant to the direction or control of a foreign power. The jury cannot possibly be given an instruction this vague and simply left to its own devices to determine what level of "control and direction" is legally required for Section 951 "agency." Defense counsel cannot understand what level of direction and control is necessary, under this proposed definition, so it is highly doubtful that the jurors could do any better at deciphering what they need to find, or do uniformly. At a minimum, the Government's negative instruction should include affirmative examples of what does *not* constitute agency, as proposed in Defendants' Proposed Instruction No. 19. *See* Dkt. 273 at 31. For example, the Government's instruction omits a critical finding from *Rafiekian,* and does not include an instruction that "mere "willing[ness] to do something the foreign principal requests" is *not* sufficient to prove that a defendant acted at the direction or control of a foreign power. *See United States v. Rafiekian*, 991 F.3d 529, 539 (4th Cir. 2021) (Section 951 does not proscribe mere "willing[ness] to do something the foreign principal requests"); *see also United States v. Hoskins*, 44 F. 4th 140, 150-51 (2d Cir. 2022) ("There is, of course, some evidence of direction from Pierucci and API to Hoskins. Pierucci asked Hoskins to execute certain tasks, such as revising agreements and sending them to API. Hoskins asked for approval from API before moving forward with Aulia, indicating that he looked to API for instruction. And the record shows Hoskins located and hired consultants at the behest of API and that these consultant contracts required Hoskin's approval. *But the fact that Hoskins collaborated with and supported API and Pierucci does not mean he was under their control within the meaning of the FCPA.*") (internal citations omitted; emphasis added). As written, the Government's Proposed Instruction is one-sided, misleading, and exposes Defendants to a conviction based on a misunderstanding of what it means to be an "agent" – the issue at the very heart of this case

4. **Inclusion of "Foreign Official."** Defendants object to the italicized portions of the following sentences:

- "First, the defendant acted as an agent of a foreign government *or official*, specifically of the United Arab Emirates (also known as the "UAE")."

- "Second, the defendant failed to notify the Attorney General that he would be acting as an agent of the Government *or an official* of the UAE in the United States prior to so acting"

- "To establish that a defendant is an "agent of a foreign government," the Government must prove that the defendant acted pursuant to an agreement to operate subject to the direction or control of the UAE, and that the UAE *or a UAE official or officials* directed or controlled the defendant's actions"

- "However, a foreign government *or official*'s involvement in the relationship does not need to mirror an employer's control over the workings of an employee, with a

foreign government dictating both a desired end and the more granular means of performance;"

- "To find a defendant guilty of this offense, you must find that the defendant knew that he was acting as an agent of the Government *or an official* of the UAE and knew that he had not provided prior notification to the Attorney General;"

- "The notification must include the name or names of the agents, the address or addresses of the agents, the identity of the foreign government *or foreign official* for whom the agent is acting, a brief description of the activities to be conducted for the foreign government *or foreign official*, and the anticipated duration of the activities."

The Government is proposing an unconstitutional constructive amendment of the indictment by broadening it to allow the Defendants' to be convicted of being an agent of a foreign official, rather than just being an agent of the UAE. The Superseding Indictment is more limited, it charges that Defendants did "knowingly and intentionally act in the United States as agents of a foreign government, to wit: the United Arab Emirates." (Dkt. 105 ¶ 114 (Count 1); *see id.* ¶ 117 (Count 2) ("did knowingly and intentionally conspire to act in the United States as agents of a foreign government, to wit: the United Arab Emirates"). Consequently, any finding by the jury that Defendants were an agent of a foreign official would vary markedly from what was alleged by the grand jury, which merely charged them with being agent of the UAE government.

The Government's proposed instruction is based on irrelevant portions of federal regulations, rather than the Superseding Indictment. Section 951 punishes acting in the United States as an agent "of a foreign government," without prior notification to the Attorney General. The Government has otherwise asked the Court to instruct the jury as to the definition of a "foreign government," as set forth in 28 C.F.R. 73.1(b) (although Defendants object in part to that instruction, as described below). While 28 C.F.R. 73.1(b) does define an "agent: as a person "acting as [a] representative[] of, or on behalf of, a foreign government or official, who [is] subject to the direction or control of that foreign government or official," the Superseding Indictment charges Defendants only with acting as an agent of a foreign government, specifically the UAE (and not some other government).

Additional problematic, the regulation itself does not define what it means by a "foreign official," nor does the Government's proposed instruction. That is deeply problematic in this case, where the Government contends that Mr. Khalifa Al Ghalfi is himself an UAE "official" simply because he has a job working for the UAE Government. But, as the Government's own evidence demonstrates, Mr. Al Ghalfi is extremely young, appears to work in some sort of administrative capacity, *see e.g.*, Tr. 1019:5-1020:13 (email from Khalifa Al Ghafli to employee of US Department of State, setting up car transportation for US officials visiting UAE), and there has not been a shred of evidence that Mr. Al Ghalfli exercises any authority or control over the functions of the UAE Government. *See also* GX 1041; Tr. 724: 2-22 (testimony from Government witness Mr. McGuire that Mr. Al Ghafli has a "regular" passport, which is how the State Department defines any "passport issued to any citizen of a country other than official employees, [like] a diplomat" and which is equivalent to the "passport that anybody who is a citizen of a country would get.") Given the strong possibility that the jury might interpret the reference to a "foreign

official" to include Al Ghalfli, even though there is no evidence that he exercises any authority over the UAE Government, Defendants contend that the Court's instructions should omit references to "foreign officials" and only refer to a "foreign government."  Because the Government otherwise asks for a definition of "foreign government" which includes "any person or persons exercising authority in fact or by law or right" over the workings of the UAE, there is no need for an additional reference to "foreign officials" in the jury instructions.

5.    **Definition of Foreign Government**.  Defendants object to the Government's definition of a "foreign government," in that it defines a foreign government to include a person or persons who exercise "authority in fact or by law or right over any country," but excludes the word "*sovereign*" from its description of the authority that the person or persons must possess, even though that is the critical description set forth in 28 C.F.R. 73.1(b).  *See id.* ("The term *foreign government* includes any person or group of persons *exercising sovereign de facto or de jure political jurisdiction over any country*, other than the United States, or over any part of such country, and includes any subdivision of any such group or agency to **which such sovereign de facto or de jure authority or functions are directly or indirectly delegated**.).  More to the point, no definition of the term is even needed as the Court can instruct that the UAE is a foreign government.

6.    **Failure to Refer to the Actual Allegations**.  Defendants also object to the lack of any connection between the Government's description of the elements of the offense and the actual allegations in this case.  By way of example, while the Government proposes that the Court instruct the jury that the Government must demonstrate that the "defendant acted knowingly," a better instruction—and one that is much easier for the jury to understand—would be that the Government must prove that "the defendant you are considering, Mr. Barrack or Mr. Grimes, knowingly and intentionally agreed to serve as an agent of the UAE and be subject to the direction or control of the UAE."  Simply telling the jury that Mr. Barrack and Mr. Grimes needed to act "knowingly" is confusing, as it is not clear from the Government's instructions what Defendants needed to "knowingly" do.  The recitation of legal requirements in a manner that is utterly divorced from the actual charges persists throughout the Government's proposed instructions and Defendants therefore assert an omnibus and standing objection to instructions that are not grounded in the actual allegations of this case, as these unnecessarily risk the Defendants being convicted of an offense without having committed any crime at all.

7.    Defendants object to the italicized portion of the following instruction, "Fourth, the defendant acted, *at least in part*, as an agent for the government or an official of the UAE in the United States."  Neither the statute itself nor the Government's citations include the additional language—"at least in part"—that the Government has included here.  The addition is unnecessary.  Defendants explain their objection to the inclusion of the phrase "or an official" above, *see* Section 1(C)(1).

8.    Defendants object to the following portion of the instruction:  "It is not necessary, however, for the Government to prove that a defendant knew that there was a law that required him to provide notification to the Attorney General. Ignorance of the law is not a defense to this crime."  As explained above, the purpose of the jury instructions is to tell the jury what it *must* find to convict and not to recount any number of things that the Government does not need to prove.  The Court's instructions on the elements will not invite any ambiguity that will need to be clarified

and, worse, repeatedly highlighting things that the government does not need to prove may be misinterpreted by the jury to signal how it should vote or otherwise lower the Government's burden of proof.

9.  Defendants object to the use of "shown" in the Government's proposed instruction at page 11:

> You do not need to find that a defendant was an agent during the entire time period specified in the indictment. If all jurors agree that **it has been *shown*** beyond a reasonable doubt that a defendant **was an agent** of the UAE **at any time** within that period, and the Government has proven beyond a reasonable doubt all other elements of the offense as set forth in these instructions, then you must find that defendant guilty of Count One. (emphasis added).

The phrase "it has been shown" should be replaced with the phrase "the Government has proven," which properly reflects the Government's burden.

The "was an agent" must be replaced with "acted as an agent" to track the language of the statute and the nature of the charged crime.  It is not a crime to be an agent who has not given notice, rather it is a crime to "act" as an agent.  18 U.S.C. § 951(a).

The "at any time" language must be replaced with "at the same time" to prevent a verdict that is not unanimous.  The Government charges that Defendants took multiple acts as an agent, but the jury must agree that the Defendants committed the same crime – took the same criminal act – to convict.  A jury that unanimously agrees that Defendants acted unlawfully as an agent at "some" time, without agreeing upon the same time, will not have unanimously convicted the defendant of the same crime.  This is no different than an indictment charging a defendant with robbery for robbing store X on one evening, store Y on the next evening, and store Z the evening after that, and telling the jury that it can convict if each juror finds that a defendant committed at least one of those crimes even if not the same one.  That is patently unconstitutional.  *See, e.g., Richardson v. United States*, 526 U.S. 813, 820 (1999) ("[T]he Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means."); *id.* ("We would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday.") (quoting *Schad v. Arizona*, 501 U.S. 624, 651 (1991) (Scalia, J., concurring).

