RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -　　　　　　　　　　　　　　　No. 21-CR-371 (S-1) (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
      also known as "Rashid Al Malik"
      and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT BARRACK'S TRIAL BRIEF AND <u>MOTION FOR A CURATIVE JURY INSTRUCTION</u>

                          BREON PEACE
                          United States Attorney
                          Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

The government respectfully submits this brief in opposition to defendant Thomas J. Barrack's trial brief and motion for a curative jury instruction and defendant Matthew Grimes' motion for joinder.  See Dkt. No. 353 ("Def. Mot."); Dkt. 358.[1]

PRELIMINARY STATEMENT

Prior to opening statements, Defendants knew that the Court had (1) ordered that the government was permitted to withhold certain classified information because public disclosure could cause serious damage to national security and (2) specifically precluded defense counsel from inquiring about classified information at trial because the existence or absence of classified information is irrelevant.  Nonetheless, in opening statements, counsel for Barrack made statements in direct conflict with those orders, explicitly arguing that the existence or absence of classified information was relevant to the jury's determination.  Counsel made these arguments twice, despite an objection and direction by the Court to move on after the first improper statement.  Afterward, the Court issued a measured and appropriate instruction to cure the prejudice caused by counsel's comments, advising the jury not to speculate about irrelevant information.

Barrack's opening statement was improper, and the curative instruction the Court issued was a necessary response—and remarkably light sanction—for this misconduct. Defendants now seek to avoid the foreseeable consequence of violating the Court's prior orders prohibiting them from arguing that the existence or non-existence of classified information about intercepted communications suggests that the communications did not exist.  In doing so, Defendants signal that they intend to again violate the Court's orders in closing arguments and

---

[1] As discussed herein and in other filings, the government can neither confirm nor deny the existence of classified intelligence information.  Nothing herein should be construed as such a confirmation or denial.

also seek an instruction to reverse the remedy the Court was compelled to provide following counsel for Barrack's calculated decision to make an improper statement.

Defendants' motion should be denied. To the extent that the Court provides an additional instruction, it should be the standard instruction that the jury is only to consider the evidence presented before it at trial and not speculate as to the existence, or non-existence, of additional evidence (or absence of such evidence). If defense counsel wades into this thicket again during closing and discusses the absence of classified information, despite repeated warnings not to do so, the government will request an additional curative instruction and further sanctions. The government may also request permission to explain in detail during its rebuttal the multiple reasons why inculpatory classified information may exist but not be shared with the jury, and that the Court authorized that any such information could be withheld by the government.

## BACKGROUND

Defendants were on notice for months about the parameters of the handling and treatment of classified information related to this case. In July 2022, the Court ruled that the government was permitted to withhold certain classified materials because "disclosure of the classified materials to the defense, or to the public, reasonably could be expected to cause serious damage to the national security of the United States." CIPA Section 4 Order at 1 (ECF No. 136) (the "CIPA 4 Order"). Shortly before the start of trial, counsel for Grimes sought permission to try to establish evidence about the absence of classified information related to the Defendants' conduct. Consistent with its CIPA 4 Order, on September 14, 2022, the Court granted the government's motion "to preclude defendants from inquiring about classified information at trial"

and holding that that "[w]hether the Government has the type of classified information Grimes seeks is irrelevant." See CIPA Section 5 Order at 1, 8 (ECF No. 224) (the "CIPA 5 Order").

Despite an express order precluding any attempt to elicit evidence about the existence or non-existence of classified information, just one week later counsel for Barrack violated that order. In his opening statement, counsel for Barrack argued that, because of the existence of the "NSA and the CIA . . . [y]ou should expect to see intercepted communications in which the UAE" but that "[y]ou are not going to see anything like that." Trial Tr. at 385:11-19. Despite an objection and direction by the Court to move on, counsel argued a second time "they are not going to show any classified, secret information . . . in the hands of Tom Barrack." Trial Tr. at 408:25-409:4. Afterward, the Court summarized its prior CIPA rulings, explaining that the opening was improper because the government is permitted to withhold inculpatory classified information, and that the defendants cannot argue that the absence of classified information from the CIA or NSA is proof of anything, "because that's not necessarily true." Trial Tr. at 428. The Court then gave a measured and reasonable curative instruction—pared far down from what was proposed by the government after consultation with defense counsel[2]—that advised the jury they should not speculate about the existence or absence of classified information. Trial Tr. at 437:20-438:7.

---

[2] Defense counsel refused to discuss a proposed instruction, and instead asserted that no instruction was necessary.

