

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RCH/SPN/HDM/CRH/MM  *271 Cadman Plaza East*
F. #2018R001309  *Brooklyn, New York 11201*

October 24, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas J. Barrack and Matthew Grimes
      Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

  In advance of the charging conference, the government writes in response to the defendants Thomas J. Barrack and Matthew Grimes' (the "defendants") letter regarding FARA and Section 1001. See ECF No. 301 ("Def. Mot."). Defendants mischaracterize the law regarding (1) Section 91 and the Foreign Agent Registration Act ("FARA") and Section 951's legal commercial transaction; and (2) what is required to prove a Section 1001 claim.

  First, Section 951 and FARA are different statutes that prohibit and regulate different conduct. The fact that, in some instances, Section 951 and FARA can cover overlapping conduct, just as wire fraud and securities fraud can cover, in some instances, overlapping conduct, does not change the fact that they are different federal laws. In addition, the plain language of Section 951's legal commercial transaction exception, which is an affirmative defense, makes clear that the transaction(s) at issue must be "legal"—defined as not "prohibited by federal or state legislation or implementing regulations,"—which clearly includes FARA, federal legislation with implementing regulations.

  Second, Section 1001 claims do not require proof that the exact words in the applicable indictment were stated by the defendant. The law is clear—the government must prove that the defendant made a statement substantially similar to the one alleged, as the government has done here regarding Barrack's false statements.

I.      Section 951 and FARA

The defendants' motion reflects a fundamental misunderstanding and misreading of Section 951 and FARA.

The defendants are charged with violating Section 951, which makes it a crime to act as an agent of a foreign government without notice to the Attorney General. A person is excepted from Section 951 if they are engaged in a "legal commercial transaction." See 18 U.S.C. § 951(d)(4). The term "legal commercial transaction" is defined by law to exclude conduct "prohibited by federal or state legislation or implementing regulations." 28 C.F.R. § 73.1(f). Thus, if a person engages in any conduct "prohibited by federal or state [law]," he cannot avail themselves of the defense. See id.; see also United States v. Abouammo, 19-CR-621, ECF No. 348 (rejecting legal commercial transaction defense); United States v. Ji Chaoqun, No. 18-CR-611 (N.D. Ill.), ECF No. 368 (rejecting legal commercial transaction defense).

FARA is a separate and distinct federal law that prohibits certain specified activities on behalf of a "foreign principal" without submitting a comprehensive registration statement to the Department of Justice. See 22 U.S.C. § 611, et seq. FARA is narrower than Section 951 in that it prohibits certain specified categories of conduct, whereas Section 951 covers any actions. In a separate respect, FARA is broader than Section 951: it covers agents of "foreign principals," and not just "foreign governments." Depending on the factual circumstances, a person can be obligated to provide notice under Section 951, to provide registration under FARA, or to do both. In this case, some, but not all, of Barrack's conduct on behalf of the UAE fell into the specified categories of conduct covered by FARA, namely lobbying and media activity.[1] He, therefore, was required to file a FARA registration statement before engaging in that type of conduct.

Barrack's violation of Section 951 is not excused by the legal commercial transaction defense because his actions that constituted political influence activities were "prohibited by" a federal law—FARA. Specifically, without first registering under FARA, Barrack engaged in "political activities," acted as a political consultant and publicity agent, and represented before U.S. government officials the interests of a foreign principal, the UAE. See 22 U.S.C. §§ 612(a); 611(b), (c), (e), (g), (h) and (o).[2]

This reading of Section 951 and FARA is consistent with the plain text and history of the applicable statues and accompanying regulations and supported by logic and legal precedent. The defendants dispute this by conflating the two laws, arguing, for example, that "someone must give the very notice required in order to be exempt from giving notice at all." See Def. Mot. at 8. But FARA is a separate statute involving a separate registration requirement for certain specified

---

[1] Some of Barrack's conduct, such as passing sensitive information to UAE government officials about internal U.S. government deliberations, did not fall into the specified categories of conduct covered by FARA.

[2] Barrack's conduct also falls outside the legal commercial transaction exception because the charged actions on behalf of the UAE were not commercial and were not transactional.