10.  **Notification.**  Defendants object to the following portion of the instruction, "Notification to any other United States Government official is not sufficient to satisfy the notification requirement; notification must be to the Attorney General."  The Department of Justice has publicly explained, to Congress, its position that notification to another department of the Executive Branch, not just the Attorney General, suffices to satisfy Section 951's notification requirements.  *See* Excerpts from Communist Bloc Intelligence Gathering Activities on Capitol Hill: Hearing on S. 1959 and S.1963 Before the Subcomm. On Sec. and Terrorism of the Comm. on the Judiciary, 97th Cong., Ser. No. J-97-116 (1982) ("[DOJ has] taken a position in the past, Mr. Chairman, that, where there is actual notification and knowledge of the activities of an agent of a foreign power within the United States, within any department, and not necessarily limited to [the official delineated in the statutory text], that for practical purposes of enforcing the act, that is

- 8 -

notification to the Government."). Indeed, constructive notice is routinely permitted in cases involving a notification requirement. *See e.g., Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594-95 (S.D.N.Y. 2009) (finding notice imputed to new state entities where the adequacy of state programs was challenged in the original complaint against state government officials, and observing "[t]o satisfy the Rule's notice requirement," plaintiffs need not show actual notice, as constructive notice may be imputed to a new defendant state entity through its attorney "when the attorney also represented the officials originally sued, so long as there is some showing that the attorneys knew that the additional defendants would be added to the existing suit").

11. **Reference to FARA**. The Government's proposed instruction concerning FARA is unnecessary and potentially confusing. Defendants are not contending that they registered under FARA so there is no reason why it would be relevant for the jury to be instructed that FARA registration is one way to satisfy Section 951's notification agreement. FARA has not been an issue at any point in this trial and there is no reason why it should become an issue in the jury instructions.

12. **Venue.** Defendants also object to the Government's instruction regarding Count 1 because it does not include an instruction regarding the Government's obligation to prove **venue** in the Eastern District. Instead, the Government proposes an all-purpose venue instruction (Government Proposed Instruction No. 12) that is not accurate to any of the charges in this case.

To prove Count One, the Government must satisfy its burden to prove venue in the Eastern District. Because Count One alleges a violation of Section 951, the Government must prove that Mr. Barrack "acted as an agent" of the UAE within the Eastern District, without having given prior notification to the Attorney General. *See United States v. Melekh*, 193 F. Supp. 586, 588 (N.D. Ill. 1961) ("The proper venue to try a violator of [section 951] is in the district where he acted as agent without having given prior notification to the Secretary of State"); *see also United States v. Latchin*, No. 04 CR 661, Gov. Prop. Jury Instr. Dkt 218 (N.D. Ill. April 12, 2007) (to prove violation of Section 951, the government must prove "that the defendant acted, at least in part, as an agent for Iraq in the Northern District of Illinois.").

The Government argues, in Government Proposed Instruction No. 12 that venue for Count One is satisfied so long as the Government can prove "that some act in furtherance of the crime occurred here in the Eastern District of New York," *see* Gov. Proposed Instruction No 12 (Dkt. 274), and during oral argument on October 20, the Government explained its view that jurisdiction in the Eastern District had been established by evidence showing that Mr. Barrack and Mr. Grimes took flights that landed at JFK Airport, after which they then traveled to Manhattan where they (according to the Government) then committed acts of agency, pursuant to the direction or control of the UAE. (Tr. 3708.) This argument is squarely foreclosed by the Second Circuit's holding in *United States v. Tzolov*, where the Second Circuit explained that where the Government must prove that the "act" constituting the offense occurred in the district, "prepatory acts" that merely "furthered" the offense conduct do not suffice to establish venue. 642 F.3d 314, 319 (2d Cir. 2011) (reversing conviction for failure to prove venue and explaining: "Nor did [defendant] commit securities fraud by boarding a plane in the Eastern District. At most, catching flights from the Eastern District to meetings where Butler made fraudulent statements were preparatory acts. They were not acts 'constituting' the violation. We have cautioned that venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of

the offense.  That is all we have here. In other words, going to Kennedy airport and boarding flights to meetings with investors were not a constitutive part of the substantive securities fraud offense with which Butler was charged.").  Indeed, the Court has already found, in its Order denying Defendants' Motions to Dismiss, that to prove venue, the Government must show that "*criminal conduct* occurred within the venue" of the Eastern District, *see* Dkt. 120, at 15, which is consistent with Defendants' instruction, which requires the jury to find that Mr. Barrack and Mr. Grimes "acted" as an agent of the UAE within the Eastern District.  *Tzolov*, 642 F.3d at 319 ("Venue is proper only where the acts constituting the offense—the crime's essential conduct elements'—took place.")

In a letter filed with the Court on October 4th, *see* Dkt. 288, the Government advised that it was relying on 18 U.S.C. § 3237, for the proposition that venue is met whenever "some act in furtherance of the crime occurred here, in the Eastern District of New York."  But, 18 U.S.C. § 3237 says nothing of the sort.  Rather, Section 3237 provides that where an offense has "begun in one district and completed in another," or was "committed in more than one district," the Government must demonstrate that the "offense was begun, continued, or completed" within the district where the case was brought.  *See* Section 3237.  As such, Section 3237 is consistent with *Defendants'* instruction: under Section 3237, the Government must prove that Mr. Barrack and/or Mr. Grimes "began" acting as an agent of the UAE while in the Eastern District or "continued" acting as agent of the UAE while in the Eastern District, or "completed" his actions as an agent of the UAE while in the Eastern District in order to satisfy venue for Count One.

It appears that the Government's support for its claim that venue lies wherever "an act in furtherance" of the crime took place derives from an *insider trading* case, where the Second Circuit—on plain error review—found that that venue was appropriate in the Southern District of New York, because "the acts in furtherance, *i.e.*, the trades executed in the Southern District, are also the acts constituting the offenses charged."  *See United States v. Royer*, 549 F.3d 86, 894 (2d Cir. 2008).  In other words, *Royer* stands for the proposition that the Government needs to prove that *actual offense conduct* was undertaken in the Eastern District, as Defendants have consistently stated, rather than simply being able to point to some act that merely "furthered" the offense conduct.  *See also Tzolov*, 642 F.3d at 319 (explaining that in securities fraud cases, "the act that established venue and that occurred "in furtherance" of the crime charged—the execution of a trade—constituted an essential element of the crime, not merely a prepatory step, and thus, venue was appropriate in the district where the trade was made.)

Likewise, in its Proposed Jury Instructions, the Government cites to *United States v. Kirk Tang Yuk*, 885 F.3d 57, 71 (2d Cir. 2018) and *United States v. Rutigliano*, 790 F.3d 389 (2d Cir. 2015), to support its claim that venue lies wherever "an act in furtherance" of the crime occurred. The Government has its case law wrong.  *Kirk Tang Yuk* is a "conspiracy to distribute" case and thus reflects the fact that for a *conspiracy* charge, the Government must prove that an "overt act" which "furthered" the "objectives of the conspiracy" was committed in the district in which charges were brought.  *See United States v. Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018)  ("where, as here, the charged crime is a conspiracy…any district in which an overt act in furtherance of the conspiracy was committed is properly designated as the district where the offense was committed," and thus venue is proper, "so long as the act was performed (1) by any conspirator," and (2) was undertaken for the purpose of accomplishing the objectives of the conspiracy.").  Count One alleges a *substantive* violation of Section 951, not a conspiracy.  The Government also errs when

it cites *Rutigliano* in support of its claim that venue lies wherever an "electronic impulse" in "furtherance of scheme traveled through or over waters of Eastern District of New York." But, as described above, *Rutigliano* alleged a conspiracy to commit *wire fraud*, which is an offense for which venue *can* be proven by showing that a *wire* which furthered the wire fraud scheme traveled through the Eastern District. Mr. Barrack and Mr. Grimes, however, have not been charged with wire fraud and the venue requirements for a wire fraud case cannot just be arbitrarily transposed onto jury charges in a Section 951 case.

The Government further claims in its letter of October 4, *see* Dkt. 288, that in *United States v. Abouammo*, and *United States v. Chaoqun*, those courts concluded that the Government did not have to prove that an act of agency occurred within the district where the charges were brought to show venue. The Government informs the Court that those courts have held that the Government need only prove than an act of "agency" occurred "in the United States." *See* Dkt. 288 (Gov. Ltr.) at 10. The Government is being deceptive: the jury instructions in *Abouammo*, and *Chaoqun* that the Government directs the Court's attention to are *not* venue instructions but rather instructions on the substantive Section 951 offense, which requires the Government to prove, beyond a reasonable doubt, that the defendant acted as an agent of a foreign power "in the United States." Whether the Government has satisfied the elements of Section 951 is a *separate* question, with a different burden of proof, than the question of whether the Government has proven *venue* in the Eastern District and Government certainly has enough experience to know better than to conflate the two.

Defendants contend that the Court should give the venue instruction on Count One that was proposed by Defendants as Defense Proposed Instruction No. 24, except that the Court should *also* instruct the jury that "the Eastern District of New York does not include the borough of Manhattan." This addition was not part of Defendants' Proposed Instruction but Defendants believe it is a necessary instruction given the Government's apparent reliance on the "contiguous waters" doctrine, in which the Government is relying on "travel" between the Eastern District of New York and Manhattan to satisfy venue. As Defendants will argue in their Rule 29 briefs, the Government introduced no evidence that any "act" of agency committed by Mr. Grimes or Mr. Barrack occurred while traveling over the waters between the Eastern District of New York and Manhattan, but in any event, the jury should be explicitly instructed that Manhattan falls outside the Eastern District of New York.