ARGUMENT

Defendants' argument is built upon a fundamentally flawed premise: that the absence of classified information presented at trial means that the jury can infer that no inculpatory classified information exists. See Def. Mot. at 2 ("because one would expect to see corroboration from intelligence intercepts if the government's allegations against Mr. Barrack were true, the fact that the government would not offer any such intercepts is a reason to infer that those allegations are false."). This is not an inference, it is speculation. And it is also wrong. CIPA expressly permits the government to withhold classified information for national security reasons, and the Court authorized non-disclosure of classified information in this case. As the Court explained during trial, asking the jury to conclude that there is no inculpatory classified information would be incorrect. See Trial Tr. at 428 ("There may be in the classified documents some inculpatory information that they've decided is not worth exposing classified means of getting it and that's why they haven't done it."). Even if inculpatory classified information did not exist, there are other (classified) reasons why the intelligence community might not have intercepted Defendants' communications. As the Court accurately explained in its curative instruction, the issue for the jury is not what information might exist somewhere in classified holdings, or elsewhere in the world, but what has been presented to them at trial.

I.  Defendants' Inference Is Impermissible, Inaccurate and Calls for Speculation

Defendants claim that there is a "simple chain of reasoning" the jury should follow and offer a three step process to illustrate the point. Def. Mot. at 3-4. But the links in their chain break under the weight of flawed logic, inaccurate presumptions, and outright speculation. Defendants wrongly presume facts not in evidence about the capabilities and priorities of the U.S. Intelligence Community ("USIC") and inaccurately claim that a public trial is a circumstance

under which classified information would naturally be expected to corroborate the government's evidence.

The first link of Defendants' chain is based upon a false premise about the evidence regarding the intelligence-gathering capabilities of the USIC.  See Def. Mot. at 3 ("in light of the substantial intelligence-gathering capabilities of the U.S. government…one would expect [the government's] account to be corroborated by intercepted communications.")  While it may be commonly known that the USIC gathers intelligence, the exact capabilities, along with the precise targets of collection, are not known and are classified for good reason.  See United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) (observing that "much of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all"); United States v. Stewart, 590 F.3d 93, 132 (2d Cir. 2009) (holding that the details of the NSA's operations, including the surveillance vel non of any particular individual or group, implicate national security).  There is no evidence in the record about the extent of the USIC's ability to intercept communications during the relevant time period.  There is no evidence in the record about the targeting priorities of the USIC during the relevant time period.  There is no evidence at all in the record to support this first step in the Defendants' chain of logic, nor should there be.  Yet despite this lack of evidence, or expected evidence, counsel asked the jury to draw an inference based on a wholly speculative assumption that the USIC has an omnipresent and omnipotent ability to collect, and meaningfully analyze, all communications of all people across the globe and in fact does so despite any possible

policy considerations that would counsel discretion in the use of these awe-inspiring capabilities. A massive presumption, supported by nothing in the record.

Defendants then ask the Court to take another logical leap by claiming that the present circumstances constitute those under which the government would naturally be expected to present communications intercepted by the USIC to the jury. See Def. Mot. at 3 ("The government's failure to offer any [classified] intercepted communications at trial, under circumstances in which such communications would naturally be expected to corroborate the government's account of events if it were correct, should lead the jury to infer that the government's account is not in fact correct."). In doing so, Defendants ask the Court to ignore not only decades of precedent to the contrary and Congress's express intent to provide the government with the ability to proceed to trial without exposing inculpatory classified information—but extensive litigation in this very case.

Courts have long acknowledged the government's interest in protecting classified information. See CIA v. Sims, 471 U.S. 159, 175 (1985) ("[t]he government has a compelling interest in protecting both the secrecy of the information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.") As discussed further below, Congress created an entire statutory scheme to protect these interests. See Classified Information Procedures Act ("CIPA") 18 U.S.C. App. III; see also United States v. Al-Farekh, 956 F.3d 99, 106 (2d Cir. 2020) (CIPA "establishes certain procedures for the handling of classified information in criminal cases" and those procedures "protect[] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial."). And, to further underscore the point that this trial is not a circumstance in which one would expect to see classified information presented to the jury, the government sought,

and received, a protective order pursuant to CIPA Section 4. Dkt. No. 117; Dkt. No. 136. The Court, rightfully, recognized this fact after counsel for Barrack decided to violate the Court's prior Order pursuant to CIPA Section 5 in stating:

> First, the government's obligation was to turn over exculpatory information or inculpatory information that they are going to use at trial. There may be in the classified documents some inculpatory information that they've decided is not worth exposing classified means of getting it and that's why they haven't done it. So the only thing that Mr. Schacter said that I objected to—the government objected to but I sustained, is that you can't say the CIA or the NSA, with all their resources, would have had something. That you can't say because it is not necessarily true. Because the government may have decided it was extremely inculpatory information but its not going to use it. So that argument is wrong.