2

conduct. Just as a person driving a car must both obey a speed limit and stay on the right side of the road at the same time, so too must a person comply with both Section 951 and FARA where both statutes are applicable. That the defendants cannot take advantage of the "legal" commercial transaction affirmative defense because they violated FARA is no different than other defendants who could not take advantage of that affirmative defense because they violated other laws, like export regulations or sanctions regulations. As the defendants themselves concede, a person cannot take advantage of the "legal commercial transaction" exception if they "engaged in unlawful commercial activities." The defendants point to drug trafficking, money laundering and trade secret theft; those are good examples of conduct "prohibited by federal or state [law]," but they are not the only examples. The legal commercial transaction defense excludes any conduct "prohibited by" law, not just criminal violations. Lobbying on behalf of a foreign government without first filing a registration statement under FARA is prohibited by that law, and there are civil (as well as criminal) penalties for such conduct. See 22 U.S.C. §§ 618(a), (f). The defendants engaged in such prohibited conduct, and therefore cannot take advantage of the legal commercial transaction.

    A.    <u>Section 951 and FARA Are Different Statutes That Cover Overlapping Conduct</u>

Section 951 makes it a crime to knowingly act as an agent of a foreign government without prior notice to the Attorney General. Section 951 prohibits any conduct on behalf of a foreign government, unless you are exempted by certain statutory exceptions, but is limited to acting on behalf of a foreign government, rather than any other foreign entity or party. The broadness of the conduct prohibited by Section 951 is demonstrated by the variety of activities for which people have been prosecuted, many of which fall outside the scope of FARA. By way of example:

- In <u>United States v. Fishenko</u>, No. 12-CR-626 (E.D.N.Y.) (SJ), a dual citizen of the United States and Russia, was charged with, and pled guilty to, acting as an agent of the Russian government within the United States without prior notification, in violation of Section 951, for his role in a scheme to illegally export controlled microelectronics to Russia.

- In <u>United States v. Ying Lin</u>, No. 15-CR-601 (E.D.N.Y.) (AMD), the defendant pled guilty to acting as an agent of the government of the People's Republic of China ("PRC") for using her position with an airline carrier to smuggle items onto flights departing from JFK Airport to the PRC and to carry out other tasks at the direction of PRC government officials, in violation of federal TSA regulations.

- In <u>United States v. Abouammo,</u> No. 19-CR-621 (N.D. Cal.), the defendant was convicted at trial for acting as an agent of the Kingdom of Saudi Arabia by accessing, monitoring, and conveying the private information of Twitter users to officials of the Kingdom of Saudi Arabia and the Saudi Royal family in violation of Twitter policies.[3]

---

[3] See also <u>United States v. Dumeisi</u>, No. 06-CR-4165 (N.D. Ill.) (defendant convicted of acting as an agent of the Iraqi government for collecting information to be passed to

FARA is a different statute from Section 951. FARA prohibits a discrete and narrower set of activities defined by statute—generally speaking, political activities, public relations, and certain financial activities—on behalf of a "foreign principal," which includes foreign governments and a variety of other foreign entities, and also defines the agency relationship more broadly. See 22 U.S.C. § 611, et seq. Thus, for example, none of the cases discussed above reflect FARA-related conduct (even though they are violations of Section 951). If a person's conduct is covered by FARA, the person must file a registration statement with the Department of Justice, which is different from the "notice" requirement to be filed under Section 951.

FARA is also broader in that it is both a criminal and civil regulatory regime. A person is criminally liable under FARA if he "willfully" violates the statute or provides false or misleading registration information. Civil liability is much broader, and a civil action is authorized if "any person is engaged in or about to engage in any acts which constitute or will constitute a violation of any provision of this subchapter, or regulations issued thereunder, or whenever any agent of a foreign principal fails to comply with any of the provisions of this subchapter or the regulations issued thereunder, or otherwise is in violation of the subchapter." See 22 U.S.C. § 618(f). Unlike with criminal liability, there is no mens rea requirement for civil liability in the statute. See RM Broad, LLC v. United States Dep't of Justice, 379 F. Supp 3d 1256, 1256 (S.D. Fla. 2019) (holding that "RM Broadcasting is an agent of a foreign principal and is required to register pursuant to FARA").