### *Government's Request No. 5* ("Aiding and Abetting")

1. Defendants object to the references to co-conspirator liability, i.e., *Pinkerton* liability, because this is an instruction regarding aiding and abetting, not co-conspirator liability.

2. Defendants object to the inclusion of the following in the Government's Proposed Instruction, which takes *four* sentences to explain a principle that should only take one:

- Even if you find that the Government has not proven beyond a reasonable doubt that a defendant acted as an agent of a foreign government in the United States without notifying the Attorney General, you should also consider whether the Government has met its burden of proving a defendant's guilt by considering these other theories, which are called aiding-and-abetting liability and co-conspirator

- 11 -

liability. I remind you that the Government may establish a defendant's guilt of Count One through any one of these theories – direct liability, aiding-and-abetting liability or co-conspirator liability.

There is no need for such a lengthy description. A better and shorter description is set forth in Defendants' Proposed Instruction No. 25, which reads, "The indictment offers alternative theories why the defendants are guilty of violating Section 951: that each defendant personally committed the offense or that he aided and abetted others in committing the offense."

3.     **Mens Rea.** Defendants first object to the fact that the Government's description of *mens rea* is not up front and center, which is where it should be, given its importance. The lengthy preamble proposed by the Government is not more important than the *mens rea* requirement. Second, the Government's proposed instruction concerning the *mens rea* needed to "aid and abet" a violation of Section 951 is wrong.

Here, the Court has found that Section 951 is a "general intent" crime and thus, to prove that a defendant personally violated Section 951, the Government need *not* prove that Defendants acted "willfully" and knew their conduct was contrary to law. *See* Dkt. at 166 at 5. However, aiding and abetting under 18 U.S.C. § 2, however, is a "*specific intent* crime," and for that reason, more is required. *United States v. Khalupsky*, 5 F.4th 279, 284 (2d Cir. 2021) (citing *Rosemond v. United States*, 572 U.S. 65, 77 (2004) (under Section 2, "intent must go to the specific and entire crime charged"). Defendants contend that the "more" that is required to show *specific intent* under Section 2, rather than general intent under Section 951, is the knowledge that the defendant's intentional conduct is unlawful, *i.e.*, a showing of willfulness. *United States v. Landesman*, 17 F.4th 298, 321 (2d Cir. 2021) ("For purposes of aiding and abetting liability, the government was required to prove that "[the defendant] willfully and knowingly associate[d] himself in some way with the crime, and [sought] by some act to help make the crime succeed.") (citing *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016)). If there is no willfulness requirement, then there is no difference between the *mens rea* required to directly violate Section 951, which is a *general intent* crime requiring a knowing and intentional violation, and the *mens rea* required to "aid and abet" a violation of Section 951. But, given that aiding and abetting is a *specific intent* crime, its *mens rea* requirements cannot be identical to those of Section 951, which is a *general intent* crime.

In addition, Defendants object to the Government's instruction in that it only states that the Government must prove that Defendants acted "knowingly, namely:

- "To aid or abet another to commit a crime, a defendant must do two things. First, he must *knowingly* associate himself in some way with the crime, and second, he must participate in the crime by doing some act to help make the crime succeed."

- "Did he *knowingly* associate himself with the criminal venture?"

In addition to explaining that the Government must prove that Defendants acted "knowingly," the Court should also explain that the Government must prove that Defendants acted "intentionally." While the Government requests that the Court previously instruct the jury that the definition of "knowingly" is acting "intentionally and voluntarily," and that acting "intentionally" means to "act deliberately and purposefully," it is not fair to expect the jurors to look up what

"knowingly" means in order to realize that it means intentionally, which in turns means purposefully and deliberately.  Since the definition of these mental states is not in dispute, there is no reason why the Court should not explain to the jury that there is a requirement that defendant acted knowingly and intentionally (and willfully, for the reason described above).

4.      **Failure to Refer to the Actual Allegations**. Defendants also object to the lack of any connection between the Government's description of the elements of the offense and the actual allegations in this case.  For example, while the Government proposes that the Court instruct the jury that the Government must demonstrate that the "defendant acted knowingly," a better instruction—and one that is much easier for the jury to understand—would be that the Government must prove that "the defendant you are considering, Mr. Barrack or Mr. Grimes, knowingly and intentionally associated with, and took an action to help someone else serve as an agent of the UAE in the United States, subject to the direction or control of the UAE, without prior notification to the Attorney General."  Simply telling the jury that Mr. Barrack and Mr. Grimes needed to act "knowingly" for example, is confusing, as it is not clear from the Government's instructions what Defendants needed to "knowingly" do.

### *Government's Request No. 6* ("Co-Conspirator Liability")

1.      Defendants object to the Government's Request No. 6, seeking an instruction that Mr. Barrack and Mr. Grimes can be found guilty on Count 1—the substantive Section 951 charge—on a *Pinkerton* theory of liability, which holds that guilt can be found against the defendant even if the defendant did not violate Section 951, so long as a *co-conspirator* violated Section 951 and that violation was 1) reasonably foreseeable to the defendant; and (2) done in furtherance of the illegal agreement.  *See* 328 U.S. 640 (1946).

As an initial matter, the Government's instruction is entirely circular and thus will almost certainly confuse the jury in a manner that is deeply prejudicial to Defendants.  *Pinkerton* may have some value in a gang case, in which, for example, a defendant joins a violent gang, which routinely commits violent robberies for which he is involved, but then argues that he isn't responsible for a specific assault committed by a fellow gang member during the course of a robbery, as he didn't intend for that particular assault to occur.  In that instance, where the offense that the defendant did participate in and conspire to achieve (an armed robbery) leads an obvious and reasonably foreseeable second offense (assault) the defendant may be liable for the assault because it was so obviously a consequence that might accompany the offense for which the defendant did conspire, armed robbery.  In Defendants' case, *Pinkerton* liability adds no value, as the substantive crime alleged in Count One is identical to the object of the alleged conspiracy— there is no additional offense that was committed in the course of furthering the conspiracy that might have been reasonably foreseeable to Mr. Barrack or Mr. Grimes.  The Government cannot attempt to shoehorn a verdict on Count 1 on the basis that it should follow immediately and as a matter of course if the jury chooses to convict on Count 2, which is precisely what this *Pinkerton* instruction provides.

Moreover, even in much more ordinary contexts, like the gang analogy described above, the *Pinkerton* rule "is unsound" and these concerns serve as yet another example of why a *Pinkerton* instruction should not be given. *United States v. Walton*, 2021 WL 3615426, at *4 (9th Cir. Aug. 16, 2021) (Watford, J., concurring), *pet. for cert. filed*, No. 21-7093; *see also, e.g.*, Alex

Kreit, *Vicarious Criminal Liability and the Constitutional Dimensions of Pinkerton*, 57 Am. U. L. Rev. 585, 597-98 (2008) (noting that academics, the Model Penal Code, and LaFave's treatise on criminal law all reject *Pinkerton* liability); Paul Marcus, *Criminal Conspiracy Law: Time to Turn Back from an Ever Expanding, Ever More Troubling Area,* 1 WM. & MARY BILL RTs. J. 1, 7 (1992) (criticizing *Pinkerton* liability because it "permits the government to hold a defendant criminally responsible for all reasonably foreseeable acts of co-conspirators regardless of actual knowledge, intent, or participation.") (citation omitted).

### *Government's Request No. 7 ("Conspiracy Generally")*

1. **Congressional Intent.**  Defendants object to the following paragraph of the Government's proposed instruction:

> "Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy did not succeed. That is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture."

This paragraph regarding the Congressional intent behind Section 371 is unnecessary and prejudicial.  The Court does not otherwise explain the Congressional intent behind the rules and laws described in the jury charge, nor identify "Congress" as the source of a particular concern and there is no need for any such extraneous commentary with respect to the conspiracy count.

2. **Agreement.**   Defendants object to the Government's instruction because it fails to specifically state the requirement that the jury find an "agreement," which is the most essential element of a conspiracy.  While the Government, in the first sentence of the instruction, briefly describes a conspiracy as an "agreement," it does not include an "agreement" as something it needs to actually prove when it lists as "First," "Second," and "Third" those elements for which it must demonstrate evidence beyond a reasonable doubt.

The words following "First" should be: "that an agreement existed to violate Section 951, by acting subject to the control or direction of the UAE without prior notification to the Attorney General."

The words following "Second" should be:  "that the defendant knowingly and intentionally agreed with others to conspire to violate Section 951 by acting subject to the control or direction of the UAE without prior notification to the Attorney General."

The words following "Third" should be:  "that an overt act was committed in furtherance of the defendant's agreement with others to conspire to violate Section 951 by acting subject to the control or direction of the UAE without prior notification to the Attorney General."

3. ***Mens Rea.***  Defendants also object to the Government's proposed instruction concerning the *mens rea* needed to violate Section 371.  As described above, in Defendants' objection to the Government's aiding and abetting instruction, *see supra* at pg. 12, the *mens rea* for a substantive violation of Section 951, which is a *general intent* crime, must necessarily be less than the *mens rea* requirements for a violation of Section 371, which is a *specific intent* offense.  *See Ocasio v. United States*, 578 U.S. 282, 288 (2016) (conspiracy requires that a defendant join an agreement

with the "specific intent that the underlying crime be committed" by some member of the conspiracy) (quoting 2 K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions: Criminal § 31:03, p. 225 (6th ed. 2008) (emphasis added)); *United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018) ("defendant's knowing engagement in the conspiracy with the specific intent that the object of the conspiracy be committed"); *see also United States v. Bailey*, 444 U.S. 394, 406 (1980) ("Another such example," where "heightened culpability has been thought to merit special attention," "is the law of inchoate offenses such as attempt and conspiracy, where a heightened mental state separates criminality itself from otherwise innocuous behavior.").