Trial Tr. 428: 6-18.

Defendants' reliance on logical fallacies continues with an appeal to inappropriate authority by suggesting that an intercepted communication by the USIC would somehow hold more value than evidence of a communication collected pursuant to a criminal search warrant. See Def. Mot. at 9 (arguing that there is some relevance to the fact that "the government does not intend to offer intelligence intercepts" in this particular case). In doing so, Defendants ignore the fact that the government spent weeks introducing into evidence communications between the Defendants and others in the form of text messages and emails. Clearly, these communications, which amount to written confessions, would not have any more force if they were collected by the USIC rather than pursuant to Court-authorized search warrant. The entity that collected the communication simply has no relevance. See, e.g., United States v. Carton, 2018 WL 5818107, *3 (S.D.N.Y. 2018) ("[T]he failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.") (quoting United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000)). Further, to properly respond to this

7

argument, the government would have had to detail the methods and priorities of the USIC, thus disclosing highly sensitive details about the USIC's capabilities. This is exactly the type of inquiry CIPA was designed to prevent. See United States v. Pappas, 94 F.3d 975, 799 (2d. Cir. 1996) (explaining that CIPA was designed to "minimize the problem of so-called graymail—a threat by the defendant to disclose classified information in the course of trial—by requiring a ruling on the admissibility of the classified information before trial.").

II. The Defendants' Inferences Are Improper as a Matter of Law

    A. The Inferences Urged Are Impermissible Under CIPA and the State Secrets Privilege

As a threshold matter, the inference that Defendants are asking the jury to draw is improper as a matter of law. Defendants attempted to argue, and wish to argue again, that the jury should draw an inference against the government from the nondisclosure of classified information. That is improper, because the state secrets privilege and CIPA itself embody the legal principle that the government may withhold from the jury and the defense classified information for reasons separate and apart from its evidentiary value in a trial. See, e.g., United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (holding that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008) (same); see also Abu-Jihaad, 630 F.3d at 140-41 (CIPA "presupposes" a privilege that "has its origins in the common-law privilege against disclosure of state secrets . . . which allows the government to withhold information from discovery when disclosure would be inimical to national security.") (internal citations and quotations omitted). As this Court and countless others have explained, CIPA expressly permits the non-disclosure of classified

information to the defendants and public where it "reasonably could be expected to cause serious damage to the national security of the United States." CIPA 4 Order at 1 (citing United States v. Farekh, 956 F.3d 99, 106-09 (2d Cir. 2020)).

A counterfactual highlights the impropriety of the defendants' argument. In appropriate circumstances, CIPA permits the government to disclose classified information in classified discovery to defense counsel. See 18 U.S.C. App. 3, § 3. If the government had disclosed classified information to Defendants in CIPA Section 3 discovery that was inculpatory, Defendants would not be permitted to urge the inferences they urge here. They would be acting in bad faith if they argued that the jury must infer that no inculpatory classified information exists, because they would know that information to exist, and that the government is not presenting the evidence because it is trying to protect it from public disclosure. But neither CIPA, nor any other law, compels the government to disclose inculpatory classified information (to the extent any exist) to prevent a defendant from urging a jury to speculate that no such information exists.

Defendants claim that their argument is not "graymail," because they are not threatening to disclose classified information. See Def. Mot. at 10-11. But as Defendants themselves concede, graymail includes situations where the defendant "presses for the release of sensitive classified information." See id. at 10 (quoting S. Rep. No. 823, 96th Cong. 2d Sess. 2). That is precisely the case here—Defendants want to argue that the jury should infer that the reason why they have seen no classified information about Defendants' misconduct is because no such information exists. The only way the government can rebut such a claim is to disclose inculpatory classified information (if any exist). This is quintessentially and literally the Defendants pressing for the release of sensitive classified information. The fundamental basis of CIPA and the state secrets privilege is to permit the government to withhold this type of information, and the Court

9

expressly granted the government the ability to do so in its Order pursuant to CIPA Section 4. If defendants were permitted to urge this inference, while the government were forced to remain silent, it would be contrary to the entire premise underlying CIPA and the state secrets privilege.

  B.  <u>CIPA Section 5 Precludes the Defendant's Argument</u>

  Separately, Barrack's arguments during his opening, and any later arguments were and remain barred by the Court's order on CIPA Section 5, and the defendants' ongoing failure to provide CIPA Section 5 notice. As noted above, the Court already ruled that any attempt to elicit evidence about what, if anything, the USIC collected and held is improper because any such evidence (and, by the same token, argument about such evidence) is irrelevant. <u>See</u> CIPA 5 Order at 1 ("the type of classified information Grimes seeks is irrelevant"). This, as the Court pointed out following counsel's opening statement, should have been the end of any attempt to inquire or offer arguments regarding classified holdings.