Just as some actions taken by a person may be the subject of Section 951 only (like the examples described above in Fishenko, Ying Lin, and Abouammo), similarly some actions may be covered by FARA only (like actions taken on behalf of a foreign principal other than a foreign government). Some actions may also be covered by both Section 951 and FARA. For example, a person who engages in political lobbying in the United States at the direction of a foreign government would be subject to both Section 951 and FARA. By way of example:

---

Iraqi intelligence, as well as for publishing certain news articles in a newspaper at the direction of the Iraqi government); United States v. Butina, No. 18-CR-218 (D.D.C.) (defendant convicted of Section 951 offenses for acting as an agent of a Russian government official for providing information about Americans who were in a position to influence United States politics and taking steps to establish an unofficial line of communication between Russia and these Americans); United States v. Soueid, No. 11-CR-494 (E.D. Va.) (defendant convicted of violating Section 951 for collecting video and audio recordings and other information about individuals in the United States and Syria who were protesting the government of Syria, and providing these materials to Syrian intelligence agencies in order to silence, intimidate, and potentially harm the protestors); United States v. Chapman et al., No. 10-CR-598 (S.D.N.Y.) (defendants charged with conspiracy to violate Section 951 for carrying out long-term, "deep-cover" assignments in the United States on behalf of the Russian Federation "in the service of one primary, long-term goal: to become sufficiently 'Americanized' such that they can gather information about the United States for Russia, and can successfully recruit sources who are in, or are able to infiltrate, United States policy-making circles.").

- **Section 951 but not FARA**: A person is directed by a foreign government to document the license plate numbers of every car that enters and exits the White House and to send that information back to a foreign government official. That person must provide notice to the Attorney General under Section 951, but has no obligation to register under FARA.

- **FARA but not Section 951**: A person is directed by a foreign business or foreign non-governmental organization to engage in a media campaign on behalf of that business or NGO. That person must register under FARA, but has no notice requirement under Section 951.[4]

- **Section 951 and FARA (one action)**: A person is directed by a foreign government to meet with a U.S. Senator and lobby in favor a trade bill for the benefit of the foreign government. That person must register under FARA and provide notice under Section 951.

- **Section 951 and FARA (multiple actions)**: A person is directed by a foreign government to take down license plate numbers and also directed to meet with a U.S. Senator to lobby on behalf of a trade bill. That person has both a Section 951 notice obligation (for the license plate activity and lobbying activity) and a FARA registration requirement (for just the lobbying activity).

Because there are certain circumstances (as demonstrated by the above) where a person has both a Section 951 notice and a FARA registration obligation, Section 951 makes the process more efficient by providing that FARA registration can satisfy Section 951 notice. See 28 C.F.R. § 73.3(e) ("Notification under 18 U.S.C. 951 shall be effective only if it has been done in compliance with this section, or if the agent has filed a registration under the Foreign Agents Registration Act . . . which provides the information required by paragraphs (a) and (d) of this section.").

    B.    <u>A Violation of FARA Means the Legal Commercial Transaction is Inapplicable</u>

The plain language of Section 951, its implementing regulations, and legislative history make clear that a civil violation of FARA would make the legal commercial transaction inapplicable as an affirmative defense. Section 951(d) carves out several exceptions to the definition of an agent of a foreign government, including for "any person engaged in a legal commercial transaction." 18 U.S.C. § 951(d)(4). Conduct does not satisfy the "legal commercial transaction" exception if it is "prohibited by federal or state legislation or implementing regulations." 28 C.F.R. § 73.1(f).

---

[4] Similar to Section 951, FARA also has a "commercial" exemption that permits certain conduct on behalf of foreign principals in furtherance of the bona fide trade or commerce of such foreign principal. The government assumes this exemption to not apply for the sake of the example.