Defendants contend that the "more" that is required to show *specific intent* under Section 371, rather than *general intent* under Section 951, is the knowledge that the defendant's conduct is unlawful, i.e. willfulness. *United States v. Smith*, 568 U.S. 106, 110 (2013) ("The essence of conspiracy is "the combination of minds in an unlawful purpose. ..[T]he Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and **willfully** participated in the agreement (that he was a member of the conspiracy)." (emphasis added). If there is no willfulness requirement, then there is no difference between the *mens rea* required to directly violate Section 951, which is a general intent crime requiring a knowing and intentional violation, and the *mens rea* required to conspire to violate Section 951. But, given that conspiracy under Section 371 is a *specific intent* offense, its *mens rea* requirements cannot be identical to those of Section 951, which is a general intent crime.

### *Government's Request No. 8* ("Count Two: Conspiracy to Act as Illegal Agents of a Foreign Government")

1. **Rashid Al Malik.** Defendants object to the inclusion of Mr. Al Malik in this instruction, for the reasons articulated above. *See supra* at pg. 4.

2. In the first paragraph, Defendants object to the non-specific reference to a "foreign government," in the following sentence, which Defendants contend should be replaced with the "UAE," as that is the actual allegation made by the Government in the Superseding Indictment:

> "The Government alleges that the object of the conspiracy was for Thomas Joseph Barrack, Matthew Grimes or Rashid Sultan Rashid al Malik Alshahhi to act in the United States as an agent of *a foreign government* without first notifying the Attorney General, *in violation of federal law*."

In addition, there is no need for the extraneous reference to the "violation of federal law," because the Court will have otherwise explained that a conspiracy's object must be to violate a law, and the source of that law (federal or otherwise) should be of no moment to the jury.

3. Defendants object to the italicized sentence in the instruction, in the penultimate paragraph, on the basis that it is inaccurate without the language that Defendants have added (identified by underlined text):

> "Thus, to prove Count Two, the Government does not have to prove that the defendant actually committed the crime of acting as an agent of a foreign government without notice to the Attorney General. *Rather, if you find that the defendant knowingly*

*and intentionally agreed* <u>with another member of the conspiracy</u> *to commit this crime, then you should find the defendant guilty of Count Two*." (underlined portion reflects proposed addition by Defendants).

4. ***Mens Rea.*** Defendants also object to the description of the *mens rea* needed to violate Section 371, for the reasons described above. *See supra at* pg. 14-15

5. **Venue.** Defendants also object to the Government's instruction regarding Count 2 because it does not include an instruction regarding the Government's obligation to prove **venue** in the Eastern District. Instead, the Government proposes an all-purpose venue instruction (Government Proposed Instruction No. 12) that is not accurate to any of the charges in this case.

With respect to Count 2, conspiracy to violate Section 951, the jury should be instructed that to prove venue, the Government has to prove, by a preponderance of the evidence, that a member of the conspiracy committed an "overt act" in the Eastern District of New York which was undertaken for the purpose of accomplishing the objectives of the conspiracy." *See United States v. Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018).

Defendants contend that the Court should give the venue instruction on Count Two that was proposed by Defendants as Defense Proposed Instruction No. 30, except that the Court should also instruct the jury that "the Eastern District of New York does not include the borough of Manhattan." This addition was not part of Defendants' Proposed Instruction but Defendants believe it is a necessary instruction given the Government's apparent reliance on the "contiguous waters" doctrine, in which the Government is relying on "travel" between the Eastern District of New York and Manhattan to satisfy venue on Count Two. As Defendants will argue in their Rule 29 briefs, the Government introduced no evidence that any "overt act," undertaken for the purpose of accomplishing the objectives of the conspiracy, was committed while traveling over the waters between the Eastern District of New York and Manhattan, but in any event, the jury should be explicitly instructed that Manhattan falls outside the Eastern District of New York.

### *<u>Government's Request No. 9</u>* ("<u>Count Three: Obstruction of Justice</u>")

1. Mr. Barrack objects to the Government's instruction because it incorrectly states that there are only *two* elements that that the Government must prove beyond a reasonable doubt, when in fact, there are *three.*:

- *First*, that the defendant obstructed, influenced or impeded an official proceeding.

- *Second*, that the defendant's alleged actions had a relationship in time, causation or logic with the proceeding such that it was foreseeable the defendant's conduct would interfere with the proceeding.

- *Third*, that the defendant acted corruptly.

The Government's proposed instruction eliminates the second element. However, the requirement that the Government prove that it was "foreseeable" to Mr. Barrack that Mr. Barrack's purported false statements would "interfere" with a grand jury investigation in the Eastern District is a burden that the Government is obligated to demonstrate, beyond a reasonable doubt. As the

Second Circuit has explained, to demonstrate that it was foreseeable that Mr. Barrack's (purported) false statements would interfere with the grand jury proceeding, the Government must demonstrate that Mr. Barrack's statements had "the *natural* and *probable* effect of interfering with" the grand jury proceeding in the Eastern District, as set forth in Defendants' Proposed Instruction No. 36. *See United States v. Reich*, 479 F.3d 179, 185 (2d Cir. 2007) (internal quotation marks omitted); *United States v. Pugh*, 2015 WL 9450598, at *14 (E.D.N.Y. Dec. 21, 2015) ("It is well-established that Section 1512(c)(2) has a 'nexus' requirement, that is 'the defendant's conduct must 'have a relationship in time, causation, or logic with the judicial proceedings'; in other words, 'the endeavor must have the natural and probable effect of interfering with the due administration of justice.'")

2.   Mr. Barrack objects to the Government's instruction in that it gives a general definition of an "official proceeding," and uses that general and unspecific phrase throughout the instruction, along with the equally unspecific phrase "due administration of justice," when in fact, the grand jury that returned the Superseding Indictment alleged that the specific proceeding that was affected was a "Federal Grand Jury investigation in the Eastern District of New York." The Government must prove that is the proceeding that was affected, or capable of being affected, by Mr. Barrack's purported false statements, and if the Government attempts to prove that any other proceeding was affected, it will work a constructive amendment of the Indictment. To ensure that the jury understand that actual allegation made by the grand jury, the instructions regarding the Obstruction of Justice count should refer specifically and exclusively to that grand jury investigation and the more generalized language included throughout the Government's proposed instruction should be struck.

3.   Mr. Barrack objects to the Government's instruction concerning what it means to act "corruptly," as the Government's instruction fails to explain, as it should, that merely uttering false statements does not "corruptly influence" within the meaning of the statute. *United States v. Chartier*, 2021 WL 3795352, at *28 (E.D.N.Y. Aug. 26, 2021) ("[T]o prove [the defendant's] intent, it is not enough that his statements were false and misleading.").

4.   **Venue**. Mr. Barrack also objects to the Government's instruction regarding Count 3 because it does not include an instruction regarding the Government's obligation to prove venue in the Eastern District. Instead, the Government proposes an all-purpose venue instruction (Government Proposed Instruction No. 12) that is not accurate to any of the charges in this case.

The Government argues, in Government Proposed Instruction No. 12, that venue for Count Three is satisfied so long as the Government can prove "that some act in furtherance of the crime occurred here" in the Eastern District of New York "**or**" if the Government can prove that Mr. Barrack "intended" to "affect an official proceeding whether or not pending or about to be instituted in the Eastern District." *See* Gov. Proposed Instruction No. 12 (Dkt. 274 at 37, 39). This proposed instruction is incorrect on all counts.

First, the Government's claim that venue for Count Three may be satisfied so long as the Government can prove "that some act in furtherance of the crime occurred here" in the Eastern District of New York has no support in the law. Here, the charged offense, set forth in 18 U.S.C. § 1512, has its own specific venue requirement and the Government is obligated to satisfy venue as required by the statute. *See* 18 U.S.C. § 1512(i) (specific statutory venue requirement for

Section 1512 violations, providing that "prosecution" under Section 1512 be "brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred.").

Second, because the grand jury has alleged that the proceeding that was affected was a "Federal Grand Jury investigation in the Eastern District of New York," the Government's venue instruction should refer to that grand jury investigation, rather than referring to hypothetical proceedings that may or may not have been "instituted" when Mr. Barrack was interviewed by the Government on June 20, 2019. Thus, the venue instruction should read: In order to prove venue with respect to Count Three, the Government must prove, by a preponderance of the evidence, that Mr. Barrack intended to interfere with a federal grand jury investigation in the Eastern District of New York."

### *Government's Request No. 10* ("Counts Four Through Nine: Materially False Statements")

1. **"Similar" Statements**. Mr. Barrack objects to Government Request No. 10 and in particular, the language which states that "the Government is not required to prove that the defendant made the exact statement or used the precise language charged in the Indictment; the Government need only prove beyond a reasonable doubt that the defendant made a statement substantially similar to the one alleged." Mr. Barrack explained his objection to this instruction in his letter of October 10, 2022 and therefore, rather than repeat those arguments here, Mr. Barrack adopts and incorporates those arguments into this submission and refers the Court to his earlier letter. *See* Dkt. 301; also attached here as Ex. C.