  However, even if the CIPA 5 Order somehow did not apply to Barrack (and, on its face, it expressly did apply), his attempts to do the exact same thing remains barred for lack of notice. As the Court has previously explained, "CIPA § 5(a) requires defendants to provide a timely pretrial notice when they believe that the disclosure of classified information is reasonably likely based on their planned cross examination or case." <u>Id.</u> at 7 (citing <u>United States v. Wilson</u>, 750 F.2d 7, 9 (2d. Cir. 1984). The Court explained the importance of pretrial notice, reasoning that the complex balancing act required when dealing with classified materials "should not be done on the fly" because "the constitutional, evidentiary, and national security concerns raised by a desire to admit classified evidence should be resolved before trial if possible, not in the middle of it." <u>Id.</u> (citing <u>United States v. Collins</u>, 720 F.2d 1995, 1196-97 (11th Cir. 1983). The Court held that by waiting until less than 30 days before trial to file his notice, he, inadvertently, caused the very predicament that Congress created CIPA to avoid. <u>Id.</u> at 8. Certainly, if Grimes' notice

10

filed before the trial began was untimely, Barrack's motion weeks into the trial is more so and should be denied on these grounds.

III. The Court's Instruction Was Proper

The Court's instruction was both accurate and proper. Counsel, who is both experienced and sophisticated, made a calculated and informed choice to repeatedly violate the Court's prior order and the statutory requirements of CIPA in opening statements. It was counsel, not the government, who injected the NSA and CIA into this case. It was counsel, not the Court, who asked the jury to improperly speculate as to the existence or non-existence of classified information and draw an improper conclusion from such speculation. The Court, rightfully, provided a curative instruction to correct this error. After briefly correcting Mr. Schacter's false assertion ("there are many reasons why the government may not want to introduce evidence as to classified information in a public criminal trial"), the Court balanced this curative instruction with a reminder that "that doesn't mean there is such information," and then concluded by explaining that "[w]hat matters is you listen to the evidence that the government is going to put into this case and you decide if that evidence is sufficient to prove the Defendants' guilt beyond a reasonable doubt." Trial Tr. at 437:20-438:7. That instruction was brief, legally accurate, and balanced.

IV. The Court Should Give Its Ordinary Instruction About Speculation and All Available Evidence

One area in which the government and Defendants agree is that the jury should not consider any facts not placed in evidence before them in their deliberations. The government submits that the Court's ordinary instructions on such issues already accomplish this. Specifically the Court's instructions that the jury must only consider evidence presented at trial and that all available evidence need not be produced is both sufficient, and preferable to an instruction that specifically names classified information as a category of information that the jury should not

11

consider. The Government has already proposed that the Court give these instructions as it normally does, see Gov't Request to Charge Nos. 1 and 21, which are taken from United States v. al Farekh, and reprints them here for convenience:

> An inference is not a suspicion or a guess. It's a reasoned, logical decision to conclude that a fact exists on the basis of another fact that you know exists. It's a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been proven by direct or circumstantial evidence. You are not to engage in speculation based on matters that are not in evidence.
>
> \* \* \*
>
> Now the law doesn't require the Government to produce all available evidence, or call as witnesses all persons involved in the case who may have been present at any relevant time or place, or who may appear to have some knowledge of a matter at issue in the trial. Nor does the law require any party to produce as exhibits all papers and objects mentioned during the course of the trial. You're always entitled, however, to consider any lack of evidence in determining whether the Government has met its burden of proof beyond a reasonable doubt.

See Trial Tr. at 1591:22-1592:3, 1597:1-10, United States v. Al Farekh, No. 15-CR-268 (BMC) (ECF No. 173) (attached as Exhibit 2 to Gov't Revised Request to Charge).

## CONCLUSION

For the foregoing reasons, the Court should deny the defendant's proposed relief and, to the extent that either defendant again violates the Courts' Orders, provide an additional curative instruction to the jury.

Dated:     Brooklyn, New York
            October 24, 2022

            BREON PEACE
            United States Attorney
            Eastern District of New York

By:    /s/
      Ryan C. Harris
      Samuel P. Nitze
      Hiral D. Mehta
      Craig R. Heeren
      Assistant U.S. Attorneys
      (718) 254-7000

      MATTHEW G. OLSEN
      Assistant Attorney General
      Department of Justice
      National Security Division

By:    /s/
      Matthew J. McKenzie
      Trial Attorney