Statutory interpretation begins with the text itself, "to determine whether the language has a plain and unambiguous meaning." United States v. Epskamp, 832 F.3d 154, 162 (2d Cir. 2016). The term "prohibited by federal or state legislation or implementing regulations" is plain and unambiguous—actions that are forbidden or not permitted by any federal or state law or regulation are excluded from the definition of the exception. Thus, by its plain terms, this provision is intended to broadly sweep in any violations of criminal, civil, or regulatory provisions. As the Court noted at an earlier point in trial, "Congress didn't give much restriction [to the definition]." Trial Tr. at 2211. The language in 28 C.F.R. § 73.1(f) means what it says: any violation of law, criminal or otherwise, renders conduct ineligible for the legal commercial transaction exception. This plain language also makes sense in the context of the statute—it is a broadly-worded statute designed to cover all types of conduct on behalf of a foreign government, except for several narrow exceptions. FARA is "federal…legislation"; therefore if conduct is "prohibited by" FARA, it falls outside the scope of the legal commercial transaction defense. Thus, the legal commercial transaction exception does not apply to conduct prohibited by FARA. Because there is no limitation to the definition to only criminal violations, a civil violation of FARA would also be excluded from the exception.

In arguing to the contrary, the defendants rely heavily upon legislative history and make broad claims such as: "Congress never intended for Section 951 or its notification requirement to serve as a burden on American businesspeople." See Def. Mot. at 8. But they omit the fact that FARA was specifically and expressly considered to be covered by Section 951 when the legal commercial transaction exception was being considered. Section 951 was amended in 1984 to add subsection (d), among other changes. P.L. 98-473, Title II, Ch. XII, Part G § 1209 (Oct. 12, 1984). The 1984 Congressional Reports do not discuss the amendments to Section 951. See H.R. Rep. 98-1159 (Oct. 10, 1984); H.R. Rep. 98-1030 (Sept. 17, 1984). However, the 1983 Senate Judiciary Committee report on S. 1762, a bill that contained substantially the same language as the 1984 amendment, did. Regarding the new exclusions from the scope of the statute, the Committee stated:

> [The amended version of Section 951] is not intended to cover those individuals in routine commercial matters but is intended to cover individuals who represent foreign governments in political activities that **may or may not come within the scope of the Foreign Agent[s] Registration Act**. By excluding from the notification requirement several classes of individuals who are presently covered, the proposal also limits the coverage of the statute by focusing only on those in whom the United States Government has a necessary interest.

S. Rep. No. 98-225 at 415 (emphasis added).

Thus, the one relevant statement we have from Congress indicates that even with the new "legal commercial transaction" language, Section 951 was still intended to cover, and continued to cover, individuals who "may . . . come within the scope of the Foreign Agent[s] Registration Act." See Order at 2, United States v. Ji Chaoqun, No. 18-CR-611 (ECF No. 368)

6

(discussing legislative history prior to denying legal commercial transaction defense); see also David Aaron, 18 U.S.C. Section 951 and the Non-Traditional Intelligence Actor Threat from the First World War to the Present Day, 45 Seton Hall Legis. J. 1, 21 (2021) ("The statement thus evinces an understanding and intent that Section 951 covers a broader scope of activity than FARA. By enumerating specific exceptions to that scope, the amendment affirmed the otherwise broad sweep of conduct that Section 951 criminalizes if--and only if--undertaken on behalf of a foreign government.")

At bottom, the defendants are arguing that they should be permitted to take advantage of the legal commercial transaction exception even if their conduct is not legal—i.e. even if it is prohibited by FARA. But there is nothing in the statute or regulation, nothing in the legislative history, and nothing in any case that supports such a carve out. Absent registration, FARA prohibits agents from: (i) engaging within the United States in political activities for or in the interests of their foreign principal(s); (ii) acting within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of their foreign principal(s); (iii) soliciting, collecting, disbursing, or dispensing contributions, loans, money or other things of value for or in the interest of their foreign principal(s) within the United States; or (iv) representing the interest(s) of their foreign principal(s) before any agency or official of the Government of the United States within the United States. 22 U.S.C. § 611(c)(1). If the Court permits the legal commercial transaction affirmative defense to proceed (and it should not), a jury should be instructed that if the defendants' conduct was covered by FARA, and they failed to register (which the government has already proven), their conduct is not protected by this defense.