2. For largely the same reason, Mr. Barrack also objects to the articulation of the "first" element that the Government must prove, which the Government describes as a requirement that it prove that "on or about the date specified, the defendant made a statement or representation." *See* Dkt. 271 at 31 ("First,…."). That is too vague to be of use to the jury. In fact, the Government must prove, for each of Counts 4-9, that Mr. Barrack on June 20, 2019, "stated [insert statement as described in the to wit clause of the Superseding Indictment.]"

3. **Materiality**. Mr. Barrack also objects to the articulation of the "second" element that the Government must prove, *see* Dkt. 274, at 31, as it provides only that the Government must prove that the statement was "material" without specifying what the false statement must be material to. *See* Dkt. 271 at 31 ("Second…."). A correct instruction would provide: "Second, that the statement was material, meaning that it was capable of influencing an investigative decision of the Government." *United States v. Litvak*, 808 F.3d 160, 173 (2d Cir. 2015) ("the materiality element would be rendered meaningless if it were sufficient for the government merely to establish the capability of the false statement to influence an agency staffer's, investigator's, or prosecutor's 'decision' to refer for investigation, investigate, or prosecute the defendant for the very statement at issue").

4. **Statutory Purpose**. Mr. Barrack objects to the following paragraph of the Government's proposed instruction:

> The purpose of Section 1001 is to protect the authorized functions of the various governmental departments from any type of misleading or deceptive practice and from the adverse consequences which might result from such deceptive practices.

This paragraph regarding the purpose behind Section 1001 is unnecessary and prejudicial.  The Court does not otherwise explain the purpose behind the rules and laws described in the jury charge, nor explain that "adverse consequences" might flow from offense conduct (a fact which is true of every criminal offense) and there is no need for any such extraneous commentary with respect to the false statements count.

5.      Mr. Barrack objects to the Government's inclusion of the following paragraph, which it places at the forefront of the instruction, prior to even describing the elements of the offense.:

> However, I want to point out now that it is not necessary for the Government to prove that the government agency (here the Federal Bureau of Investigation, or FBI) was, in fact, misled as a result of the defendant's action. It does not matter that the agency was not misled, or even that the agency knew the statements were false or misleading, should you find that the act occurred. These circumstances would not excuse or justify a false, fictitious or fraudulent statement made willfully and knowingly about a matter within the jurisdiction of the Government of the United States.

This paragraph is completely unnecessary.  This same concept is described later in the Government's proposed instruction, when describing the law regarding materiality, and there is no reason why it needs to also be included at the very beginning of the Court's instruction regarding the false statement counts.

6.  Mr. Barrack also objects to the inclusion of the phrase "the kind of statement" in the following portion of the Government's proposed instruction regarding materiality:

> That means that the Government is not required to prove that the defendant's statement in this case actually influenced the Government's decisions or activities in this particular investigation; instead, the Government must prove beyond a reasonable doubt that the defendant's statement is **the kind of statement** that is capable of or has the natural tendency to influence the Government's decisions or activities in general. (emphasis added).

Mr. Barrack objects to the inclusion of this phrase because it is unclear what it means.  It cannot mean a "false statement" because every Section 1001 case involves a false statement but not every false statement is "material."  There has been no testimony about the "kinds of statements" that are capable of affecting a Government investigation, so the jury will be able to rely on nothing except pure speculation in assessing whether the statement the jurors are considered is the "kind of statement" that is capable of influencing the Government's investigation. There is no need to inject that kind of prejudice when it would suffice to simply instruct the jurors that  "the Government must prove beyond a reasonable doubt that the defendant's statement *was* capable of or *had* the natural tendency to influence the Government's investigative decisions or activities."

7.   **False Statements**.  Mr. Barrack objects to the articulation of the "third" element that the Government must prove, as it provides that the Government must prove that Mr. Barrack's statement was "false, fictious or fraudulent" when in fact, in the context of this case, all of these words mean the exact same thing.  For the same reason, Mr. Barrack objects to this same sentiment when it is expressed on the top of page 33.

Mr. Barrack also objects to the Government's instructions regarding purported falsity because the Government's instruction does not explain that literal truth is a complete defense. *Bronston v. United States*, 409 U.S. 352, 360 (1973) ("so long as the witness speaks the literal truth," the perjury statute may not be invoked); *United States v. Moses*, 94 F.3d 182, 189 (5th Cir. 1994) ("An indictment premised on a statement which on its face is not false cannot survive.") (citing *United States v. Vesaas*, 881 F.2d 1380, 1383 (6th Cir. 1989)).

Mr. Barrack also objects to the Government's instructions regarding purported falsity because the Government's instruction does not explain that if the jury concludes that the alleged false statement was given in response to an "ambiguous question," it must acquit on that count because "fundamentally ambiguous" questions cannot serve as a basis for a perjury conviction. *See Bronston v. United States*, 409 U.S. 352, 362 (1973) ("Precise questioning is imperative as a predicate for the offense of perjury."); *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (explaining that "fundamentally ambiguous" questions cannot serve as a basis for a perjury conviction, and defining "fundamentally ambiguous"); *United States v. Sampson*, 898 F.3d 287, 307 n.15 (2d Cir. 2018) (assuming without deciding that *Lighte* applies to Section 1001(a)(2)); *United States v. Diogo*, 320 F.2d 898, 906-09 (2d Cir. 1963) ("ambiguous" answers, as well as answers to ambiguous questions such as whether the defendant was a "follower of the Communist line," cannot support a Section 1001 conviction).

Mr. Barrack also objects to the Government's instructions regarding purported falsity because the Government's instruction does not explain if the jury concludes that the alleged false statement was actually an "ambiguous response" to the question asked, it must acquit on that count because "ambiguous" answers cannot serve as a basis for a perjury conviction.  *Diogo*, 320 F.2d at 906-09; *United States v. Mangano*, 2022 WL 65775, at *64-68 (E.D.N.Y. Jan. 6, 2022) ("ambiguous and equivocal answers in response to . . . questions  that were themselves often imprecise" insufficient to support perjury charge).

Mr. Barrack also objects to the Government's instructions regarding purported falsity because the Government's instruction does not explain to the jury that it is not a crime to mis-remember information, nor is it a crime to misspeak.

8.   ***Mens Rea***.  Defendants object to the Government's instruction in that it only states that the Government must prove that Defendants acted "knowingly" and "willfully."   In addition to explaining that the Government must prove that Defendants acted "knowingly," and "willfully," the Court should also explain that the Government must prove that Defendants acted "intentionally."  While the Government requests that the Court previously instruct the jury that the definition of  "knowingly" is acting "intentionally and voluntarily," and that acting "intentionally" means to "act deliberately and purposefully," it is not fair to expect the jurors to look up what "knowingly" means in order to realize that it means *intentionally*, which in turns means purposefully and deliberately.  Since the definition of these mental states is not in dispute, there is

no reason why the Court should not explain to the jury that in order to convict on Counts Four through Nine, the Government must prove that Mr. Barrack acted knowingly, intentionally, and willfully.   This change—inclusion of "intentionally" in the description of the *mens rea* of the offense—should be utilized in each instance in which the Government refers to the required mental state.

9.   **Venue**.  Mr. Barrack also objects to the Government's instruction regarding Counts 4-9 because it does not include an instruction regarding the Government's obligation to prove venue in the Eastern District.   Instead, the Government proposes an all-purpose venue instruction (Government Proposed Instruction No. 12) that is not accurate to any of the charges in this case.

The Government argues, in Government Proposed Instruction No. 12, that venue for Counts Four through Nine is satisfied so long as the Government can prove "that some act in furtherance of the crime occurred here" in the Eastern District of New York "**or**" if the Government can prove that the "false statements were material to Government decisions or activities in the Eastern District of New York."  *See* Gov. Proposed Instruction No. 12 (Dkt. 274 at 37, 39-40). Mr. Barrack contends that the Government's instruction is incorrect.

The Government cites no law in support of its claim that venue can be established in the Eastern District on the Section 1001 charges so long as "some act in furtherance of the crime occurred here" in Eastern District, nor is it clear what "act in furtherance" of the false statements the Government could even be referring to.   With respect to the Government's alternative venue theory, Mr. Barrack respectfully disagrees that such an instruction is proper here, given the evidentiary record.

In *United States v. Stephenson*, the Second Circuit held that venue under 18 U.S.C. § 1001 was proper in the district where the false statement was "made" by the defendant as well as in the district where the false statement was "received" by the government official.  895 F.2d 867, 875 (2d Cir. 1990).  Thus, in *Stephenson,* when the defendant, located in Washington D.C., made false statements over the telephone to an federal agent in Manhattan, the Second Circuit found that venue was proper in the Southern District of New York.  *Id*.  Ten years later, Judge Sand of the Southern District of New York (and author of the closest thing to "pattern" jury instructions that exists in the Second Circuit) explained that the rule set forth in *Stephenson* remained alive and well:  venue could lie in a district other than the one where the defendant made the false statement if there existed a "geographic discontinuity between the defendant's physical making of the disputed statement, whether oral or written, and the actual receipt of that statement by the relevant federal authority."  *See United States v. Bin Laden*, 146 F. Supp. 2d 373, 376 (S.D.N.Y. 2001) (citing cases).  For that reason, Judge Sand held, when a defendant makes a false statement to a federal agent, during an in-person interview, venue lies solely in the district where the interview took place.  *Id*.  at 377.

In support of its proposed instruction, the Government cites to *United States v. Coplan*, where the Second Circuit found that even though the defendant had made the disputed statements during an in-person IRS deposition in Tennessee, venue in the Southern District was appropriate because the Government had introduced evidence at trial that IRS agents in Manhattan then received the deposition transaction, discussed it during internal meetings, and made decisions regarding the IRS's "ongoing E&Y audit" based upon the defendant's disputed statements.