C.  The Defendant's Arguments Are Misleading and Wrong

The defendants have made several misleading and inaccurate arguments in support of their claim that a violation of FARA cannot preclude the legal commercial transaction defense. We address several below:

**(1) "[Under the government's theory,] [a]ny person seeking to utilize Section 951's 'legal commercial transaction' exception . . must 'register' under FARA before he or she can engage in the "commercial transaction."[5]**

This is clearly wrong. As previously discussed, many persons engaged in commercial transactions on behalf of a foreign government that constitute conduct not covered by FARA would be subject to Section 951's "legal commercial transaction" exception and would not be required to register under FARA. For example, a person hired to paint the Embassy of the Government of Mexico would not be required to register under FARA (because their conduct is not covered by FARA) and would not be required to provide notice under Section 951 (because their conduct is subject to the "legal commercial transaction" exception). The converse may, in some circumstances, also be true: a person may engage in conduct that both requires Section 951 notice and requires FARA registration. The problem for Barrack and Grimes is that some of their

---

[5] See Def. Mot. at 8.

conduct constitutes "political activity" (and other FARA-regulated activity), and therefore it is covered by both FARA and Section 951.

**(2) The government's argument is "circular" because "someone must give the very notice required in order to be exempt from giving notice at all."[6]**

This is extremely similar to the previous argument and is equally wrong for the same reasons. In addition, this argument incorrectly treats Section 951 notice and FARA registration as the same thing. FARA is not "the very notice" required under Section 951. They are different requirements (letter notice, registration form) under different statutes (Section 951, FARA). The regulations for these two statutes are set up in a way that allows for one requirement (FARA registration) to satisfy a second requirement (Section 951 notice) if, because of your conduct, you are obligated to do both. But that is not circularity—that is simply an efficiency built into the regulations for the obvious reason that Section 951 contemplates that a person may also have to register under FARA for certain conduct. Indeed, the Section 951 regulations specifically contemplate this scenario, and highlight the lack of "circularity" by expressly stating that while FARA registration can satisfy Section 951 notice, Section 951 cannot satisfy the FARA registration requirement. 28 C.F.R. § 73.6 ("The filing of a notification under this section shall not be deemed compliance with the requirements of the Foreign Agents Registration Act . . . .").

**(3) The government's understanding of FARA "eviscerates" the legal commercial transaction exception.[7]**

This is exactly backwards—it is the defendants' theory that would "eviscerate" the entire FARA regulatory regime, while the government's reading of the statute gives life to all parts of both Section 951 and FARA. Under the defendants' theory, a person engaged in political lobbying (like the defendants) have "no obligation to 'register under FARA'" because of the legal commercial transaction exception under Section 951. See Def. Mot. at 10. Under this train of logic, a person engaged in lobbying (or other activities covered by FARA) would be able to flout the substantial registration requirements of FARA. They would not have to complete the detailed registration FARA form, or have their registration published on a public website, because they filed a one-page notice under a separate statute. According to the defendants, because Barrack and Grimes were engaged in what they claim to be commercial activity, they were entirely excused from registering under the FARA regulator regime even though they were engaged in activities clearly covered by FARA. See Def. Mot. at 9-10 (objecting to idea that individuals "engaged in 'routine commercial matters' would nevertheless need to register under FARA" to qualify for legal commercial transaction exception). This makes no sense and creates an implied exception that exists nowhere in FARA. It would also have the effect of permitting anyone who wanted to lobby for a foreign government and evade the transparency regulations of FARA to do so by pointing to Section 951's legal commercial transaction exception and notice requirement.

---

[6] See Def. Mot. at 8.

[7] Trial Tr. at 2213.

8

By contrast, the government's reading of the statute is consistent with ordinary canons of construction that require courts to read statutes consistent with each other whenever possible. See, e.g., Pittsburgh & Lake Erie R. Co. v. Ry. Lab. Executives' Ass'n, 491 U.S. 490, 510 (1989) ("when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"); Watt v. Alaska, 451 U.S. 259, 267 (1981); ("We must read the statutes to give effect to each if we can do so while preserving their sense and purpose."). As discussed above, there essentially are four categories of conduct to consider about Section 951 and FARA:

- Category 1: conduct covered by Section 951 that is clearly not subject to the legal commercial transaction exception or FARA (i.e., conducting surveillance at the direction of a foreign government).

- Category 2: conduct covered by Section 951 that is subject to the legal commercial transaction but not FARA (i.e., replacing a roof on a foreign embassy).