Because the Second Circuit found that a "material false statement" was the "essential element" of a Section 1001 charge, and the Government had introduced evidence that the disputed statement had affected the IRS's decision-making concerning the Ernest & Young audit in Manhattan, the Second Circuit found that venue had been established in the Southern District.  Thus, *Coplan* can be read to support the giving of a venue instruction that references the "effect" of the defendant's false statements, where there is evidence in the record concerning some sort of meaningful "effect" in a district other than the one where the false statements were made and received. Id.; *but see Bin Laden* (contrary conclusion reached by Judge Sand, who found that because the Government was not required to prove that the Government "was, in fact, misled" as a result of the defendant's statements, venue should not be assessed on the basis of whether evidence of the statement's "effect" in a given district was introduced).  Here, where the Government has not introduced any evidence of any actions (or even potential actions) taken on the basis of Mr. Barrack's allegedly false statements, the venue instruction sought by the Government is improper.

### *Government's Request No. 11 ("Co-Conspirator Acts and Statements")*

1.  Defendants do not believe that the Court should give the instruction proposed by the Government.  Other than the one occasion in which Your Honor instructed the jury that the text messages between Mr. Al Malik and Professor Rivetti could not be considered against Mr. Barrack and Mr. Grimes, *see* Trial Tr. at 2526, the jury otherwise should accept that all of the evidence admitted into the record can be considered against Defendants.  The proposed instruction—which only relates to Count Two anyway—draws too much attention to an issue that is unlikely to occur to the jury.

### *Government's Request No. 12 ("Venue")*

1.  Defendants object to the Government's single instruction on venue.  Each of the charges in this case has a *separate* and *distinct* venue provision and the Government's all-inclusive venue instruction isn't accurate as to any of them.  Above, and in Defendants' Proposed Jury Instructions, we have proposed venue instructions appropriate for each of the charged offenses.  *See supra* at pg 9-11, 16, 17, 21. The Court should give the venue instructions proposed by the defense, which are specific to each of the charged offenses, rather than the overbroad (and thus inaccurate) instruction on venue that is proposed as Government's Requested Instruction No. 12.

### *Government's Request No. 13 ("Testimony of Defendant")*

Defendants object to this instruction, unless it is accompanied by the instruction concerning a defendant's right not to testify and the fact that the jury cannot even consider that fact when deliberating, as reflected in Defendants' Proposed Instruction No. 4.  Without a balancing instruction regarding a defendant who did not testify, Mr. Grimes will be prejudiced.

### *Government's Request No. 14 ("Interviews of Witnesses")*

Defendants object to this instruction as unnecessary.  Both sides have introduced evidence that they prepared their witnesses so that fact is not prejudicial to either the defense or the Government.  The jury charge is long; there is no need for additional instructions on an issue that is not a real issue.

### Government's Request No. 18 ("Uncalled Witnesses Equally Available to Both Sides")

Defendants object to this instruction as it suggests that Defendants share the burden of proof with the Government, which they do not. Defendants have no obligation to call *any* witnesses, so the fact that the defense did not call a particular witness cannot be equated with a conclusion that "the testimony of the absent witness might have been unfavorable…to the defendant," as the Government's proposed instruction states. This instruction will prejudice the defense, confuse the jury as to the burden of truth, add to an already-long jury charge and should not be given.

### Government's Request No. 20 ("Charts and Summaries")

Defendants do not believe this instruction is necessary, given the evidence in this case. The jury presently has no reason to think that "charts or summaries" are of any less value than any other evidence, so this instruction addresses an issue that likely doesn't exist in the mind of the jurors.

### Government's Request No. 21 ("All Available Evidence Need Not Be Produced")

Defendants do not believe this instruction is necessary and indeed, believe it may prejudice Defendants by suggesting that the Government has additional evidence that it chose not to present, but which may implicate Defendants. There is no need to refer to evidence outside of what was presented at trial.

### Government's Request No. 25 ("Affirmative Defense—Legal Commercial Transaction")

1. Defendants' object to the Government's instruction concerning the "legal commercial transaction" defense. The Government's instruction incorrectly states that *Defendants* have the "burden" to prove the legal commercial transaction, by a preponderance of the evidence. That is wrong.

Mr. Barrack and Mr. Grimes have no burden of persuasion in this case—as to the legal commercial transaction exception or any other element of the case. Defendants have only a burden of *production*, not the burden of persuasion, with respect to the legal commercial transaction defense. As the Supreme Court has explained, the Government "is foreclosed from shifting the burden of proof to the defendant only when an affirmative defense does negate an element of the crime." *Smith v. United States*, 133 S. Ct. 714, 719 (2013). Here, the statutory exception for those engaged in legal commercial transactions under Section 951(d)(4) "does negate," *see id.*, the "agency" element of Section 951. *See* Section 951(d)(4) (emphasis added) (excluding from the definition of "agent of a foreign government" any "person engaged in a *legal commercial transaction*.") (emphasis added). As such, the Government may not shift the burden of proof to Defendants, but instead holds the burden to *disprove the existence of the exception*, once Defendants have produced evidence sufficient to raise the defense.

As described in Defendants' letter of October 10, 2022, *see* Dkt. 301, the amount of evidence that Defendants are required to produce in order to raise the affirmative defense of a

"legal commercial transaction" is not significant.  *See United States v. Cabrera*, 13 F.4th 140, 144 (2d Cir. 2021) (noting the "slight burden" required to present an affirmative defense to the jury).  *See United States v. Durrani*, 835 F.2d 410, 420 (2d Cir. 1987) ("An affirmative defense requires a defendant to produce 'some evidence' placing the [statutory] exception in issue; if he does so, the government would be required to prove its inapplicability beyond a reasonable doubt.  The minimal burden placed on the defendant does not impinge upon his constitutional rights because the government ultimately bears the burden of disproving the applicability of the exception once it is properly raised.") (citations omitted).  All that is required is that Defendants satisfy their burden of producing "some evidence" showing that they were involved in commercial activity.  Having done so, the Government is then obligated to disprove the defense.

The Court should not give Proposed Government Instruction No. 25 but should instead instruct the jury on the legal commercial transaction using the instruction proposed by Defendants as Defendants' Proposed Instruction No. 31.  *See* Dkt. 273 at Defense Instruction No. 31 (page 51-53).

### *Government's Request No. 26 ("Affirmative Defense—Foreign Agent Registration Act (FARA)")*

Defendants' object to this instruction in its entirety.   The Government's proposed instruction suggests that a defendant is not engaged in a "legal commercial transaction" for purposes of Section 951 unless he has registered under FARA.  That cannot be right because someone who has registered under FARA has given notice for purposes of Section 951, so the Government is advancing the absurd proposition that they only way to be excused from giving notice under Section 951 is to give notice under Section 951 (via FARA registration).  *See* 28 C.F.R. § 78.3(e). If adopted, the Government's interpretation would read Section 951's legal commercial transaction exception entirely out of existence, and for that reason alone, cannot be a correct interpretation of the statute.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is, however, a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.").

Given the complete circularity of the Government's argument, in which someone must give the *very notice required* in order to be exempt from *giving notice at all*, the exemption itself does nothing.  It is non-existent.  This is precisely the type of absurd statutory reading that the Supreme Court has long cautioned against.  *See Nixon v. Mo. Municipal League*, 541 U.S. 125, 138 (2004) ("Court will not construe a statute in a manner that leads to absurd or futile results."); *Bostock v. Clayton Cty.*, 140 S. Ct 1731, *Holy Trinity Church v. United States*, 143 U.S. 457, 460 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construes as to avoid the absurdity.  The court must restrain the words.").

Rather than repeat the arguments set forth at length in Defendants' October 10, 2022 letter, Defendants refer to the Court to those arguments.  *See* Dkt. 301; also attached here as Ex. C.  Defendants fully incorporate those arguments and objections into this letter, and **add as follows**:

The Government's contention that a person who has not registered under FARA may not take advantage of Section 951's "legal commercial transaction" exception is an argument that defies one of the most basic canons of statutory construction, namely the principle of *expressio*

*unius est exclusio alterius*, which holds that the expression of one thing implies the exclusion of others. In this case, Section 951 *already* describes those persons who may not take advantage of Section 951(d)(4). Specifically, Section 951(e) provides that even where a person is operating in the United States "subject to the direction or control of a foreign government or official" and is engaged in a "legal commercial transaction," such person still constitutes an "agent" who is required to provide notification to the Attorney General if that person "is an agent of Cuba or any other country that the President determines (and so reports to the Congress) poses a threat to the national security interest of the United States." *See* 18 U.S.C 951(e). Because Section 951 includes a specific carve out for those who may not avail themselves of Section 951(d)(4), it is clear that Congress considered the fact that there may be people engaged in lawful commercial activity that it nevertheless wanted to exclude from reliance on Section 951(d)(4). Accordingly, if Congress intended for any person who was engaged in legal commercial activity at the direction or control of a foreign power, but who had not registered under FARA to fall outside the bounds of Section 951(d)(4), Congress would have included "persons who fail to register under FARA" in Section 951(e). *Georges v. UN*, 834 F.3d 88, 93-94 (2d Cir. 2016) (explaining that the "principle" of *expressio unius est exclusio alterius*, or the "express mention of one thing excludes all others," has "guided federal courts' interpretations" of law "for over a century," and confirming that where treaty provided one "circumstance" in which "immunity" would not be conferred upon the United Nations, that necessarily "excluded" every other circumstance from being one in which the United Nations lacked immunity). No such exception is described in Section 951(e) even though Section 951(e) has been amended by Congress on numerous occasions. *See* 18 U.S.C. 951 Amendment Notes (describing addition of, revisions to, Subsection (e) in 1986 and 1993). It seems implausible that if Congress *actually* intended the circular absurdity that the Government is now suggesting with respect to FARA registration, that Congress would have neglected to specify that intention in the statute during the multiple occasions on which it has updated and amended the description of where the commercial transaction exemption does not apply.