- Category 3: conduct that is not covered by Section 951 but is covered by FARA (i.e., engaging in lobbying on behalf of a foreign non-governmental organization).

- Category 4: conduct covered by both Section 951 and FARA (i.e., engaging in political activities at the direction of a foreign government).

Persons, such as the defendants here, who fall into Category 4 are required to comply with both FARA and Section 951. The fact that registration under the FARA statutes qualifies as notice under Section 951 does not "eviscerate" the statute—it is a regulatory efficiency that benefits the registering agent. It also does not "eviscerate" the legal commercial transaction exception either. A person who registers under FARA may have engaged in other conduct not covered by FARA (as is the case here), which they might want to claim is excepted by the legal commercial transaction.

**(4) The Decisions in Abouammo and Chaoqun Are Inapplicable to the Defendant's Conduct in this Case[8]**

The defendants concede, as they must, that other defendants who engaged in illegal conduct were not permitted to put forth a legal commercial transaction defense in the two most recent Section 951 cases in this country. See Abouammo, ECF No. 348; Ji Chaoqun, ECF No. 368. Their attempts to distinguish these cases amount to a claim that Barrack is different because he is a wealthy international businessman, and the Twitter employee and college student are not. See Def. Mot. at 6-7 ("Neither [case] involved a defendant who has been a prominent businessman…who founded and operated a $40 billion investment business…"). But class, wealth, and the ability to jet across the world are not a valid basis to distinguish these cases. Just as the defendant in Abouammo engaged in prohibited conduct while acting at the direction of a foreign government (sharing nonpublic information of Twitter users with the KSA government),

---

[8] Def. Mot. at 6-7.

9

the defendants here likewise engaged in prohibited conduct (engaging in FARA-regulated conduct without filing a FARA registration) while acting at the direction of the UAE government. Similarly, the defendant in Chaoqun engaged in some forms of lawful conduct (obtaining commercially available background reports), the fact that it was part of a larger course of non-commercial conduct designed to benefit a foreign government took it outside the legal commercial transaction defense. The same is true here: the defendants conduct was almost entirely non-commercial, mostly illegal separate and apart from Section 951, and done for the benefit of a foreign government. They have no basis to claim this affirmative defense.

D. <u>Affirmative Defenses Must Be Proven by a Preponderance of the Evidence</u>

The defendants also argue that the government (not the defense) bears the burden of proof for the affirmative defense. This is wrong—indeed, the defendants themselves previously conceded that they bore the burden of proving the defense by a preponderance of the evidence before walking back their concession. See Def. Original Charge, Instruction No. 30 (ECF No. 148). As the government previously explained, multiple prior decisions have held that the "legal commercial transaction" exception is an affirmative defense that the defendant must initially prove by a preponderance of the evidence. See United States v. Rafiekian, 991 F.3d 529, 544 (4th Cir. 2021) ("the 'legal commercial transaction' exception provides for an affirmative defense—which must be raised first, if at all, by a defendant—rather than an essential element of the offense."); United States v. Abouammo, No. 19-CR-621 (N.D. Cal. July 5, 2022) (ECF No. 288) at 52-54 ("the § 951(d) exceptions are affirmative defenses, not elements of the offense . . . and has revised the "burden of proof" instructions to convey that [the defendant] bears the burden to prove the affirmative defense by a preponderance of the evidence"). The defendant does not address <u>any</u> of these decision in his response, even though they entirely foreclose his claim.

The defendants instead cite three cases (none of which involve Section 951) to support their claim that they must only have a burden of "some evidence." See Mot. at 6. But those cases stand for no such thing. Indeed, one of the cases that the defendants cite, states that affirmative defenses are usually required to be proven by the defendant under a "preponderance of the evidence" with that limited burden shifting precluded only where a defense "negate[s] an element of the defense." Smith v. United States, 586 U.S. 106, 110 (2013). In that same case, the Supreme Court further explained that "[w]here instead it excuses conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt." Id. This is exactly the case here—a defendant is guilty of violating Section 951 unless his actions are excused because they are legal commercial transactions. See also Sand, Modern Federal Jury Instructions, Instruction 4-5 ("Preponderance of the Evidence") ("I instruct you that it is a defense to the charge in the indictment that the defendant [specify defense] if the defendant proves that this was the case by a preponderance of the evidence."); cf. Dixon v. United States, 548 U.S. 1, 8 (2006) (holding that duress affirmative defense must be proven by preponderance of the evidence).