### *Government's Supplemental Request (Dkt. 288; Ex. 1) ("Character Evidence)*

The Government agrees that Defendants are entitled to a character evidence instruction, but proposes a different instruction without saying why its proposal is better. But the Government's proposed instruction is legally flawed. It tells the jury that it must acquit if it has a reasonable doubt after "after considering all the evidence including testimony about the defendant's good character," *see* Dkt. 288, Ex. 1,[2] but the Supreme Court has held that character evidence *alone* can warrant an acquittal, even without considering all the other evidence. *See Michelson v. United States*, 335 U.S. 469,476 (1948) ("[A defendant] may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged. This privilege is sometimes valuable to a defendant for this Court has held that such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed."); *Edgington v. United States*, 164 U.S. 361, 366 (1896) ("The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone

---

[2] It uses this language repeatedly. Ex. A ("consider this character evidence together with all the other facts and all the other evidence in the case" . . . "if after considering all the evidence including testimony about the defendant's good character" … "if after considering all the evidence including that of defendant's character").

create a reasonable doubt, although, without it, the other evidence would be convincing."); *see also United States v. Crosby*, 294 F.2d 928, 948 (2d Cir. 1961) (affirming where instructions "specifically told the jury that evidence of good character, alone, may create a reasonable doubt."). Defendants' proposed instruction, which was recently given in the trial of Senator Menendez, is more consistent with Supreme Court precedent.

The last paragraph of the Government's proposed instruction is speculative and confusing. It tells the jury that "prosecution asked certain questions on cross-examination of the defendant's character witness about specific acts supposedly committed by the defendant," but that is speculative because it is not even clear that the prosecution will want to do that or be allowed to do that. Worse, the instruction is confusing. The jury is told that it cannot "assume that the acts described in the questions are true," but inexplicably the jury is then told that it can consider the questions in deciding "whether the witness was accurate in forming his opinion or in describing the reputation of the defendant's character." That makes no sense. For the prosecution's question about specific acts to be at all relevant to the witness' character testimony, the specific acts addressed in the question would have to be true. Why would a jury ever question the accuracy of a witness' opinion if the witness admits to never having considered something that never happened?

## II. DEFENDANTS' OBJECTION TO THE ABSENCE OF CERTAIN INSTRUCTIONS IN THE GOVERNMENT'S PROPOSED CHARGES.

### A. "Missing Witness" Instruction

Mr. Barrack firmly contends that the Government's failure to call Agent Chui, the Government's sole note-taker during Mr. Barrack's 2019 interview, is meaningful and important evidence that strongly suggests that Mr. Barrack did not make the statements that he is alleged to have made, in Counts Four through Nine. Mr. Barrack believes that a missing witness instruction is therefore appropriate. *United States v. Caccia*, 122 F.3d 136, 137 (2d Cir. 1997) ("the most appropriate version of a missing witness instruction, where the facts warrant it, permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party. In such circumstances, it is more likely than not that the testimony of an uncalled witness would have been unfavorable to the party with such control, and a jury may reasonably draw such an inference. The requirement that the witness be 'peculiarly within the control' of the party ensures that the inference is not available to be drawn against a party who, in comparison with an adversary, lacks meaningful or pragmatic access to the witness."). The following instruction, which is a modified version of the missing witness instruction set forth in the Third Circuit's "Model Instructions for Criminal Trials" at Section 4.16 should be given:

You have heard evidence about Agent Warren Chui, who has not been called to testify. The defense has argued that Agent Chui's testimony could have been important to this case and that Agent Chui was available as a witness to the government.

If you find that the government could have called Agent Chiu as a witness and that Agent Chiu would have given important new testimony, and you also find that Agent Chiu was available as a witness to the government and that the government failed to call Agent

Chiu, you are permitted, but you are not required, to infer that Agent Chiu's testimony would have been unfavorable to the government.

You must decide whether you believe that Agent Chiu would have testified unfavorably to the government. You should not draw such a conclusion if the witness's testimony would have merely repeated the testimony of other witnesses or evidence already presented in the case.

## B. Unanimity Instruction

The Government proposes that the Court give its standard instruction regarding the "Duty to Consult and Need for Unanimity."  Defendants respectfully reserves the opportunity to object to whatever instruction the Court ordinarily gives, especially given the multiple theories of liability that the Government has asserted with respect to Count One.  For example, if half the jury believe Mr. Barrack aided and abetted only Mr. Grimes in acting as an agent who had not given notice, and the other half of the jury believed that Mr. Barrack aided and abetted only Mr. Al Malik, there is no unanimity as to a single crime and thus, no conviction can be returned. *See, e.g.*, *Richardson v. United States*, 526 U.S. 813, 820 (1999) ("[T]he Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means."); *id.* ("We would not permit . . . an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday.") (quoting *Schad v. Arizona*, 501 U.S. 624, 651 (1991) (Scalia, J., concurring); *United States v. Newell*, 658 F.3d 1, 23 (1st Cir. 2011) (reversing conviction on duplicitous count because no unanimity instruction was given and "the jury is required to unanimously agree as to which instances of a crime the defendant committed"); *United States v. Creech*, 408 F.3d 264, 268 (5th Cir. 2005) (explaining that a general unanimity "instruction is insufficient if 'there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts.'") (quoting *United States v. Holley*, 942 F.2d 916 (5th Cir. 1991)).

## III.   DEFENDANTS' OBJECTIONS TO THE VERDICT SHEET PROPOSED BY THE GOVERNMENT

The Government's proposed verdict form (Dkt. 274-2) is acceptable with two slight modifications.  Because the Defendants are presumed innocent and that presumption must be overcome by the Government beyond a reasonable doubt, the first choice for all the questions posed should be Not Guilty, followed by Guilty.  The order just needs to be flipped.  Second, there should be a page break after Count 2 is decided to better separate the charges against the Defendants jointly from those against Mr. Barrack alone

## IV.   DEFENDANTS' RESPONSE TO THE GOVERNMENT'S OBJECTIONS TO THE INSTRUCTIONS PROPOSED BY MR. BARRACK AND MR. GRIMES (DKT. 288).

### A.   Defendants' Response to the Government's Objection to Defense Instruction No. 3 (Reasonable Doubt).

The Government's objection to Defendants' "Reasonable Doubt" instruction is puzzling. Defendant's instruction has been  upheld by the Second Circuit. *United States v. Doyle*, 130 F.3d 523, 539 (2d Cir. 1997).  To be sure, there are other versions of this instruction, but this one is based on efforts by the Federal Judicial Center to craft an instruction that improves on those given

in the past. Federal Judicial Center Pattern Criminal Jury Instruction No. 1, see FJC, Pattern Criminal Jury Instructions, No. 21 (1988).   As the Fifth Circuit in *Williams* pointed out, "contrasting the civil and the criminal standards of proof is an effective means of framing the issue for the jury." *United States v. Walton*, 207 F.3d 694, 704-06 (4th Cir. 2000) (en banc) (equally divided court) (King, J., dissenting) (citing *United States v. Williams*, 20 F.3d 125, 132 n.5 (5th Cir. 1994)). Additionally, the "firmly convinced" language, set forth in Defendant's instruction, best articulates what beyond a reasonable doubt means. *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring) ("The 'firmly convinced' standard for conviction . . . . surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."); *id.* at 34 (Blackmun, J., joined by Souter, J., concurring and dissenting in part); *Williams*, 20 F.3d at 131.

**B. Defendants' Response to the Government's Objection to Defense Instruction No. 4 (Defendant's Right Not To Testify).**

The Government objects to Defendants' instruction because the Government disagrees that it holds the burden of proving that Defendants were not engaged in a "legal commercial transaction," and thus, the Government disagrees with the statement in the proposed instruction that the "defendant never has any burden of proof."   The Government is wrong.   As described above, Defendants have only a burden of persuasion on the "legal commercial transaction" exception, not the burden of persuasion.   *See supra* at pg. 23-24.   Defendants' proposed instruction is accurate.

**C. Defendants' Response to the Government's Objection to Defense Instruction No. 5 (Nature of the Indictment).**

The Government objects to telling the jury that the indictment is not evidence because it was written by prosecutors, but that is consistent with what the Court already has told the jury about what prosecutors and defense lawyers say at trial is not evidence.   It is not prejudicial to explain to jurors why an indictment is not evidence.

**D. Defendants' Response to the Government's Objection to Defense Instruction No. 6 (Caution—Consider Only Crime Charged).**

The Government objects to telling the jury that "the defendants are 'not on trial' for conduct 'not alleged in the indictment' and that they are not being asked to reach a verdict on 'persons not on trial,'" but it is not at all clear why the Government objects.   (Dkt. 288 at 3.)   The Government does not seem to question that these are correct statements of law, but finds them "confusing" and suggests they are covered elsewhere.   (*Id.*)   This language, however, is perfectly clear and it makes the point far more succinctly and directly than any other instruction.   Accordingly the instruction should be given.

**E. Defendants' Response to the Government's Objection to Defense Instruction No. 7 (Multiple Defendants – Multiple Counts)**

Although this is a case with multiple defendants, charged with multiple counts, the Government claims – with no explanation – that there is no reason for giving this standard instruction.   (Dkt. 288 at 3.)   Defendants proposed a widely used pattern instruction that was designed for just such a case and it should be given.