II. The Government Is Not Required To Prove The "Exact" Language in the "To Wit" Clause to Convict on the Section 1001 Offenses

Counsel opposes the government's proposed jury instruction, arguing that the government must prove "the precise false statements alleged in Counts 4-9." Def. Mot. at 2. But the law requires no such strict adherence to the exact language contained in the "to wit" clauses in the Superseding Indictment.

Contrary to the defendants' contention, the government does not and has not ever claimed that Barrack's guilt on Counts Four through Nine of the Superseding Indictment may be found on "wholly different 'false statements' than those alleged in the Superseding Indictment." Def. Mot. at 1 (emphasis in original). Rather the government asserts, consistent with the law, that proof of the "exact statement" or "precise language" in the Superseding Indictment is not required. See Request No. 10 at 31-32. Indeed, the government's proposed jury instructions specify that the jury return a guilty verdict only where the government has "prove[d] beyond a reasonable doubt that the defendant made a statement substantially similar to the one alleged" in the Superseding Indictment. Id. Counsel's argument claiming that the government's proposed instructions would permit a "finding of guilt on a different false statement than the false statement that was specified in the indictment," which would "broaden[] the possible bases for conviction," is incorrect. See Def. Mot.. at 2-3.[9]

Counsel's only remaining argument then is that "[u]nless the Government proves the precise false statements alleged in Counts 4-9, the Superseding Indictment will have been constructively amended and reversal of any guilty verdict will be mandatory." Opp. at 2. That is wrong.

Relying on the Fifth Circuit's decision in United States v. Lambert, counsel argues that to secure a conviction, "the Government [i]s required to prove that the defendant used the words alleged in the charges." Def. Mot. at 4-5 (citing 501 F.2d 943, 948 (5th Cir. 1974)). But this reading of Lambert is overreaching and unsupported by the plain text of the decision. To start, the Lambert court specifically denounced counsel's assertion, explicitly stating that "[w]e do not

---

[9] Counsel cites to cases that address instances where the proof at trial supported conviction on a different false statement than that alleged in the charging instrument. Those cases are inapposite See Def. Mot. at 2-3 (citing United States v. Miller, 891 F. 3d 1220, 1232 (10th Cir. 2018) (vacating conviction of furnishing a false information on an application to the DEA where the jury could have returned a guilty verdict by finding that the defendant lied that he had never surrendered a federal controlled-substance registration, a misstatement for which he was not charged); United States v. Hoover, 467 F.3d 496, 501-02 (5th Cir. 2006) (vacating conviction where the "jury instruction allowed the government to obtain a conviction if it proved [the defendant] knew his statement was false" for a reason other than that charged in the indictment); United States v. Adams, 778 F.2d 1117, 1119, 1124 (5th Cir. 1985) (reversing conviction where jury was presented "evidence regarding Adams's alleged misrepresentations as to residence, when the indictment charged Adams only with misrepresentations as to name")). The government's proposed instructions do not permit such a result.

hold that there is a fatal variance if the statement shown by the evidence is not in haec verba with the statement charged in the indictment." Id. (emphasis added). Indeed, the Fifth Circuit explained that "once the evidence is in it must appear, by retrospective comparison of probata with allegata," that the defendant must not have been deprived of fair notice sufficient to enable him to prepare his defense. Id. at 947–48. Turning specifically to the facts in that case, the court found that the difference between the statement charged—that the defendant falsely claimed that he had been "severely beaten" or "subjected to illegal and unnecessary punishment"—and the statement proved at trial—that the defendant was "thrown to the pavement" and "struck on the head, face, and arms with slapjacks," inter alia—inhibited "defendant's ability to mount a defense." Id. The Fifth Circuit stated that based on the summary language in the indictment, the defendant was "left to guess what part or parts of the statement" and "that prosecution is free at trial, in offering evidence and arguing to the jury, to pick and choose previously unspecified bits and pieces of the statement that it considers arguably relevant to its conclusory restatement." Id.

In this case, no such concern exists as the Superseding Indictment notices Barrack to the specific alleged false statements and the reasons rendering them false. See Superseding Indictment, Counts 4-9. The government's narrow proposed instruction that it need not prove that "the defendant made the exact statement or used the precise language charged in the Indictment," see Request No. 10 at 31-32, is not contradicted by Lambert's holding. Cf. Lambert, 501 F.2d at 948 ("[w]hat occurred was not a mere substitution in the indictment of synonymous words in a brief utterance both clearly identified and with its parameters marked.").

As explained in the government's initial letter, see ECF No. 274 ("Gov. Ltr."), the Second Circuit has held that the government is not required to prove the precise conduct alleged in an indictment's "to wit" clause, provided that the defendant has notice of the "core of criminality." Id. at 1-2. Counsel now claims that the Court may disregard this established precedent where a defendant is charged with making a false statement because the Second Circuit, in United States v. Banki, 685 F.3d 99 (2d Cir. 2012), noted that the "core of criminality" in that case "was that Banki falsely identified his cousin—a non-citizen relative as opposed to his citizen father—as the source of wire transfers." Id. at 119; see Opp. at 3. Counsel suggests that Banki requires that procuring a false statement conviction necessarily requires that the government prove "that the statements were made exactly as alleged." Opp. at 1. But the Banki Court did not go so far; rather, it reaffirmed that "one constant in [the Circuit's] case law is that we have consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." Banki, 685 F.3d 99 at 118 (internal quotation marks and citation omitted) (upholding conviction despite defendant's argument that the government improperly suggested an uncharged, "additional motive for the false statement" because "the Indictment gave Banki notice of the core of criminality to be proved at trial").

Indeed, where, as here, the false statement alleged in the indictment is not quoted, the Court need not require the government to prove the exact verbiage of the charged false statement. The Sixth Circuit's holding in United States v. Bartle, 835 F.2d 646 (6th Cir. 1987), is

12

instructive.[10] In Bartle, the defendant was convicted on an indictment charging him with falsely stating on an application for permanent residency that the defendant and a named woman "were living together as man and wife." Id. at 648. On appeal, the defendant argued that because the evidence at trial revealed that his application specifically "affirm[ed] that '[m]y . . . wife resides with me,'" and did "not contain the indictment language, 'living together as man and wife,'" his conviction must be reversed due to this alleged variance. Id. The Sixth Circuit rejected the defendant's invitation to "narrowly construe[]" the language of the indictment "as a direct quote of the false statement." Id. at 648-49. The appellate court explained that "the grand jury did not intend its words to be a quote but merely a summary of the fraudulent representation (as evidenced by the absence of quotation marks around the statement)." Id. at 649. The Sixth Circuit further reasoned that the Fifth Amendment's grand jury clause does "not mandate that, in every false statement prosecution, the indictment quote verbatim the purported misrepresentation;" rather, an indictment satisfies the grand jury clause where it "describes the alleged false statement in such a way as to distinguish it from the universe of other statements made by the defendant." Id. Ultimately, the Sixth Circuit held that:

> [T]he indictment describes with particuliarity [sic] the document in which the false statement is to be found, and adequately summarizes the statement's contents. There is, therefore, no requirement that we take the excessively literalist tack urged by Bartle of treating the summary language of the indictment as a direct quote, and superimposing the indictment's language over Bartle's actual statement to insure a perfect match.

Id. The Sixth Circuit upheld the defendant's conviction for making a false statement. See id.

As explained above, and in the government's September 28, 2022 letter, instructing the jury as proposed by the government does not offend the government's obligation "to prove the charges as returned by the grand jury," Opp. at 2. The jury is entitled to conclude that Barrack made a materially false statement if he has made a statement that is substantially similar to the one charged in the superseding indictment.

---

[10] See also Gov. Ltr. at 2-3 (citing United States v. Jara-Favela, 686 F.3d 289, 294 (5th Cir. 2012).

III.     Conclusion

For the foregoing reasons, the Court should reject the defendants' proposed instructions because they would cause confusion and invite legal error, and instead adopt the governments' proposed instructions.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:     /s/
Matthew J. McKenzie
Trial Attorney

cc:     Clerk of the Court (by email)
Counsel of Record (by ECF)