**F.  Defendants' Response to the Government's Objection to Defense Instructions Nos. 8 through No. 13.**

The Government has no real objection to any of these charges, but merely suggests that the Court give the instructions used in other cases.  These instructions largely track those given in Final Instructions (ECF No. 849), *United States v. Nordlicht*, No. 1:16-cr-00640-BMC (E.D.N.Y. Mar. 2, 2021), and there is no reason not to give them here.

**G.  Defendants' Response to the Government's Objection to Defense Instruction No. 14 (Law Enforcement Witnesses).**

The Government objects to language in Paragraph 2 of the proposed instruction, where Defendants propose that the jury be instructed that it is "legitimate for defense counsel to try to attack the believability or credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case." (Ltr. at 4.)  That language was given verbatim in a recent Section 951 case, and it should be given here. Final Jury Instructions (ECF No. 354-5), Instruction 17, *United States v. Rafiekian*, No. 1:18-cr-457 (E.D. Va. July 23, 2019).  The whole point of flagging law enforcement witnesses specifically is because they may have a source of bias, which defense counsel can legitimately explore.  The Court often identifies such issues with witnesses who may be biased (*e.g.*, witnesses with cooperation agreements).  Identifying the potential for bias and the right of the defense to question witnesses about bias alerts jurors to consider the potential for bias carefully, but it does not direct that the testimony of law enforcement witnesses be rejected.  This instruction fairly states the law.

**H.  Defendants' Response to the Government's Objection to Defense Instruction No. 15 (Character Evidence).**

The Government agrees that Defendants are entitled to a character evidence instruction, but proposes a different instruction without saying why its proposal is better. Defendants' objection to the Government's proposed instruction is set forth above, *see supra* at pg. 25.

**I.  Defendants' Response to the Government's Objection to Defense Instruction No. 16 (The Charges in this Case)**

The Government's objection to the use of "willfully" in Defendants' Proposed Instruction is incorrect.  As described above, Defendants are properly using willfully to describe the state of mind required for conspiracy and aiding and abetting.  *Supra* at pg. 12, 14-15.

The Government's second objection is that it believes Defendants improperly refer to there being three groups of counts, but Defendants accurately explain the grouping.  Counts 1 and 2 concern Section 951, Count 3 concerns obstruction of justice, and Counts 4-9 concern false statements.  There is nothing inaccurate about that.

**J.  Defendants' Response to the Government's Objection to Defense Instruction No. 17 (Scienter)**

The Government's objection here is incorrect.  The proposed instruction is one given by this Court.  Final Instructions (ECF No. 849), *United States v. Nordlicht*, No. 1:16-cr-00640-BMC

(E.D.N.Y. Mar. 2, 2021).  The Government also suggests that this instruction will be confusing to jurors because the scienter requirements vary by counts, but that is why it is better to address the varying standards together up front, so the jury can better appreciate the differences from the outset.

### K. Defendants' Response to the Government's Objection to Defense Instruction No. 25 and 26 Concerning "Willfulness" as an Element for Aiding and Abetting Liability and Conspiracy.

The Government objects to the inclusion of willfulness as an element necessary to prove aiding and abetting liability under Count One and to prove Count Two, conspiracy to violate Section 951.  For the reasons described at length above, Defendants' instruction on aiding and abetting is accurate, *see* supra at pg. 12, as is Defendants' instruction concerning conspiracy. *See supra* at pg. 14-15.

### L. Defendants' Response to the Government's Objection to Defense Instructions No. 24, 30, 38, 45 Concerning Venue.

The Government objects to the inclusion of a venue instruction for each offense, but as described above, each of the offenses here has a different venue provision and it makes sense to describe those venue requirements immediately after describing the elements of each particular offense.

### M. Defendants' Response to the Government's Objection to Defense Instruction No. 18 (Count 1: Section 951).

Defendants have no objection to using the verb "notify" rather than "register.  The Government also opposes treating the "legal commercial exception" as an element.  To be sure, Defendants believe that this exception is an element and should be charged as such.  If the Court disagrees, Defendants have preserved the issue for appeal, and a separate instruction for the exception would then be warranted.

### N. Defendants' Response to the Government's Objection to Defense Instruction No. 19 (First Element of Section 951 Offense).

The Government's objections to the inclusion of instructions which make clear that that acting in parallel, even in pursuit of a shared goal, does not make someone an agent are completely baseless. *See, e.g., United States v. Rafiekian*, 991 F.3d 529, 539 (4th Cir. 2021) (Section 951 does not proscribe mere "willing[ness] to do something the foreign principal requests . . . to be an 'agent of a foreign government'" within the meaning of Section 951, there must be "mutual assent" that obligates the individual agent to act at the foreign government's instruction).

The Second Circuit has been very careful not to allow convictions based on vague and elastic concepts of agency in similar cases. *See United States v. Hoskins*, 44 F.4th 140, 150- 51 (2d Cir. 2022) ("There is, of course, some evidence of direction from Pierucci and API to Hoskins. Pierucci asked Hoskins to execute certain tasks, such as revising agreements and sending them to API. Hoskins asked for approval from API before moving forward with Aulia, indicating that he looked to API for instruction. And the record shows Hoskins located and hired consultants at the

behest of API and that these consultant contracts required Hoskin's approval. But the fact that Hoskins collaborated with and supported API and Pierucci does not mean he was under their control within the meaning of the FCPA. Identifying consultants to become agents of API does not make Hoskins himself an agent of API. Nor does reviewing contracts for API to make sure they complied with API standards make Hoskins an agent. The government argues that because Hoskins provided API with support, he is an agent. But the government cites to no authority that supports such a broad definition of 'agent' within the meaning of FCPA." (internal citations omitted)).

## O. Defendants' Response to the Government's Objection to Defense Instruction No. 20 (Cautionary Instruction – Agency).

The Government suggests that there is something improper about giving cautionary instructions, but courts do this all the time to prevent juror confusion on issues. The Government has done so here, for example, asking that the jury be instructed that it must follow the law even if it disapproves of the law, not to consider punishment, and not to consider the propriety of law enforcement techniques. Given the potential for juror confusion on the critical issue in this case— what it means to agree to become an agent of the UAE—it is entirely appropriate to clarify the issue for the jury. As shown above, these instructions are accurate.

## P. Defendants' Response to the Government's Objection to Defense Instruction No. 21 (Second Element of Section 951 Offense)).

Defendants' proposed instruction, which informs the jury that it must decide whether the Government has proven that Defendants failed to give notice under Section 951, is appropriate. The Government holds the burden on each and every element of the offense, including the notification requirement, and it is the jury's task to decide, based on all the evidence presented at trial, whether the Government has met that burden.

## Q. Defendants' Response to the Government's Objection to Defense Instructions No. 26-29 (Conspiracy to Violate Section 951).

Defendants agree that the Government is not obligated to prove the specific overt acts alleged in the Indictment, but rather only that an overt act was made. Accordingly, Defendants respectfully withdraw the list of overt act described in the Indictment. In addition, counsel has now read the case that the Government cites, *United States v. Kozeny*, 667 F.3d 122, 127 (2d Cir. 2011), and agrees that it holds that the jury need not be unanimous on which overt act the Government proved, so long as the jury agrees that the Government proved an overt act. Accordingly, Defendants withdraw that portion of their proposed instruction.

Defendants also agree with the Government's point that Section 951 speaks to "notification," not registration and Defendants agree that the jury instructions should use the proper language.

The Government objects to the following portion of Defendants' Proposed Instruction No. 29: "To put it another way, the overt act element is a requirement that the agreement went beyond the mere talking and agreement stage. Bear in mind, however, that the overt act standing alone may be an innocent lawful act, and if that is all it is, then the third element is not satisfied."

Defendants disagree with the Government's objection.  This statement is accurate and is simply reaffirming for the jury that when it comes to innocuous otherwise lawful conduct, the jury must be very careful to assess whether that conduct was really intended to further the objectives of the unlawful conspiracy.  If the jury concludes that the conduct was actually just ordinary lawful behavior, and not an action intended to further the criminal conspiracy, then the Government has not proved an overt act.

**R.  Defendants' Response to the Government's Objection to Defense Instruction No. No. 30 (Affirmative Defense to Section 951).**

As Defendants explained above, and in their letter of October 10, 2022, *see* Dkt 301, the record is sufficient to satisfy Defendants' slight burden of production and allow the jury to be instructed on the legal commercial transaction exception.  By the close of the defense case, the record will be even more fulsome.

Defendants otherwise respond to the Government's inaccurate interpretation of the legal commercial transaction exception above and in their letter of October 10, 2022 (attached as Ex C).

**S.  Defendants' Response to the Government's Objection to Defense Instruction No. 32 (Unanimity of Theory as to Counts 1 and 2)**

As described above, *see supra* at pg. 27, Defendants believe that it is important that the jury be given a fulsome unanimity instruction on Counts 1 and 2, because of the multiple theories of liability that the Government is asserting in connection with Count One and the breadth of otherwise innocuous conduct that the Government contends serve as "acts of agency" on behalf of the UAE.  This case is different than most in that regard and for that reason, the ordinary instruction regarding unanimity may not be sufficient to safeguard Defendants' rights.

Respectfully Submitted,

WILLKIE FARR & GALLAGHER LLP

/s/ Michael S. Schachter
Michael S. Schachter
Randall W. Jackson
Steven J. Ballew

O'MELVENY & MYERS LLP

James A. Bowman

*Counsel for Defendant*
*Thomas J. Barrack*, *Jr.*

Cc (via ECF): Hiral D. Mehta
Nathan Daniel Reilly

WINSTON & STRAWN LLP

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
Sofia R. Arguello
Johanna Rae Hudgens

*Counsel for Defendant*
*Matthew Grimes*

Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie